## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO SUAREZ, | : | Case No. 1:14cv968 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Hon. William W. Caldwell |
| | : | |
| ERIC H. HOLDER, JR., | : | |
| Attorney General of the United | : | |
| States; and B. TODD JONES, | : | |
| Director of the Bureau of | : | |
| Alcohol, Tobacco, Firearms and | : | |
| Explosives, | : | |
| | : | |
| Defendants. | : | Electronically Filed |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS OR FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STATUTORY BACKGROUND.............................................................................2

FACTUAL BACKGROUND .................................................................................3

ARGUMENT .........................................................................................................5

I.      Plaintiff's Conviction Was Punishable by a Term of Imprisonment
        Exceeding Two Years and Therefore Is Properly the Basis for a
        Firearms Disability Under 18 U.S.C. § 922(g)(1)............................................5

II.     As Applied to Plaintiff, 18 U.S.C. § 922(g)(1) Does Not Violate
        the Second Amendment..................................................................................7

        A.      As Applied to Plaintiff, Section 922(g)(1) Relates
                Substantially to the Important Governmental Interest in
                Protecting Public Safety and Combating Violent Crime ......................9

        B.      Additionally, Plaintiff Has Not Presented Facts That
                Distinguish His Circumstances From Those of Persons
                Historically Barred From Second Amendment Protections,
                or Shown That His Circumstances Place Him Outside the
                Intended Scope of Section 922(g)(1) ..................................................19

                1.      Plaintiff's Claim Is Indistinguishable From One
                        Recently Rejected by the Third Circuit in Dutton
                        v. Commonwealth ....................................................................19

                2.      Plaintiff Has Not Pointed to Any Specific Facts
                        That Would Demonstrate That Section 922(g)(1)
                        Should Not Apply to Him .........................................................23

                3.      Congress Appropriately Determined That Section
                        922(g)(1) Should Apply to Persons Like Plaintiff....................29

CONCLUSION ....................................................................................................33

i

# TABLE OF AUTHORITIES

## CASES

Barrett v. United States,
 423 U.S. 212 (1976) .................................................................. 11, 33

Binderup v. Holder,
 No. 13-6750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014) ........................ 19, 32

Burrell v. United States,
 384 F.3d 22 (2d Cir. 2004) ...............................................................10

Chardin v. Police Com'r of Boston,
 989 N.E.2d 392.............................................................................32

Commonwealth v. Suarez,
 No. MD-615-2009 (Adams Cty. Ct. of Common Pleas May 6, 2009) .................4

Clark v. Jeter,
 486 U.S. 456 (1988) ........................................................................9

Dickerson v. New Banner Inst.,
 460 U.S. 103 (1983) .................................................................. 11, 30

District of Columbia v. Heller,
 554 U.S. 570 (2008) ................................................................ passim

Drake v. Filko,
724 F.3d 426 (3d Cir. 2013)........................................................... passim

Dutton v. Commonwealth,
 503 F. App'x 125 (3d Cir. 2012)...................................... 19, 20, 21-22

Dutton v. Commonwealth,
 No. 11-7285, 2012 WL 3020651 (E.D. Pa. July 23, 2012) ........................ 20, 21

Gibson v. State,
 930 P.2d 1300 (Alaska Ct. App. 1997) ...............................................28

Huddleston v. United States,
    415 U.S. 814 (1974) ................................................................................30

Kachalsky v. Cnty. of Westchester,
    701 F.3d 81 (2d Cir. 2012) ......................................................................25

Kaemmerling v. Lappin,
    553 F.3d 669 (D.C. Cir. 2008)..................................................................13

Lewis v. United States,
    445 U.S. 55 (1980) ...................................................................................10

Michigan Dep't of State Police v. Sitz,
    496 U.S. 444 (1990) .................................................................................29

Nixon v. Shrink Mo. Gov't PAC,
    528 U.S. 377 (2000) .................................................................................11

People v. Garcia,
    595 P.2d 228 (Colo. 1979) .......................................................................28

Samson v. California,
    547 U.S. 843 (2006) .................................................................................12

Schall v. Martin,
    467 U.S. 253 (1984) .................................................................................10

Schrader v. Holder,
    704 F.3d 980 (D.C. Cir. 2013).................................................... 6, 9, 32

Small v. United States,
    544 U.S. 385 (2005) .................................................................. 10, 25

State v. Pocian,
    814 N.W.2d 894 (Wis. Ct. App. 2012).....................................................32

State v. Rivera,
    853 P.2d 126 (N.M. Ct. App. 1993) .........................................................28

Tennessee v. Garner,
    471 U.S. 1 (1985) ...............................................................................24

Turner Broad. Sys., Inc. v. FCC,
    512 U.S. 622 (1994) ...........................................................................25

Turner Broad. Sys. v. FCC,
    520 U.S. 180 (1997) ...........................................................................11

United States v. Barton,
    633 F.3d 168 (3d Cir. 2011) ........................................................ passim

United States v. Booker,
    644 F.3d 12 (1st Cir. 2011) ..................................................................2

United States v. Chapman,
    666 F.3d 220 (4th Cir. 2012) ..............................................................17

United States v. Chovan,
    735 F.3d 1127 (9th Cir. 2013) ..............................................................9

United States v. Davis,
    No. 09-94, 2010 WL 1607836 (W.D. Wis. April 20, 2010) ...............32

United States v. Emerson,
    270 F.3d 203 (5th Cir. 2001) ........................................................ 31, 32

United States v. Ernst,
    857 F. Supp. 2d 1098 (D. Or. 2012)....................................................32

United States v. Essig,
    10 F.3d 968 (3d Cir. 1993) ...................................................................6

United States v. Everist,
    368 F.3d 517 (5th Cir. 2004) ..............................................................31

United States v. Fouse,
    578 F.3d 643 (7th Cir. 2009) ................................................................4

United States v. Jones,
   673 F. Supp. 2d 1347 (N.D. Ga. 2009) .................................................................27

United States v. Laurent,
   861 F. Supp. 2d 71 (E.D.N.Y. 2011).................................................................31

United States v. Leuschen,
   395 F.3d 155 (3d Cir. 2005) .................................................................6

United States v. Ligon,
   No. 04-185, 2010 WL 4237970 (D. Nev. Oct. 20, 2010) .....................................32

United States v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010) ......................................................... 8, 19, 20

United States v. Miller,
   604 F. Supp. 2d 1162 (W.D. Tenn. 2009) ...........................................................18

United States v. Oppedisano,
   No. 09-305, 2010 WL 4961663 (E.D.N.Y. Nov. 30, 2010)........................... 27, 29

United States v. Pruess,
   703 F.3d 242 (4th Cir. 2012) .................................................................31

United States v. Salerno,
   481 U.S. 739 (1987) .................................................................. 10, 11

United States v. Schultz,
   No. 08-75, 2009 WL 35225 (N.D. Ind. Jan. 5, 2009) .........................................32

United States v. Scroggins,
   599 F.3d 433 (5th Cir. 2010) .................................................................17

United States v. Skoien,
   614 F.3d 638 (7th Cir. 2010) .................................................................9

United States v. Tooley,
   717 F. Supp. 2d 580 (S.D. W. Va. 2010) ...........................................................18

