# EXHIBIT
# 11



# RECIDIVISM IN DELAWARE

An Analysis of Prisoners Released in 2008 and 2009

July 2013

**Delaware Criminal Justice Council**

**Statistical Analysis Center**

# RECIDIVISM IN DELAWARE

An Analysis of Prisoners Released in 2008 and 2009

July 2013

**Delaware Criminal Justice Council**
*Drewry Fennell, Executive Director*

**Statistical Analysis Center**
*Colonel Thomas F. MacLeish, Director*

**Administrative Officer**
*Barbara Hicklin*

**Analysts**
*Michael Bard*
*Brie Gannon*
*Richard Harris*
*Charles Huenke*
*Spencer Price*
*Jim Salt*
*Philisa Weidlein-Crist*

This publication was funded in part through the Delaware Criminal Justice Council by the U.S. Department of Justice, Bureau of Justice Assistance.

This publication was supported by grant number 2011-BJ-CX-K041, awarded by the Bureau of Justice Statistics, Office of Justice Programs, US Department of Justice. Points of view in this document are those of the authors and do not necessarily represent the official position or policies of the US Department of Justice.

State of Delaware Document Control Number 100703-13-07-05

# Table of Contents

List of Tables and Figures ............................................................................................................... ii

Acknowledgments .......................................................................................................................... iii

Executive Summary ........................................................................................................................ iv

Study Overview ............................................................................................................................... 1

Delaware Correction System Overview ........................................................................................... 2

Recidivism Subject Selection and Characteristics ........................................................................... 3

Recidivism Methodology and Findings ......................................................................................... 14

    Measures and Methods ............................................................................................................. 14

    Recidivism Rates for 2008 and 2009 Cohorts .......................................................................... 15

Conclusions and Limitations ......................................................................................................... 24

Appendix ....................................................................................................................................... 27

    Reference Links ......................................................................................................................... 27

    Recidivism Offenses and Prison Lead Offenses ....................................................................... 27

## List of Tables and Figures

Table 1.  Prison release cohort race and gender counts ........................................................................3
Table 2.  At-risk age summary statistics for prison release cohorts ...................................................4
Table 3.  Prison term lead offense classification counts by release cohort race and gender.......................7
Table 4:  Rearrest, reconviction, and recommitment recidivism rates at 1, 2, and 3 years .......................15
Table A1.  Arrest or conviction events counted as recidivism..............................................................27
Table A2.  Lead release offense classifications and examples of specific offenses included ......................28


Figure 1.  Summary of DOC annual supervision flow and average daily populations in 2008 and 2009......................2
Figure 2.  Prison release cohort race and gender proportions ...............................................................4
Figure 3.  At-risk age group counts, male release cohorts ....................................................................5
Figure 4.  At-risk age group counts, female release cohorts ................................................................5
Figure 5.  Length of stay and felony arrest history by release cohort race and gender .................................6
Figure 6.  Percentage of 2008 releases represented by race/gender counts in offense groups ......................8
Figure 7.  Percentage of 2009 releases represented by race/gender counts in offense groups ......................9
Figure 8.  Prison term lead offense proportions by release cohort race and gender................................10
Figure 9.  Violent lead offense subgroup proportions by release cohort race and gender..........................10
Figure 10.  Property lead offense subgroup proportions by release cohort race and gender .......................11
Figure 11.  Public Order lead offense subgroup proportions by release cohort race and gender ..................11
Figure 12.  Average length of stay by lead offense group and release cohort race and gender ....................12
Figure 13.  Average length of stay by prison term lead offense classification, 2008 and 2009 release cohorts........12
Figure 14.  Cumulative frequency distributions for lengths of stay, 2008 and 2009 prison release cohorts ..............13
Figure 15.  Cohort distribution by length of stay range, 2008 and 2009 release cohorts ...........................13
Figure 16.  Recidivism measured by rearrest, 2008 versus 2009 cohorts ..............................................16
Figure 17.  Recidivism measured by reconviction, 2008 versus 2009 cohorts .........................................16
Figure 18.  Recidivism measured by recommitment, 2008 versus 2009 cohorts.......................................16
Figure 19.  Recidivism measured by rearrest, rates at 6 month intervals by race and gender ......................17
Figure 20.  Recidivism measured by reconviction, rates at 6 month intervals by race and gender ...................17
Figure 21.  Recidivism measured by recommitment, rates at 6 month intervals by race and gender................17
Figure 22.  Recidivism measured by rearrest, rates at 6 month intervals by at-risk age group ......................18
Figure 23.  Recidivism measured by reconviction, rates at 6 month intervals by at-risk age group ..................18
Figure 24.  Recidivism measured by recommitment, rates at 6 month intervals by at-risk age group ................18
Figure 25.  Male recidivism measured by rearrest, rates at 6 month intervals by length of stay .....................19
Figure 26.  Male recidivism measured by reconviction, rates at 6 month intervals by length of stay .................19
Figure 27.  Male recidivism measured by recommitment, rates at 6 month intervals by length of stay................19
Figure 28.  Three year rearrest recidivism by prison release lead offense group .........................................20
Figure 29.  Three year reconviction recidivism by prison release lead offense group ..................................20
Figure 30.  Three year recommitment recidivism by prison release lead offense group................................20
Figure 31.  Three year rearrest recidivism by prison release lead offense classification ..............................21
Figure 32.  Three year reconviction recidivism by prison release lead offense classification .........................22
Figure 33.  Three year recommitment recidivism by prison release lead offense classification .......................23

## Acknowledgments

The Center's work would not be possible without the efforts of countless individuals in criminal justice agencies throughout the state who contribute to the development and maintenance of the systems that manage law enforcement, court, and correction information.

We are especially grateful to Peggy Bell, Executive Director, and the staff of the Delaware Criminal Justice Information System (DELJIS).  Their ongoing cooperation and support of the Center's mission are invaluable.

In addition, we would like to thank Linda Walton, Department of Correction (DOC), for her assistance in clarifying and reconciling DOC records required for this research.

# Executive Summary

**Introduction**

Delaware Senate Bill 226, signed into law on August 8, 2012, implemented the recommendations of the Delaware Justice Reinvestment Task Force created by Executive Order 27. Through its changes, Senate Bill 226:

> "…promotes informed decision-making in the criminal justice system by institutionalizing the use of evidenced-based practices in decisions concerning bail, rehabilitation and probation supervision and helps ensure scarce resources are focused on higher-risk offenders."

