# UNPUBLISHED DECISIONS (PART 2 OF 3)

For Opinion See 633 F.3d 168

United States Court of Appeals, Third Circuit.
UNITED STATES OF AMERICA,
v.
James F. BARTON, Appellant.
No. 09-2211.
July 2, 2010.

Appeal from Judgment of Conviction and Sentence Entered by the United States District Court for the Western District of Pennsylvania (Bloch, J.), at Criminal No. 07-376

Brief for the United States

Robert S. Cessar, Acting United States Attorney; Laura Schleich Irwin, Assistant U.S. Attorney, 700 Grant Street, Suite 4000, Pittsburgh, Pennsylvania 15219, Tel: (412) 894-7374, Fax: (412) 644-5870, E-Mail: Laura.Irwin@usdoj.gov.

***i *TABLE OF CONTENTS***

JURISDICTION ... 1

ISSUES PRESENTED ... 2

STANDARDS OF REVIEW ... 2

STATEMENT OF RELATED PROCEEDINGS ... 3

STATEMENT OF THE CASE ... 4

STATEMENT OF FACTS ... 5

SUMMARY OF ARGUMENT ... 7

ARGUMENT

I. Section 922(g)(1), The Felon In Possession Statute, Is Presumptively Lawful Under *Heller* And Therefore Does Not Violate The Second Amendment ... 1 0

CONCLUSION ... 2 2

CERTIFICATE OF COMPLIANCE AND CERTIFICATE OF SERVICE

***ii *TABLE OF CITATIONS***

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

***Federal Cases***

Broadrick v. Oklahoma, 413 U.S. 601 (1973) ... 1 1

County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573 (1989) ... 1 5

District of Columbia v. Heller, 128 S.Ct. 2783 (2008) ... *passim*

Evans v. Circuit Court of Cook County, 569 F.3d 665 (7th Cir. 2009) ... 21

Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265 (3d Cir. 2007) ... 15, 16

In re McDonald, 205 F.3d 606 (3d Cir. 2000) ... 14

McDonald v. City of Chicago, 130 S.Ct. 3020, 2010 WL 2555188 (June 28, 2010) ... *passim*

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996) ... 15

Sheet Metal Workers v. EEOC, 478 U.S. 421 (1986) ... 15

Terminiello v. City of Chicago, 337 U.S. 1 (1949) ... 18

United States v. Adams, 305 F.3d 30 (1st Cir. 2002) ... 20

United States v. Anderson, 559 F.3d 348 (5th Cir. 2009) ... 12, 14

United States v. Bloom, 149 F.3d 649 (7th Cir. 1998) ... 14, 16

United States v. Brunson, 292 Fed.Appx. 259 (4th Cir. 2008) ... 12, 14

United States v. Carey, 602 F.3d 738 (6th Cir. 2010) ... 12, 14

United States v. Frazier, 314 Fed.Appx. 801 (6th Cir. Nov. 19, 2008)") ... 12

United States v. Irish, 285 Fed.Appx. 326 (8th Cir. 2008) ... 12, 14

***iii** United States v. McCane, 573 F.3d 1037 (10th Cir. 2009) ... 12, 14, 21

United States v. Rawlins, 606 F.3d 73 (3d Cir. 2010) ... 19

United States v. Rozier, 598 F.3d 768 (11th Cir. 2010) ... 11, 13, 14, 16

United States v. Salerno, 481 U.S. 739 (1987) ... 11

United States v. Skoien, 587 F.3d 803 (7th Cir. 2009) ... 21

United States v. Skoien, No.08-3770, 2010 WL 1267262 (7th Cir. Feb 22, 2010) ... 21

United States v. Stuckey, 317 Fed.Appx. 48 (2d Cir. 2009) ... 11, 14

United States v. Vongxay, 594 F.3d 1111 (9th Cir. 2010) ... *passim*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

United States v. Willaman, 437 F.3d 354 (3d Cir. 2006) ... 2

Washington v. Glucksberg, 521 U.S. 702 (1997) ... 11

***State Cases***

Commonwealth v. Blanding, 20 Mass.304 (1825) ... 18

***Federal Statutes***

18 U.S.C. §921(a) ... 5

18 U.S.C. §922(g) ... *passim*

18 U.S.C. §3231 ... 1

18 U.S.C. §3742(a) ... 1

28 U.S.C. §1291 ... 1

***iv *Other Authorities***

36 Okla.L.Rev.65 (1983) ... 1 8

2 Bernard Schwarz, The Bill of Rights: A Documentary History 665 (1971) ... 1 7

William Rawle, A View of the Constitution of the United States of America 126 (1825) ... 1 8

***1 *JURISDICTION***

This is a direct appeal stemming from the conviction of Appellant, James F. Barton, Jr., The District Court had jurisdiction over the action by virtue of 18 U.S.C. §3231. The judgment of sentence was entered on the docket on April 13, 2009 (A14, DkNo57).[FN1] Barton filed a timely notice of appeal on April 22, 2009 (A15, DkNo59). This Court has jurisdiction to decide the appeal pursuant to 28 U.S.C. §1291 because it is an appeal from a final judgment of conviction and sentence.[FN2]

FN1. All record citations refer to the Appendix filed by Barton. Unless otherwise indicated, the document cited is the transcript of the hearing on the Motion to Dismiss held on July 31, 2008.

FN2. While Barton correctly notes the statutory basis for appeal of his conviction, 28 U.S.C. §1291, he also maintains that proper appellate jurisdiction arises under 18 U.S.C. §§3742(a)(1) (Barton Br.1). But, given that neither party has appealed the sentence, §3742 does not provide a basis for the appeal.

***2 *ISSUES PRESENTED* and *STANDARDS OF REVIEW***

1. Whether Title 18 U.S.C. §922(g)(1), which bars possession of a firearm by a person previously convicted of a felony offense, violates the Second Amendment right articulated by the Supreme Court in *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008), to possess a firearm for purposes of self-defense within the home.

(a) Barton preserved the issue (A23, Motion to Dismiss; A39-40 ¶A(6)(c), Plea Agreement).

(b) This Court exercises plenary review of the District Court's decision to uphold the constitutionality of §922(g)(1) and to refuse to dismiss the indictment. *See* *United States v. Willaman*, 437 F.3d 354, 356 (3d Cir. 2006).

***3 *STATEMENT OF RELATED PROCEEDINGS***

This case has not been before this Court previously. Counsel is not aware of any related case or proceeding--completed, pending, or anticipated--before this Court or any other court or agency, state or federal.

***4 *STATEMENT OF THE CASE***

On October 24, 2007, a grand jury in the Western District of Pennsylvania returned a two-count indictment charging Barton with, at Count One, being a felon in possession of a firearm, 18 U.S.C. §922(g)(1), and, at Count Two, being a felon in possession of ammunition, 18 U.S.C. §922(g)(1) (A17, Indictment). Barton moved to dismiss on the ground that the charge against him infringed his Second Amendment right, both facially and as applied, as articulated by the Supreme Court in *District of Columbia v. Heller*, 128 S.Ct.2783 (2008) (A23, Motion to Dismiss; A12, DkNo36). Following briefing (A12, DkNos36, 38, 39) and a hearing (A12, DkNo40), the District Court denied the Motion (A29).

Barton then entered into a Plea Agreement, in which he pled guilty to Counts One and Two and in which he preserved the right to appeal the denial of his Motion to Dismiss (A39-40 ¶A(6)(c), Plea Agreement). On April 13, 2009, the District Court sentenced Barton to 51 months of imprisonment, a sentence within the advisory Guideline Range of 41-51 months (A2, Judgment). This timely appeal followed (A1; A15, DkNo59).

***5 *STATEMENT OF FACTS***

Barton's sale of a firearm and ammunition to a confidential informant paved the way for a search of his home. That search uncovered 15 firearms and ammunition. When authorities learned of Barton's prior felony convictions for possession with intent to deliver cocaine and receiving stolen property-- firearms--, he was charged with and pled guilty to being a felon in possession.

**A. *Barton Sells A Firearm And Ammunition To A CI.***

On April 19, 2007, a confidential informant made a telephone call to Barton which law enforcement recorded (A70, Plea Hearing). During the call, Barton and the informant reached a deal: Barton would sell the informant a firearm and some ammunition (A70).

The next day, April 20, the informant traveled to Barton's residence in Washington, Pennsylvania to consummate the deal (A70-71). For $300, Barton gave the informant an Iver Johnson .32 caliber revolver loaded with five rounds and a box containing 44 rounds of ammunition (A71-72). Barton drilled out the serial number on the Iver Johnson and advised the informant that the revolver would not leave any shell casings (A71). As it turned out, the Iver Johnson was later determined to be a fully-functioning antique firearm, 18 U.S.C. §921(a)(16) (A72).

**B. *A Search Of Barton's Home Uncovers 15 Firearms.***

Law enforcement eventually sought and obtained a warrant to search Barton's home (A73). On May 10, 2007, the warrant was executed while Barton was at his home (A73). The search resulted in the seizure of 15 firearms-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

-7 pistols, 5 rifles, and 3 shotguns--and various types of ammunition (A73).

***6 C. *Barton Is Charged And Pleads Guilty To Being A Felon In Possession.***

Because Barton had a prior conviction for a felony drug offense--possession with intent to deliver cocaine--and another for receiving stolen property-- firearms--, federal law prohibited him from owning a firearm or ammunition (A53-55, Plea Hearing; PSR ¶¶ 27-28). Accordingly, he was indicted for being a felon in possession of a firearm and for being a felon in possession of ammunition, 18 U.S.C. §922(g)(1) (A17-19, Indictment). Barton moved to dismiss the indictment on the ground that the charges against him infringed his Second Amendment rights, both facially and as applied (A23, Motion to Dismiss). The District Court denied the motion (A29) and Barton pled guilty to both charges (A43, Plea Hearing). In his Plea Agreement, Barton preserved for appeal the issue of whether §922(g)(1) runs afoul of the Second Amendment (A39-40 ¶A(6)(c), Plea Agreement).

The District Court sentenced Barton to 51 months of imprisonment (A2, Judgment). This timely appeal followed (A1; A15, DkNo59).

***7 *SUMMARY OF ARGUMENT***

Barton believes that his conviction under 18 U.S.C. §922(g)(1) conflicts with the Supreme Court's recent decision in *Heller*, 128 S.Ct. 2783 (2008). There, in holding that the Second Amendment provides law-abiding and responsible citizens with a right to possess and use a firearm for self-defense purposes within the home, the Supreme Court also directed that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]" *Id.* at 2816-17. *See also McDonald v. City of Chicago*, 130 S.Ct. 3020, 2010 WL 2555188, at *25 (June 28, 2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' ") ( *citing Heller*, 128 S.Ct. at 2816-17). Relying on this statement about felons, every court that has addressed *Heller*'s application to §922(g)(1) has upheld the statute. This Court should do the same.

Barton, nonetheless, maintains that the statement in *Heller* regarding the validity of felon in possession statutes amounts to nothing more than dicta. But, the Supreme Court's conclusion that felon disarmament laws are presumptively constitutional had operative effect in *Heller* itself: the Court held that the District of Columbia was required to allow *Heller* to register a handgun if he was "not disqualified from the exercise of Second Amendment rights"--meaning that he was not a felon, insane, or comparably disqualified. 128 S.Ct. at 2822. Even if the statement is construed as dicta--a proposition flatly rejected by courts reviewing *Heller*'s application to §922(g)(1)--, it is nonetheless entitled to significant weight by this Court. This is so because the ***8** statement provided an integral and necessary ingredient to the holding of *Heller*. Therefore, even if dicta, the Supreme Court's statement that felon in possession statutes are presumptively constitutional warrants serious and considered attention from this Court. And, coupled with the history and purpose of the Second Amendment and the salutary purpose of the statute to keep dangerous weapons out of the hands of proven violent offenders who may use a firearm for a destructive purpose, the necessary conclusion is that §922(g)(1) qualifies as constitutional.

Barton also contends that, as applied to him, §922(g)(1) is unconstitutional. The initial problem with his claim is that he waived the argument by failing to develop it in his brief. Aside from this, his claim fails on the merits because he is a violent criminal--he has a prior conviction for possession with intent to distribute cocaine and another for misconduct involving firearms--and the Second Amendment does not guarantee such persons access to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

firearms.

Barton also complains of error because the District Court rejected his claim of unconstitutionality without identifying a standard of review. He asks this Court to identify a standard of review and remand his case for consideration under that standard. His preferred standard is strict scrutiny, which requires that the statute be narrowly tailored to further a compelling governmental interest. This level of review cannot apply here, however. Not only would this standard conflict with *Heller*'s conclusion that felon in possession regulations are "presumptively lawful" (thus demonstrating a degree of deference to Congress that is inconsistent with strict scrutiny review), strict scrutiny would disregard the nature of both the Second Amendment right and the Government's interest in regulating gun possession by way of §922(g)(1). That interest is this: while firearms no doubt serve ***9** lawful purposes, when in the wrong hands, firearms pose a serious risk of injury or death to innocent persons. For this same reason, even if strict scrutiny does apply, §922(g)(1) would nonetheless satisfy the Second Amendment.

***10 *ARGUMENT***

**I. *Section 922(g)(1), The Felon In Possession Statute, Is Presumptively Lawful Under* Heller *And Therefore Does Not Violate The Second Amendment.***

Resting on three arguments, Barton contends that the District Court erred when it ruled that §922(g)(1) does not violate the Second Amendment. Section 922(g)(1) provides:
It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

First, Barton believes that reliance on *Heller* to uphold §922(g)(1) is improper because *Heller* only spoke only in dicta to the legality of felon in possession statutes. Second, Barton contends that §922(g)(1) is unconstitutional both facially and as applied to him. Third, he believes--and even though he never pressed the District Court on this point--that the District Court erred by failing to identify a standard of review for consideration of his claim that §922(g)(1) is unconstitutional under *Heller*. This misstep, according to Barton, requires this Court to identify the proper standard and remand the case for reconsideration under the newly-identified standard.

Barton's contentions lack merit because, as a convicted felon, he was not entitled to Second Amendment protection at the time he possessed a firearm. *Heller* clearly directs this result: that decision rendered §922(g)(1) presumptively lawful. *See also McDonald*, 2010 WL 2555188, at *25 (noting that *Heller* made "clear" that prohibitions on possession of firearms by felons remain firm). And, even if Barton were entitled to some level of protection, §922(g)(1) could constitutionally be applied to him under any level of scrutiny because at least one of his predicate convictions--possession with intent to ***11** deliver cocaine--was a violent felony, rendering him the specific type of person to whom the rights of the Second Amendment do not apply.