United States v. Vongxay,
    594 F.3d 1111 (9th Cir. 2010) ...............................................................................31

United States v. Waters,
    23 F.3d 29 (2d Cir. 1994) ............................................................................... 29-30

United States v. Westry,
    No. 08-20237, 2008 WL 4225541 (E.D. Mich. Sept. 9, 2008) ...........................32

United States v. Williams,
    616 F.3d 685 (7th Cir. 2010) .................................................................................9

Wilson v. United States,
    No. 05-238, 2006 WL 519393  (M.D. Tenn. Feb. 28, 2006) ...............................32

## **STATUTORY LAW**

18 U.S.C. § 921(a)(20)(A) ....................................................................................3, 12
18 U.S.C. § 921(a)(20)(B) .............................................................................. 3, 5, 6, 12
18 U.S.C. § 922.........................................................................................................20
18 U.S.C. § 922(g)(1).......................................................................................... passim
18 U.S.C. § 922(g)(9)..............................................................................................9, 18
430 Ill. Comp. Stat. 66/70(d) ....................................................................................28
Conn. Gen. Stat. Ann. § 53-206d(a)(1).....................................................................27
Federal Firearms Act, Pub. L. No. 75-785, 52 Stat. 1250 (1938)……………...2, 31
Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961)  ..............................2
Md. Code, Criminal Law, § 4-203 ..............................................................................4
Md. Ann. Code art. 27, § 36B(b) ............................................................................4, 5
Md. Code, Art. 27, §10A (1990)................................................................................26
Mass. Gen. Laws ch. 269, § 10H ..............................................................................28
Mich. Comp. Laws § 324.43558(3) ..........................................................................28
Ohio Rev. Code. § 2923.15(A) ..................................................................................28
Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351,
    82 Stat. 197 (1968)……………………………………………………………11, 24
R.I. Gen. Laws § 11-47-52.........................................................................................28

## LEGISLATIVE MATERIALS

H.R. Rep. No. 87-1202 (1961) ............................................................. 2

H.R. Rep. No. 90-1956 (1968) ............................................................. 25

S. Rep. No. 88-1340 (1964) ......................................................... 1, 12, 24

S. Rep. No. 89-1866 (1966) ............................................................ 11, 24

S. Rep. No. 90-1501 (1968) ................................................................ 24

## MISCELLANEOUS

Br. of United States, United States v. Barton, No. 09-2211, 2010
   WL 2962436 (3d Cir. July 2, 2010)................................................. 26

App. Br., United States v. Barton, No. 09-2211, 2010 WL 2962436
   (3d Cir. July 2, 2010) ................................................................... 26

**INTRODUCTION**

The Gun Control Act of 1968 prohibits individuals convicted of crimes punishable by imprisonment for a term of more than one year from possessing firearms. 18 U.S.C. § 922(g)(1). In 1990, when Plaintiff was arrested for driving while intoxicated, police officers discovered that Plaintiff was carrying a concealed, loaded .357 Magnum handgun that he had no license to possess. The State of Maryland convicted Plaintiff of unlawfully carrying an unlicensed handgun, a crime with a statutory penalty of up to three years imprisonment. Plaintiff now contends that he is entitled to possess a firearm notwithstanding 18 U.S.C. § 922(g)(1), arguing that the statute does not encompass his conviction or, alternatively, that Section 922(g)(1) violates the Second Amendment as applied to him. Neither argument has merit. First, Plaintiff's crime was punishable by a term of imprisonment of three years, so he falls squarely within the scope of Section 922(g)(1). Second, Plaintiff's constitutional challenge to the statute is unavailing. Even if Plaintiff's challenge to the statute implicates conduct protected by the Second Amendment, prohibiting possession of firearms by a person who has been convicted of carrying an unlicensed handgun, and who did so in the course of driving while intoxicated, substantially relates to the important government interest in combating violent crime and preserving public safety. In any event, Plaintiff has failed to show that his circumstances place him outside the intended scope of

Section 922(g)(1).  Accordingly, the Court should dismiss this action, or enter summary judgment for Defendants.

## STATUTORY BACKGROUND

"Enacted in its earliest incarnation as the Federal Firearms Act of 1938, [18 U.S.C. § 922(g)(1)] initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses."  United States v. Booker, 644 F.3d 12, 24 (1st Cir. 2011), cert. denied, 132 S. Ct. 1538 (2012) (citations omitted); see Federal Firearms Act, ch. 850, §§ 1(6), 2(f), Pub. L. No. 75-785, 52 Stat. 1250, 1250-51 (1938).  In 1961, Congress amended this Act to prohibit "any person . . . convicted of a crime punishable by imprisonment for a term exceeding one year" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  See An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961); H.R. Rep. No. 87-1202, at 4-5 (1961).  Congress introduced the amendment at the specific request of the Attorney General as "an integral part of an anticrime legislative program" in response to the "exploding crime rate" of recent years.  H.R. Rep. No. 87-1202, at 2.  Its purpose was to "better assist local authorities in the common assault on crime" and to "make it more difficult for the criminal elements of our society to obtain firearms."  Id.  These prohibitions are codified at 18 U.S.C. § 922(g)(1) ,

2

which, as amended, prohibits "any person . . . who has been convicted in any court

of, a crime punishable by imprisonment for a term exceeding one year" from

"possess[ing] in or affecting commerce, any firearm or ammunition."

Excluded from "[t]he term 'crime punishable by imprisonment for a term

exceeding one year'" are "State offense[s] classified by the laws of the State as a

misdemeanor and punishable by a term of imprisonment of two years or less."  18

U.S.C. § 921(a)(20)(B).  Also excluded is "[a]ny conviction which has been

expunged, or set aside or for which a person has been pardoned or has had civil

rights restored . . . unless such pardon, expungement, or restoration of civil rights

expressly provides that the person may not ship, transport, possess, or receive

firearms."  Id. § 921(a)(20).[1]

## FACTUAL BACKGROUND

On the evening of February 9, 1990, police in Montgomery County,

Maryland observed Plaintiff's vehicle fail to stop for a flashing red traffic signal.

See Driving While Intoxicated Report, Montgomery County (MD) Department of

Police, No. B-90-030230 (Feb. 9, 1990) (attached as Ex. 1).  When the police

pulled over the vehicle, one of the officers noticed the strong odor of an alcoholic

---

[1] Congress also excluded from the statutory term "crime punishable by
imprisonment for a term exceeding one year" any "offenses pertaining to antitrust
violations, unfair trade practices, restraints of trade, or other similar offenses
relating to the regulation of business practices."  18 U.S.C. § 921(a)(20)(A).

beverage on Plaintiff's breath.  Id. at 2.  After failing a sobriety test, Plaintiff was

placed under arrest.  Id. at 2-3.  Plaintiff was recorded as having a blood-alcohol

content of .11 percent.  Id. at 1.

While arresting Plaintiff, the police officers found a loaded .357 Magnum

handgun concealed under a sports coat in the small of Plaintiff's back.  Event

Report, Montgomery County (MD) Department of Police, No. B90030230 (Feb. 9,

1990), at 2 (attached as Ex. 2).  The officers also found two loaded "speed-loaders"

in Plaintiff's possession.  Id.  A speed-loader is a device used to load a firearm

with ammunition very quickly.  United States v. Fouse, 578 F.3d 643, 647 (7th Cir.