Among the many provisions of SB 226 designed to support the purpose of the legislation, the bill added the following to the Statistical Analysis Center's powers, duties and functions under Title 11, § 8903:

> "Submit annually to the Governor, Chief Justice, President Pro Tem of the Senate, and the Speaker of the House a report examining 1-year, 2-year, and 3-year rates of re-arrest, reconviction, and recommitment of released offender cohorts. The first report shall be submitted by July 31, 2013."

This is the first report produced pursuant to Delaware Senate Bill 226. As required, three measures of recidivism were analyzed for this report: rearrest, reconviction, and recommitment.

**About Delaware's Unified Correctional System**

As of 2009, Delaware was one of only six states to operate some form of unified correctional system. In Delaware's unified system, all correctional facilities and institutions are operated by the Delaware Department of Correction. There are no separate county or municipal prisons and/or jails. The Department is responsible for custody and supervision of offenders committed in pre-trial/pre-sentence or sentence status. In total, the Department supervises between 6,500 - 7,000 inmates and detainees within correctional facilities and approximately 17,000 probationers within the community.

Within Delaware's unified system, the Department maintains a five-level system of supervision for offenders:

- Level V:   24 hour incarceration (jail/prison)
- Level IV:  Work Release Centers, Home Confinement (electronic monitoring), Residential Drug Treatment, Violation of Probation Centers
- Level III:  Intensive Probation Supervision
- Level II:   Standard Probation
- Level I:    Administrative Supervision

Prison is defined as one or more incarceration (Level V) sentences that aggregate to more than one year. For jail, the aggregate total is one year or less. Delaware's annual prison releases amount to slightly less than one-third of its prison population.

**Methodology**

In designing the study, the goal was to select a methodology that was as rigorous as possible within the limits of the time, resources, and data available to complete the study. In keeping with this goal, the decision was made to focus the study on prisoners released after serving prison sentences.

Offender cohorts selected for this study were all prisoners released in 2008 and 2009 from Delaware prison sentences. Released prisoners (1,167 for 2008 and 1,091 for 2009) were tracked for up to three years following release from a secure facility. The focus of the study is on the first occurrence of post-release recidivism events; therefore, some study subjects could be included in one cohort more than once if they were released more than once in a single cohort year (i.e., 2008 or 2009) or in both cohorts if they experienced a release in both 2008 and 2009. *Prisoners released, released prisoners,* and *prison releases* are used interchangeably to refer to the total number of releases from prison sentences. Delaware arrest, court, and Department of Correction records were examined to identify state charges on serious offenses and violations of probation or parole that occurred during the study period and legal actions taken in response that resulted in a conviction and/or recommitment.

Those arrested for a new qualifying serious offense were classified as having recidivated on one or more of the three distinct recidivism measures. Which measure(s) were applicable depended on the response of the justice system to the new offense or violation and when in the study period the offense or violation occurred. Recidivism rates were examined at six month intervals during the three year study period.

Examination of age, gender, and race information indicates that the two cohorts are characteristic of Delaware's larger prison population.

**Key Findings**

As the table below indicates, by the end of three years, slightly more than 75 percent of offenders in each cohort had been rearrested for a serious offense. Just over 70 percent had a reconviction and just over two-thirds had a recommitment. The one-, two-, and three-year recidivism rates for the two cohorts are presented below.

|  | 2008 Prison Release Cohort | | | 2009 Prison Release Cohort | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | 1 year | 2 years | 3 years | 1 year | 2 years | 3 years |
| Rearrest | 55.8% | 70.9% | 77.1% | 52.6% | 68.7% | 76.4% |
| Reconviction | 49.3% | 65.3% | 71.7% | 48.1% | 63.5% | 71.0% |
| Recommitment | 47.0% | 61.3% | 67.6% | 45.3% | 61.1% | 67.3% |

Closer examination of the table reveals that most recidivism events studied occurred in the first two years after release. When focusing just on those individuals who had a recidivism event, across both cohorts and all three measures of recidivism, about 70 percent of recidivism events occurred within the first year, and just over 90 percent before the end of the second year.

The youngest offender groups (age 24 and younger) had recidivism rates that were substantially higher (about 30 to 40 percentage points) than the oldest offender groups (age 45 and older) at one, two and three years.

Among prisoners released for Violent, Property or Public Order lead offenses, recidivism rates are generally highest for those who served time for a Property offense as a lead offense. Just under 60 percent of the prisoners released served time for drug dealing, robbery or burglary as their lead offense. Prisoners released for these offenses made up more than 60 percent of the recidivists.

Recidivism rates are generally higher for Blacks than for Whites, and higher for males than for females. Additionally, recidivism rates were lower for those who had longer prison sentences (i.e., lengths of stay). Caution should be used in interpreting these specific findings, however. The number of females in each cohort was relatively small. Also, the study did not analyze the relationships between factors such as age, length of stay, race, criminal history and recidivism. Drawing further conclusions about differences in recidivism based on race and length of stay in the absence of such analyses would be inappropriate and potentially misrepresentative of the data.

This report also presents detailed demographic and criminal justice data about the two study cohorts. While too extensive to cover in this summary, these data provide a richer understanding about the characteristics of these prisoners and have value in further understanding recidivism.

**Considerations**

The one-, two-, and three-year recidivism rearrest, reconviction, and recommitment rates for the 2008 and 2009 cohorts that were the focus of this study were high. However, these rates are consistent with previous studies that have been completed by the Center. As in any study of this nature, rates could change in either direction if different decisions are made about recidivism measures and methods used to capture and analyze data.

This report provides an important and rigorous initial look at recidivism among inmates released from prison sentences. Delaware reserves prison sentences as severe sanctions for serious offenders, many of whom have demonstrated propensities for reoffending. Those receiving prison sentences are not necessarily representative of all offenders in the state's criminal justice system. Given the time and resource limitations for this study, it did not examine recidivism among other types of offenders (e.g., those released from jail or probation). Therefore, the results from this report should not be used to make assumptions about recidivism among other groups of offenders; rates may be higher or lower than those observed in this study. This report, then, is best seen as a starting point for beginning to understand recidivism in Delaware.