**A. Heller *Makes Clear That The Second Amendment Does Not Protect Felons.***

In *Heller*, 128 S.Ct. 2783, the Supreme Court held that the Second Amendment protects a right to possess and use a firearm for self-defense purposes within the home. Although this is clear, it is equally clear that the right "is not unlimited." *Id.* at 2816. The Supreme Court indicated that its holding addressed only "law-abiding, responsible citizens," *id.* at 2821, and that, accordingly, "nothing in [its] opinion should be taken to cast doubt on

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

longstanding prohibitions on the possession of firearms by felons and the mentally ill," *id.* at 2816-17. The Court further noted that it had identified such "presumptively lawful regulatory measures only as examples" and that its "list [did] not purport to be exhaustive." *Id.* at 2817 n.26.[FN3]

FN3. Barton's facial challenge (Barton Br.2) (Statement of Issue), is thus precluded entirely, as it is unclear how a regulation could be both "presumptively lawful" and facially unconstitutional. *See United States v. Salerno,* 481 U.S. 739, 745 (1987) ("A facial challenge . . . must establish that no set of circumstances exists under which the Act would be valid [.]"); *see also Washington v. Glucksberg,* 521 U.S. 702, 739-40, & n.7 (1997) (Stevens, J., concurring in judgments) (Facial challenge must fail where statute has " 'plainly legitimate sweep[.]' ") (*quoting Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973) ).

Relying on *Heller*'s statement about felons, every court that has addressed a post-*Heller* challenge to §922(g)(1) has upheld the statute. *See, e.g., United States v. Rozier,* 598 F.3d 768, 771 (11th Cir. 2010) (*per curiam*) (*Heller* 's statement about felons "suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment"), *cert. denied*, S.Ct. , (Jun 7, 2010); *United States v. Stuckey,* 317 Fed.Appx. 48, 50 (2d Cir. 2009) (*per curiam*) (describing argument that *Heller* renders §922(g) unconstitutional as "unavailing"); ***12***United States v. Brunson,* 292 Fed.Appx. 259, 261 (4th Cir. 2008) (*per curiam*) (reading *Heller* as "[upholding] the longstanding prohibition on the possession of firearms by felons"); *United States v. Anderson,* 559 F.3d 348, 352 & n.6 (5th Cir.), *cert. denied*, 129 S.Ct. 2814 (2009) (noting that *Heller* provides "no basis for" unconstitutionality of §922(g)(1)); *United States v. Carey,* 602 F.3d 738, 741 (6th Cir. 2010) (noting that "[a]fter *Heller*, this Court affirmed that prohibitions on felon possession of firearms do not violate the Second Amendment. *United States v. Frazier,* 314 Fed.Appx. 801 (6th Cir. Nov. 19, 2008)"), *cert. denied*, 129 S.Ct. 1652 (Mar. 23, 2009); *United States v. Irish,* 285 Fed.Appx. 326, 327 (8th Cir. 2008) (*per curiam*); *United States v. Vongxay,* 594 F.3d 1111, 1114-18 (9th Cir. 2010) ("Nothing in *Heller* can be read legitimately to cast doubt on the constitutionality of §922(g)(1)."); *United States v. McCane,* 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 1686 (2010) (noting Supreme Court's "explicit[] state[ment] in *Heller* that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.' ").

The Court of Appeals for the Ninth Circuit, in *Vongxay*, observed the importance of the majority statement from *Heller* that:

The Constitution leaves the District of Columbia a variety of tools for combating [the problem of handgun violence in this country], including some measures regulating handguns. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home.

*Vongxay,* 594 F.3d at 1115 (*quoting Heller,* 128 S.Ct. at 2822 (*internal citation omitted*)). *Vongxay* also pointed out the crucial limitation of *Heller*, in that a person has the Second Amendment "right to register and keep a loaded firearm in his home for self-defense, provided he was 'not disqualified from the exercise of Second Amendment rights.' " *Id.* (*quoting* ***13***Heller,* 128 S.Ct. at 2822). Accordingly, "the first question to be asked is not whether the handgun is possessed for self-defense or whether it is contained within one's home, rather the initial question is whether one is qualified to possess a firearm." *Rozier,* 598 F.3d at 770.

The Supreme Court explained how such a disqualification could occur, noting that limitations were a matter of long-standing history and that among those, "nothing in [*Heller*] should be taken to cast doubt on the longstand-

ing prohibitions on the possession of firearms by felons." *Heller*, 128 S.Ct. at 2816-2817 (*emphasis added*) (*internal citation omitted*). Recently, the Supreme Court reiterated this point, dispelling any doubt as to Heller in this regard: in *McDonald v. City of Chicago*, 2010 WL 2555188, at *25, the Supreme Court wrote that "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' ") (*citing Heller*, 128 S.Ct., at 2816-17). Thus, "felons are categorically different from the individuals who have a fundamental right to bear arms, and any reliance on *Heller* for a contrary proposition is misplaced." *Vongxay*, 594 F.3d at 1115.

### B. *As A Felon, Barton Is Disqualified From Possessing A Firearm.*

Here, the answer to the question of whether Barton is qualified to possess a firearm is a resounding "no." *See Rozier*, 598 F.3d at 770-71; *Vongxay*, 594 F.3d at 1115. Indeed, he does not dispute his status as a felon--that he has a prior conviction for possession with intent to deliver cocaine and another for receiving stolen firearms (A53-55, Plea Hearing; PSR ***14** ¶¶27-28). It bears repeating that Barton's prior misconduct involves *firearms*. And, as a felon, Barton is "categorically different from the individuals who have a fundamental right to bear arms." *Vongxay*, 594 F.3d at 1115. *Heller* leaves no doubt--as other circuits have concluded--that this necessarily curtails Barton's rights under the Second Amendment. *See Heller*, 128 S.Ct. at 2816-17; *Rozier*, 598 F.3d at 770-71; *Stuckey*, 317 Fed.Appx. at 48; *Brunson*, 292 Fed.Appx. at 261; *Anderson*, 559 F.3d at 352 & n.6; *Carey*, 602 F.3d at 741; *Irish*, 285 Fed.Appx. at 327; *Vongxay*, 594 F.3d at 1115; *McCane*, 573 F.3d at 1047. Indeed, a decision by this Court to embrace Barton's Second Amendment challenge would entitle felons in this Circuit to windfall protection that felons elsewhere do not receive and that the Supreme Court--particularly given the recent decision in *McDonald*, 2010 WL 2555188, at * 25--did not expect them to receive. *See In re McDonald*, 205 F.3d 606, 612-13 (3d Cir. 2000) ("Appellate courts that . . . strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.") (*quoting United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998) (*internal quotation marks omitted*).

### C. Heller*'s Statements About Felon In Possession Laws Are Not Dicta.*

Nevertheless, Barton contends that the Supreme Court's language in *Heller* about certain long-standing restrictions on gun possession is dicta and therefore it is not binding, nor is it due the full weight of authority (Barton Br.16; Barton Br.18-22). This position, however, is wide of the mark.

Barton's contention is incorrect because the Court's conclusion that felon disarmament laws are presumptively constitutional had operative effect in ***15** *Heller* itself: the Court held that the District of Columbia was required to allow Heller to register a handgun if he was "not disqualified from the exercise of Second Amendment rights," meaning that he was not a felon, insane, or comparably disqualified. *Heller*, 128 S. Ct. at 2822. Moreover, even if this statement were dicta, it should be followed by this Court. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) (Deference to dicta "is actually adherence to the well-established rationale upon which the Court based the results of its earlier decisions. When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.") (*citing, inter alia, County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

prior cases, but also to their explications of the governing rules of law.") (Kennedy, J., concurring and dissenting); *Sheet Metal Workers v. EEOC,* 478 U.S. 421, 490 (1986) ("Although technically dicta, ... an important part of the Court's rationale for the result that it reache[s] . . . is entitled to greater weight . . .") (O'Connor, J., concurring)).

The Third Circuit follows this approach because with such "considered statements" the " 'Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket,' [and] failing to follow those statements could 'frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.' " *Galli v. New Jersey Meadowlands Comm'n,* 490 F.3d 265, 274 (3d Cir. 2007) (*citations omitted*). In fact, "[t]o ignore what we perceive as persuasive statements by the Supreme Court is to place our rulings, and the analysis that underlays them, in peril. Indeed, the reason appellate courts follow Supreme Court dicta is precisely so ***16** as not to 'strike off on their own.' " *Id.* In short, such dicta in Supreme Court decisions should not be viewed "lightly." *Id.* (*citation and quotation omitted).*

This tradition of deference to considered statements by the Supreme Court applies with special force to *Heller*. In defining the scope of its Second Amendment holding, the *Heller* Court clearly believed it was providing direct guidance to the lower courts. The Court's opinion set forth a detailed textual, historical, and functional analysis of the Second Amendment. Because the Court's statement about felons was a deliberate product of that analysis--and of briefing and oral argument that addressed whether felons are entitled to Second Amendment protection (*see, e.g.*, U.S. Br. as Amicus Curiae, *District of Columbia v. Heller,* No.07-290, 2008 WL 157201, at *8, *20, *25-26; Oral Arg. Tr., *Heller,* 2008 WL 731297, at *40, *78)--it cannot be cast off as "an aside unrelated to the subject of the case." *Bloom,* 149 F.3d at 653)). Indeed, *McDonald,* 2010 WL 2555188, at *25, leaves no doubt of the import of *Heller*'s statement about felons.

With these principles in mind, and perhaps prescient of *McDonald*, several courts of appeals to have addressed the constitutionality of §922(g)(1) have rejected the notion that the Supreme Court's statements in *Heller* are meaningless dicta. *See Rozier,* 598 F.3d at 771 n.6; *Vongxay,* 594 F.3d at 1115. "[T]o the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by law-abiding and qualified individuals, it is not dicta." *Rozier,* 598 F.3d at 771 n.6. And, as *Rozier* and *Vongxay* have observed, even if dicta, the Supreme Court's statement that "nothing in [*Heller*] should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons[,]" *Heller,* 128 S.Ct. at 2816-17, is still entitled to "considerable weight[,]" *Rozier,* 598 F.3d at 771 n.6. *See also* ***17***Vongxay,* 594 F.3d at 1115. This uniformity provides another reason to adhere to *Heller*'s notation that felons fall beyond the Second Amendment's purview.

Furthermore, the Second Amendment's history and purpose support the proposition that felons are categorically excluded from the Amendment's protections. At the time of the Founding, even the most ardent supporters of a specific amendment guaranteeing an individual right to keep and bear arms recognized that convicted felons would not enjoy the benefits of such a right. One proposed amendment, presented at the Pennsylvania ratifying convention in 1787, would have provided:

That the people have a right to bear arms for the defence of themselves and their own State or the United States, . . . and no law shall be passed for disarming the people or any of them unless for crimes committed, or real danger of public injury from individuals[.]

2 Bernard Schwarz, The Bill of Rights: A Documentary History 665 (1971). Likewise, the Massachusetts ratifying convention in 1788 proposed an amendment providing "that the said Constitution be never construed to au-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

thorize Congress . . . to prevent the people of the United States, who are peaceable citizens, from keeping their own arms." *Id.* at 681. When considering the Second Amendment's reach in *Heller*, 128 S. Ct. at 2804, the Supreme Court gave these "highly influential" "precursors" significant weight. The idea that felons forfeit rights is exemplified by the idea of "civil death," and it continues today as to a number of civil rights and obligations (such as laws disenfranchising felons). The same logic applies to firearms rights.

Extending to felons the right to bear arms would undermine this model by making it more difficult for law-abiding citizens to protect themselves. One cannot think that the practical-minded Framers, in codifying a right that was understood to exist primarily for the sake of self-defense, *see Heller*, 128 S. Ct. at 2796, 2801-12, 2817-18, would have simultaneously thwarted that purpose ***18** by bestowing the right--*sub silentio* and for the first time in history-- on the members of society most likely to abuse it. *Cf. Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting) (counseling use of "practical wisdom" in constitutional interpretation, lest Bill of Rights be "convert[ed] . . . into a suicide pact"). William Rawle--an early constitutional scholar on whose works the Supreme Court heavily relied in *Heller*, 128 S. Ct. at 2798, 2800, 2805-06, 2816--observed that, because the individual right to bear arms " 'ought not . . . in any government . . . be abused to the disturbance of the public peace,' " a person bearing arms under " 'circumstances giving just reason to fear that he purposes to make an unlawful use of them' " could be subject to regulation. Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of Judges Reign?, 36 Okla.L.Rev.65, 85 (1983) (*quoting* William Rawle, A View of the Constitution of the United States of America 126 (1825)); *cf. Heller*, 128 S.Ct. at 2803 (*quoting* 1825 decision of Massachusetts Supreme Judicial Court, *Commonwealth v. Blanding*, 20 Mass.304, 314 (1825), for proposition that " 'the right to keep fire arms . . . does not protect him who uses them for annoyance or destruction' "). The obvious implication was that, because the state could reasonably fear that those who flouted the law in the past might use firearms in a dangerous manner in the future, felons were outside the protections of the Second Amendment.

**D. *Barton Offers No Reason Why The Presumption Of Constitutionality Does Not Apply To Him.***

Barton contends that §922(g)(1) is unconstitutional as it applies to him (Barton Br.2) (Statement of Issue). The Supreme Court in *Heller* used the term "presumptively" to describe lawful regulatory measures and, by use of this term, the Court thus possibly suggested that, in an exceptional case, a court could consider an "as applied" challenge to these regulations. This ***19** interpretation is consistent with the Supreme Court's suggestion that it would consider "the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Heller*, 128 S.Ct. at 2821. This case, however, presents no occasion to decide whether an "as applied" challenge to "presumptively lawful regulatory measures" is ever available because Barton not only fails to develop the argument (thus waiving it), he fails to distinguish his case from a run-of-the-mill prosecution under §922(g)(1).

Before the District Court, Barton argued that §922(g)(1) could not be applied to him because, even as a convicted felon, he nonetheless retained the right to defend himself and his home (A26-27). On appeal, Barton's Statement of the Issue mentions an as-applied challenge (Barton Br.2), but he fails to develop it in the argument section of his opening brief. As a preliminary matter, then, he has waived the argument. *See United States v. Rawlins*, 606 F.3d 73, 82 n.11 (3d Cir. 2010) ("Rawlins's Statement of Issues suggests a challenge to the sufficiency of the evidence on Count Seven, but Rawlins waived that issue by failing to develop it in the argument section of his brief.").

As a secondary matter, even if Barton had argued his point, any as applied challenge would lack merit: *Heller*,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

128 S.Ct. at 2816, made clear that rights under the Second Amendment are "not unlimited." Barton not only overlooks this point, he offers no argument to overcome it. He does not dispute that he is a violent criminal due to his prior felony convictions, including one for possession with intent to deliver cocaine and another that relates to unlawful conduct involving firearms. And, not only does Barton now stand convicted of possessing 7 pistols, 5 rifles, and 3 shotguns (and various types of ammunition), he also must admit that, as established at his plea hearing, prior to selling the loaded Iver Johnson .32 caliber revolver to a CI, ***20** he drilled out the serial number on the firearm (A71). Given this, and the obvious fact that no lawful purpose exists for a firearm with an obliterated serial number, *United States v. Adams,* 305 F.3d 30, 34 (1st Cir. 2002) (stating that "anyone can see what Congress was getting at" in enacting §922(k); the statute "aims to punish one who possesses a firearm whose principal means of tracing origin and transfers in ownership--its serial number--has been deleted or made appreciably more difficult to make out"), Barton cannot prove that §922(g)(1) is somehow unconstitutional as applied to him. In fact, analysis of §922(g)(1) in this case directly serves the Government's compelling interest to keep dangerous weapons out of the hands of proven violent offenders who may use them for destructive purposes.