2009).  Plaintiff had no license to carry the handgun.  See Petition for Removal of

Disqualification, Commonwealth v. Suarez, No. MD-615-2009 (Adams Cnty. Ct.

of Common Pleas May 6, 2009), at 1 (attached as Ex. 3).

On June 26, 1990, Plaintiff was convicted by the District Court of

Montgomery County, Maryland, for unlawfully carrying a handgun, in violation of

then-Md. Ann. Code art. 27, § 36B(b).[2]  Case Information Sheet, District Court of

Montgomery County, Maryland, Case No. 00030141Z6, at 1 (attached as Ex. 4).

At the time of Plaintiff's conviction, Section 36B(b) provided in relevant part:

"[A]ny person who shall wear, carry or knowingly transport any handgun, whether

concealed or open, in any vehicle traveling upon the public roads, highways,

---

[2] This former section has been re-codified, without substantive change, at
Maryland Code, Criminal Law, § 4-203.

4

waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor. . . ." Md. Ann. Code art. 27, § 36B(b) (1990).  Maryland law provided that a person convicted of Section 36B(b) who had not been previously convicted of certain weapons offenses "shall be fined not less than two hundred and fifty ($250.00) dollars, nor more than twenty-five hundred ($2,500.00) dollars, or be imprisoned in jail or sentenced to the Maryland Division of Correction for a term of not less than 30 days nor more than three years, or both." Id. § 36B(b)(i) (1990).  Plaintiff was sentenced to one year of probation, 180 days of imprisonment, and a $500 fine and court costs, but the term of imprisonment and fine were both suspended. Ex. 4, at 1.

## ARGUMENT

### I. Plaintiff's Conviction Was Punishable by a Term of Imprisonment Exceeding Two Years and Therefore Is Properly the Basis for a Firearms Disability Under 18 U.S.C. § 922(g)(1).

Plaintiff was convicted of unlawfully carrying an unlicensed handgun, a misdemeanor punishable by up to three years' imprisonment. See Md. Ann. Code art. 27, § 36B(b)(i) (1990).  He was thus "convicted . . . of, a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Excluded from this definition are "State offense[s] classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Id. § 921(a)(20)(B).  Because Plaintiff's offense was punishable by a term of up to

three years' imprisonment, that offense does not fall within the scope of this statutory exclusion.  See United States v. Essig, 10 F.3d 968, 971 (3d Cir. 1993) (misdemeanant did not fall within terms of Section 921(a)(20)(B)'s exclusion "because his state conviction is punishable by imprisonment for up to five years"), superseded on other grounds; United States v. Leuschen, 395 F.3d 155, 158 (3d Cir. 2005) ("[T]he only qualification imposed by § 922(g)(1) is that the predicate conviction carry a *potential* sentence of greater than one year of imprisonment.") (emphasis added); Schrader v. Holder, 704 F.3d 980, 986 (D.C. Cir. 2013) ("Because common-law offenses carry no statutory maximum term of imprisonment, they are capable of being punished by a term of imprisonment exceeding one year and thus fall within section 922(g)(1)'s purview.  And because such offenses are also capable of being punished by more than two years' imprisonment, they are ineligible for section 921(a)(20)(B)'s misdemeanor exception."), cert. denied, 134 S. Ct. 512 (2013).

Because Plaintiff was convicted of a misdemeanor punishable by up to three years' imprisonment, he falls squarely within the ambit of Section 922(g)(1), and does not qualify for the statutory exception set forth in Section 921(a)(20)(B). The Court should therefore dismiss Count I.

**II.     As Applied to Plaintiff, Section 922(g)(1) Does Not Violate the Second Amendment.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.  In District of Columbia v. Heller, 554 U.S. 570 (2008), after determining that the Second Amendment conferred an individual right to keep and bear arms, id. at 595, the Supreme Court held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self defense."  Id. at 635.  The Court's holding was narrow, and addressed only the "core" right of "*law-abiding, responsible* citizens to use arms in defense of hearth and home."  Id. at 634-35 (emphasis added).

Like other constitutional rights, the right to keep and bear arms is "not unlimited."  Heller, 554 U.S. at 626.  Although the Supreme Court declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it cautioned that "*nothing* in [its] opinion *should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .*" Id. at 626-27 (emphasis added); see also id. at 627 n.26 (describing such "regulatory measures" as "presumptively lawful").

Applying <u>Heller</u>, the Third Circuit in <u>United States v. Marzzarella</u>, 614 F.3d 85 (3d Cir. 2010), established a two-pronged approach for courts in this Circuit to apply when analyzing Second Amendment challenges: "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.  If it does not, our inquiry is complete.  If it does, we evaluate the law under some form of means-end scrutiny.  If the law passes muster under that standard, it is constitutional.  If it fails, it is invalid." <u>Id.</u> at 89 (footnote and internal citation omitted).  As applied to Plaintiff, even if the challenged law affects conduct that falls within the scope of the Second Amendment's protections (which Defendants do not concede), the law relates substantially to the compelling governmental interests in combating violent crime and protecting public safety, and is therefore constitutional.

The Third Circuit has also suggested that a person could raise a successful as-applied challenge to Section 922(g)(1) by "present[ing] facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." <u>United States v. Barton</u>, 633 F.3d 168, 174 (3d Cir. 2011).  However, Plaintiff has neither presented facts to distinguish his circumstances from such persons, nor shown that his circumstances place him outside the intended scope of Section 922(g)(1).  The Court should thus dismiss Count II.

8

### A.     As Applied to Plaintiff, Section 922(g)(1) Relates Substantially to the Important Governmental Interest in Protecting Public Safety and Combating Violent Crime.

If Section 922(g)(1), as applied to Plaintiff, affects conduct protected by the Second Amendment – a point that Defendants do not concede – the Court should uphold the statute as applied.  The Third Circuit has applied intermediate scrutiny to regulations that do not implicate "the core of the [Second] Amendment," Drake v. Filko, 724 F.3d 426, 436 (3d Cir. 2013), cert. denied, 134 S. Ct. 2134 (2014), i.e., "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  Heller, 554 U.S. at 635.  Other courts have likewise applied intermediate scrutiny in assessing as-applied challenges to statutes including Section 922(g)(1).  See, e.g., United States v. Williams, 616 F.3d 685, 692 (7th Cir. 2010); see also United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010) (en banc) (applying intermediate scrutiny in evaluating constitutional challenge to 18 U.S.C. § 922(g)(9), prohibiting any person convicted of a "misdemeanor crime of domestic violence" from possessing firearms); United States v. Chovan, 735 F.3d 1127, 1142 (9th Cir. 2013) (same); Schrader, 704 F.3d at 988-89 (applying intermediate scrutiny in evaluating constitutionality of Section 922(g)(1) as applied to common-law misdemeanants).

To satisfy intermediate scrutiny, "a statutory classification must be substantially related to an important governmental objective."  Clark v. Jeter, 486

U.S. 456, 461 (1988).  There can be little doubt that an important government interest is at stake here.  Section 922(g)(1) was enacted to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society."  Small v. United States, 544 U.S. 385, 393 (2005) (citation and internal punctuation omitted); Burrell v. United States, 384 F.3d 22, 27 (2d Cir. 2004) (Section 922(g)(1) "was one of several measures enacted by Congress to 'prohibit [ ] categories of presumptively dangerous persons' from possessing firearms") (quoting Lewis v. United States, 445 U.S. 55, 64 (1980)).