Analyzing recidivism is challenging, as it is a complex, multifaceted problem. This study, while providing some rich data about the subject, raises far more questions than the Center was able to explore given the study's time, resource, and data limitations and within the Center's mission. For example, this study did not examine those prisoners who did not recidivate, yet key understandings for addressing recidivism may lie in understanding this population. It is important to remember that this study did not examine the complexities of offender behavior. Recidivism is only one type of measure needed to determine whether a package of sanctions and interventions was successful in deterring an individual from future offending. Recidivism and desistance are essentially all or none measures – either a person continues to reoffend or they do not. However, rehabilitation is a gradual, non-linear process with progress occurring in incremental steps. Examination of recidivism then, should also include appropriate study of rehabilitation efforts to understand progress prisoners are making on the path toward no longer recidivating.

## Study Overview

This is the first report produced pursuant to Delaware Senate Bill 226, which was signed into law on August 8, 2012.  Among other changes, the bill added the following to the Statistical Analysis Center's powers, duties and functions under Title 11, § 8903.

> *"Submit annually to the Governor, Chief Justice, President Pro Tem of the Senate, and the Speaker of the House a report examining 1-year, 2-year, and 3-year rates of re-arrest, reconviction, and recommitment of released offender cohorts. The first report shall be submitted by July 31, 2013."*

As required, three measures of recidivism were analyzed for this report; rearrest, reconviction, and recommitment.  Although widely used in recidivism research, literature review reveals that methods and applications of these measures can vary significantly.  The use of seemingly common terms belies a lack of consistency, and comparability with other jurisdictions was deemed an unachievable objective at the outset of this work.  Readers are urged to use caution when considering recidivism rates from other jurisdictions relative to those presented here.

Delaware has a unified correction system.  All correctional facilities are operated by the state, and there are no separate prisons and jails.  Prison and jail sentences are distinguished by term length, with terms of more than one year identified as prison; terms of one year or less are identified as jail.  Offenders in detained status are also held in the same facilities as sentenced inmates.

Offender cohorts selected for this study were those released in 2008 and 2009 from Delaware prison sentences.  Selected prison cohorts were tracked after release from secure facilities via Delaware arrest records to identify state charges on serious offenses that occurred within three years.  Identified arrests were tracked to determine convictions on charges for offenses that occurred within three years.

Recommitments were identified as any detained or sentenced admissions to any secure Department of Correction (DOC) facility within three years of release.  The recommitment measure used here creates particular comparability issues with research in other jurisdictions, as prison recidivism studies typically identify returns to prison.  Offender recommitments present atypical considerations for Delaware policy makers, however, since state resources are impacted by custody of any type in its unified system.

The focus of the study is on post-prison sentence release recidivism events.  Individuals become subjects of study at each prison release event, rather than being tracked for all time after what could be one of many releases in their lives.  Therefore, some study subjects could be included in one cohort more than once if they were released more than once in single cohort year (i.e., 2008 or 2009) or in both cohorts if they experienced a release in both 2008 and 2009.  *Prisoners released*, *released prisoners*, and *prison releases* are used interchangeably in this report to refer to the total number of releases from prison sentences in a given timeframe.

## Delaware Correction System Overview

As previously stated, Delaware has a state-operated unified correction system; there are no county or municipal jail systems.  The Department of Correction (DOC) is responsible for custody and supervision of adult[1] offenders committed in pre-trial/pre-sentence status or serving sentences of any length.  DOC houses offenders in secure facilities and half-way houses/work release centers, and supervises probationers and parolees in the community.

Delaware prison sentences are defined as incarceration terms of more than one year; terms of one year or less are defined as jail.  Incarceration terms are generally served consecutively in Delaware.  It is common for prison sentences to involve multiple charges with individual terms of less than one year, and in some cases prison terms are comprised of separate jail sentences that aggregate to more than one year.  The prison definition refers to sentence lengths rather than actual time to be served; most custody sentences are eligible for good time reductions.  Due to good time credits, suspension after treatment completion, or modifications for various reasons, many prison inmates (over 12 percent in this study's cohorts) are released after serving less than one year.

In 2008 and 2009, average daily DOC populations were about 7,100 and 6,900, respectively, in secure facilities and work release centers.  About 8 percent of those populations were females.  Inmates serving prison sentences (including about 530 serving life and 18 serving death sentences) averaged around 3,900 in 2008 and around 3,800 in 2009, or about 55 percent of the average daily populations cited above.  About 4.4 percent of prison inmates were females.

Delaware's annual prison releases amount to slightly less than one-third of its prison population, but they are a much smaller fraction of total yearly client turnover.  In 2008 and 2009, about 20,000 distinct DOC clients were housed in secure facilities or work release centers for some time during each year.  Annual prison release cohorts thus account for about 6 percent of individuals with some type of incarceration episode in a given year.

In addition to roughly 7,000 offenders housed in facilities, DOC had an average caseload of about 17,000 probationers and parolees in community settings during 2008 and 2009.  With probationers/parolees included, DOC's annual client counts increase to about 40,000 persons who encountered incarceration, community supervision, or both.  Approximations of counts presented above are illustrated in Figure 1.

Figure 1.  Summary of DOC annual supervision flow and average daily populations in 2008 and 2009



Approximate counts, *unduplicated individuals* for populations and supervision episodes, *unduplicated events* for releases

[1] DOC houses a small number of male juveniles found non-amenable in Family Court or sentenced in Superior Court.

## Recidivism Subject Selection and Characteristics

The study began with DOC record queries to identify prison inmates released in 2008 and 2009. Inmates are not always released directly to community settings at the end of their prison terms; they may be held awaiting space in programs, detained on pending matters, etc. Prison release dates, therefore, do not necessarily mark the start of recidivism tracking. Detailed examinations of DOC records were also conducted to establish an at-risk date, which represents each inmate's earliest release to a half-way house or community setting following their prison release. Recidivism tracking began at each subject's at-risk date.

Records from multiple Delaware criminal justice entities were searched to identify recidivism events in accordance with the three measures set forth by legislation. Further process descriptions will follow as each measure is presented, but it is important to note that this study captures recidivism events from Delaware records only. A limitation of this study, and a common one in the work of other states, is that criminal activity in other jurisdictions is not included in recidivism measures.

During the research process, Delaware criminal justice records and/or public sources revealed that some subjects with no Delaware rearrests had post-release involvement in other jurisdictions, such as arrest, incarceration, or deportation. Though the study restricted recidivism measures to in-state events only, the Center believes that it is logically sound to remove such subjects from the study rather than regard them as non-recidivists. That decision eliminated 67 subjects from the 2008 release group and 80 from the 2009 group.