**E. *Identification Of A Standard Of Review Is Not A Prerequisite To Resolution Of This Appeal.***

Barton avers that because *Heller* did not identify a standard of review for prohibitions on rights protected by the Second Amendment, this Court must take two steps to resolve his appeal (Barton Br.6-7, 25-26). First, he contends, the Court must identify and endorse strict scrutiny as the proper standard of review for a Second Amendment challenge to §922(g)(1).[FN4] And, second, Barton argues, the Court must remand the case to the District Court for application of strict scrutiny to §922(g)(1).

FN4. Barton actually advocates use of strict scrutiny for analysis of any prohibition that might violate the Second Amendment (Barton Br.22-23). Given that the only issue presented by the instant appeal is the constitutionality of §922(g)(1), to the extent that the Court accepts Barton's invitation to identify a standard, it need do no more than identify a standard applicable to §922(g)(1). Indeed, the standard of scrutiny applicable to Second Amendment claims likely may vary depending on the nature of the claim and the Government's underlying interests. Thus, not only does resolution of Barton's claim not require this Court to devise a general framework for analyzing Second Amendment claims, it also would be imprudent for the Court to do so given the present lack of guidance from the Supreme Court.

***21** These steps are unnecessary, however. As explained above, *Heller* (and now *McDonald,* 2010 WL 2555188, at *25) expressly forecloses Barton's challenge and thus obviates the need to identify a standard of review. And, assuming that Barton has any Second Amendment rights whatsoever, the statute passes constitutional muster under either strict scrutiny or intermediate scrutiny, again eliminating the need for the Court to identify a standard.[FN5] *See McCane,* 573 F.3d at 1050 (In upholding §922(g), "we need not address the standard of review applicable to gun dispossession laws-strict scrutiny, intermediate, rational basis, or something else-or the examination of the governmental interests in light of the standard of review.") (Tymkovich, J., concurring); *Vongxay,* 594 F.3d at 1118.[FN6]

FN5. Rational basis review is not appropriate here. *Heller,* 128 S.Ct. at 2817 n.27.

FN6. Barton relies on *United States v. Skoien,* 587 F.3d 803 (7th Cir. 2009), to aid his case (Barton Br.19, 27-28 & n.3), with the recognition that decision has its limits: the Court of Appeals for the Seventh Circuit recently vacated the panel decision. *United States v. Skoien,* No.08-3770, 2010 WL

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

1267262 (7th Cir. Feb 22, 2010). *Cf. Evans v. Circuit Court of Cook County,* 569 F.3d 665, 666-67 (7th Cir. 2009) (Vacated opinions lack precedential value.). Beyond this, however, *Skoien* addressed a domestic-violence misdemeanant's challenge to §922(g)(9), not a felon's challenge to §922(g)(1). The common-law tradition of felon forfeiture therefore had less direct bearing on *Skoien* than it has on this case. And, even *Skoien,* 587 F.3d at 812, acknowledged that, where the Second Amendment claimant is a convicted, violent criminal rather than one of the " 'law-abiding, responsible citizens' " with which *Heller* was concerned, his status as such "support[s] the application of a more lenient standard" than strict scrutiny.

***22 *CONCLUSION***

For the foregoing reasons, the Court should affirm Barton's judgment of conviction and sentence.

UNITED STATES OF AMERICA, v. James F. BARTON, Appellant.
2010 WL 2962436 (C.A.3 ) (Appellate Brief )

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

For Opinion See 633 F.3d 168

United States Court of Appeals, Third Circuit.
UNITED STATES OF AMERICA, Appellee,
v.
James F. BARTON, Jr., Appellant.
No. 09-2211.
April 28, 2010.

Appeal from Judgment of Conviction and Sentence Entered by the United States District Court for the Western District of Pennsylvania (Honorable Alan N. Bloch) at Criminal Action 07-cr-376

Brief of Appellant

David B. Chontos, PA I.D. # 53442, Chontos & Chontos, P.C., 561 Beulah Road, Turtle Creek, PA 15145, 412 825 5450, Counsel for Appellant.

***i *TABLE OF CONTENTS***

I. TABLE OF CITATIONS ... ii

II. STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION ... 1

III. STATEMENT OF ISSUE FOR REVIEW ... 2

IV. STATEMENT OF RELATED CASES ... 2

V. STATEMENT OF THE CASE ... 2

VI. STATEMENT OF THE FACTS ... 5

VII. STANDARD OF REVIEW ... 6

VII. SUMMARY OF ARGUMENT ... 6

VIII. ARGUMENT ... 7

A. Change and the Second Amendment: A Good Marriage ... 7

B. *Heller*: The Result But Lacking A Standard ... 10

C. The *Heller* Fallout in this Circuit ... 15

D. The Second Amendment Deserves Better: Out With Dicta, In With Strict Analysis ... 18

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

E. Remand: The Prudent Course of Action ... 25

***ii** IX. CONCLUSION ... 29

X. CERTIFICATIONS ... 30

A. Type Volume

B. Bar Membership

C. E-Brief/Hard Copy/Virus

XI. PROOF OF SERVICE ... 31

APPENDIX VOL. I ... A-1 to A-7

*APPENDIX VOL. II* ... A-8 to A-77

***TABLE OF CITATIONS***

CASES

*Burson v. Freeman*, 504 U.S. 191 (1992) ... 23

*City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985) ... 22

*Costigan v. Yost*, 334 Fed. Appx. 460 (3d Cir. 2009) ... 16, 17

*District of Columbia v. Heller*, ___ U.S. ___, 128 S.Ct. 2783, 1 L.Ed.2d 637 (2008) ... *passim*

*Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 127 S.Ct. 2652 (2007) ... 23

*Galli v. N.J. Meadowlands Comm'n.*, 490 F.3d 265 (3d Cir. 2007) ... 21

***iii** *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000) ... 20

*N. Jersey Media Group v. Ashcroft*, 308 F.3d 198 (3d Cir. 2002) ... 20

*Official Comm of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ... 21

*Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622 (1994) ... 23

*United States v. Anderson*, 559 F.3d 348 (5th Cir.), *cert. denied*, 129 S.Ct. 2814 (2009) ... 19

*United States v. Chester*, 10 U.S. App. LEXIS 3739 (4th Cir. 2010) ... 19, 26, 27

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) ... 9

*United States v. Fincher*, 538 F.3d 868 (8th Cir. 2009), *cert. denied*, 2009 U.S. LEXIS 1585 (2009) ... 19

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*United States v. Khami*, 2010 U.S. App.LEXIS 1649 (6th Cir. 2010) ... 19

*United States v. Marzzarella*, 595 F.Supp.2d 596 (W.D.Pa. 2009) ... 26

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), *cert. denied*, 2010 U.S. LEXIS 2009 (U.S. 2010) ... 19, 28, 29

*United States v. Ross*, 323 Fed.Appx. 117 (3d Cir. 2009) ... 16, 17

*United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) ... 19

***iv** *United States v. Rybar*, 103 F.3d 273 (3d Cir. 1996) ... 8

*United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009), *vacated by and rehearing en banc granted by*, 2010 U.S. App.LEXIS 6584 (7th Cir. Feb. 22, 2010) ... 19, 27, 28

*United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001) ... 6

*United States v. Stuckey*, 317 Fed.Appx. 48 (2d Cir. 2008) ... 19

*United States v. Tot*, 131 F.2d 261 (3d Cir. 1942) ... 8

*United States v. Virginia*, 518 U.S. 515 (1996) ... 23

*United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) ... 19

*United States v. Zuckerman*, 09 U.S. App.LEXIS 23446 (3d Cir. 2009) ... 17

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II ... 8

OTHER CITATIONS

Michael C. Dorf, *What Does the Second Amendment Mean Today*?, 76 Chi.-Kent L. Rev. 291 (2000) ... 9

Roger I. Roots, *The Approaching Death of the Collective Right Theory of the Second Amendment*, 39 Duq. L.Rev. 71, 72-73 (2000) ... 9

***1 II. *STATEMENT OF SUBJECT MATTER JURISDICTION & APPELLATE JURISDICTION***

On October 24, 2007, an indictment was filed in the Western District of Pennsylvania charging James F. Barton, Jr. ("Barton") with possession of a firearm and possession of ammunition after having been convicted of a felony in violation of 18 U.S.C. Section 922(g)(1). Appendix, pgs. 17, 18, 19 (Hereinafter, "A- ..."). Because that charge constitutes an offense against the United States, the district court had original jurisdiction pursuant to 18 U.S.C. Section 3231.

This is an appeal from the final judgment and sentence imposed on April 13, 2009. A-2-7; A-15. Barton filed his *Notice of Appeal* on April 22, 2009. A-1, 15. The United States Court of Appeals for the Third Circuit has jurisdiction pursuant to 28 U.S.C. Section 1291 and 18 U.S.C. Section 3742(a)(1).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

***2 III. *STATEMENT OF ISSUE FOR REVIEW***

Is 18 U.S.C. Section 922(g)(1), which prohibits the possession of a firearm by a person previously convicted of a felony offense, unconstitutional, either facially or as applied, because it conflicts with the Second Amendment's right to bear arms?

*Issue Preservation* Barton sought dismissal of the indictment. A- 12 #36; A-23-27. District court denied request. A- 12 #40; A-28-30. Plea agreement allowed for preservation of issue. A-39, 40; A-58. L.AR. 28.1(a)(1).

**IV. *STATEMENT OF RELATED CASES AND PROCEEDINGS***

Barton is aware of no cases or proceedings related to this appeal that are before this court or the district court.

**V. *STATEMENT OF THE CASE***

On October 24, 2007, a grand jury indicted Barton. He was charged in a two-count indictment with being a felon in ***3** possession of a firearm, 18 U.S.C. Section 922(g)(1), and being a felon in possession of ammunition, 18 U.S.C. 922(g)(1). On July 7, 2008, Barton sought the dismissal of both charges by motion. The solitary theme of the motion was the, then, 11 day old decision *of District of Columbia v. Heller*, ___ U.S. ___, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). A-23-27. Barton argued that “he has the Second Amendment right to possess those items in his home and any prosecution based upon those items would violate his constitutional rights under the second Amendment.” A- 25. The government filed a reply. Barton filed a response. The district court held a hearing on July 31st. Neither party accepted the district court's invitation to supplement the record with evidence or argument. A-28, 29. The district court denied Barton's request. It concluded “that *Heller* does not render Section 922(g) (1) unconstitutional either on its face or as applied in this case.” A-29. Absent from the court's discussion is what standard of review was employed to reach its conclusion. Instead, the district court relied upon a statement in *Heller* that the Second ***4** Amendment right was “not unlimited” and that “nothing, in our opinion, should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.” A-29, 30. A trial date was set.

On August 5, 2009, Barton did not proceed to trial. He changed his plea to one of guilt through a written agreement. The plea agreement was conditional. A-39, 40. It allowed for Barton to argue in this Court if “Section 922(g) is unconstitutional under the Second Amendment to the United States Constitution, either on its face or as applied in this case.” A-39, 40.

Barton's sentencing followed. A pre-sentence report was generated and both parties filed their respective positions. The district court issued tentative findings and Barton authored sentencing memorandums in support of a variance. On April 13, 2009, Barton was sentenced to 51 months imprisonment followed by 3 years of supervised release. A-3, 4, 15 #58. It is from that sentence that Barton now appeals.

***5 VI. *STATEMENT OF THE FACTS***

The facts underlying this matter are brief and are agreed to as part of the plea agreement between the parties. A-70-74. On April 19, 2007, a police informant called Barton on the phone. Unbeknownst to him, the call was being recorded by law enforcement officers. The phone call revealed a deal was made. Barton would sell a firearm to the informant. The transaction was to take place at Barton's residence, 150 Chestnut Ridge Road, Washington, Pennsylvania.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

On April 20, 2007, the deal was consummated. The informant came to Barton's house a little after four in the afternoon. Barton got $300. The informant got an Iver Johnson 32 caliber revolver loaded with five rounds and a box of ammo. The gun's serial number had been obliterated by Barton.

This event led law enforcement to seek permission to search Barton's home. A search warrant was obtained and executed on May 10, 2007. Barton was home at the time. Inside ***6** Barton's home, law enforcement seized 15 firearms (7 pistols, 5 rifles and 3 shotguns) and various types of ammunition. The 15 firearms all were made in a state other than Pennsylvania. Prior to the search, Barton had been convicted 12 and 14 years earlier of a felony drug offense and receiving stolen property. Both convictions were in the Court of Common Pleas of Washington County.

**VII. *STANDARD OF REVIEW***

Whether a statute violates a provision of the Constitution is a question of law and is subject to *de novo* review. *United States v. Singletary*, 268 F.3d 196,198 (3d Cir. 2001).

**VIII. *SUMMARY OF ARGUMENT***

The Second Amendment enshrines a personal right to bear arms. A core component of this right is the ability of a person to defend himself by using a firearm while in his home. In *Heller*, our U.S. Supreme Court obliterated years of precedent by ***7** embracing a new theory; one based upon an individual right to possess a firearm. This right is fundamental and any regulation burdening that right should be subject to strict scrutiny. That level of review, however, was not employed by the district court. In fact, the district court did not even mention, let alone, use a standard of review as a means to its end. It simply clung to language from *Heller* which was not pertinent to that decision. This dicta needs replaced by analysis. Analysis, which in the first instance, should happen in the district court. This sequence pays homage to meaningful appellate review and justifies a remand.