Protecting public safety and combating crime are well-established *compelling* governmental interests.  See United States v. Salerno, 481 U.S. 739, 748-50 (1987) (noting that the Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest"); Schall v. Martin, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citation and internal punctuation omitted).

Several factors are relevant to the Court's application of intermediate scrutiny.  First, the degree of fit between the challenged law and the governmental interest it serves need only be "reasonable."  Drake, 724 F.3d at 436.  Second,

"[w]hen reviewing the constitutionality of statutes, courts 'accord substantial deference to the legislature's predictive judgments.'" Id. at 436-37 (quoting Turner Broad. Sys. v. FCC, 520 U.S. 180, 195 (1997)) (internal punctuation omitted).  Third, as the Supreme Court has noted, the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 391 (2000).

"[T]he Government's general interest in preventing crime is compelling," Salerno, 481 U.S. at 750, and the Supreme Court's cases have "recognized and given weight" to Congress's "broad prophylactic purpose" in enacting the provisions at Section 922(g).  Dickerson v. New Banner Inst., 460 U.S. 103, 118 (1983).  As the Supreme Court has explained, "[t]he history of the 1968 Act reflects" Congress's "concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons."  Barrett v. United States, 423 U.S. 212, 220 (1976).[3]  "[P]ersons with records of misdemeanor

---

[3] See, e.g., Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV,  § 901(a)(2), 82 Stat. 197, 225 ("Omnibus Act") (finding that "that the ease with which" handguns could be acquired by "criminals . . . and others whose possession of such weapons is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States"); S. Rep. No. 89-1866, at 3, 53 (1966) (Congress's investigations revealed "a serious problem of firearms misuse in the United States," and a "relationship between the apparent easy availability of firearms and criminal behavior"); id. at 1 (Congress aimed to "regulate more effectively interstate commerce in firearms so

arrests" were among those whose access to firearms concerned Congress.  S. Rep. No. 88-1340, at 4 (1964).

To that end, Section 922(g)(1) provides that "it shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  The statute does not apply where the offense of conviction is a State misdemeanor offense "punishable by a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20)(B), or an "offense[] pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offense[] relating to the regulation of business practices," id. § 921(a)(20)(A).  Nor does it apply to "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."  Id. § 921(a)(20).

Recidivism is a "reality" that legislatures need not ignore.  Samson v. California, 547 U.S. 843, 849 (2006).  Thus, relatively little empirical evidence

---

as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them"); S. Rep. No. 88-1340, at 12, 18 (law enforcement officials testified to the "tragic results" of firearm misuse by persons with prior criminal convictions).

should be required to satisfy intermediate scrutiny in this case.  See Drake, 724

F.3d at 438 ("[W]e refuse to hold that the fit [between the challenged firearms law

and the state's interest in protecting public safety] is not reasonable merely because

New Jersey cannot identify a study or tables of crime statistics upon which it based

its predictive judgment").  Nevertheless, empirical evidence shows a substantial

relationship between Section 922(g)(1) as applied to convicted criminals such as

Plaintiff and Congress's goals of protecting public safety and combating violent

crime.  Convicted offenders as a group – including those convicted of crimes that

did not involve violence – present a significant risk of recidivism for violent crime.

See Kaemmerling v. Lappin, 553 F.3d 669, 683 (D.C. Cir. 2008) ("Other courts . . .

have observed that nonviolent offenders not only have a higher recidivism rate

than the general population, but certain groups – such as property offenders – have

an even higher recidivism rate than violent offenders, *and a large percentage of*

*the crimes nonviolent recidivists later commit are violent*.") (emphasis added)

(citing cases); Mona A. Wright et al., Effectiveness of Denial of Handgun Purchase

to Persons Believed to Be at High Risk for Firearm Violence, 89 Am. J. of Public

Health 88, 89 (1999) (concluding, based on a study of handgun purchases denied

as a result of a prior conviction or arrest for a crime punishable by imprisonment or

death, that "denial of handgun purchase is associated with a reduction in risk for

later criminal activity of approximately 20% to 30%," and that "[a]mong those

13

with only one prior weapon or violence arrest charge, [handgun] purchasers were 2

to 4 times as likely to be charged with new offenses as those who were denied")

(attached as Ex. 5).

Individuals convicted of non-violent firearms-related offenses – such as

Plaintiff – are substantially more likely than the general population to commit

future crimes, including crimes of violence.  See Garen J. Wintemute et al., Prior

Misdemeanor Convictions as a Risk Factor for Later Violent and Firearm-Related

Criminal Activity Among Authorized Purchasers of Handguns, 280 J. Am. Med.

Ass'n 2083 (1998) (attached as Ex. 6).  A study of over 5,000 authorized

purchasers of handguns with prior misdemeanor convictions[4] showed that handgun

purchasers with a prior non-violent conviction involving a firearm were 4.4 times

more likely to be charged with a violent offense than a person with no prior

criminal history.  Id. at 2086 tbl. 5.  Additionally, such individuals were 5.2 times

more likely to be charged with a subset of violent offenses classified by the Federal

Bureau of Investigation as Violent Crime Index offenses (for example, "murder

and non-negligent manslaughter, forcible rape, robbery, and aggravated assault").

Id. at 2084, 2086 tbl. 5.  Notably, the specific example cited by this study of a

crime "involving firearms but not violence" was "carrying a concealed firearm in a

---

[4] The study defined "misdemeanor" more strictly than the definition used by
Section 922(g)(1): namely, as crimes punishable by incarceration for one year or
less.  See Ex. 6 at 2083, 2087 n.14.

public place." Id. at 2084.  And the study specifically concluded that "handgun

purchasers who had prior convictions for nonviolent firearm-related offenses such

as carrying concealed firearms in public, but none for violent offenses, were at

increased risk for later violent offenses." Id. at 2086.

Nor is a risk of recidivism linked only to offenders who served terms of

imprisonment.  A 2010 Connecticut study of persons convicted of weapons-related

crimes specifically found that "[t]he recidivism rates of offenders who had served

prison sentences for weapon charges were only slightly higher than the rates for

offenders who had been arrested or convicted on weapons charges but had avoided

prison for these offenses."  State of Connecticut, Office of Policy & Mgmt. and

Connecticut Statistical Analysis Center, Criminal Justice Policy & Planning

Division: Recidivism & Weapons (Aug. 2010), at 2 (attached as Ex. 7).

Specifically, of 4,785 male offenders arrested, but not convicted, for a weapons

offense, 65% were imprisoned within 3 years of their offense.  Id.  And of 2,286

offenders who were convicted of a weapons offense but served no time, 66% were

imprisoned within 3 years of their offense.  Id.  Additionally, a 2005 Iowa study

showed that 53.1% of individuals who received only probation for weapons

offenses were re-arrested, 15.6% for a violent offense.  Iowa Div. of Criminal &

Juvenile Justice Planning, Recidivism Among Iowa Probationers (July 2005), at 27

tbl. 26 (attached as Ex. 8).  Moreover, 37.5% of probationers for weapons offenses were re-convicted, 12.5% for a crime of violence.  Id. at 28 tbl. 27.