Excluding inmates released upon death (13 in 2008 and 6 in 2009), the Center identified 1,234 prison releases in 2008 and 1,171 in 2009. With the aforementioned exclusions for non-Delaware activity, release counts for recidivism tracking were 1,167 in 2008 and 1,091 in 2009. Counts by race and gender are shown in Table 1.

**Table 1.  Prison release cohort race and gender counts**

|  | 2008 | | | 2009 | | |
|---|---|---|---|---|---|---|
|  | Male | Female | Total | Male | Female | Total |
| Black | 660 | 39 | 699 | 604 | 39 | 643 |
| White | 407 | 60 | 467 | 379 | 68 | 447 |
| Other | 0 | 1 | 1 | 1 | 0 | 1 |
| Total | 1,067 | 100 | 1,167 | 984 | 107 | 1,091 |

Salient differences in race and gender proportions are indicated in Table 1. In both years combined, Black males outnumber White males by about 61 percent, but White females outnumber Black females by about 64 percent. The male-to-female ratio for Black inmate releases was about 16; for Whites that ratio was about 6. Race and gender release proportions are shown graphically in Figure 2 for Black and White subjects. Two subjects in the "Other" race category are excluded from detailed breakouts of race and gender in most of the tables and figures that follow.

Figure 2.  Prison release cohort race and gender proportions



For inmates tracked after release, ages were calculated as of at-risk dates, based on birth dates entered in the criminal justice information system.  Ages are problematic in that, due to a mix of client deception and clerical errors, the system has multiple birth dates for about 40 percent of the subjects in this study.  In cases involving multiple birth dates, calculations generally used dates from primary DOC identification records.  Table 2 shows release cohort summary statistics for calculated ages by gender and race.  At-risk ages for the two subjects not shown (from the "Other" race category in Table 1) were between 25 and 29 years old.

Table 2.  At-risk age summary statistics for prison release cohorts

| Age at start of at-risk period | 2008 | | | | 2009 | | | |
| | Male | | Female | | Male | | Female | |
| | Black | White | Black | White | Black | White | Black | White |
|---|---|---|---|---|---|---|---|---|
| 25th percentile | 25.7 | 26.5 | 27.1 | 29.9 | 25.5 | 25.9 | 27.6 | 29.2 |
| 50th percentile | 31.3 | 33.5 | 37.1 | 36.6 | 30.7 | 33.1 | 32.3 | 36.7 |
| 75th percentile | 39.4 | 43.7 | 43.4 | 43.5 | 39.4 | 45.0 | 39.0 | 43.7 |
| Mean | 33.3 | 35.8 | 35.9 | 36.6 | 33.1 | 35.8 | 33.7 | 37.0 |
| Minimum | 17.7 | 17.3 | 21.5 | 19.5 | 18.2 | 17.7 | 19.6 | 21.8 |
| Maximum | 72.7 | 87.2 | 55.1 | 61.0 | 75.8 | 71.4 | 53.0 | 56.0 |

Age variations associated with gender and race can be observed in Table 2.  Graphs in Figures 3 and 4 provide additional information on age distributions.

**Figure 3.  At-risk age group counts, male release cohorts**



**Figure 4.  At-risk age group counts, female release cohorts**



The tendency toward older release ages for females relative to males in Figures 3 and 4 is not indicative of longer prison stays for females.  It is instead a consequence of admission ages tending to be higher for females than for males.  Length of stay, which is the actual time served in custody rather than sentence length, tended to be considerably shorter for females than for males in the 2008 and 2009 release cohorts.  The average length of stay was just over 20 months for females and 37.6 months for males.

Figure 5 shows average lengths of stay by race and gender for each release cohort.  As is the case with many system and offender attributes, length of stay cannot be characterized by simple relationships of just a few variables.  Numerous factors influence sentence lengths, such as sentencing offenses, pleas versus trial verdicts, and criminal histories.  Care should be taken in drawing conclusions from Figure 5.

A basic criminal history measure is included in Figure 5 to provide one frame of reference for obviously different lengths of stay. The average number of Delaware felony arrests is included as a red bar for each group, with the scale on the secondary (right side) axis. As explanatory examples, Black males in each year's cohort averaged about 6.5 felony arrests, and White males released in 2008 and 2009 averaged just over 5 felony arrests. Though average lengths of stay were higher for Black inmates, male or female, White males had the longest stays relative to their felony arrest histories.

**Figure 5. Length of stay and felony arrest history by release cohort race and gender**



There are many possible ways to examine the influence of criminal history on recidivism. The choice made for this study was limited to classifying subjects by offenses associated with the prison stays for which they were released in 2008 or 2009. Though subjects may have served time on multiple offenses, a single "lead offense" was identified for classification in this analysis.

The Center established hierarchical offense groups that loosely follow the Uniform Crime Reporting offense hierarchy, and lead offenses for released inmates' prison terms were identified accordingly. For sentences involving multiple charges, lead offenses were selected by the longest terms, with offense hierarchy as the tie-breaker for terms of equal length. Lead offense classifications and specific offense types within the classifications are listed in the Appendix.

Lead offenses were grouped into three broad categories; violent, property, and public order offenses. Table 3, on the following page, shows the chosen lead offense classifications and their placement in the violent, property, and public order offense groups. The table also shows counts of cohort subjects in each offense group by race and gender. Groupings and offenses are listed Table 3 in the hierarchical order that determined lead offenses for sentences of equal length.

Sentences for probation or parole violations were identified according to the offense for which the violated probation or parole was being served. Most violent and property offense types can include attempts, conspiracies, and solicitations, but attempted homicides were identified as assaults. Vehicular

homicides and vehicular assaults are counted in the public order group under driving related offenses, unless a vehicle was intentionally used as a weapon, in which case the violent homicide or assault category would apply.