**VIII. *ARGUMENT***

**The prohibition in 18 U.S.C. Section 922(g)(1) violates the Second Amendment, on its face and in its application, because it impermissibly burdens the right to keep and bear arms.**

**A. Change and the Second Amendment: A Good Marriage**

***8** The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." "U.S. Const. amend. II. For over 65 years, this group of phrases was understood by this Court of Appeals as setting forth a collective right tied to militia service. *United States v. Tot,* 131 F.2d 261,266 (3d Cir. 1942)("It is abundantly clear both from the discussions of this amendment contemporaneous with its proposal and adoption and those of learned writers since [] that this amendment, unlike those providing for protection of free speech and freedom of religion, was not adopted with individual rights in mind, but as a protection for the States in the maintenance of their militia organizations against possible encroachments by the federal power."); *United States v. Rybar*, 103 F.3d 273, 286 (3d Cir. 1996)("Rybar's invocation of this statute does nothing to establish that his firearm possession bears a reasonable relationship to 'the preservation or efficiency of a well regulated militia, [citing, ***9** *United States v. Miller*, 307 U.S. 174 (1939)]' ".). Come year 2000, a groundswell of academic opposition was mounting against this collective rights approach. *See,* Michael C. Dorf, *What Does the Second Amendment Mean Today*?, 76 Chi.-Kent L. Rev. 291 (2000) (noting that a "growing body of scholarship argues

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

that the Second Amendment protects a right of individuals to possess firearms, regardless of whether those individuals are organized in state militias"); Roger I. Roots, *The Approaching Death of the Collective Right Theory of the Second Amendment,* 39 Duq. L.Rev. 71, 72-73 (2000)(observing that a "torrential backlash of scholarship undermining the collective right theory of the Second Amendment now makes scholarly support for the collective right theory increasingly difficult to justify"). From this work, the Fifth Circuit became the first appellate court to recognize an individual right to bear arms in *United States v. Emerson,* 270 F.3d 203 (5th Cir. 2001) ("We hold, consistent with *Miller*, that it protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to ***10** privately possess and bear their own firearms, such as the pistol involved here, that are suitable as personal, individual weapons and are not of the general kind or type excluded by *Miller")*. The chorus from academia and the decision in *Emerson* led to our Supreme Court's decision in *District of Columbia v. Heller,* ___ U.S. ___, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

### B. *Heller*: The Result But Lacking A Standard

Heller was a police officer authorized to carry a firearm while on duty at the Federal Judicial Center in Washington. He applied for a permit to possess a handgun in his home, but was denied. At the time, the District's gun laws prohibited the possession of unregistered firearms, precluded the registration of handguns, and required residents who legally possessed other firearms (rifles or shotguns) to keep them " 'unloaded and dissembled or bound by a trigger lock or similar device" unless they are located in a place of business or are being used for ***11** lawful recreation purposes." 128 S.Ct. at 2788. Heller sued, arguing that the laws violated his Second Amendment rights. By the time the case reached our Supreme Court, the Court framed the issue as "whether a District of Columbia prohibition on the possession of usable handguns in the home violates the Second Amendment to the Constitution." Id., at 2787-2788. The Court, after engaging in a lengthy review of the historical basis for the Second Amendment and its meaning at the time of the Founding and thereafter, concluded that such a violation had taken place.

Before embarking on its historical analysis, the Court acknowledged that the Second Amendment has two parts, a prefatory clause - "[a] well regulated Militia, being necessary to the security of a free state" - and an operative clause - "the right of the people to keep and bear Arms, shall not be infringed." "The former," the Court concluded, "does not limit the latter grammatically, but rather announces a purpose." Id., at 2789. "[A]part from that clarifying function," the Court wrote, "a ***12** prefatory clause does not limit or expand the scope of the operative clause." Id. With that grammatical point made, the Court proceeded to a historical analysis of the language of the Second Amendment itself.

The Court first dissected and analyzed each part of the operative clause. Noting that the "first salient feature of the operative clause is that it codifies a 'right of the people' ", the Court concluded that reading the Amendment to protect only firearm possession in connection with militia service "fits poorly with the operative clause's description of the holder of that right as 'the people.' " *Id.*, at 2790, 2791. The Court, therefore, concluded that there was a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." Id., at 2791.

On the meaning of the phrase "keep and bear Arms," the Court concluded that "Arms" had the same meaning today as it did in the 18th Century and applied "then, as now, to weapons ***13** that were not specifically designed for military use and were not employed in a military capacity." *Id.*, at 2791. To "keep" arms at the time of the Founding was "simply a common way of referring to possessing arms, for militiamen and everyone else." Id. at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2792 (emphasis in original). "Bearing" arms, the Court concluded "from our review of founding-era sources" referred to "carrying for a particular purpose - confrontation." Id. at 2793.

Putting those pieces together, the Court held that "they guarantee an individual right to possess and carry weapons in case of confrontation." Id., at 2797. That conclusion "is strongly confirmed by the historical background of the Second Amendment," which, like the First and Fourth Amendments, "codified a **pre-existing** right." *Id.* (emphasis in original). That historical background, which the Court reviews in some detail, begins with the Restoration of the English monarchy in 1660 and extends through the Founding and the period shortly after the Second Amendment was adopted. After examining "analogous ***14** arms-bearing rights in state constitutions" of the Founding era, the Court concluded that to treat the right as anything other than an individual one "would thus treat this Federal Second Amendment as an odd outlier, protecting a right unknown in state constitutions or at English common law . . .." Id., at 2802, 2803. Further examination of the interpretation of the Second Amendment from its enactment through the 19th Century showed that "virtually all interpreters of the Second Amendment in the century after its enactment interpreted the amendment as we do." *Id.*, at 2805.

The individual nature of the right is neither proscribed nor limited by the prefatory clause. The clause "announces the purpose for which the right was codified: to prevent elimination of the militia," but does not suggest that it "was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting." Id., at 2801. The Court characterized the statement of one dissenter that ***15** "individual self defense is merely a 'subsidiary interest' " as "profoundly mistaken" and emphasized that self-defense "was the **central component** of the right itself." *Id.*(emphasis in original). With regards to handguns in particular, the Court stated that "the American people have considered the handgun to be the quintessential self-defense weapon." Id., at 2818.

That right sounds with particular strength when exercised in the home. In addressing the specific D.C. law at issue, the Court noted that its limitations extend "to the home, where the need for defense of self, family, and property is most acute." Id., at 2817. "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights," the Court continued, "banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family' would fail constitutional muster." Id. at 2817-2818 (footnote and citation omitted).

### C. The *Heller* Fallout in this Circuit

***16** In the 22 months since *Heller*, this Court has discussed that decision on three occasions. In *United States v. Ross*, 323 Fed. Appx. 117 (3d Cir. 2009) (Scirica, Sloviter and Fisher), the Court addressed the argument of whether Section 922(o), which prohibits the possession of a machine gun, is unconstitutional pursuant to *Heller*. In concluding that *Heller* does not support the "challenge to the constitutionality of a statute criminalizing the possession of a machine gun", the panel was influenced by *Heller's* limitations. The *Heller* court "was careful to state that it did 'not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation.' " *Id.*, at 120 (emphasis in original). The *Ross* panel was also influenced by the Supreme Court's *dicta* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill". *Id.*, at 120, *citing*, *Heller* at 128 S.Ct. 2816-17.

In *Costigan v. Yost*, 334 Fed. Appx. 460 (3d Cir. 2009)(per curiam)(Scirica, Weis and Garth), the Court faced a ***17** *Heller* based argument that a conviction for possession of a firearm during the commission of a crime of violence was unconstitutional. In rejecting the habeas corpus based assertion, the Court relied upon the *Heller*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

holding and that court's admonition that "[l]ike most rights, the right secured by the Second Amendment is not unlimited" before concluding that "*Heller* did not address - let alone invalidate - section 924(c)(1)(A), ...". *Id.*, at 462.

In *United States v. Zuckerman*, 2009 U.S. App. LEXIS 23446 (3d Cir. 2009) (per curiam)(Sloviter, Ambro and Smith), the Court quickly dispatched a *Heller* based claim when it concluded "*Heller* does not impugn the prosecutor's motivation for seeking the second indictment against Zuckerman." *Id.*, *5, f.n. 2.

While *Ross*, the machine gun case, contains the most discussion, it has no cross-over appeal. As with *Heller*, *Ross* failed to identify the most appropriate level of scrutiny that is to be used in reviewing such a statutory challenge and, then, did not apply that chosen level of scrutiny to an analysis of 922(o). Those same ***18** missteps infiltrated the district court's thinking here.

**D. The Second Amendment Deserves Better: Out With Dicta, In With Strict Analysis**

Although the right guaranteed by the Second Amendment is an individual one, the *Heller* court observed that it, "[l]ike most rights . . . is not unlimited." 128 S.Ct. at 2816. For example, the Court noted that "the majority of 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." Id. Although the Court clearly stated that "we do not undertake an exhaustive analysis today of the full scope of the Second Amendment," it nonetheless stated that "*nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons* . . . ." Id. at 2816-2817 (emphasis supplied).

Several courts, including the district court in this case, have relied, to varying degrees, on that emphasized statement to ***19** deny Second Amendment challenges to various federal firearms prohibitions. A-29, 30. *See*, *United States v. Stuckey*, 317 Fed. Appx. 48 (2d Cir. 2008); *United States v. Ross*, 323 Fed. Appx. 117 (3d Cir. 2009); *United States v. Chester*, 2010 U.S. App. LEXIS 3739 (4th Cir. 2010); *United States v. Anderson*, 559 F.3d 348 (5th Cir.), *cert. denied*, 129 S.Ct. 2814, 174 L.Ed.2d 308 (2009); *United States v. Khami* 2010 U.S. App. LEXIS 1649 (6th Cir. 2010); *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2009), *cert denied*, 2009 U.S. LEXIS 1585 (2009); *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010); *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), *cert. denied*, 2010 U.S. LEXIS 2009 (U.S. Mar. 1, 2010); *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010).[FN1] That reliance is misplaced.

FN1. Barton also brings to the Court's attention *United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009) (Court stated that simple reliance on the *Heller* language about long-standing gun control statutes would not be sufficient to justify the continued constitutionality of a statute), *vacated by and rehearing en banc granted by United States v. Skoien*, 2010 U.S. App. LEXIS 6584 (7th Cir. Feb. 22, 2010).

***20** The specific issue before the *Heller* court was the viability of the District of Columbia's almost total ban on the possession of firearms under the Second Amendment. Anything beyond the historical analysis and conclusion about the basic parameters of the Second Amendment right was peripheral to that issue and not necessary to the holding. In short, it was dicta.

This Circuit has adopted the Seventh Circuit's understanding of dicta. "Chief Judge Posner has aptly defined dictum as 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding--that, being peripheral, may not have received the full and careful consideration of the court that uttered it.' " *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606,612 (3d Cir. 2000)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*quoting*, *Sarnoff v. American Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986). Dicta lacks the legal muscle of a holding. *N. Jersey Media Group v. Ashcroft*, 308 F.3d 198,201 (3d Cir. 2002). However, Barton is not blind to the fact that such tangential statements can have persuasive value and can be ***21** accorded as much weight as a reviewing court deems appropriate, *Galli v. N.J. Meadowlands Comm'n.*, 490 F.3d 265,274 (3d Cir. 2007), especially if that dicta comes from the Supreme Court. *Official Comm of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548,561 (3d Cir. 2003) ("[W]e do not view [Supreme Court] dicta lightly.").

The *Heller* court itself recognized the limits of its holding. In response to dissent criticism for not being more forthcoming on how its holding might apply in other cases, the Court stated that "since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than *Reynolds v. United States*, 98 U.S. 145 (1879), our first in depth Free Exercise Clause case, left that area in a state of utter certainty." *Heller*, 128 S.Ct. at 2821. "[T]here will be time enough," the Court concluded, "to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Id*. The Court's dicta cannot be, as it was for the district court, the ***22** beginning and end of the analysis in this case.

*Heller* did not announce the proper standard to use when analyzing prohibitions that might violate the Second Amendment, holding that the law before it must fail "[u]nder any standard of scrutiny that we have applied to enumerated constitutional rights." 128 S.Ct. at 2817. However, in a footnote, the Court suggests that the scrutiny applied must be higher than the rational basis test, for "this law, like almost all laws, would pass rational-basis scrutiny." *Id.* at 2817, fn. 27. That is confirmed by the Court's statement that it was unaware of any "enumerated constitutional right whose core protection has been subjected to a freestanding 'interest balancing' approach." Id., at 2821. That leaves either intermediate or strict scrutiny as the proper level of review. Intermediate scrutiny is inappropriate, as it has been applied only in the limited areas of content-neutral speech restrictions and classifications relating to illegitimacy and sex. *See*, ***23***City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440-441 (1985); *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 641-642 (1994). As Justice Scalia once explained, intermediate scrutiny is of dubious analytical value because the Court "essentially appl[ied] it when it seems like a good idea to load the dice." *United States v. Virginia*, 518 U.S. 515, 568 (1996) (Scalia, J., dissenting).

The proper standard of review for issues involving the right protected by the Second Amendment is strict scrutiny. Traditionally, strict scrutiny has been the standard applied to laws that regulate "fundamental" rights. *See*, e.g., *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 127 S.Ct. 2652 (2007). A regulation only survives strict scrutiny if it is "necessary to serve a compelling state interest and ... is narrowly drawn to achieve that end." *Burson v. Freeman*, 504 U.S. 191, 198 (1992)(internal quotations and citations omitted). A preexisting individual right enshrined in the Bill of Rights without reservation is, by definition, a fundamental right. That was the understanding of the Founders, as the Court recognized by ***24** concluding that at "the time of the founding, the right to have arms had become fundamental for English subjects." *Heller*, 128 S.Ct. at 2798.

The Court also drew several comparisons between the fundamental rights protected by the First Amendment and the right enshrined in the Second, suggesting that the review of any restrictions on them deserve similar scrutiny. First, the Court notes that both the First and Second Amendments are rare among those in the Bill of Rights in using the term "right of the people." *Heller*, 128 S.Ct. at 2790. Second, the Court noted that, just as the First Amendment is read to protect forms of communication beyond those in existence at the Founding, so too should the Second Amendment be read to protect types of arms not in existence at that time. Id. Third, the Court notes that the Second Amendment right is not unlimited, "just as the First Amendment's right of free speech was not."

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Id. at 2799. Finally, and perhaps most illuminating, the Court noted that while the Second Amendment right had languished unspecified for ***25** decades, it took almost 150 years for the Court to strike down a law as violative of the First Amendment's protection of free speech. Id., at 2816. The parallels between the rights enshrined by the First and Second Amendments show that strict scrutiny review is the only way to go.

**E. Remand: The Prudent Course of Action**

A core principle of our system of justice is that a court of appeals reviews matters which have taken place in the district court. This review process is limited. An initial filter is the assertions of error raised by the parties. This invariably leads to what matters an appeals court can review and what legal standard will be applied to the claim. In this case, the record supporting these vital appellate devices is inadequate and needs supplemented.

As evident from our argument, *Heller* did not select a standard of review to apply in situations, like the present, where a Congressional act is claimed to be in violation of our Constitution. ***26** This Circuit's history with *Heller* shows the correct standard of review has not even been identified, let alone, analyzed.[FN2] The same conclusion can be said about the 2nd, 5th, 6th, 8th, 9th, 10th and 11th Circuits.

FN2. *See*, *United States v. Marzzarella*, 595 F. Supp. 2d. 596 (W.D. Pa. 2009)(J. McLaughlin)(Court discusses without deciding what level of scrutiny must apply to a *Heller* based challenge to 922(k)).

The 4th and 7th Circuits have taken the right approach in this *post-Heller* era. In *Chester*, "the district court did not address whether *Heller* required the Government to justify individual laws that restrict Second Amendment rights. Instead, it dismissed [his] claim in reliance on *Heller's* much-noted language as to 'presumptively lawful' gun regulations--notably, the felon-dispossession laws." 2010 U.S. App. LEXIS 3739 at *2 (4th Cir. Feb. 23, 2010). This was error because "the district court neither determined the most appropriate level of scrutiny of Section 922(g), nor did it substantively apply that level of scrutiny to an analysis of Section 922(g)(9)." *Id.*, at *3. As a result, the district ***27** court ruling was vacated and the case was remanded with instructions. Those instructions were:

"On remand, Chester must identify the basis of his claim to Second Amendment protection and make a record to support it; to which the Government may respond. Then the district court can rule based on a full and complete record as to what level of scrutiny applies, thereby creating a sufficient record to permit appellate review."