In another study – one specifically cited by the Third Circuit in Barton – 70.2% of offenders released following convictions for weapons offenses were re-arrested within three years, and 46.6% were re-convicted within three years.  See U.S. Dep't of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1994 (June 2002), at 8 tbl. 9 (attached as Ex. 9); Barton, 633 F.3d at 175.  These findings are consistent with other studies of offenders convicted of weapons offenses.  See U.S. Dep't of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010 (April 2014), at 8 tbl. 8 (35.3% of prisoners convicted of weapons offenses[5] released in 30 states in 2005 were re-arrested within 6 months, and 79.5% were re-arrested within 5 years) (attached as Ex. 10); Delaware Criminal Justice Council, Statistical Analysis Center, Recidivism in Delaware: An Analysis of Prisoners Released in 2008 and 2009 (July 2013), at 21-23 (over 70% of Delaware offenders convicted in 2008 and 2009 of weapons offenses[6] were re-arrested within three

_____

[5] Both the 2002 and 2014 Bureau of Justice Statistics studies defined "weapons offenses" as including "the unlawful sale, distribution, manufacture, alteration, transportation, possession, or use of a deadly or dangerous weapon or accessory." Ex. 9 at 16; Ex. 10 at 23.

[6] The Delaware study defined weapons offenses as including: carrying a concealed deadly weapon or dangerous instrument, possession of a deadly weapon or firearm

years, 65-70% were re-convicted within three years, and over 60% were

recommitted within three years) (attached as Ex. 11); Pennsylvania Dep't of

Corrections, <u>Recidivism Report 2013</u>, at 20-21 (71.6% of individuals released from

Pennsylvania state prison for weapons offenses were rearrested or reincarcerated

for another crime within three years) (attached as Ex. 12).

Especially given the "substantial deference" afforded to "predictive

judgments" made by Congress in order to advance these interests, <u>Drake</u>, 724 F.3d

at 436-37, these studies establish that 18 U.S.C. § 922(g)(1) satisfies intermediate

scrutiny as applied to Plaintiff.  As numerous courts have recognized, intermediate

scrutiny does not require the government to show that each individual

encompassed within a statutory proscription poses a particular danger.  <u>See</u>, <u>e.g.</u>,

<u>United States v. Chapman</u>, 666 F.3d 220, 231 (4th Cir. 2012) ("[T]he prohibitory

net cast by [the statute] may be somewhat over-inclusive given that not every

person who falls within it would misuse a firearm . . . if permitted to possess one,"

but "[t]his point does not undermine the [statute's] constitutionality . . . because it

merely suggests that the fit is not a perfect one[] [and] a reasonable fit is all that is

required under intermediate scrutiny."); <u>United States v. Scroggins</u>, 599 F.3d 433,

451 (5th Cir. 2010) (rejecting defendant's contention that "his conviction for

---

during commission of a felony; possession of a deadly weapon or firearm by
persons prohibited, wearing body armor during commission of a felony, and theft
of a firearm.  <u>Id.</u> at 28.

possession of firearms by a felon, without any further showing of violent intent, violates his Second Amendment rights"); see also United States v. Tooley, 717 F. Supp. 2d 580, 597 (S.D. W. Va. 2010) ("Section 922(g)(9) is of course overbroad in the sense that not every domestic violence misdemeanant who loses his or her right to keep and bear arms would have misused them against a domestic partner or other family member. Under intermediate scrutiny, however, the fit does not need to be perfect, but only be reasonably tailored in proportion to the important interest it attempts to further. As such, intermediate scrutiny tolerates laws that are somewhat overinclusive.") (footnote and citations omitted); United States v. Miller, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009) ("Although prohibiting gun possession by nearly all felons might not be the most precisely focused means to achieve this end, intermediate scrutiny, by definition, permits Congress to paint with a broader brush.") (footnote omitted).

In sum, especially in light of the "substantial deference" afforded to "predictive judgments" made by Congress when reviewing the constitutionality of statutes, Drake, 724 F.3d at 436-37, applying Section 922(g)(1) to Plaintiff satisfies intermediate scrutiny.

**B.      Additionally, Plaintiff Has Not Presented Facts That Distinguish His Circumstances From Those of Persons Historically Barred from Second Amendment Protections, or Shown That His Circumstances Place Him Outside the Intended Scope of Section 922(g)(1).**

Even if the standard applicable to Plaintiff's as-applied challenge were derived from <u>Barton</u>, and not <u>Marzzarella</u>, Plaintiff's challenge would still fail.[7] <u>Barton</u> suggested that a person could raise a successful as-applied challenge to Section 922(g)(1) by "present[ing] facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections."  633 F.3d at 174.

**1.      Plaintiff's Claim Is Indistinguishable from One Recently Rejected by the Third Circuit in <u>Dutton v. Commonwealth</u>.**

Applying <u>Barton</u>, the Third Circuit recently upheld a district court decision that a Second Amendment challenge to Section 922(g)(1) would fail as applied to an offender convicted of carrying a firearm without a license and carrying a firearm on a public street.  <u>Dutton v. Commonwealth</u>, 503 F. App'x 125 (3d Cir. 2012) (per curiam).  The plaintiff in <u>Dutton</u> had been convicted in 1995 of carrying a firearm without a license and carrying a firearm on a public street, both of which offenses were misdemeanors under Pennsylvania law.  <u>Dutton v. Commonwealth</u>,

---

[7] At least one Court in this Circuit has found that the <u>Barton</u> framework governs an as-applied challenge to Section 922(g)(1).  <u>Binderup v. Holder</u>, No. 13-6750, 2014 WL 4764424, at *20 (E.D. Pa. Sept. 25, 2014).

No. 11-7285, 2012 WL 3020651, at *1 (E.D. Pa. July 23, 2012).  Both the district

court and the Third Circuit "construe[d] [the] complaint liberally."  See 2012 WL

3020651, at *2 n.3; 503 F. App'x at 127.  The district court determined that "had

Plaintiff asserted a constitutional challenge" to Section 922(g)(1), it "would have

found the claim lacked merit":

> While the Court will construe a pro se plaintiff's complaint liberally, Dutton
> does not allege a challenge to 18 U.S.C. § 922 under the Second
> Amendment.   Nevertheless,  had  Plaintiff  asserted  a  constitutional
> challenge, the Court would have found the claim lacked   merit.   The Third
> Circuit has analyzed the provision at issue in this case – 18 U.S.C.
> §922(g)(1) – and held it to be facially constitutional.   United States v.
> Barton, 633 F.3d 168, 175 (3d Cir. 2011).  Furthermore, the Third Circuit
> has also found that Section 922(g)(1) is constitutional as applied to
> individuals who have presented no facts distinguishing their "circumstances
> from those of other felons who are categorically unprotected by the Second
> Amendment."  Id.; see also United States v. Marzzarella, 614 F.3d 85, 92
> (3d Cir. 2010) (noting that "although the Second Amendment protects the
> individual right to possess firearms for defense of hearth and home, Heller
> suggests . . . a felony conviction disqualifies an individual from asserting
> that interest").

Dutton, 2012 WL 3020651, at *2 n.3 (internal citations omitted).