**Table 3.  Prison term lead offense classification counts by release cohort race and gender**

| Prison Term Lead Offense | 2008 | | | | 2009 | | | |
|---|---|---|---|---|---|---|---|---|
| | Male | | Female | | Male | | Female | |
| | Black | White | Black | White | Black | White | Black | White |
| **Violent** | **207** | **142** | **10** | **4** | **182** | **142** | **11** | **19** |
| Homicide | 11 | 3 | 0 | 0 | 10 | 4 | 0 | 2 |
| Rape | 46 | 44 | 0 | 1 | 30 | 37 | 0 | 0 |
| Robbery | 84 | 51 | 3 | 2 | 78 | 51 | 3 | 13 |
| Assault | 34 | 22 | 5 | 1 | 48 | 23 | 5 | 2 |
| Other Sex Offense | 7 | 9 | 0 | 0 | 5 | 8 | 0 | 2 |
| Other Violent Offense | 25 | 13 | 2 | 0 | 11 | 19 | 3 | 0 |
| **Property** | **70** | **115** | **7** | **27** | **64** | **86** | **5** | **20** |
| Arson (Unoccupied) | 2 | 2 | 0 | 1 | 0 | 1 | 0 | 0 |
| Burglary | 52 | 85 | 2 | 12 | 48 | 68 | 1 | 10 |
| Theft | 8 | 17 | 2 | 6 | 8 | 9 | 1 | 6 |
| Fraud/Forgery | 7 | 8 | 3 | 8 | 3 | 5 | 3 | 4 |
| Other Property Offense | 1 | 3 | 0 | 0 | 5 | 3 | 0 | 0 |
| **Public Order** | **383** | **150** | **22** | **29** | **358** | **151** | **23** | **29** |
| Drug Dealing | 205 | 42 | 13 | 9 | 195 | 42 | 14 | 9 |
| Other Drug Offense | 72 | 19 | 4 | 8 | 44 | 14 | 2 | 6 |
| Weapon Offense | 78 | 30 | 2 | 4 | 83 | 32 | 3 | 2 |
| Driving Related | 16 | 48 | 0 | 6 | 16 | 50 | 0 | 9 |
| *Vehicular Homicide* | *1* | *4* | *0* | *0* | *0* | *2* | *0* | *2* |
| *Vehicular Assault* | *0* | *2* | *0* | *0* | *0* | *1* | *0* | *0* |
| *DUI* | *12* | *39* | *0* | *6* | *11* | *45* | *0* | *6* |
| *Other MV Related* | *3* | *3* | *0* | *0* | *5* | *2* | *0* | *1* |
| Other Public Order | 12 | 11 | 3 | 2 | 20 | 13 | 4 | 3 |

Though offense grouping can provide useful context in exploring recidivism, it should be noted that lead offense classifications do not necessarily characterize criminal proclivities.  Many repeat offenders tend toward involvement in mainly similar activities, but many others have very diverse criminal careers. Additionally, crimes of conviction or those drawing the longest terms are not always indicative of crimes actually committed by offenders.

Marked differences in the distribution of offender race and gender combinations among various offense classifications are apparent in Table 3.  To aid in illustrating those differences, Figures 6 and 7 show race/gender distributions in each offense classification as proportions of each year's total release cohort.

**Figure 6.  Percentage of 2008 releases represented by race/gender counts in offense groups**



**Figure 7.  Percentage of 2009 releases represented by race/gender counts in offense groups**



Offense demographic differences are further illustrated in Figures 8 through 11.  Figure 8 shows race and gender proportions in the broad groups of violent, property, and public order offenses.  Figures 9, 10, and 11 show race and gender proportions for offense subgroups in each of the three broad groups.

**Figure 8.  Prison term lead offense proportions by release cohort race and gender**





**Figure 9.  Violent lead offense subgroup proportions by release cohort race and gender**



In Figure 10, arson and other property subgroups are combined due to their small proportions.

**Figure 10.  Property lead offense subgroup proportions by release cohort race and gender**



For offenders of any race or gender, the public order group has the highest frequency for lead offenses in the 2008 and 2009 prison release cohorts.  Distributions for offenses within that group, however, show large race and gender differences, particularly for drug dealing and driving related offenses.

**Figure 11.  Public Order lead offense subgroup proportions by release cohort race and gender**



Figure 12 shows average length of stay by race and gender for each of the broad offense groups, and Figure 13 shows average length of stay for each of the more detailed offense classifications.

**Figure 12. Average length of stay by lead offense group and release cohort race and gender**



**Figure 13. Average length of stay by prison term lead offense classification, 2008 and 2009 release cohorts**



Figure 14 shows cumulative frequency distributions of length of stay for 2008 and 2009 prison releases. The graphs show that about 10 percent of prisoners released in 2008 served less than one year, and in 2009 about 15 percent were released after serving less than one year in custody.  For both years, about 50 percent served two years or less, and about 70 percent served three years or less.  The distributions show that less than 15 percent of released inmates served over five years in custody, and less than four percent served over 10 years (releases over 10 years were grouped together for graphing in Figure 14).

**Figure 14.  Cumulative frequency distributions for lengths of stay, 2008 and 2009 prison release cohorts**



For recidivism analyses, released inmates were grouped by length of stay in one-year increments up to five years.  For lengths of stay of five years or more, releases were grouped to include two broad ranges. Length of stay groupings and distributions of clients in each group are shown in Figure 15.

**Figure 15.  Cohort distribution by length of stay range, 2008 and 2009 release cohorts**



# Recidivism Methodology and Findings

## Measures and Methods

Subjects in this study were tracked for rearrest, reconviction, or recommitment after their at-risk dates using electronic data stored in the state's criminal justice information system, court, and DOC record repositories.  Offenses counted as recidivism were limited to state felonies, serious misdemeanors, or violations of probation or parole.  Most state motor vehicle offenses, state criminal offenses that are violations, and all municipal ordinances were excluded as recidivism events.  A small number of offenses excluded from recidivism counts did result in jail terms, but the general distinction used for exclusion was that only jailable state offenses were counted as recidivism.  (Refer to the Appendix for details.)

For post-release arrests or convictions identified, recidivism events were established by offense dates, not actual arrest or conviction dates.  The intent was to associate recidivism events as closely as possible with offenders' returns to criminal behavior, rather than when authorities became aware of and acted on their behavior.  Offenses were not counted as recidivism events if post-release arrests or convictions were for offenses that occurred prior to release.  Recommitments were based only on DOC admissions; there was no attempt to associate readmissions with offense dates.  Any secure custody readmissions, in detained or sentenced status, and regardless of sentence length, were counted as recommitments.

Each subject's at-risk date marked the start of six-month intervals that were established for recidivism time series.  It is important to note that these intervals do not indicate time at risk; they simply mark time from each subject's initial at-risk date.  Subsequent incarceration or other periods that interrupt opportunities to reoffend were not eliminated from tracking time in this study.