*Id.*, at* 19.

In *Skoien*, the government opposed the *Heller* based argument regarding 922(g)(9) "almost entirely on *Heller's* reference to the presumptive validity of felon-dispossession laws and reasoned by analogy that Section 922(g)(9) therefore passes constitutional muster. That's not enough." 587 F.3d at 806 (7th Cir. Nov. 18, 2009). The record in *Skoien* was inadequate for meaningful appellate review. Id., at 815. The Court attributed that deficiency to *Heller's* failure to "establish a standard of review" and thus, "the government did not know what its burden would be." Id. The trial judge "proceeded on the assumption that the highest standard of scrutiny applied and then relied almost ***28** entirely on conclusory reasoning by analogy from *Heller's* reference to the 'presumptive' constitutionality of felon-dispossession laws. That was a mistake." Id. Because of these mistakes, the case was remanded for the district court to rebuild the model but, this time, with the right set of directions.[FN3]

FN3. Barton recognizes the panel opinion in *Skoien* has been vacated and an *en banc* hearing has been granted. 2010 U.S. App. LEXIS 6584 (Opening brief for Appellant Steven Skoien: March 26, 2010; Brief for Appellee United States: April 26, 2010; Reply brief for Appellant Skoien: May 10, 2010). Just

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

as with the aforementioned discussion on dicta, Barton trusts this Court will give the *Skoien* decision whatever persuasive value it deems appropriate.

An additional reason to remand this matter is to allow for the institutional development of the law. In his concurring opinion in *McCane*, 573 F.3d 1037, Judge Tymkovich of the 10th Circuit Court of Appeals expressed concern that the *Heller* "dictum [would] inhibit[] lower courts from exploring the contours *of Heller* and its application to firearm restrictions." *Id.*, at 1047-1048. How so? District courts would "simply reference the applicable *Heller* dictum and move on" "rather than seriously ***29** wrestling with how to apply this new Second Amendment rule". *Id*., at 1050. Hopefully, the dire predictions of Judge Tymkovich do not take root in this Circuit.

## IX. *CONCLUSION*

This Court should vacate the conviction and remand the matter with specific instructions. The district court should be directed to engage the parties in briefing, argument and evidentiary presentation, if need be, regarding the applicable standard of review and then its application to the Barton facts.

Appendix not available.

UNITED STATES OF AMERICA, Appellee, v. James F. BARTON, Jr., Appellant.
2010 WL 2504123 (C.A.3 ) (Appellate Brief )

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Not Reported in F.Supp.2d, 2010 WL 1607836 (W.D.Wis.)
**(Cite as: 2010 WL 1607836 (W.D.Wis.))**

H
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. Wisconsin.
UNITED STATES of America, Plaintiff,
v.
Raymond M. DAVIS, Sr., Defendant.

No. 09–CR–94–BBC.
April 20, 2010.

Rita Rumbelow, United States Attorney's Office, Madison, WI, for Plaintiff.

William Jones, Jones Law Firm, Madison, WI, for Defendant.

OPINION AND ORDER

BARBARA B. CRABB, District Judge.

***1** Defendant Raymond M. Davis, Sr. was charged in a one-count indictment as a felon in unlawful possession of a .38 caliber revolver and .38 caliber ammunition, in violation of 18 U.S.C. § 922(g)(1). He has moved to dismiss the indictment against him, contending that the charge against him violates his constitutional right to possess a handgun in his residence for self-defense, as recognized by the Supreme Court in *District of Columbia v. Heller,* ––U.S. ––––, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

Defendant did not object to the charge until after he had entered a plea of guilty to the indictment and was awaiting sentencing. In some circumstances, the failure to object to an indictment before pleading guilty bars a defendant from objecting later, such as when the challenge is to a defect in the institution of the prosecution, to any defect in the indictment itself, to an allegedly illegal seizure of evidence or to misjoinder. Fed.R.Crim.P. 12(b). However, a defendant who contends that the indictment fails to state an offense or that it does not invoke the court's jurisdiction may raise a corresponding objection at any time while the case is pending. *Id.* Thus, although defendant's objection is late, he is not barred from arguing that the indictment does not state a constitutionally valid offense against him.

A number of circuits have considered challenges such as defendant's since the Supreme Court decided in *Heller* that the Second Amendment protects the right of “law-abiding responsible citizens to use arms in defense of hearth and home.” *Heller,* 128 S.Ct. at 2821. Most have dismissed the challenges on the ground that the Supreme Court meant it when it said in *Heller,* 128 S.Ct. at 2816–17, that nothing in the opinion “should be taken to cast doubts on certain laws, including those prohibiting the possession of firearms by felons.” *E.g., United States v. Rozier,* 598 F.3d 768, 2010 WL 724338 (11th Cir. Mar.4, 2010); *United States v. Vongxay,* 594 F.3d 1111 (9th Cir.2010); *United States v. Anderson,* 559 F.3d 348, 352 (5th Cir.2009); *United States v. McCane,* 573 F.3d 1037, 1047 (10th Cir.2009). I am not persuaded that a different result is required in this case.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

It is true that a panel of the Seventh Circuit suggested that a close analysis of the justification for a firearms restriction might be appropriate when the rights of nonfelons are at stake. In *United States v. Skoien,* 597 F.3d 803 (7th Cir.2010), the court held that when the issue was the constitutionality of a lifetime ban on possession of firearms by persons convicted of misdemeanor domestic violence offenses, it was the government's responsibility to show the justification for any restriction on the Second Amendment right of self-defense. The Fourth Circuit found the reasoning in *Skoien* useful as it related to cases that fell outside the specific exceptions noted in *Heller*. *United States v. Chester,* 2010 WL 675261, *4 (4th Cir. Feb.23, 2010) (unpublished).

***2** Now that the court of appeals has withdrawn its opinion in *Skoien* and set it for hearing en banc, it has no precedential effect on the district courts within the circuit. Even if it did, I would not be inclined to find that this case is one in which the government should be required to justify the restrictions imposed on defendant, despite the substantial burden that the restriction places on him. He has a prior felony conviction for a crime (distribution of heroin) that Congress has determined is a qualifying crime for a finding of armed career criminal. § 924(e)(1) & (2)(A). As a convicted felon, he falls outside the category of persons identified in *Heller* as entitled to the protection of the Second Amendment: the law-abiding and the responsible. Moreover, his situation is not one in which the crime is an old one and he has subsequently lived a law-abiding life. He was convicted in 1993, absconded before he could be imprisoned and did not begin serving his sentence until 1996. He was not released from custody until 2003 and did not complete his period of supervised release until January 2005. By his own admission, he has been unable to stop his use of controlled substances despite his participation in a number of treatment programs.

Finally, defendant will have an opportunity to raise the issue on appeal. If it is error to deny his motion to dismiss, the court of appeals will correct the error.

ORDER

IT IS ORDERED that defendant Raymond M. Davis's motion to dismiss the indictment against him is DENIED. Counsel for the government and for defendant are to consult with the clerk's office on a prompt date for sentencing.

W.D.Wis.,2010.
U.S. v. Davis
Not Reported in F.Supp.2d, 2010 WL 1607836 (W.D.Wis.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Not Reported in F.Supp.2d, 2010 WL 4237970 (D.Nev.)
**(Cite as: 2010 WL 4237970 (D.Nev.))**

H
Only the Westlaw citation is currently available.

United States District Court,
D. Nevada.
UNITED STATES of America, Plaintiff,
v.
John LIGON, Defendant.

No. 3:04–cr–00185–HDM.
Oct. 20, 2010.

Robert Don Gifford, II, U.S. Attorney's Office, Reno, NV, for Plaintiff.

Scott N. Freeman, Law Offices of Freeman & Routsis, A.P.L.C., Reno, NV, for Defendant.

ORDER

HOWARD D. McKIBBEN, District Judge.

***1** Defendant moves for a writ of error coram nobis, asking the court to vacate his judgment of conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant asserts the statute is unconstitutional as applied to him. In the alternative, defendant asks the court to declare that continuing application of the § 922(g)(1) disqualification to him is unconstitutional because it violates his Second Amendment right to bear arms and his Fifth Amendment right to procedural due process.

On April 11, 2005, the defendant pleaded guilty to one count of felon in possession of a firearm.[FN1] Defendant's only felony conviction at the time of the indictment was that for stealing government property valued at more than $1,000. The theft conviction was overturned by the Court of Appeals on March 21, 2006, because the government had failed to introduce evidence that the property had a face, par, or market value of more than $1,000. The government had introduced evidence of archaeological value.

FN1. The indictment had charged thirty counts of felon in possession, and one count of forfeiture. The charges arose from a search of a home owned by defendant in September 2004, after defendant was sentenced and judgment entered on a charge of theft of government property.

Defendant was sentenced on the felon in possession charge on June 13, 2005, and judgment was entered on June 14, 2005. He received probation and a fine, and forfeited a number of firearms. By court order, defendant's probation terminated as of December 1, 2006. Defendant did not file a direct appeal or any other collateral attack on this conviction until the present motion seeking coram nobis relief.

**I. Waiver**

The government argues that defendant waived his right to collaterally attack his conviction. The plea agreement pursuant to which defendant pleaded guilty to the § 922(g) charge states that defendant Ligon

> knowingly and expressly waives his right to appeal [his sentence] ... *and further waives any right to collaterally attack any matter in connection with this prosecution* and his right to appeal any other aspect of his con-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

viction or sentence. The defendant reserves only the right to appeal any sentence imposed to the extent, but only to the extent, that the sentence is an upward departure and outside the range established by the applicable sentencing guidelines.

(Def. Plea Agmt. 2–3) (emphasis added).

A petition for a writ of error coram nobis is a collateral attack on a criminal conviction. *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir.1994); *see also* *United States v. Chavez–Salais,* 337 F.3d 1170, 1172 (10th Cir.2003); *United States v. Allen,* 2009 WL 961468, at *3 (N.D.Cal.2009). Courts will enforce a waiver if "(1) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal ... and (2) the waiver is 'knowingly and voluntarily made.' " *United States v. Martinez,* 143 F.3d 1266, 1270–71 (9th Cir.1998).

Defendant does not contest that the language of the waiver encompasses his petition for a writ of error coram nobis. Defendant argues only that (1) the waiver was not knowingly and voluntarily made, and (2) enforcement of the waiver would result in a miscarriage of justice.

***2** Defendant argues that his waiver was not knowing and voluntary because he believed that if his underlying felony were reversed that his right to carry arms would automatically be restored. He argues that had he been advised this would not be the case, he would not have agreed to the waiver. This misunderstanding of the consequences, defendant argues, renders his waiver unenforceable.

First, defendant cites a First Circuit case, *United States v. Padilla,* 578 F.3d 23, 30 (1st Cir.2009) for this last proposition. *Padilla,* however, is distinguishable from this case. In *Padilla,* the written waiver of appellate rights was straightforward. The judge, however, made misleading statements during the plea colloquy that resulted in confusion as to the effects of the defendant's waiver. Similar facts are not alleged in this case.

In fact, defendant's own declaration confirms that his attorney told him when he pleaded guilty that he was giving up his right to appeal and that the only avenue for reversing his conviction would be through a presidential pardon. (Ligon Decl. ¶ 2). Defendant's assumptions about other ways to secure a reversal of his conviction do not render the waiver unknowing and involuntary.

Second, defendant argues that even if he has waived his right to appeal, the court may consider his contentions where doing so would prevent a miscarriage of justice. *United States v. Gwinnett,* 483 F.3d 200, 201 (3d Cir.2007), *cited with approval by* *United States v. Jacobo Castillo,* 496 F.3d 947, 957 (9th Cir.2007).[FN2] While the defendant argues that continuing application of his § 922(g) conviction is resulting in a loss of a fundamental right—his right to bear arms—and that therefore enforcement of his waiver would result in a miscarriage of justice, the court is not persuaded. At the time of his arrest, defendant was on release and awaiting self-surrender for his prison term on the theft conviction. He was found in possession of more than thirty firearms, and according to the government at the hearing on defendant's motion, five of those firearms were stolen. He admittedly used the firearms for hunting or as part of a collection. At the time, there was no indication the defendant was using any of the firearms for protection. At the hearing on defendant's motion, the government also asserted that in addition to the firearms, drugs and drug paraphernalia were found in the house. The defendant received substantial benefits by signing the plea agreement in exchange for waiving his right to file postconviction writs such as the one before the court. In exchange for his waiver the government dismissed twenty-nine felon in possession counts. Under the facts of this case, the court concludes that the defendant's waiver was freely and voluntarily given and that denial of relief will not result in a miscarriage of justice.[FN3]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN2. Although the Ninth Circuit in *Jacbo–Castillo* cited *Gwinnet's* holding with approval, the issue in *Jacobo–Castillo* was whether the circuit court had jurisdiction to hear the defendant's appeal despite his waiver of appellate rights, not under what standard the waiver might be disregarded. Recently, an unpublished opinion stated that the Ninth Circuit has not adopted a "miscarriage of justice" exception to enforcement of valid appeal waivers. *See United States v. Ayala,* 316 Fed. App'x 636, at *1 (9th Cir.2009).

FN3. Avenues of relief available to the defendant include an application for presidential pardon and a petition under 18 U.S.C. § 925(c) to the extent Congress provides funding for its implementation.

The defendant does not argue that his petition for relief falls outside the scope of his waiver. A defendant's waiver does not encompass assertions that the statute under which he was convicted is unconstitutional, as such arguments are jurisdictional in nature, *see United States v. Bell,* 70 F.3d 495, 497 (7th Cir.1995) (citing *United States v. Montilla,* 870 F.2d 549 (9th Cir.1989) and *Marzano v. Kincheloe,* 915 F.2d 549 (9th Cir.1990)); *see also United States v. Perlaza,* 439 F.3d 1149, 1167 n.21 (9th Cir.2006), although at least one circuit has suggested that as-applied challenges are not jurisdictional, *see United States v. Seay,* ––– F.3d ––––, 2010 WL 3489042, at *2 (6th Cir. Sept. 8, 2010). Moreover, a defendant waives only that which is "clearly contemplated by, and subject to, his plea agreement waiver." *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993). It is at least arguable that because the right defendant asserts (the individual right to bear arms) did not exist at the time he entered his plea, such right was not subject to his plea agreement waiver. However, the defendant has not raised this issue and the court finds that on the grounds for relief raised by defendant, defendant waived his right to appeal and is therefore barred from seeking coram nobis relief.

***3** Nevertheless, in order to address all the issues raised in the defendant's motion, the court will consider whether such relief would be available to defendant if he had not waived that right.

**II. Coram Nobis Relief**

"Coram nobis is an extraordinary writ, used only to review errors of the most fundamental character." *Matus–Leva v. United States,* 287 F.3d 758, 760 (9th Cir.2002). It may be used to challenge an unlawful or unconstitutional conviction where the defendant is no longer in custody, and may be issued "under circumstances compelling such action to achieve justice." *United States v. Morgan,* 346 U.S. 502, 511 (1954); *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir.1987). The court has the power to issue a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *Matus–Leva,* 287 F.3d at 760.