The district court thus determined that a constitutional challenge to Section

922(g)(1) as applied to Dutton would be meritless for two reasons.  First, as held in

Barton, the statute is facially constitutional.  Second, an as-applied challenge

would fail because, like the defendant in Barton, Dutton was an "individual[] who

ha[s] presented no facts distinguishing [his] circumstances from those of other

felons who are categorically unprotected by the Second Amendment."  2012 WL

3020651, at *2 n.3 (citation and internal punctuation omitted).  In short, the district court determined that the facts presented by the plaintiff – that he had been convicted on April 6, 1995 of carrying firearms without a license and carrying on a public street, and that his convictions were for misdemeanors – did not distinguish his circumstances from those of other offenders who are categorically unprotected by the Second Amendment.  Similar to Plaintiff here, it was undisputed in Dutton that the plaintiff had not been convicted of any other crime since the 1990s.  Regardless, the fact that the plaintiff in Dutton had been convicted of carrying a firearm without a license and carrying a firearm on a public street was sufficient for the Court to determine that no facts had been presented distinguishing the plaintiff's circumstances "from those of other felons who are categorically unprotected by the Second Amendment."  Id.

Moreover, this determination was not dicta because it was necessary to the Court's determination that granting Dutton leave to amend his complaint would be futile.  Id. at *3 ("Having determined that any constitutional challenge of 18 U.S.C. 922(g)(1) would lack merit, the Court concludes that any amendment by Plaintiff would be futile and will dismiss the claim with prejudice").  And the Third Circuit upheld this determination, stating that although "both of Dutton's previous convictions are classified as first degree misdemeanors in Pennsylvania," those convictions "*classify him as a felon* under 18 U.S.C. § 922(g)(1)."  503 F. App'x at

127 & n.1 (emphasis added).  The Third Circuit found that any constitutional

challenge to Section 922(g)(1) as applied to Dutton would fail because <u>Barton</u> had

"determined that § 922(g)(1) is constitutional as applied to an individual, like

Dutton, who has presented no facts distinguishing his circumstances from those of

other felons who are categorically unprotected by the Second Amendment."  <u>Id.</u> at

127 n.1 (citation and internal punctuation omitted).  And that finding likewise was

not dicta because it was necessary to the Third Circuit's "conclu[sion] that the

District Court did not err in declining to allow Dutton an opportunity to amend" his

complaint.  <u>Id.</u> at 127 n.2.

  <u>Dutton</u> cannot be meaningfully distinguished from this case.  Like Plaintiff,

the plaintiff in <u>Dutton</u> was convicted of carrying a firearm without a license, which

was a misdemeanor under applicable state law.  Regardless, construing the

plaintiff's complaint liberally, the Third Circuit upheld the district court's

determination that any constitutional challenge to Section 922(g)(1) as applied to

the plaintiff would fail because Dutton's convictions "classif[ied] him as a felon

under 18 U.S.C. § 922(g)(1)," and his factual circumstances did not distinguish

him from "other felons who are categorically unprotected by the Second

Amendment."  <u>Dutton</u>, 503 F. App'x at 127 n.1 (citation and internal punctuation

omitted).  Plaintiff's constitutional challenge fails for the same reason.

**2.     Plaintiff Has Not Pointed to Any Specific Facts That Would Demonstrate That Section 922(g)(1) Should Not Apply to Him.**

In any event, the Third Circuit in <u>Barton</u> observed that <u>Heller</u> did not

"catalogue the facts [courts] must consider when reviewing a felon's as-applied

challenge," but instead only "noted that [the Supreme Court] will 'expound upon

the historical justifications for exceptions it mentioned if and when those

exceptions come before it.'"  633 F.3d at 173 (quoting <u>Heller</u>, 554 U.S. at 635)

(internal punctuation omitted).  Thus, the Third Circuit explained that it would

"evaluate Barton's as-applied challenge" by "look[ing] to the historical pedigree of

18 U.S.C. § 922(g) to determine whether the traditional justifications underlying

the statute support a finding of permanent disability in this case."  <u>Id.</u>  After

examining relevant statutory history and debates from State conventions ratifying

the Constitution, the Third Circuit stated: "To raise a successful as-applied

challenge, Barton must present facts about himself and his background that

distinguish his circumstances from those of persons historically barred from

Second Amendment protections."  <u>Id.</u> at 174.  <u>Barton</u> did not clearly explain how a

court could determine whether an offender had satisfied this burden, but instead

only provided two examples of offenders who might be deemed to have met this

burden.  "For instance," the Third Circuit stated, "a felon convicted of a minor,

non-violent crime *might* show that he is no more dangerous than a typical law-

abiding citizen." Id. (emphasis added).  It also stated that a court "*might* find that a felon whose crime of conviction is decades-old poses no continuing threat to society." Id. (emphasis added).

It is thus *Plaintiff's* burden to show that his circumstances distinguish him from those of persons historically barred from Second Amendment protections. And Plaintiff has failed to satisfy this burden.  First, any suggestion by Plaintiff that his conviction is not serious enough to fall within the purview of Section 922(g)(1) because Maryland happens to label it a misdemeanor is unavailing.  As the Supreme Court has explained, the distinction between misdemeanors and felonies is "minor and often arbitrary," as today "numerous misdemeanors involve conduct more dangerous than many felonies." Tennessee v. Garner, 471 U.S. 1, 14 (1985).  Moreover, as the legislative history of the Gun Control Act confirms, Congress specifically found that that the misuse of firearms by persons convicted of serious crimes – whether labeled misdemeanors or felonies by the State in which the crime occurred – is a significant problem and that restricting the firearms possession of persons who have already been convicted of such offenses would help reduce the risk of gun violence.  Omnibus Act, 82 Stat. 236; S. Rep. No. 89-1866, at 1, 53 (1966); S. Rep. No. 88-1340, at 4 (1964).[8]

---

[8] Senate Report 90-1501 initially made it unlawful for a "*felon*, fugitive, or one under indictment to receive a firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  S. Rep. No. 90-1501 (1968) at 35

Congress's predictive judgments about the risk of firearms misuse by

individuals who have been convicted of serious offenses are entitled to deference,

because Congress is best positioned to formulate appropriate firearms policy in

order to further the goal of public safety.  See Kachalsky v. Cnty. of Westchester,

701 F.3d 81, 97 (2d Cir. 2012) ("In the context of firearm regulation, the

legislature is 'far better equipped than the judiciary' to make sensitive public

policy judgments (within constitutional limits) concerning the dangers in carrying

firearms and the manner to combat those risks.") (quoting Turner Broad. Sys., Inc.

v. FCC, 512 U.S. 622, 665 (1994)), cert. denied, 133 S. Ct. 1806 (2013).

Congress's findings apply to serious offenses such as that committed by

Plaintiff.  The mere fact that Maryland characterized carrying a weapon without a

permit as a "misdemeanor" does not suggest that it viewed this offense as minor.