Recidivism rates were calculated for each of the three study measures at each six-month interval described above.  The following key terms are essential in understanding recidivism rate calculations.

- ***Recidivist:***  *For a given interval, a subject is regarded as a recidivist within that interval if records indicate a recidivism event occurred by the interval's end.  The recidivist identifier thus carries forward to all intervals after the first recidivism event.*
- ***Non-recidivist:***  *For a given interval, a subject is regarded as a non-recidivist if no recidivism events were recorded as occurring through the end of that interval, including all prior intervals. A subject ceases to be counted as a non-recidivist in an interval when death was known to occur, but would still be counted in recidivism-free intervals prior to death.  Additionally, for recidivism measured by reconviction, a subject in fugitive status on a pending recidivist rearrest case ceases to be counted as a non-recidivist as of the interval when a warrant was issued.*

Based on terms defined above, interval recidivism rates were calculated using the following equation.

$$Interval\ Recidivism\ Rate = \frac{\#\ of\ Recidivists}{(\#\ of\ Recidivists) + (\#\ of\ Non\text{-}recidivists)} * 100\%$$

From the definition of non-recidivist, it should be clear that the interval recidivism rate denominator can diminish over time as the number of non-recidivists diminishes due to reductions for deaths or warrants.

Also, the denominator can differ with each measure. An individual may be a recidivist by one measure and not identified as a recidivist, but removed from the non-recidivist count, in another measure. There is a term not explicitly represented in the interval recidivism rate equation that accounts for reduction of the rate denominator from the initial cohort size. The time- and measure-dependent reduction of the recidivism rate denominator is represented in the following equation.

$$Initial\ Cohort\ Size = (Recidivists) + (Non\text{-}recidivists) - (Time\text{-}\ and\ Measure\text{-}Dependent\ Exclusions)$$

To illustrate the method described above, consider an individual who was first rearrested seven months after his at-risk date. He was detained for a few days following that arrest (also his first recommitment), and was released on bail with the case pending. Three months after that arrest, he failed to appear for a court hearing. A capias was issued for the subject, but he remained in fugitive status with the case pending throughout the rest of the study period. That individual would be a non-recidivist by all three measures at the 6-month interval. He would be a recidivist by rearrest and recommitment measures at the 12-month and subsequent intervals, but he would be removed from the reconviction measure in the 12-month and subsequent intervals.

## Recidivism Rates for 2008 and 2009 Cohorts

Table 4 shows recidivism rates calculated using the methodology described above at one, two, and three year intervals for the measures studied.

Table 4:  Rearrest, reconviction, and recommitment recidivism rates at 1, 2, and 3 years

| | | 2008 Prison Release Cohort | | | 2009 Prison Release Cohort | | |
|---|---|---|---|---|---|---|---|
| | | Denominator (Recidivists + Non-recidivists) | Numerator (Recidivists) | **Recidivism Rate** | Denominator (Recidivists + Non-recidivists) | Numerator (Recidivists) | **Recidivism Rate** |
| Rearrest | 1 year | 1,161 | 648 | **55.8%** | 1,087 | 572 | **52.6%** |
| | 2 years | 1,157 | 820 | **70.9%** | 1,082 | 743 | **68.7%** |
| | 3 years | 1,155 | 891 | **77.1%** | 1,079 | 824 | **76.4%** |
| Reconviction | 1 year | 1,154 | 569 | **49.3%** | 1,083 | 521 | **48.1%** |
| | 2 years | 1,145 | 748 | **65.3%** | 1,072 | 681 | **63.5%** |
| | 3 years | 1,136 | 814 | **71.7%** | 1,063 | 755 | **71.0%** |
| Recommitment | 1 year | 1,161 | 546 | **47.0%** | 1,087 | 492 | **45.3%** |
| | 2 years | 1,157 | 709 | **61.3%** | 1,082 | 661 | **61.1%** |
| | 3 years | 1,153 | 780 | **67.6%** | 1,078 | 725 | **67.3%** |

Figures 16 through 18 display bar graphs showing recidivism rates from Table 4 and for intermediate six-month intervals. Sets of graphs follow Figure 18 that illustrate how recidivism rates vary with cohort characteristics presented in the previous section. The figures provide examples of a multitude of factors to be investigated to develop an understanding of recidivism influences. Readers are reminded that many variables are not controlled or accounted for in each set of graphs, and caution is urged regarding conclusions that might be drawn about relationships of presented variables.

**Figure 16.  Recidivism measured by rearrest, 2008 versus 2009 cohorts**



**Figure 17.  Recidivism measured by reconviction, 2008 versus 2009 cohorts**



**Figure 18.  Recidivism measured by recommitment, 2008 versus 2009 cohorts**

**Figure 19.  Recidivism measured by rearrest, rates at 6 month intervals by race and gender**



**Figure 20.  Recidivism measured by reconviction, rates at 6 month intervals by race and gender**



**Figure 21.  Recidivism measured by recommitment, rates at 6 month intervals by race and gender**

**Figure 22.  Recidivism measured by rearrest, rates at 6 month intervals by at-risk age group**



**Figure 23.  Recidivism measured by reconviction, rates at 6 month intervals by at-risk age group**



**Figure 24.  Recidivism measured by recommitment, rates at 6 month intervals by at-risk age group**

**Figure 25.  Male recidivism measured by rearrest, rates at 6 month intervals by length of stay**



**Figure 26.  Male recidivism measured by reconviction, rates at 6 month intervals by length of stay**



**Figure 27.  Male recidivism measured by recommitment, rates at 6 month intervals by length of stay**



**Figure 28.  Three year rearrest recidivism by prison release lead offense group**



**Figure 29.  Three year reconviction recidivism by prison release lead offense group**

**Figure 30.  Three year recommitment recidivism by prison release lead offense group**



Relatively large changes will be observed between different recidivism measures displayed in Figures 31 through 33.  The number of subjects is very small for some offense classifications; changes in the graphs can be misleading if the group sizes are not taken into consideration.  Initial group sizes were displayed in Table 3.  Each figure below shows counts of subjects that were included as the denominator in the three year recidivism rate for each measure.