A defendant seeking coram nobis relief must establish four elements: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of a fundamental character. *Hirabayashi,* 828 F.2d at 604; *Matus–Leva,* 287 F.3d at 760. Failure to establish any one of the elements is fatal. *Matus–Leva,* 287 F.3d at 760.

The government concedes that defendant can show the first and third elements but argues that he cannot prove the second and fourth because: (1) the conviction is valid and lawful, both as to the Second Amendment claim as well as the Fifth Amendment procedural due process claim; and (2) defendant unjustifiably delayed in bringing his motion.

A. Timeliness of Motion

Defendant waited more than four years after his conviction to seek relief—nearly four years after his under-

lying predicate conviction was overturned. Defendant asserts he had no basis for an attack until *District of Columbia v. Heller,* 128 S.Ct. 2783 (2008) was decided in 2008.

A change in the law that is made retroactive is a valid reason for waiting to file a coram nobis petition. *United States v. Reidl,* 496 F.3d 1003, 1007 (9th Cir.2007). The government does not argue that *Heller* is not retroactive, but instead argues that (1) *Heller* did not change the law, and (2) defendant at any rate waited too long to file his petition after *Heller* was decided.

Before *Heller,* the Ninth Circuit rejected as-applied challenges on the grounds that the Second Amendment provided only a collective right. *See Silveira v. Lockyer,* 312 F.3d 1052 (9th Cir.2002); *see also United States v. Stewart,* 348 F.3d 1132, 1142 (9th Cir.2003), *cert. granted and judgment vacated by* 545 U.S. 1112 (2005), *opinion aff'd in relevant part by* 451 F.3d 1071 (9th Cir.2006). *Heller* changed the applicable law in that it held the Second Amendment provides an individual right. Whether or not *Heller* is to be applied retroactively, it is clear that defendant could not have legitimately raised the current claim before *Heller* was decided. However, the court need not decide whether defendant's delay of more than a year and a half after *Heller* was issued was a valid reason for not attacking the conviction earlier, as even on the merits, defendant's coram nobis claim must fail.

B. Error of Fundamental Character

I. Reversal of Underlying Felony

***4** Reversal of the felony underlying a felon in possession conviction does not render the felon in possession conviction invalid. *See Lewis v. United States,* 445 U.S. 55, 64–65 (1980) ("[T]o limit the scope of §§ 922(g)(1) and (h)(1) to a validly convicted felon would be at odds with the statutory scheme as a whole. Those sections impose a disability not only on a convicted felon but also on a person under a felony indictment, even if that person subsequently is acquitted of the felony charge.... It seems fully apparent to us ... that Congress clearly intended that a defendant clear his status *before* obtaining a firearm.") (emphasis original); *United States v. Marks,* 379 F.3d 1114, 1116, 1118–19 (9th Cir.2004) ("The focus of the inquiry under §§ 921(a)(20) and 922(g)(1) is whether someone has been convicted of a felony under state law, not whether that conviction is constitutionally valid, nor whether it may be used as a predicate conviction for subsequent state prosecutions.").

While both *Lewis* and *Marks* involved underlying felonies that were subject to collateral attack but had not yet been reversed, the courts have further held that a felon in possession conviction is no less valid where the predicate conviction has been subsequently reversed than it is where the conviction is simply subject to collateral attack. *United States v. McCroskey,* 681 F .2d 1152, 1153 (9th Cir.1982) (holding that where defendant succeeded in getting predicate conviction expunged *nunc pro tunc* to a time before he was found in possession of a firearm, his felon in possession conviction remained valid because he had not cleared his status before obtaining the firearm); *Bonfiglio v. Hodden,* 770 F.2d 301, 304–05 (2d Cir.1985) (same).

Accordingly, the court concludes that the fact that defendant's underlying conviction was reversed did not render the defendant's felon in possession conviction invalid.

ii. Second Amendment

The Second Amendment provides that "the right of the people to keep and bear arms shall not be infringed." Section 922(g)(1) limits that right, by making it unlawful for any person convicted of a felony to possess a gun.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendant argues that § 922(g)(1) is unconstitutional as applied, and therefore asks the court to either vacate the judgment or declare the continuing application of the § 922(g)(1) disqualification to him to be unconstitutional. Defendant bases his argument on the Supreme Court's recent holding that the Second Amendment provides for an individual right to bear arms. He argues his § 922(g)(1) conviction violates that right.

In 2008, the Supreme Court held that the Second Amendment right to bear arms is an individual right. *Heller,* 128 S.Ct. at 2797. That right, however, is "not unlimited." *Id.* at 2799. The Court cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which are "presumptively lawful." *Id.* at 2816–17 & n.26. Since *Heller,* the Ninth Circuit has reaffirmed the constitutionality of the federal felon in possession statute, stating that "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)." *United States v. Vongxay,* 594 F.3d 1111, 1114, 1118 (9th Cir.2010).

***5** The Ninth Circuit has clearly held that § 922(g)(1) is facially valid. Therefore, the court turns to the defendant's argument that the statute is unconstitutional as applied to him.

An "as-applied" challenge contends the law is unconstitutional as applied to the litigant's particular circumstance, even though the law may be capable of valid application to others. *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998).

In the wake of *Heller*, virtually all of the federal courts addressing the issue have denied as-applied attacks on the constitutionality of § 922(g)(1)—some simply by invoking the presumed lawfulness of felon in possession statutes noted in *Heller*, others by engaging briefly in the as-applied analysis. *See, e.g., United States v. Khami,* 362 Fed. App'x 501, 507–08 (6th Cir.2010); *United States v. Gieswein,* 346 Fed. App'x 293, 295–96 (10th Cir.2009); *United States v. Radencich,* 2009 WL 127648, at *2 (N.D.Ind.2009); *United States v. Jones,* 673 F.Supp.2d 1347, 1351–52 (N.D.Ga.2009) (rejecting as applied challenge to § 922(g)(1) where defendant had argued that his underlying felony was remote in time (14 years prior) and he was not alleged to have used the gun in an unlawful manner); *United States v. Abner,* 2009 WL 103172, at *1 (M.D.Ala.2009); *United States v. Henry,* 2008 WL 3285842, at *1 (E.D.Mich.2008); *United States v. Robinson,* 2008 WL 2937742, at *2–3 (E.D.Wis.2008).

The only federal case defendant cites in support of his claim was vacated and reheard *en banc* by the Seventh Circuit. *See United States v. Skoien,* 587 F.3d 803, 808 (7th Cir.2009), *opinion vacated & reh'g en banc granted by* 2010 WL 1267262 (7th Cir. Feb. 22, 2010). While the original panel decision had found the challenged statute, § 922(g)(9), unconstitutional, the *en banc* panel held that the statute did not violate the defendant's Second Amendment rights. *United States v. Skoien,* 2010 WL 2735747 (7th Cir. July 13, 2010).

The only other case cited by defendant in which a court found a felon in possession statute to be unconstitutional as applied is from the North Carolina Supreme Court. There, the court held that "[b]ased on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, [the analogous state felon in possession statute] is an unreasonable regulation, not fairly related to the preservation of public peace and safety." *Britt v. State,* 681 S.E.2d 320, 323 (N.C.2009).

The court is unable to find any case where it was held that § 922(g)(1)—or any other subsection of § 922(g)—was unconstitutional as applied. Even so, because as-applied arguments are factually dependent, the court addresses defendant's argument.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

As a threshold matter, the court must determine what level of scrutiny should apply to its analysis. The answer to that question is not clear. *Heller* did not identify the appropriate level of scrutiny for Second Amendment challenges, holding only that rational basis does not apply. As a result, the courts have not agreed on a standard, with some applying strict scrutiny and others intermediate scrutiny. *See, e.g., United States Pettengill,* 682 F.Supp.2d 49, 55–57 (D. Maine 2010) (intermediate scrutiny); *United States v.. Engstrum,* 609 F.Supp.2d 1227 (D.Utah 2009) (strict scrutiny).

***6** A law that burdens the exercise of a fundamental right is subject to strict scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 16–17 (1973); *United States v. Hancock,* 231 F.3d 557, 565 (9th Cir.2000). On June 28, 2010, the Supreme Court held that the right to bear arms in self defense is a fundamental right. *McDonald v. City of Chicago,* 561 U.S. ––––– (2010) (slip op. at 44). However, “the right to keep and bear arms is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.” *McDonald,* 561 U.S. ––––– (2010) (slip op. at 39). Thus, the fundamental right as announced by the Supreme Court relates to the right to keep and bear arms for the purpose of self defense. Courts have held that where the stated purpose for the firearm is hunting, and not self defense, strict scrutiny does not apply. *See United States v. Walker,* 2010 WL 1640340 (E.D.Va.2010).

Here, although defendant mentions bearing arms for the purpose of self-defense, the overwhelming evidence is that the defendant possessed the guns for hunting or as part of a collection. Even if the court applies the doctrine of strict scrutiny, however, defendant's argument fails.

To satisfy the strict scrutiny test, a law must be “narrowly tailored to achieve a compelling governmental interest.” *Abrams v. Johnson,* 521 U.S. 74, 82 (1997). Defendant concedes that § 922(g) serves a compelling government interest, but asserts that it does not do so in the least restrictive manner possible. He offers five arguments in favor of his position.

First, his predicate felony conviction was reversed. Second, neither of his crimes involved violence or the use of guns. Third, nothing in defendant's history suggests he is a danger to others; he has never used a firearm to threaten or harm another person. Fourth, guns are important to defendant's life, as he has always been a hunter and gun collector, and now cannot attend family gatherings that involve hunting. And fifth, at the time defendant was found with the firearms he was in the process of giving his gun collection away.

As discussed, the reversal of defendant's underlying felony does not invalidate his felon in possession conviction. He was under a disability when he was found with firearms. Accordingly, this fact does not call into question the constitutionality of defendant's conviction.

Defendant argues that many felonies are not violent and do not involve the use of guns, and that many people guilty of felonies are not prone to violence, including him. The courts that have addressed this issue have been aware that many felonies are not violent. Yet, they continue to uphold the facial constitutionality of § 922(g)(1). Accordingly, the fact that neither defendant's history nor his felonies were violent does not render § 922(g)(1) unconstitutional as applied to him.

Defendant's possession of guns for hunting or as a collection does not render his conviction constitutionally infirm. Possession for these reasons has not been recognized as a fundamental right, and defendant cites no authority for finding that a law that burdens such possession violates the Second Amendment.

***7** Finally, the fact that defendant was giving away the guns when he was found in possession of them does

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

not compel a finding that his conviction violates his Second Amendment rights. Defendant had ample time before sentencing on the theft charge in which to properly dispose of his firearms.

Defendant also argues that § 922(g)(1) is overly restrictive because the only way to invalidate a conviction under it is through presidential pardon. An alternate avenue exists in 18 U.S.C. § 925(c), which allows application to the Attorney General for relief from a firearms disability. Defendant argues that Congress recognized that barring every felon from possessing guns is overly restrictive, and that was the purpose for its enactment of § 925(c). While it appears that Congress has not provided funding for the implementation of § 925(c) since 1992, this does not mean that it will not do so in the future. This court could find no decision of a court that has considered the constitutionality of § 922(g)(1) that has found that section unconstitutional because of the unavailability of § 925(c).[FN4]

FN4. The court believes that this is a case that should be considered under § 925(c).

Accordingly, the court is not persuaded by the defendant's asapplied argument, both as to the conviction itself as well as to its continuing application. As the defendant was under disability when he possessed the weapons, his § 922(g)(1) conviction is lawful and constitutional. Therefore, there is no fundamental error that may be corrected by awarding coram nobis relief even if the court had found defendant had not waived his right to make that claim.

ii. Fifth Amendment

The Due Process Clause of the Fifth Amendment provides that “no person shall be deprived of life, liberty, or property without due process of law.” The government argues that defendant received notice at his arraignment on the § 922(g)(1) charge and an opportunity to be heard at his change of plea and sentencing hearings. Defendant argues that he was never given due process with regard to the continuing impairment caused by his § 922(g)(1) conviction. He cites no authority supporting his contentions that individuals are entitled to due process protections for continuing deprivations.

Defendant did receive notice and an opportunity to be heard during the criminal proceedings for his § 922(g)(1) conviction, and he points to no procedural irregularities in that process. His own alleged misapprehension about the effect of his guilty plea is not enough to call into question the validity of his plea. His attorney explicitly told him that the only way to overturn his § 922(g)(1) conviction was through a presidential pardon.

For the reasons set forth above, the defendant's motion for a writ of error coram nobis is hereby **DENIED** (# 36).

D.Nev.,2010.
U.S. v. Ligon
Not Reported in F.Supp.2d, 2010 WL 4237970 (D.Nev.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
UNITED STATES of America, Plaintiff,
v.
Rocco OPPEDISANO, Defendant.

No. 09–CR–0305 (JS).
Nov. 30, 2010.

Sean Flynn, Esq., United States Attorney's Office, Eastern District of New York, Brooklyn, NY, for United States.

Benedict S. Gullo, Jr., Esq., Mineola, NY, for Defendant.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

***1** Defendant Rocco Oppedisano (the "Defendant") is charged with cocaine possession in violation of Section 844 of Title 21 of the United States Code and with possessing ammunition as a convicted felon in violation of Section 922(g)(1) of Title 18 of the United States Code ("Section 922(g)(1)"). Pending before the Court are the Government's motions *in limine* to exclude certain testimony and argument that the Government contends invites jury nullification by demonstrating that (1) the Defendant did not know his possession of ammunition as a convicted felon was a crime; (2) the Defendant did not own or possess a firearm; (3) the Defendant is a "nonviolent" felon whose underlying conviction was a "regulatory" offense; and (4) the Defendant did not "own" or purchase the ammunition. In addition, the Government moves in its Reply brief (5) to preclude the Defendant from offering hearsay statements the Defendant made to a postal inspector after his arrest.

On November 30, 2010, the Court granted in part and denied in part the Government's motions for the reasons stated on the record. Below, the Court addresses in greater depth the reasons it rejects Defendant's argument that he should be permitted to introduce otherwise irrelevant evidence to argue that the felon-in-possession law is unconstitutional as applied to him in light of the Supreme Court's decision in *Heller v. District of Columbia,* 554U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

*BACKGROUND*

Defendant argues that, after *Heller,* he should be able to introduce evidence and argument that Section 922(g)(1) is unconstitutional as applied to him, a non-violent felon with no history of misusing weapons, whose ammunition was found in his home and without an accompanying firearm. (Def. Opp. at 5.) Defendant's underlying felonies are a 1993 conviction for attempted first degree reckless endangerment, (Def. Omnibus Br. Ex. E at 6), and a 1994 conviction for recidivist driving-whileintoxicated.[FN1] (*Id.* at 8.) The Court previously rejected the idea that *Heller* renders Section 922(g)(1) unconstitutional when Defendant moved to dismiss the indictment. (*See* December 21, 2009 Hrg. Tr. at 3.) Notwithstanding the Court's earlier ruling, the Defendant argues now that he must be permitted to develop evidence to preserve his as-applied constitutional challenge for appeal.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(Def. Opp. at 5.)