Indeed, at the time of Plaintiff's offense, the maximum statutory penalty for his

crime – three years' imprisonment – was the same or comparable to that imposed

---

(emphasis added).  A "felony" was defined as "a Federal crime punishable by a
term of imprisonment exceeding 1 year and in the case of State law, an offense
determined by the laws of the State to be a felony."  Id. at 31.  However, "the
Conference Committee ultimately rejected this version in favor of language that
speaks of those 'convicted in any court of, a *crime punishable by a term of
imprisonment exceeding one year*.'"  Small, 544 U.S. at 393 (quoting H.R. Rep.
No. 90-1956, at 28-29 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4426, 4428)
(emphasis added).

by Maryland for various felonies.[9]  And Maryland characterized a number of

serious crimes as misdemeanors.[10]

Additionally, the mere fact that Plaintiff has not been convicted of another

crime in the years since his 1990 conviction no more distinguishes him than it did

the plaintiff in <u>Dutton</u> or the defendant in <u>Barton</u>.  The defendant in <u>Barton</u> had

been convicted in 1995 of possession with intent to deliver a controlled substance,

and in 1993 of receiving stolen property, in the Court of Common Pleas of

Washington County, Pennsylvania.  <u>See</u> Br. of United States, <u>United States v.</u>

<u>Barton</u>, No. 09-2211, 2010 WL 2962436, at *6 (3d Cir. July 2, 2010); App. Br.,

2010 WL 2504123, at *6 (3d Cir. Apr. 28, 2010).  But despite the fact that the

defendant's offenses had been committed over a decade earlier, and that the Third

Circuit did not determine these offenses to be violent in nature, it nevertheless

rejected the defendant's as-applied challenge to Section 922(g)(1).  <u>Barton</u>, 633

F.3d at 174.  It held that the defendant had "failed to demonstrate that his

---

[9] <u>See</u>, <u>e.g.</u>, Md. Code, Art. 27, §10A (1990) (punishing burning a cross or other religious symbol as a felony with maximum term of imprisonment of three years); <u>id.</u> § 61A (punishing injury of a race horse as a felony, with maximum term of imprisonment of three years); <u>id.</u> § 8 (punishing burning personal property of another worth $1000 or more as a felony, with maximum term of imprisonment of five years).

[10] <u>See</u>, <u>e.g.</u>, <u>id.</u> § 1 (abduction of child under age 16); <u>id.</u> § 111B (throwing a rock, brick, or fire bomb into a vehicle of public transportation); <u>id.</u> § 120 (reckless endangerment); <u>id.</u> § 388 (vehicular manslaughter); <u>id.</u> § 388A (homicide by motor vehicle while intoxicated).

circumstances place him outside the intended scope of § 922(g)(1)."  Id.; see also

United States v. Oppedisano, No. 09-305, 2010 WL 4961663, at *3 (E.D.N.Y.

Nov. 30, 2010) (rejecting as-applied challenge to Section 922(g)(1) by defendant

convicted of first-degree reckless endangerment in 1993 and driving while

intoxicated in 1994); United States v. Jones, 673 F. Supp. 2d 1347, 1352 (N.D. Ga.

2009) (rejecting as-applied challenge to Section 922(g)(1) by defendant convicted

in 1995 of possession of cocaine and first-degree reckless injury while armed).

Moreover, any examination of Plaintiff's "personal circumstances," Compl.

¶ 28, should take into account the fact that Plaintiff was carrying a loaded .357

Magnum handgun – and two loaded "speed-loaders" – while intoxicated to the

point that he was arrested for driving under the influence.  See Ex. 1 at 1-3, Ex. 2

at 2.  This circumstance alone belies Plaintiff's suggestion that he has "no history"

of any "conduct that would suggest he would pose any more danger by possessing

firearms than an average, law-abiding responsible citizen" or "is unlikely to act in

a manner dangerous to public safety," much less that he has demonstrated

"trustworthiness with firearms."  Compl. ¶¶ 27, 28.  Recognizing the danger posed

by individuals carrying firearms while intoxicated, a number of jurisdictions

punish such behavior with criminal sanctions.[11]  And courts have recognized that

---

[11] See Conn. Gen. Stat. Ann. § 53-206d(a)(1) ("No person shall carry a pistol,
revolver, machine gun, shotgun, rifle or other firearm, which is loaded and from
which a shot may be discharged, upon his person (A) while under the influence of

"[p]ossession of firearms by intoxicated persons presents a clear danger to the public." State v. Rivera, 853 P.2d 126, 129, 130 (N.M. Ct. App. 1993) (upholding statute prohibiting possession of deadly weapon "readily accessible for use" while intoxicated against state constitutional challenge); see also People v. Garcia, 595 P.2d 228, 230 (Colo. 1979) (en banc) ("It is clearly reasonable for the legislature to regulate the possession of firearms by those who are under the influence of alcohol or drugs."); Gibson v. State, 930 P.2d 1300, 1301-03 (Alaska Ct. App. 1997) (upholding statute prohibiting possession of firearm while intoxicated against state constitutional challenge). Moreover, drunk driving in and of itself represents a serious lack of concern for public safety. "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it . . . . Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in

intoxicating liquor or any drug, or both, or (B) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."); 430 Ill. Comp. Stat. 66/70(d) ("A [firearms] licensee shall not carry a concealed firearm while under the influence of alcohol, other drug or drugs, intoxicating compound or combination of compounds, or any combination thereof . . . "); Mass. Gen. Laws ch. 269, § 10H (prohibiting carrying of loaded firearm while under the influence of alcohol); Mich. Comp. Laws § 324.43558(3) ("A person licensed to carry a firearm . . . is prohibited from doing so while under the influence of a controlled substance or alcohol or a combination of a controlled substance and alcohol."); Ohio Rev. Code. § 2923.15(A) ("No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance"); R.I. Gen. Laws § 11-47-52 ("It is unlawful to carry or transport any firearm in this state when intoxicated or under the influence of intoxicating liquor or narcotic drugs.").

property damage." <u>Mich. Dep't of State Police v. Sitz</u>, 496 U.S. 444, 451 (1990) (footnote and citation omitted).  All 50 States have laws making it illegal per se to drive with a blood alcohol content ("BAC") of .08 percent or higher.  U.S. Dep't of Transportation, Nat'l Highway Traffic Safety Admin., <u>Prevalence of High BAC in Alcohol-Impaired-Driving Fatal Crashes</u> (Aug. 2012) , at 1 (attached as Ex. 13). And in 2010, 65% of all people who died in alcohol-impaired-driving crashes were drivers with a BAC of .08 percent or higher.  <u>Id.</u>  As noted above, when Plaintiff was arrested, he was recorded as having a BAC of .11.  Preventing Plaintiff from possessing firearms is thus consistent with the concerns underlying Section 922(g)(1).  <u>Cf.</u> <u>Oppedisano</u>, 2010 WL 4961663, at *2-3 (upholding Section 922(g)(1) as applied to defendant convicted of recidivist driving while intoxicated and attempted first-degree reckless endangerment).

**3.    Congress Appropriately Determined That Section 922(g)(1) Should Apply to Persons Like Plaintiff.**

As noted above, though it is Plaintiff, not Defendants, who bear the burden with respect to this inquiry, Defendants have nevertheless presented empirical evidence showing that individuals convicted of weapons offenses pose more of a danger to public safety than law-abiding, responsible citizens.  <u>See</u> <u>supra</u> pages 13- 17.  And "[t]he federal gun control statute is designed to prohibit the ownership of firearms not only by individuals who have already committed dangerous acts, but also by those with a potential for violence as well."  <u>United States v. Waters</u>, 23

F.3d 29, 34 (2d Cir. 1994).  Congress "was concerned with the widespread traffic

in firearms and with their general availability to those whose possession thereof

was contrary to the public interest."  Dickerson, 460 U.S. at 118 (quoting

Huddleston v. United States, 415 U.S. 814, 824 (1974) (quotation marks omitted)).