**Figure 31.  Three year rearrest recidivism by prison release lead offense classification**



**Figure 32.  Three year reconviction recidivism by prison release lead offense classification**



**Figure 33.  Three year recommitment recidivism by prison release lead offense classification**



## Conclusions and Limitations

The findings of this study provide an overview of prisoner recidivism in Delaware.  The Center tracked 1,167 prisoners released in 2008 and 1,091 prisoners released in 2009 for three years following release from a prison sentence.  The Center captured prisoner demographic information with the exception of ethnicity (i.e., Hispanic, non-Hispanic).  Although important, ethnicity was not considered for study due to low subject counts and issues with inconsistent identification practices among Delaware's Criminal Justice Information System (CJIS) users.  The Center also compiled release information including lead offense, length of stay and at-risk date.  Lead offense was determined by the offense for which the prisoner served the most time and was then grouped into three main categories, violent, property or public order offenses.

The Center tracked rearrest, reconviction and recommitment episodes at 6 month intervals up to 3 years.  Offense dates were used to determine a rearrest or reconviction event to most closely approximate a return to criminal behavior.  Recommitments to DOC included only secure custody episodes where the prisoner was detained or sentenced for any length of time.

Approximately 90 percent of prisoners released in 2008 and 2009 were male.  More than half of the prisoners released in 2008 and 2009 were Black males with an average age at release of 33.  White males made up just over a third of the prisoners released and their average age at release was 35.  More than half of the female prisoners released in 2008 and 2009 were White.  Female prisoners in the release cohorts were slightly older than their male counterparts; on average, females were in their mid to late 30s when released.

Of the inmates released from prison in 2008 and 2009, the majority were serving time on a public order offense, with drug dealing being the most common offense overall.  The next most common offense was robbery followed by burglary.  Weapons offenses rounded out the remaining majority of prisoners released in 2008 and 2009.

The majority of prisoners released in 2008 and 2009 served 3 years or less with more lengthy sentences reserved for those serving time on a lead violent offense.  Half of the prisoners released in 2008 and 2009 served 2 years or less and 70 percent served 3 years or less.  Black males along with both Black and White females had on average more prior Delaware felony arrests with shorter lengths of stay than White males.  In other words, White males served longer lengths of stay on average with fewer Delaware felony arrests in their criminal histories than Black males and Black and White females.  Proportions of offenders released on violent, property and public order lead offenses in each group differed by race.  White males had a higher proportion of property and violent lead offenses than Black males, Black females or White females.  In addition, lengths of stay when compared to prior felony arrest records revealed an extreme disparity between males and females.  When using average prior felony arrests as the basis of comparison, females had proportionally shorter lengths of stay than their male counterparts.

The three year recidivism rates for rearrest were 77.1 percent and 76.4 percent for 2008 and 2009, respectively.  Rates for reconviction at three years were 71.7 percent in 2008 and 71.0 percent in 2009,

while rates for recommitment to a secure facility were 67.6 percent in 2008 and 67.3 percent in 2009. More than half of all prisoners released in 2008 and 2009 were rearrested within the first year of release with 45 percent or more being reconvicted and/or recommitted within the first year of release.

Recidivism rates were generally higher for Blacks than for Whites, and higher for males than for females. In fact, recidivism rates were higher for Black males than White males at every 6-month interval for rearrest, reconviction and recommitment in 2008 and 2009. Recidivism rates for rearrest, reconviction and recommitment for Black females were higher than for White females in 2009. Similar trends exist in the 2008 cohort; however, recidivism rates for the first six-month and 18-month intervals were lower for Black females than white females. Rates declined as age at release increased, and the majority of offenders that recidivated were under the age of 35. Additionally, as length of stay increased, recidivism rates decreased. More specifically, those who served less than 2 years had the highest rates of recidivism within 3 years of release.

Among prisoners released for violent, property or public order lead offenses, recidivism rates were highest for those who served time for a property offense as his/her lead offense. The only exception for both year cohorts was Black females in 2009, where the majority who recidivated served time for a violent offense. For the most common specific lead offenses, robbery offenders had the highest recidivism rates with more than 80 percent rearrested in 3 years of release, while prisoners who served time for homicide and rape had the lowest recidivism rates. Just under 60 percent of the prisoners released served time for drug dealing, robbery or burglary as their lead offense, while this group made up more than 60 percent of the recidivists. Several other offense groups, such as vehicular assault and other motor vehicle offenses, had high recidivism rates but due to the small number of offenders in those groupings, the rates cannot be compared to larger subgroups of prisoners.

Delaware's small prison population and annual release cohort sizes resulted in small sample problems as attempts were made to increase analytical focus on specific factors. Due to these small sample sizes, recidivism results in this report should not be used as sole indicators of success or failure, but rather as initiators for further analysis of specific cohorts. For example, this study does not examine the groups of offenders who did not recidivate within 3 years of release.

Other complications were confronted by this office during this study. As previously stated, many problems exist when comparing recidivism results. Methods for measuring recidivism vary from report to report, and the definition of recidivism changes from jurisdiction to jurisdiction. This study does not explore complexities of offender behavior and how criminal behavior is changed with an incarceration episode. Recidivism is only one measure that is needed to determine whether a sanction was successful in deterring an individual from future offending. Rehabilitative success should also be analyzed based on program participation and completion.

The Center did not analyze correctional treatment program influence on recidivism outcomes because of a lack of automated program participation and completion data. For future analyses, the Center, by means of the Delaware Department of Correction, hopes to capture and provide more thorough program information that can be retrieved electronically. Delaware Department of Correction

implemented practices to try to capture and automate treatment participation and completion data electronically, but the Center will not be able to begin looking at such data until release cohorts for 2013 and later are examined.  Complete and comprehensive data for all programs is needed from Department of Correction for this analysis to take place.

Another limitation of this study is the lack of specialized criminal behavior analysis.  Due to time constraints, the Center has not yet explored the relationships of recidivism offenses and prior offense patterns.  Given sufficient time the Center could, for example determine if burglary is a common rearrest offense for those released for burglary.  Analyses could also be conducted to assess whether rearrests indicate escalating or diminishing criminal behavior.