FN1. Citations to the Defendant's "Omnibus Br." refer to the Defendant's omnibus pre-trial motion, which included a motion to dismiss the indictment as unconstitutional after *Heller.*

*DISCUSSION*

Section 922(g)(1) is neither unconstitutional on its face nor as applied to Defendant and his challenge to the law is preserved without the need to introduce irrelevant and confusing evidence at trial.

I. *Heller Did Not Render Section 922(g)(1) Unconstitutional*

*Heller* did not render Section 922(g)(1) unconstitutional on its face. In well-known dicta, the Supreme Court explained that certain regulatory measures are "presumptively lawful," *Heller,* 128 S.Ct. at 2817 n. 26, and that its decision did not affect felon-in-possession statutes: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons...." *id.* at 2816–17. This assurance was recently repeated in *McDonald v. City of Chicago.* ––– U.S. ––––, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) (plurality opinion). Since *Heller,* the Second Circuit held that Section 922(g)(1) is not unconstitutional, *see United States v. Stuckey,* 317 F. App'x 48, 50 (2d Cir.2009), a decision that is in accord with those by Circuits around the nation. *See United States v. Khami,* 362 F. App'x 501, 507 (6th Cir.2010); *United States v. Anderson,* 559 F.3d 348, 351 (5th Cir.2009); *United States v. Battle,* 347 F. App'x 478, 479–80 (11th Cir.2009); *United States v. McCane,* 573 F.3d 1037, 1047 (10th Cir.2009); *United States v. Smith,* 329 F. App'x 109, 110 (9th Cir.2009); *United States v. Brunson,* 292 F. App'x 259, 261 (4th Cir.2008); *United States v. Irish,* 285 F. App'x 326, 327 (8th Cir.2008).

II. *Section 922(g)(1) Is Constitutional As Applied To Defendant*

***2** The Court rejects Defendant's challenge to Section 922(g)(1) as it applies to him, and Defendant will not be permitted to introduce argument or otherwise irrelevant evidence to advance this strategy at trial. Even if the Second Amendment limits Congress' power to restrict a felon's right to possess weapons—and *Heller* suggests that it does not—Section 922(g)(1) is not unconstitutional as applied to a felon convicted of attempted reckless endangerment and recidivist driving-while-intoxicated.

As a threshold issue, the Court, as it did in addressing Defendant's omnibus motion, uses intermediate scrutiny to analyze Section 922(g)(1). The Court recognizes that courts disagree whether intermediate or strict scrutiny applies in *Heller* 's and *McDonald* 's wake, and it joins with those courts holding that strict scrutiny is incompatible with *Heller* 's dicta concerning presumptively constitutional gun prohibitions. *See Heller v. District of Columbia [Heller II],* 698 F.Supp.2d 179, 187–88 (D.D .C.2010) (noting that the majority of courts apply intermediate scrutiny to gun dispossession laws).[FN2]

FN2. Neither *Heller* nor *McDonald* specifies whether intermediate or strict scrutiny applies to gun dispossession laws, and it is possible that an entirely new test will develop. Until then, this Court is bound to apply existing analytical frameworks.

Viewed under intermediate scrutiny, a statute must be substantially related to the advancement of an important government interest. *See Ramos v. Town of Vernon,* 353 F.3d 171, 180 (2d Cir.2003). There can be little doubt that an important government interest is at stake. Section 922(g)(1) was enacted to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *United States v. Small,* 544 U.S. 385, 393, 125 S.Ct. 1752, 1757 (2005) (quotations omitted); *Burrell v. United States,* 384 F.3d 22, 27 (2d Cir.2004) ( Section 922(g)(1) "was one of several measures en-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

acted by Congress to prohibit [ ] categories of presumptively dangerous persons from possessing firearms") (quotations omitted).

Taking as true the facts Defendant cites in support of his argument, Section 922(g)(1) is, as applied to him, substantially related to the important goal of promoting public safety. Defendant was proven to have put others at risk through reckless conduct and poor judgment. In 1993, he pled guilty to attempted first degree reckless endangerment, an E felony. (Def. Omnibus Br. Ex. E at 6.) In New York, first degree reckless endangerment occurs "when, under circumstances evincing a depraved indifference to human life, [a defendant] recklessly engages in conduct which creates a grave risk of death to another person." N.Y. PENAL L. § 120.25. In 1994, Defendant pled guilty to driving-while-intoxicated. N.Y. VEH & TRAFFIC L. § 1192. This conviction is also an E felony because it was Defendant's second driving-while-intoxicated conviction within ten years. *See* N.Y. VEH. & TRAFFIC L. § 1193. In short, Defendant's proven disregard for public safety fairly puts him among those who "have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Small*, 544 U.S. at 393, 125 S.Ct. at 1757.

***3** This decision is in line with other courts that have addressed as-applied challenges to Section 922(g)(1). *See United States v. Ligon,* No. 04–CR–0185, 2010 WL 4237970, at *5, (D.Nev. Oct. 20, 2010) (finding no case holding that Section 922(g)(1) was unconstitutional as applied). Further, it is no defense that Defendant's felonies are nonviolent or remote in time. In *Ligon,* the court rejected an as-applied challenge by a nonviolent felon. 2010 WL 4237970, at *6. Similarly, felony convictions from sixteen and seventeen years ago do not make the statute unconstitutional as applied. *See United States v. Jones,* 673 F.Supp.2d 1347, 1352 (N.D.Ga.2009) (rejecting an as-applied challenge to Section 922(g)(1) by a defendant with no history of unlawful gun use and whose underlying felony was more than fourteen years prior).

III. *Defendant's Argument Is Preserved For Appeal*

Defendant contends that he must be able to develop evidence to support his *Heller* argument at trial in order to preserve this defense for appeal. (Deft.'s Sur–Reply at 4.) This argument is meritless. Defendant's claim under *Heller* is preserved for appeal by virtue of this Court's denying his motion to dismiss the indictment on constitutional grounds. (*See* December 21, 2009 Hrg. Tr. at 3.) Defendant's reliance on *United States v. Foxworth,* 344 F. App'x 363 (2d Cir.2009) is misplaced. Contrary to Defendant's suggestion, this case does not hold that as-applied challenges must be adjudicated based on facts established at trial. Rather, it simply rejects an as-applied challenge after trial. *Id.* at 365. Here, the Court takes as true Defendant's facts and rejects his as-applied challenge before trial, so as not to lengthen the proceeding or confuse the jury with irrelevant evidence and argument.

*CONCLUSION*

Based on the foregoing and for the reasons stated on the record, Defendant is precluded from arguing or introducing otherwise irrelevant evidence tending to show that Section 922(g) is unconstitutional as applied to him.

SO ORDERED.

E.D.N.Y.,2010.
U.S. v. Oppedisano
Not Reported in F.Supp.2d, 2010 WL 4961663 (E.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. Indiana,
Fort Wayne Division.
UNITED STATES of America
v.
Jason Lee SCHULTZ.

No. 1:08-CR-75-TS.
Jan. 5, 2009.

West KeySummary**Constitutional Law 92 3781**

92 Constitutional Law
92XXVI Equal Protection
92XXVI(F) Criminal Law
92k3781 k. Creation and classification of offenses. Most Cited Cases

**Weapons 406 106(4)**

406 Weapons
406I In General
406k102 Constitutional, Statutory, and Regulatory Provisions
406k106 Validity
406k106(4) k. Violation of other rights or provisions. Most Cited Cases
(Formerly 406k3)

The federal felon in possession of a firearm statute did not violate the Equal Protection Clause. The statute survived intermediate scrutiny because there was a substantial governmental interest in keeping firearms out of the hands of crime-prone felons, and the statute substantially related to the important governmental objective of public safety. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 922(g)(1).

Robert N. Trgovich, US Attorney's Office, Fort Wayne, IN, for United States of America.

**OPINION AND ORDER**

THERESA L. SPRINGMANN, District Judge.

***1** Before the Court is the Defendant's Motion to Dismiss Indictment [DE 18], filed on November 12, 2008. The Government filed a Response [DE 19] on November 25, and the Defendant filed his Reply [DE 22] on December 3.

**BACKGROUND**

On September 24, 2008, the Defendant was charged by way of an Indictment with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Both counts allege that the Defendant is a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

convicted felon based on his conviction for "Non-Support of a Dependent Child, a Class D felony, in Whitley County Circuit Court, in cause number 92C01-0409-FD-00166 on February 28, 2006." (Indictment 1, 2, DE 1.) The first count alleges that on or about May 27, 2008, the Defendant in Allen County, Indiana, which is in the Northern District of Indiana, knowingly possessed in and affecting commerce a firearm, specifically a Belknap .20 gauge shotgun, model B-64. The second count alleges that on or about June 16, 2008, the Defendant in Allen County, Indiana, which is in the Northern District of Indiana, knowingly possessed in and affecting commerce a firearm, specifically a Winchester lever action .22 caliber rifle, model 9422, serial number F576726. The Indictment states that the shotgun was manufactured in Massachusetts, and the rifle was made in Connecticut. The Indictment also includes a forfeiture allegation.

**ANALYSIS**

The Defendant makes several arguments in support of dismissing the Indictment. First, he argues that the federal statute criminalizing possession of a firearm by a convicted felon is unconstitutional-both as applied to the Defendant and on its face-in light of *District of Columbia v. Heller,* --- U.S. ----, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Second, the Defendant attacks the Indictment on Commerce Clause grounds. He argues that, in light of *Heller's* holding, the mere allegation that a firearm was manufactured outside of the state of possession does not confer federal jurisdiction under the Commerce Clause. Third, he argues that the felon in possession statute violates the Defendant's rights under the Equal Protection Clause.

**A. Defendant's Argument that the Statute is Unconstitutional on its Face and as Applied to the Defendant in Light of *Heller***

The Defendant argues that *Heller* invalidates the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1), on its face and as applied to the Defendant. The Government disagrees and argues that the statute remains constitutional on its face and as applied to the Defendant.

In *Heller,* the Court considered a challenge under the Second Amendment to the District of Columbia's general ban on the possession of handguns, laws criminalizing the carrying of unregistered firearms, and a law requiring that lawfully owned firearms be unloaded and unassembled or bound by a trigger lock or similar device. 128 S.Ct. at 2788. The Court held that "that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Id.* at 2821-22. The Court based this ruling on its holding that "the Second Amendment conferred an individual right to keep and bear arms." *Id.* at 2799.

***2** However, the Court noted that:

> Like most rights, the right secured by the Second Amendment is not unlimited.... [N]othing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17 (emphasis added). The Court noted that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 2817 n. 26.

Regardless of other language in the opinion, this language is clear: the Supreme Court in *Heller* was not casting doubt on the constitutional validity of laws banning the possession of firearms by felons. This Court can only follow that clear, unambiguous instruction as it applies to the challenged felon-in-possession statute in this case and conclude that the law is indeed constitutional on its face and as applied to the Defendant.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 35225 (N.D.Ind.)
**(Cite as: 2009 WL 35225 (N.D.Ind.))**

The Supreme Court's clear instructions make irrelevant the fact (as asserted by the Defendant) that the statute in this case is more restrictive than the laws at issue in *Heller,* or that the Defendant's Class D felony conviction was for a non-violent offense (failure to pay child support), is twenty years old, and resulted in a term of probation. The Supreme Court did not make an exception for certain kinds of felony convictions or certain circumstances. There is no wiggle room to distinguish the present case from the Supreme Court's blanket statement.

The Defendant in his Reply claims that the Supreme Court "has an express disclaimer of any intent to settle all questions that would arise in future cases," (Def. Reply 1), because it stated "there would be 'time enough to expound upon the historical justifications for the exceptions that we have mentioned if and when those exceptions come before [the Court],' " (*id.*) (quoting *Heller,* 128 S.Ct. at 2821). The Supreme Court did not disclaim an intent to settle all questions that would arise in the future. Quite the contrary, it set out several examples of questions (regarding bans on felons and the mentally ill possessing firearms and laws banning firearms "in sensitive places such as school and government buildings," 128 S.Ct. at 2817), that might arise given its ruling and provided the answer ("nothing ... should be taken to cast doubt," *id.,* on such laws) to those limited questions. What the Supreme Court left for itself in future cases was to "expound upon the historical justifications," *id.* at 2821, for the limits on the right to keep and bear arms. That the Supreme Court reserved for itself this task does not provide a basis for this Court to rule the challenged gun law unconstitutional, especially, as stated several times, in light of the Supreme Court's explicit statement that such laws are not in "doubt" in light of *Heller.*

***3** The Defendant is unable to point to any post-*Heller* ruling that has declared this statute or a similar one to be unconstitutional. To the contrary, as the Government points out, every court to consider the issue since *Heller* has ruled that the statute is constitutional. (Govt.Resp.6-7) (collecting cases); *see also United States v. Li,* No. 08-CR-212, 2008 WL 4610318 (E.D.Wis. Oct.15, 2008) (denying a motion to dismiss indictment on charges of being a felon in possession of a firearm after *Heller* ); *United States v. Yancey,* No. 08-CR-103-BBC, 2008 WL 4534201 (W.D.Wis. Oct.3, 2008) (same); *Reynolds v. Sherrod,* No. 08-CV-506-JPG, 2008 WL 3287042 (S.D.Ill. Aug.8, 2008) (dismissing as "meritless" a habeas corpus petition that sought to invalidate a conviction for being felon in possession of a firearm in light of *Heller* ). Unless and until the Seventh Circuit or the Supreme Court rules otherwise, this Court is bound to rule that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to the Defendant.

**B. Defendant's Argument that the Mere Allegation that the Firearm was Manufactured Out of State Does Not Confer Federal Jurisdiction**

The Defendant's argument here goes as follows: When the allegation under the statute is only that the firearm traveled in interstate commerce in the past and the Defendant is accused merely of intrastate firearm possession, the statute exceeds the limits of the Commerce Clause and violates the Tenth Amendment, especially in light of *Heller.*

The Government states that the firearms were not manufactured in Indiana, (Govt.Resp.2), and the Defendant did not contest this. The Defendant stated: "The only nexus with interstate commerce appears to be research on the part of an ATF agent suggesting that the firearms were manufactured outside the state of Indiana." (Def. Mot. to Dismiss 1.) This is not a denial that the firearms were manufactured outside of Indiana. The Defendant further states: "The discovery contains neither information regarding how the firearms came to be present in Indiana, nor any allegation that Mr. Schultz had any involvement with the transport of the firearms to North Carolina." (*Id.*)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

For the Commerce Clause challenge, the Defendant relies on *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which declared that a federal law criminalizing possession of a firearm in a school zone exceeded Congress's Commerce Clause authority because "[t]he possession of a gun in a local school zone is in no sense an economic activity that might ... substantially affect any sort of interstate commerce." *Id.* at 567. The Defendant implies that *Lopez* overrules or casts doubt on *United States v. Scarborough,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), which held that "the interstate commerce nexus requirement of the possession offense was satisfied by proof that the firearm petitioner possessed had previously traveled in interstate commerce," *id.* at 566. The Defendant cites opinions [FN1] from other circuits, including concurring or dissenting opinions, in support of the view that *Lopez* makes 18 U.S.C. § 922(g)(1) unconstitutional "where the only interstate commerce nexus is the mere fact that firearms at some point traveled interstate." (Def. Mot. to Dismiss 7.)