"The principal purpose of federal gun control legislation, therefore, was to curb

crime by keeping firearms out of the hands of those not legally entitled to possess

them because of age, criminal background, or incompetency."  Id. (citations and

internal punctuation omitted).  The Supreme Court has further observed that "[i]n

order to accomplish this goal, Congress obviously determined that firearms must

be kept away from persons, such as those convicted of serious crimes, who might

be expected to misuse them."  Id. at 119.  The Supreme Court has noted that its

cases have "recognized and given weight to the [Gun Control] Act's *broad*

*prophylactic purpose*."  Id. at 118 (emphasis added).  And given that prophylactic

purpose, Plaintiff falls squarely within the class of persons whose possession of

firearms concerned Congress.

Finally, the conclusion that Section 922(g)(1) is constitutional as applied to

offenders whose crimes were not necessarily violent in nature is consistent with

near-uniform case law applying the Second Amendment.  While it is true that

"[f]or nearly a quarter century, § 922(g)(1) had a narrower basis for a disability,

limited to those convicted of a crime of violence," Barton, 633 F.3d at 173 (citation

and internal punctuation omitted), by 1961, Congress appears to have determined that a narrower prohibition would not serve its interest in public safety.  Cf. United States v. Laurent, 861 F. Supp. 2d 71, 105 (E.D.N.Y. 2011) (noting that "[i]nitially, Congress only limited receipt of firearms by violent indictees" in the Federal Firearms Act of 1938, but that "[a]fter three decades of experience, it saw the need to expand the prohibition to all indictees").  And as the Fourth Circuit recently stated: "[O]ur sister circuits have consistently upheld applications of § 922(g)(1) even to *non-violent* felons."  United States v. Pruess, 703 F.3d 242, 247 (4th Cir. 2012) (citing cases) (emphasis added).  See, e.g., United States v. Everist, 368 F.3d 517, 519 (5th Cir. 2004) (rejecting facial Second Amendment challenge to Section 922(g)(1); "Irrespective of whether his offense was violent in nature, a felon has shown manifest disregard for the rights of others. He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens.");[12] United States v. Vongxay, 594 F.3d 1111, 1116-18 (9th Cir. 2010) (reaffirming pre-Heller precedent "declin[ing] to make a distinction between violent and non-violent felons and [holding] that [Section] 922(g)(1), which prohibits all felons from possessing firearms, was

---

[12] Though decided before Heller, Everist applied the Fifth Circuit's earlier decision in United States v. Emerson, 270 F.3d 203 (5th Cir. 2001), which held that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms . . ." Id. at 260.

constitutional"); <u>Chardin v. Police Comm'r of Boston</u>, 989 N.E.2d 392, 398-403,

465 Mass. 314, 321-27 (Mass. 2013) (upholding state prohibition on carrying of

firearms by felons as applied to individual convicted as a juvenile for possession of

a firearm and ammunition without a license), <u>cert. denied</u>, 134 S. Ct. 525 (2013).[13]

In short, Plaintiff's conviction for unlawfully carrying an unlicensed firearm,

a crime punishable by up to three years' imprisonment, demonstrates that he is

neither law-abiding nor responsible.  <u>See Schrader</u>, 704 F.3d at 989 ("Although

section 922(g)(1)'s burden is certainly severe, it falls on individuals who cannot be

---

[13] <u>See also United States v. Ernst</u>, 857 F. Supp. 2d 1098, 1103 (D. Or. 2012)
("Here, defendant's status as a felon defeats his argument that he has the right to
bear arms, *regardless of the non-violent nature* of his prior convictions.")
(emphasis added); <u>United States v. Schultz</u>, No. 08-75, 2009 WL 35225, at *1-3
(N.D. Ind. Jan. 5, 2009) (upholding Section 922(g)(1) as applied to offender
convicted of failure to pay child support); <u>United States v. Davis</u>, No. 09-94, 2010
WL 1607836, at *2 (W.D. Wis. April 20, 2010) (upholding Section 922(g)(1) as
applied to offender convicted of nonviolent offense (heroin distribution)); <u>appeal
dismissed</u>, 406 F. App'x 52 (7th Cir. 2010); <u>United States v. Ligon</u>, No. 04-185,
2010 WL 4237970, at *6 (D. Nev. Oct. 20, 2010) (upholding Section 922(g)(1) as
applied to offender convicted of stealing government property); <u>United States v.
Westry</u>, No. 08-20237, 2008 WL 4225541, at *2 (E.D. Mich. Sept. 9, 2008)
(upholding Section 922(g)(1) as applied to felon convicted of narcotics distribution
and carrying concealed weapon; "The Supreme Court [in <u>Heller</u>] made no
distinction for nonviolent felonies."); <u>Wilson v. United States</u>, No. 05-238, 2006
WL 519393, at *1, 6 (M.D. Tenn. Feb. 28, 2006) (applying <u>Emerson</u> and
upholding Section 922(g)(1) as applied to a "previously adjudicated non-violent
(mail fraud) felon"); <u>State v. Pocian</u>, 814 N.W.2d 894, 386-87 (Wis. Ct. App.)
(applying intermediate scrutiny and upholding state prohibition on firearms
possession by felons as applied to offender convicted of writing forged checks),
<u>review denied</u>, 827 N.W.2d 96 (Wis. 2012); <u>but see Binderup</u>, 2014 WL 4764424,
at *31 (finding that Section 922(g)(1) was unconstitutional as applied to offender
convicted of corruption of minors).

said to be exercising the core of the Second Amendment right identified in Heller, i.e., 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'") (quoting Heller, 554 U.S. at 635).  And Plaintiff has failed to present facts about himself or his conviction showing that he is fundamentally different from other persons who fall within the scope of Section 922(g)(1).  "[T]he 1968 Act reflects a . . . concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons.  Its *broadly stated* principal purpose was 'to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'"  Barrett, 423 U.S. at 220 (quoting S. Rep. No. 90-1501, at 22 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2113).  Applying 18 U.S.C. § 922(g)(1) to offenders like Plaintiff is consistent with this purpose, and with near-uniform case law applying the Second Amendment.  There is no basis for this Court to reach a different conclusion.

## CONCLUSION

Because Plaintiff's conviction was punishable by a term of imprisonment exceeding two years, he falls within the scope of 18 U.S.C. § 922(g)(1).  Furthermore, the law Plaintiff challenges passes constitutional muster under any applicable level of scrutiny.  Accordingly, the Court should dismiss this case or enter summary judgment for Defendants.

Dated:  October 20, 2014

Of Counsel

PETER SMITH
United States Attorney


JOANNE M. HOFFMAN
Special Assistant United States Attorney
228 Walnut Street
Suite 220
Ronald Reagan Federal Building
Harrisburg, Pennsylvania 17108
Telephone: (717) 221-4482
Fax: (717) 221-4493
Email: Joanne.Hoffman@usdoj.gov

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General


  /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*