A significant amount of time was spent working through each individual release record to obtain detailed data for this analysis.  This case by case analysis was necessary because some data maintained by the Delaware Department of Correction's Delaware Automated Correction System (DACS) is inaccurate or missing.  The lead offense, at-risk date, length of stay, demographics, and recommitment information are examples of variables requiring extensive manual review for this report.  For example, birth date accuracy is particularly problematic because approximately 40 percent of prisoners released had multiple birth dates recorded in the system.  Given the high level of detail necessary for a report of this nature and the accuracy of automated information available, the Center anticipates similar time and resource constraints for future reports.  The Center will continue to work with the agencies responsible for this data to correct any existing problems in pursuit of the most timely and accurate online information possible.  The Center will continue to track three year recidivism rates as required by law and hopes to add more comprehensive analysis of offender release cohorts.

In conclusion, this report provides an important initial look at recidivism among inmates released from prison sentences.  This study reflects relatively serious re-offending among offenders who have been sentenced toward the high end of Delaware's sentencing spectrum; that is, incarceration sentences of more than one year, but less than life without parole or death.  If a broader array of criminal offenses were included as recidivism events, recidivism rates may be higher than those observed.  This study did not examine recidivism among offenders receiving other sentences (e.g., those released from jail or probation).  Therefore, the results of this report should not be used to make assumptions about recidivism among other groups of offenders:  rates may be higher of lower than those observed in this study.  This report, then, is best seen as a starting point for beginning to understand recidivism in Delaware.

# Appendix

## Reference Links

Links to sites with additional information pertaining to criminal justice topics in Delaware are provided below.

- Delaware Criminal Justice Information System (DELJIS):
  http://deljis.delaware.gov/
- Delaware Courts:
  http://courts.delaware.gov/
- Delaware Department of Correction:
  http://www.doc.delaware.gov/
- Delaware Sentencing Accountability Commission (SENTAC):
  http://cjc.delaware.gov/SENTAC/sentac.04.07.shtml
- Delaware Code:
  http://delcode.delaware.gov/

## Recidivism Offenses and Prison Lead Offenses

Most offenses of relevance in this study, whether related to pre-release or recidivism follow-up, are identified in Titles 11, 16, 21, or 31 of the Delaware Code.  In measuring rearrest and reconviction recidivism, the Center used only what it refers to as serious criminal offenses.  In addition to probation or parole violations, selected offenses are identified in the Delaware Code as felonies or misdemeanors with incarceration as a possible (or mandatory) sanction.  In a small number of cases, Delaware arrests and detentions of subjects held as fugitives for others jurisdictions were also counted as recidivism.  Offenses/events used in rearrest and reconviction recidivism measures are summarized in Table A1.

**Table A1.  Arrest or conviction events counted as recidivism**

| Delaware Code references | Offenses or events counted in rearrest or reconviction recidivism measures |
|---|---|
| Title 11 | Any criminal felony or misdemeanor punishable by incarceration; Violation of probation (§ 4334) or parole (§ 4352); Arrest prior to requisition (§ 2513) |
| Title 16 | Felony or misdemeanor drug offenses identified in Chapter 47 |
| Title 21 | Driving after judgment prohibited (§ 2810); Driving under the influence (§ 4177); Disregarding the signal of a police vehicle, felony only (§ 4103); Leaving the scene of an accident (Chapter 42); Theft, unauthorized use, or damage of vehicles (Chapter 67) |
| Title 31 | Abusing, neglecting, exploiting, or mistreating an impaired adult (Chapter 39) |

Table A2 (following page) lists generalized offenses within classifications that were identified as lead offenses for prisoners released in 2008 or 2009.  Lead offense classifications are listed in hierarchical order in the left column; specific offenses in each row are listed in no particular order.  The brief literal descriptions should give readers a sense of the nature of offenses covered; those seeking more specificity are referred to the Delaware Code link above.

**Table A2.  Lead release offense classifications and examples of specific offenses included**

| Lead Release Offense Classification | Examples of Specific Offenses Included |
|---|---|
| Homicide | Murder, any degree; Murder by abuse or neglect, any degree; Manslaughter; Criminally negligent homicide |
| Rape | Rape, any degree; Unlawful sexual intercourse, any degree; Unlawful sexual penetration, any degree |
| Robbery | Robbery, any degree; Carjacking, any degree |
| Assault | Attempted murder; Assault, any degree; Assault in a detention facility |
| Other Sex Offense | Unlawful sexual contact, any degree; Sexual abuse of a child; Dangerous crime against a child; Sexual exploitation or solicitation of a child; Child pornography |
| Other Violent Offense | Menacing or aggravated menacing; Reckless endangering; Terroristic threatening; Arson 1st degree; Extortion; Riot; Stalking; Promoting prostitution 1st degree; Victim/witness intimidation |
| Arson | Arson 2nd or 3rd degree |
| Burglary | Burglary, any degree; Possession of burglar's tools |
| Theft | Theft; Shoplifting; Possession of shoplifter's tools or instruments of theft; Exploitation of resources of infirm or impaired persons |
| Fraud/Forgery | Forgery; Identity theft; Issuing a bad check; Unlawful use of a credit card; Home improvement fraud |
| Other Property | Criminal mischief; Criminal trespass; Receiving stolen property |
| Drug Dealing | Drug trafficking; Possession with intent to deliver drugs; Distribution of drugs to minors |
| Other Drug Offense | Possession of drugs; Possession of drug paraphernalia; Maintaining a vehicle or dwelling to use or deliver drugs; Possessing drugs without a prescription or acquiring drugs with fraudulent prescriptions; Delivery or possession of drugs within prohibited zones |
| Weapons | Carrying a concealed deadly weapon or dangerous instrument; Possession of a deadly weapon or firearm during commission of a felony; Possession of a deadly weapon or firearm by persons prohibited; Wearing body armor during commission of a felony; Theft of a firearm |
| Vehicular Homicide | Vehicular homicide, any degree; Murder, manslaughter, or criminally negligent homicide if a vehicle was not intentionally used as a weapon (listed as homicide if vehicle intentionally used as weapon) |
| Vehicular Assault | Vehicular assault, any degree |
| Driving Under Influence | Driving under the influence of alcohol or drugs |
| Other Motor Vehicle Offense | Driving after judgment prohibited; Failure to stop at command of a police officer |
| Other Public Order | Endangering welfare of a child; Hindering prosecution; Escape, any degree; Promoting prison contraband; Resisting arrest; Tampering with a witness; Tampering with physical evidence; Criminal contempt of a domestic protection from abuse order; Non-compliance with conditions of recognizance; Failure to register as a sex offender; Sex offender residing/loitering in prohibited zone |