FN1. None of these cases actually declared that the felon-in-possession statute is invalid under the Commerce Clause and *Lopez.*

***4** The suggestions of opinions in other circuits do not matter in this case because the Seventh Circuit has upheld the felon in possession of a firearm statute on Commerce Clause grounds after *Lopez, see, e.g., United States v. Juarez,* 454 F.3d 717, 719 (7th Cir.2006) (stating that "[w]e have rejected similar challenges ... concluding that the statute's inclusion of a jurisdictional element insulates it from constitutional attack under the reasoning of *United States v. Lopez"* ). So that aspect of the Defendant's argument is foreclosed.

In *Juarez,* the Seventh Circuit noted that in light of a stipulation that the gun was manufactured in Ohio, "[i]t is undisputed that the gun must have traveled in interstate commerce at some point after its manufacture in order for Juarez to possess it in Illinois." 454 F.3d at 719; *see also United States v. Lemons,* 302 F.3d 769, 772 (7th Cir.2002) (rejecting Commerce Clause challenge when the gun crossed into Wisconsin "at some indeterminate moment in time" before it was discovered in the defendant's possession"). In this case, the Indictment states that the shotgun was made in Massachusetts and the rifle was made in Connecticut. (Indictment 3, DE 1.) The Defendant does not dispute these facts. For the weapons to be found in the possession of the Defendant in Allen County, Indiana, as alleged, they had to have traveled in interstate commerce.

The Defendant does not clearly articulate how *Heller's* holding-that there is an individual right to keep and bear arms [FN2]-scales back the Commerce Clause authority of 18 U.S.C. § 922(g)(1), other than to say that "the Supreme Court has not addressed the validity of Congress's exercise of its commerce power in the context of the fundamental right to bear arms guaranteed by the Second Amendment." (Def. Mot. to Dismiss 8.) That is true, insofar as the Supreme Court has not considered a Commerce Clause challenge to the statute since deciding *Heller.* But that does not mean, as the Defendant urges, that "the tenuous, commerce-based jurisdiction now endangered by the Supreme Court's Commere Clause jurisprudence must give way." (*Id.*)

FN2. The Defendant indicates that *Heller* held that there is a "fundamental right to bear arms guaranteed by the Second Amendment." (Def. Mot. to Dismiss 8.) *Heller* did not state that the individual right to keep and bear arms is a "fundamental" right. The Court used the word "fundamental" twice in its opinion. "By the time of the founding, the right to have arms had become fundamental for English subjects." 128 S.Ct. at 2798. "Blackstone ... cited the arms provision of the Bill of Rights as one of the fundamental rights of Englishmen." *Id.* Neither of these sentences supports the claim that the *Heller* Court found a fundamental right to bear arms, especially because the Court did not use that word in its holding or conclusion.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

There is nothing tenuous about the federal jurisdiction based on the Commerce Clause, which is as alive as ever after *Lopez. See United States v. Raich,* 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (rejecting a Commerce Clause challenge to a federal law criminalizing the home cultivation and intrastate use of marijuana for medical purposes even when authorized by California law). *Raich* made clear that it was consistent with *Lopez,* 545 U.S. at 23-25. In the absence of language in *Heller*[FN3] or any other controlling case indicating that the individual right to bear arms reduces Commerce Clause federal jurisdiction, there is no basis for this Court to so rule.

FN3. Not only does the *Heller* opinion give no hint that it chips away at federal jurisdiction under the Commerce Clause, but it states, as already mentioned, that “nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ... or laws imposing conditions and qualifications on the commercial sale of arms.” 128 S.Ct. at 2816-17. This language expressly seeks to preserve federal jurisdiction based on the Commerce Clause.

The Defendant does not provide much elaboration for his Tenth Amendment argument, except to say that it is “implicated by overly broad assertions of federal jurisdiction.” (Def. Mot. to Dismiss 7.) The Seventh Circuit has upheld 18 U.S.C. § 922(g) against a Tenth Amendment challenge. *United States v. Hemmings,* 258 F.3d 587, 594 (7th Cir.2001); *see also Gillespie v. City of Indianapolis,* 185 F.3d 693, 706-08 (7th Cir.1999) (ruling that 18 U.S.C. § 922(g) (9), which prohibits persons convicted of a misdemeanor crime of domestic violence from possessing a firearm, does not violate the Tenth Amendment). The Defendant does not explain how *Heller's* holding changes the Tenth Amendment implications of the statute. Without any argument based on controlling legal authority to the contrary, this Court is bound to rule that the statute does not violate the Tenth Amendment.

**C. Defendant's Argument that the Statute Violates the Equal Protection Clause**

***5** The Defendant argues that the felon in possession statute violates the Defendant's rights under the Equal Protection Clause because the statute has “no uniform definition of the conduct that will result in a loss of the right to possess firearms under federal law, instead relying on diverse state definitions” of felony crimes. (Def. Mot. to Dismiss 9.) The Defendant urges the Court to apply strict scrutiny to invalidate the law, but also argues that the statute does not even meet the rational basis test. (*Id.* at 10.)

The Defendant argues that *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), which upheld a predecessor felon in possession law, cannot be the basis for ruling that the current statute is constitutional in light of *Heller's* purported recognition of “the fundamental, individual right to bear arms.” (Def.Mot.10.) However, as mentioned earlier, *Heller* did not declare that this right is fundamental, so this cannot be a basis for this Court to declare the present statute unconstitutional. *See United States v. Bernal,* No. L-08-321, 2008 WL 2078164, at *5 (S.D.Tex. May 15, 2008) (relying on *Lewis* to reject an equal protection challenge to the statute after *Heller* ).

The Government is correct that the Supreme Court used the rational basis standard to uphold a predecessor felon in possession statute against a Due Process claim in *Lewis,* and that *Heller* did not explicitly adopt a level of scrutiny for Second Amendment challenges. But the Court reads footnote twenty-seven in *Heller* as requiring a tougher standard of review than the rational basis standard. “Obviously, the [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or *the right to keep and bear arms.”* 129 S.Ct. at 2817, n. 27 (emphasis added). The Court then noted that application of the rational basis test to the right to keep and bear arms would mean that the Second Amendment “would have no effect.” *Id.* On the other hand,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

because the Supreme Court did not state the there is a fundamental right to keep and bear arms, strict scrutiny does not apply. That leaves intermediate scrutiny. *See United States v. Bledsoe,* No. SA-08-CR13 (2)-XR, 2008 WL 3538717, at *4 (W.D.Tex. Aug.8, 2008) (applying intermediate scrutiny to a *Heller*-based equal protection challenge). “To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective.” *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (quoted in *Bledsoe,* 2008 WL 3538717, at *4).

Public safety is an important governmental objective. *Cf. United States v. Salerno,* 481 U.S. 739, 750, 754, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (stating that preventing crime is a compelling interest); *Doe v. City of Lafayette, Ind.,* 377 F.3d 757 (7th Cir.2004) (upholding ban on convicted sex offender being present in parks because of a non-punitive governmental objective of keeping children safe) (collecting cases with similar holdings); *Rapier v. Harris,* 172 F.3d 999, 1004 (7th Cir.1999) (stating that maintaining order and discipline in a detention facility is an important governmental objective). Persons who have committed felonies are more likely to commit crimes than those who have not.[FN4] Efforts to keep firearms out of the hands of crime-prone felons, such as the challenged statute in this case, deter crime and result in the arrest, conviction, and imprisonment of offenders.[FN5] *See* 18 U.S.C. § 3553(a)(2)(A)-(C) (a sentence of imprisonment should “promote respect for the law,” “afford adequate deterrence to criminal conduct,” and “protect the public from further crimes of the defendant”). Therefore, there is a substantial governmental interest in keeping firearms out of the hands of crime-prone felons. A federal law doing so, such as the current statute, substantially relates to that important governmental objective of public safety.[FN6] As a result, the Court finds that the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1), is not unconstitutional under the Equal Protection Clause. *See United States v. Irish,* 285 F. App'x 326 (8th Cir.2008) (rejecting a *Heller*-based Equal Protection Clause challenge to the statute without stating what level of scrutiny the court employed); *Bledsoe,* 2008 WL 3538717 (same but using intermediate scrutiny), at *4; *Bernal,* 2008 WL 2078164, at *5 (same but using the rational basis test).

FN4. *Compare* Bureau of Justice Statistics, Department of Justice, NJC 193427, Recidivism of Prisoners Release in 1994 (June 2002), http:// www.ojp.usdoj.gov/bjs/pub/pdf/rpr94.pdf, (finding that more than two-thirds of about 300,000 prisoners released in 15 states in 1994 were rearrested in three years) *with* Bureau of Justice Statistics, Department of Justice, NJC 197976, Prevalence of Imprisonment in the U.S. Population, 1974-2001 (August 2003), http://www.ojp.usdoj.gov/bjs/pub/pdf/piusp01.pdf (finding that an estimated one of every fifteen persons, or 6.6%, will serve time in a prison during their lifetime).

FN5. *E.g.,* BJS's Federal Justice Statistics Program, Department of Justice, http://fjsrc.urban.org (table created Dec. 17, 2008) (showing that for the cases that were closed in fiscal year 2006, 5078 defendants were convicted under 18 U.S.C. § 992(g)).

FN6. The Defendant argues in his Reply that not all felons are violent, the crime of being a felon in possession of a firearm is not a crime of violence *per se,* and that “[t]here is no empirical data suggesting that persons convicted of non-violent felonies ... are more likely to seek guns or use them than other, non-convicted persons.” (Def. Reply 2.) Without a factual basis for these statements, the Court is not persuaded that these factual assertions are correct. But even assuming these are true for the moment, the Court finds that the challenged statute still substantially relates to the important governmental objective of public safety.

**CONCLUSION**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 35225 (N.D.Ind.)
**(Cite as: 2009 WL 35225 (N.D.Ind.))**

***6** For the foregoing reasons, the Defendant's Motion to Dismiss Indictment [DE 18] is DENIED. The Ruling Conference for Monday, January 5, 2009, at 3 p.m. is REAFFIRMED. The Court will initiate the call.

So ORDERED.

N.D.Ind.,2009.
U.S. v. Schultz
Not Reported in F.Supp.2d, 2009 WL 35225 (N.D.Ind.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Not Reported in F.Supp.2d, 2008 WL 4225541 (E.D.Mich.)
**(Cite as: 2008 WL 4225541 (E.D.Mich.))**

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
UNITED STATES of America, Plaintiff(s),
v.
William WESTRY, Defendant(s).

No. 08-20237.
Sept. 9, 2008.

Eaton Curtis, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

Federal Defender, Jonathan M. Epstein, Federal Defender Office, Detroit, MI, for Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

VICTORIA A. ROBERTS, District Judge.

***1** On August 15, 2008, Magistrate Judge Steven D. Pepe submitted a Report and Recommendation (Doc. # 15) recommending that the Court DENY Defendant's "Motion to Dismiss Indictment." (Doc. # 12). Because the Court has not received objections from either party within the time frame provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(3), the Court will adopt the Magistrate Judge's Report and Recommendation. Defendant's motion is **DENIED.**

**IT IS ORDERED.**

***REPORT AND RECOMMENDATION REGARDING DEFENDANT WESTRY'S MOTION TO DISMISS INDICTMENT (DKT.# 12)***

STEVEN D. PEPE, United States Magistrate Judge.

This is a criminal matter with a one count indictment of Felon in Possession of a Firearm in violation 18 U.S.C. § 922(g)(1). (Dkt.# 1). Defendant filed a motion to dismiss the indictment on July 16, 2008 (Dkt.# 12), and the United States of America filed a response on July 23, 2008 (Dkt.# 14). This matter was referred to this Court on July 22, 2008, for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). Tthe facts and legal arguments are adequately present in the parties' papers and the decision process would not be significantly aided by oral arguments; therefore, the motion will be resolved on the briefs submitted pursuant to E.D. Mich. L.R. 7.1(e) (2).

The underlying facts are giving rise to the felony charge are as follow. On January 21, 2008, the Detroit Police Department ("DPD") responded to a police run for a domestic situation involving Defendant. Defendant's fiancee, Ashley Baker called the police concerning Defendant's possession of a weapon at their home at 19258 Telegraph in Detroit. Upon arrival, the officers observed Defendant leave the home, and begin climbing the stairs to a neighboring apartment. Defendant removed a .32 caliber pistol from his coat pocket and dropped the pistol to the ground. The police officers took Defendant into custody and recovered the pistol.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendant gave a statement to police admitting to possession of the handgun. Defendant is a twice-convicted felon, having previously been convicted of a Delivery of Narcotics under 50 grams in 1998 and Carrying a Concealed Weapon in 1997. Because of the prior felony convictions, the U.S. Attorney charged Defendant with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

He challenges the constitutional validity of 18 U.S.C. § 922(g) based on the recent Supreme Court decision of *District of Columbia v. Heller,* ---U.S. ----, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). In *Heller,* the Court held that the Second Amendment provides an individual right to keep and bear arms in the home for protection of self and family. *Id.* at 2822. Defendant argues that the right under the Second Amendment should extend to him, the same as other individuals and that 18 U.S.C. § 922(g)(1) is unconstitutional by unreasonably restricting a felon's possession of a handgun in the home for protection of self and family.

***2** Defendant does not suggest that Congress is prevented from regulating the possession of firearms by violent felons. He argues, however, that 18 U.S.C. § 922(g) makes no distinction between violent versus nonviolent felonies and unreasonably denies all persons previously convicted of any felony the right to possess firearms. The Supreme Court majority opinion was unequivocal that "the right secured by the Second Amendment is not unlimited." *Heller,* 128 S.Ct. at 2816. It explicitly states that "nothing in [their] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." *Id.* at 2816-17. The Supreme Court made no distinction for nonviolent felonies. While this language technically is dictum and not holding, it nonetheless was included to suggest the limits of the *Heller* opinion.

The Eastern District of Michigan recently decided a similar set of facts in *United States v. Henry,* 2008 WL 3285842 (E.D.Mich. Aug.7, 2008) (Zatkoff, J.) in which the Defendant challenged the constitutionality of 18 U.S.C. § 922(g)(1) on the same ground. "Given the clear pronouncement by the *Heller* majority, the Court declines Defendant's invitation to ... overrule the United States Supreme Court." *Id* at *1. While ruling in Defendant's favor would not be overruling the holding of *Heller,* it is recommended that this Court pay heed to its dictum suggesting that *Heller* does not make unconstitutional the felon in possession statute.

For the reasons stated above **IT IS RECOMMENDED** that Defendant's motion to dismiss the indictment is **DENIED.**

The parties to this action may object to and seek review of this Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and LR 72.1(d). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon the Magistrate Judge.

**SO ORDERED.**

E.D.Mich.,2008.
U.S. v. Westry
Not Reported in F.Supp.2d, 2008 WL 4225541 (E.D.Mich.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.