# FFL NEWSLETTER 

**May 2001**                                                             **ISSUE I**

FEDERAL FIREARMS LICENSEE INFORMATION SERVICE
PROVIDED BY THE U.S. DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC

## TRANSFERS TO ALIENS IN A NONIMMIGRANT STATUS

In open letters dated November 18, 1998 and June 16, 2000, we notified you about an amendment to the Federal firearms laws that prohibits the transfer to and possession of firearms and ammunition by aliens admitted to the United States in a nonimmigrant status. The amendment applies to any alien in the United States in a nonimmigrant status, whether or not that alien was required to obtain a visa to enter the United States. Some examples of aliens in a nonimmigrant status are persons traveling temporarily in the United States for business or pleasure, persons studying in the United States who maintain a residence abroad, and temporary foreign workers. Permanent resident aliens are not subject to this new prohibition.

There are exceptions to this new prohibition. The most common exception you will likely encounter is for a nonimmigrant alien holding a valid hunting license or permit lawfully issued in the United States. Another exception is for a nonimmigrant alien "admitted to the United States for lawful hunting or sporting purposes.":

1. a nonimmigrant alien entering the United States to participate in a competitive target shooting event sponsored by a national, State, or local organization, or any affiliate of such organization, devoted to the competitive use or other sporting use of firearms; or

2. a nonimmigrant alien entering the United States to display firearms at a sports or hunting trade show sponsored by a national firearms trade organization, or any affiliate of such organization, devoted to the competitive use or other sporting use of firearms.

The other exceptions to the nonimmigrant alien prohibition may be found in Section 922(y) of the Gun Control Act of 1968, as amended.

We want to remind you, however, that even if a nonimmigrant alien qualifies for an exception to the prohibition, that person must still satisfy the State residency requirement in order to lawfully purchase a firearm from you. You may not lawfully sell a firearm to a person who is not a resident of a State. An alien is only considered a resident of a State if he or she has resided in the State for at least 90 days prior to date of the sale of the firearm.

If you have reasonable cause to believe that an alien is subject to the nonimmigrant alien prohibition or if an alien cannot satisfy the State residency requirement, you should end the transaction without contacting NICS or your State POC.

## NEW ADDRESS FOR OUT OF BUSINESS RECORDS CENTER

There is a new address for Federal firearms licensees to send their records when they discontinue business. The records should be sent within 30 days after discontinuance of business to:

> ATF Out of Business Records Center
> 882 T.J. Jackson Drive
> Falling Waters, WV  25419

**Willfully failing to comply with 18 U.S.C. § 923(g)(4) by not sending in your required records when discontinuing business is punishable by a fine not to exceed $250,000 and/or imprisonment not to exceed 5 years.**

## COMPUTERIZED ACQUISITION AND DISPOSITION RECORDS

Before a Federal firearms licensee can use a specific computer program for recordkeeping in lieu of the required bound book format, it is necessary to get prior approval from ATF. The Bureau **does not** issue blanket approvals for commercially available software programs nor does it endorse any particular product. All requests for a computerized recordkeeping variance must be sent to the Director of Industry Operations in your area. These procedures are outlined in 27 C.F.R. § 178.125(h) in the *Federal Firearms Regulations Reference Guide, ATF P 5300.4*.

All requested systems must be accompanied by a sample printout of the format to be used and meet the following criteria:

1) Conform to all regulatory requirements for pertinent information. (See 27 C.F.R. §§ 178.122, 178.123, or 178.125.)

2) Be able to be queried by serial number and acquisition date of firearm. It would suffice to use commonly recognized trade names or abbreviations when denoting manufacturer or importer.

3) Have an acceptable daily memory backup system, such as disk or tape.

4) Have the capacity to provide a periodic printout of all records:

   (a) at least semiannually;
   (b) upon request by an ATF officer when required by law;
   (c) when the system memory is purged;
   (d) when the license is terminated, and
   (e) sequentially by date of acquisition for all firearms in inventory, as well as all firearms sold during the period covered;

5) Be able to record both the manufacturer and the importer for foreign-made firearms.

6) Yield a printout that may include flintlock, matchlock, percussion cap, or other antique firearms.

7) Include the name and address or name and license number of the suppliers and purchasers/transferees in the computer data. The name and an ATF Form 4473 transaction number may be used in lieu of the name and address for recording the transfer of a firearm to a nonlicensee, if the Forms 4473 are filed numerically.

8) Be self-contained, without reliance upon invoices or other paper/manual systems to provide any of the above information.

9) Upon termination of a license the licensee, must provide an ASCII text file (conforming to common industry standards) and a file description, in addition to printout(s) of all records to the Out of Business Records Center. The printout and ASCII text file must contain the information prescribed in 27 C.F.R. § 178.125(e).

10) Allow users to forward all records to the Out of Business Records Center, per 27 C.F.R. § 178.127, if the business is discontinued.

11) Any proposed changes in an approved system must be submitted to local ATF Director of Industry Operations for evaluation and consideration prior to implementation. Thus, if a licensee wants to change or upgrade the computer software system, the licensee must submit a new variance request to address the proposed system change or upgrade.

Finally, any request approved by ATF will contain the following language: "This approval may be withdrawn if administrative difficulties arise. A copy of this letter should be made a part of your permanent records and be available for inspection by any officer of the Bureau."

## AUCTIONING FIREARMS

Under the Gun Control Act of 1968, as amended, any person engaged in the business of importing, manufacturing or dealing in firearms is required to have a Federal firearms license. "Engaged in the business" as applied to a dealer in firearms means a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms.

A dealer can be "engaged in the business" without taking title to the firearms that are sold. However, the term does not include a person who makes occasional sales, exchanges, or purchases firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of their personal collection of firearms. Accordingly, whether an auctioneer is a person who should be licensed depends upon whether they are engaged in a firearms business.

To address this issue, we will examine the two types of auctions generally conducted by most auctioneers: estate-type auctions and consignment auctions.

In the case of estate-type auctions, the auctioneer acts as an agent of the executor and assists the executor in finding buyers for the estate's firearms. The firearms are possessed by the estate, and the sales of firearms are made by the estate. In these cases, the auctioneer does not meet the definition of "engaged in the business" as a dealer and would not require a license. An auctioneer engaged in estate-type auctions, whether licensed or not, may perform this function, including delivery of the firearms.

In the case of consignment-type auctions held on a regular basis in which persons consign their firearms to the auctioneer for sale pursuant to a consignment agreement, the auctioneer would be "engaged in the business" and would require a license. The auctioneer would be disposing of firearms as a regular course of trade or business within the definition of a "dealer" under 18 U.S.C. § 921(a)(11)(A) and must comply with the licensing requirements of the law.

As previously stated, licensed auctioneers in consignment-type auctions generally must engage in the firearms business from their licensed premises. However, auctioneers may conduct an auction at a location other than their licensed premises by displaying firearms at the auction site, agreeing to the terms of sale of the firearms, then returning the firearms to the licensed premises for delivery to the purchaser.

## CORPORATE MERGERS SIGNIFICANTLY IMPACT STATUS OF FEDERAL LICENSES

Recently, the National Licensing Center has dealt with numerous instances involving corporate mergers and acquisitions. Some of these transactions resulted in voided Federal firearms licenses because licensees failed to comply with the requirement that new entities must apply for a Federal firearms license. As a result, some businesses were forced to cease operations pending application and issuance of new licenses. Many companies could have avoided these costly shutdowns had they complied with Federal regulations regarding licensing requirements triggered by a change of ownership.

Errors often occur when corporations either merge or acquire another company. In such instances, the old entity ceases to exist and the Federal licenses become invalid. The new corporation must apply for and receive new licenses to replace those held by the dissolved corporation, prior to engaging in licensed activities.

The licensing provisions related to this situation are set forth at 18 U.S.C. § 923(a). Persons intending to engage in the business of manufacturing, importing or dealing in firearms must obtain a Federal license to do so before commencing such businesses. The regulations, 27 C.F.R. § 178.11, define "person" as "[a]ny individual, corporation, company, association, firm, partnership, society, or joint stock company." Thus, a corporate entity is a "person" for purposes of the Federal firearms regulations.

Pursuant to 27 C.F.R. § 178.51, licenses are not transferable. In the event of the lease, sale, or other transfer of the business or operations covered by the license, the successor must obtain a new license before commencing business or operations. When a corporate entity is merged or acquired, and that entity is dissolved, the new entity cannot operate under the defunct corporation's license.

Under 18 U.S.C. § 923(d)(2), ATF has 60 days, from receipt of a firearms license application, to approve or deny it. Persons or companies planning to acquire an operation requiring new licenses should plan accordingly. Federal law and regulations have no provisions for allowing continued operations under voided licenses pending application approval.

Finally, section 178.127 requires that when a firearms business is discontinued and succeeded by a new licensee, the records prescribed by Federal regulation shall appropriately reflect such facts and shall be delivered to the successor.

If you have questions about the information contained in this article, or need to request license applications, please contact the National Licensing Center at (404) 679-5040.

## TRANSFERS OF NATIONAL FIREARMS ACT FIREARMS IN DECEDENT'S ESTATES

The National Firearms Act (NFA) Branch frequently responds to questions regarding NFA firearms in decedents' estates. We often find that Federal firearms licensees are involved in assisting the decedent's representative (e.g., executor) in disposing of these firearms. The following information is designed to provide information to executors and others involved in the transfers of NFA firearms.

Possession of an NFA firearm not registered to the possessor is a violation of Federal law and the firearm is subject to seizure and forfeiture. However, a reasonable time is allowed for transfer of lawfully registered firearms in a decedent's estate.

It is the responsibility of the executor or the administrator of an estate to transfer firearms registered to a decedent. ATF Form 5, *Application for Tax Exempt Transfer and Registration of a Firearm*, is used to apply for a tax-exempt transfer to a lawful heir. A

lawful heir is anyone named in the decedent's will or, in the absence of a will, anyone entitled to inherit under the laws of the State in which the decedent last resided. NFA firearms may be transferred directly interstate to a beneficiary of the estate. However, if any Federal, State or local law prohibits the heir from receiving or possessing the firearm, ATF will not approve the application. When a firearm is being transferred to an individual heir, his or her fingerprints on FBI Forms FD-258 must accompany the transfer application.

ATF Form 4 is used to apply for the taxpaid transfer of a serviceable NFA firearm to a person outside the estate (not a beneficiary). ATF Form 5 is also used to apply for the tax-exempt transfer of an unserviceable NFA firearm to a person outside the estate. As noted above, all requirements, such as fingerprint cards for transfers to individuals and compliance with State or local law, must be met before an application could be approved.

If the NFA firearm in the estate was imported for use as a "sales sample," this restriction on the firearm's possession remains. The NFA firearm may only be transferred to a Federal firearms licensee who has paid the special (occupational) tax to deal in NFA firearms or to a government agency.

For further information, contact:

Bureau of Alcohol, Tobacco & Firearms
National Firearms Act Branch
650 Massachusetts Avenue, NW
Washington, DC  20226
(202) 927-8330

## IMPORTATION OF CERTAIN FRAMES, RECEIVERS AND BARRELS

This notice is to provide all Federal firearms licensees and other interested parties with information regarding the importation of frames, receivers and barrels for firearms that would be prohibited from importation if assembled.

Generally, 18 U.S.C. § 925(d)(3) prohibits the importation of nonsporting firearms, firearms defined under the NFA, 26 U.S.C. § 5845(a), and surplus military firearms. This section provides that if a particular firearm has not been authorized for importation, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled.

Accordingly, frames, receivers and barrels that are primarily designed for assembly into nonsporting firearms **may not be imported.** These include the frames, receivers and barrels of any of the rifles identified in the 1998 study as nonimportable. These rifles may be found in the 2000 edition of the *Federal Firearms Regulations Reference Guide* on page 126. Section 925(d)(3) also prohibits the importation of the frames, receivers and barrels of NFA firearms (such as the G3 and FAL), and surplus military firearms (such as the M1 Garand and US 1911 pistols).

ATF has recognized that certain barrels, frames and receivers that otherwise would not be importable may be imported for **repair and replacement purposes**. In such cases, the application for importation, ATF Form 6, should identify in block 10 that the importation is for repair or replacement only. If granted, such permits would authorize the importation of frames, receivers and barrels for repair and replacement but not for assembly into new firearms that would be prohibited from importation under § 925(d)(3). Where the importation is authorized for repair and replacement, the permit will be stamped with the following restriction:

**NOTE: The barrels, frames and/or receivers authorized for importation by this permit may only be used for repair or replacement and MAY NOT be used to assemble new firearms that would be prohibited from importation pursuant to 18 U.S.C. § 925(d)(3).**

Please direct any question you may have regarding the importation of barrels, frames and receivers for firearms that would be prohibited from importation if assembled to the Firearms and Explosives Imports Branch (202) 927-8320.

## QUESTIONS TO THE EDITOR

Q. Are the instructions attached to the ATF Form 4473 (Firearms Transaction Record) required to be maintained with the Form 4473 as part of a licensee's permanent firearms records?

A. Yes. Because the instructions are part of the Form 4473, they must be maintained for at least 20 years.

Q. When should the ATF Form 3310.4, *Report of Multiple Sale or Other Disposition of Pistols and Revolvers*, be filed? In some states with waiting periods, like California, dealers are submitting the Form 3310.4 prior to transferring the firearms.

A. A licensee shall prepare and submit the Form 3310.4 whenever the licensee sells or otherwise disposes of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination or pistols and revolvers totaling two or more, to an unlicensed person. The form should be executed when the firearms are actually delivered to the transferee.

Q. Is a Form 4473 and a NICS background check required for a corporate officer of an FFL who is acquiring a firearm for his or her own personal use?

A. Yes, generally, a Form 4473 and a background check is required when a corporate FFL transfers a firearm to one of its officers for his or her personal use. See 18 U.S.C. § 922(t)(3) for applicable exceptions.

Q. Is a signature required each time a firearm is delivered by a shipper/common carrier or is a signature of the FFL maintained on file by the shipper an acceptable alternative?

A. A signature is required each time a firearm is delivered by a common or contract carrier to verify the acknowledgement of the receipt of the firearm.

Q. Is the Savage model 10ML rifle which has the characteristics of both a modern firearm and a muzzleloader regulated under the Gun Control Act?

A. ATF has classified the Savage model 10ML as a rifle that would fall under the purview of the Gun Control Act. For additional information about the classification of this firearm or any other firearm, you should contact the Firearms Technology Branch at (202) 927-7910.

Q. Are all Federal agencies exempt from the excise tax on firearms and ammunition?

A. No, the Department of Defense and the U.S. Coast Guard are the only Federal agencies exempt from the excise tax requirements for firearms and ammunition. Therefore, the sale of firearms and ammunition to any agency of the Federal government, other than to the Department of Defense or U.S. Coast Guard, is subject to Federal excise tax requirements. For additional information regarding Federal excise tax requirements, you should contact the National Revenue Center at 1-(800) 398-2282 or at (513) 684-2979.

Q. If a licensee gets a delayed response on a NICS background check and there is no additional response from the FBI or their State point of contact, is a licensee required to transfer a firearm after 3 business days have elapsed?

A. No, under the Gun Control Act, a licensee may, but is not required to, transfer a firearm after 3 business days have elapsed since they received the initial delayed response on a NICS background check.

Q. Is a single monthly utility bill sufficient to establish proof that an alien has resided in a State for the 90-day residency requirement to purchase a firearm?

A. No, the alien should provide at least one utility bill per month to verify residence for the past 90 days. This would also apply to mail that is used as proof of residency. The mail should reflect that the alien purchaser is a current resident and prove that the alien has lived at that residence for at least 90 days.

Q. Are aliens authorized to possess ammunition in the United States?

A. An alien who is in the United States as a <u>permanent resident alien</u> is authorized to possess ammunition in the United States provided he or she is not otherwise prohibited from possessing it under the Gun Control Act. An alien who is in the United States in a <u>nonimmigrant alien status</u> is generally prohibited from possessing ammunition unless he or she qualifies under one of the exceptions contained in the Gun Control Act as outlined in 18 U.S.C. § 922(y)(2), or has a waiver from the Attorney General as outlined in 18 U.S.C. § 922(y)(3).

Q. Can a licensed collector sell a curio or relic shotgun or rifle to an out-of-state resident?

A. Yes, a licensed collector is specifically authorized to sell a curio or relic shotgun or rifle to a nonlicensed resident of another State so long as the purchaser meets with the licensee in person to accomplish the transfer, sale, and delivery of the rifle or shotgun. The sale, delivery, and receipt of the rifle or shotgun must fully comply with the legal conditions of sale in both such States.

Q. Is there anything dealers can do to expedite the processing of NICS background checks?

A. Yes, if a background check is not initially approved, dealers should wait at least 2 hours before calling back to check on the status of that check. This will help avoid tying up the system. In addition, if a dealer who is a sole proprietor is transferring a firearm to themselves, they are not required to conduct a background check and they should not contact the FBI NICS Center to conduct a check on themselves.

Q. Is a Form 4473 required for an individual who leaves a firearm with an FFL for an appraisal of the value of the firearm?

A. No, we would consider this like a gunsmith transaction and a Form 4473 would not be required when the firearm is picked up by the individual. In addition, if the licensee has possession of the firearm from one business day to another or longer, the firearm would need to be recorded as an acquisition and a disposition in the bound book record.

Q. Are campus police department officers allowed to purchase "law enforcement restricted" semiautomatic assault weapons or large capacity ammunition feeding devices?

A. If the college is part of a State or local government, i.e., a public institution, and campus police department officers have law enforcement authority under their State or local laws, they may purchase these restricted items. Campus police from private colleges may not lawfully purchase or possess assault weapons or large capacity ammunition feeding devices.

Q. What is required to sell a semiautomatic assault weapon to a law enforcement officer?

A. The licensee would need the following documentation from the officer before a sale can be completed. The purchasing officer must provide a written statement, executed under penalty of perjury, indicating that the weapon is being purchased for official business and not being acquired for personal reasons. The licensee must also obtain a written statement from a supervisor of the purchasing officer, executed under penalty of

April 2001     **FFL NEWSLETTER**     ISSUE I

perjury, stating that the officer is acquiring the weapon for use in their official duties. In addition, the licensee would need to obtain a certification statement on official agency letterhead signed by a person in authority that indicates that the purchasing officer has not been convicted of a misdemeanor crime of domestic violence.

April 2001                                          FFL NEWSLETTER                                            ISSUE I

# FIREARMS, EXPLOSIVES AND ARSON DIRECTORATE

There have been several recent changes to the personnel who manage the Firearms, Explosives and Arson Directorate in ATF Headquarters. The current structure dealing with firearms & ammunition issues is as follows:

**Assistant Director**
**Firearms, Explosives and Arson**
John Malone
(202)927-7940

**Deputy Assistant Director**
**Firearms, Explosives and Arson**
Wally Nelson
(202)927-7940

**Chief, Firearms Programs Division**
Gary Thomas          (202)927-7770

**Deputy Chief, Firearms Programs Division**
Kent Cousins         (202)927-7770

**Chief, Firearms Technology Branch**
Curt Bartlett        (202)927-7910

**Chief, Firearms Trafficking Branch**
Steven Bogdalek      (202)927-7770

**Chief, International Programs Branch**
Scott A. Pickett     (202)927-5560

**Chief, Brady Operations Branch**
Valerie Park         (304)260-3860

**Chief, Firearms and Explosives Services Division**
Mary Jo Hughes       (202)927-8300

**Chief, National Firearms Act Branch**
Art Resnick          (202)927-8330

**Chief, Firearms and Explosives Imports Branch**
David Johansen       (202)927-8320

**Chief, National Licensing Center Branch**
Charles Bartlett     (404)679-5040

**Chief, National Tracing Center Division**
Terry Austin         (800)788-7133

**Chief, National Tracing Center Branch**
Charles Houser       (800)788-7133

**Chief, Crime Gun Analysis Branch**
Gary Orchowski       (800)788-7133

**Director – YCGII (Youth Crime Gun Interdiction Initiative)**
Mike Bouchard        (202)927-7770

**Director – NIBIN (National Integrated Ballistic Identification Network)**
Patricia Galupo      (202)927-5660

**Branch Chief – NIBIN**
Jeff Stirling        (202)927-5660

**ATF Distribution Center**
(to order forms)
(703)455-7801

**Report Stolen Firearms**
Monday - Friday, 8:00AM - 4:30PM EST
(888)930-9275

Evenings, Weekends, & Holidays
(800)800-3855

ATF Website:   http://www.atf.treas.gov

April 2001        **FFL NEWSLETTER**        ISSUE I

# FBI/NICS NEWS

## GUN BUYERS, KNOW YOUR RIGHTS

**DELAYED**

This is a result of a name-based background check, it means that more research is required to determine a NICS "Proceed" or "Denied" response. A "Delayed" response to the FFL indicates that it would be unlawful to transfer the firearm until receipt of a follow-up "Proceed" response from the NICS or the expiration of 3 business days, whichever occurs first.

**DENIED**

This response means a firearm transfer is denied based on the NICS response indicating one or more matching records were found providing information demonstrating that receipt of a firearm by a prospective transferee would violate 18 U.S.C. § 922 or State law. Individuals who are denied the purchase of a firearm may request that NICS provide the reason for denial.

*IF YOU ARE DENIED...*

*You may request the reason(s) for your denial by writing to the denying agency or to the:*

> Federal Bureau of Investigation
> NICS Operations Center
> Research and Analysis
> Post Office Box 4278
> Clarksburg, WV 26302-4278

You must include your complete mailing address along with the NICS Transaction Number (NTN) in the request, or the NICS Operations Center will be unable to process your appeal. The NTN is a tracking number that is directly linked to your denial and can be obtained from the dealer where you attempted to purchase the firearm. A brochure should be available at the counter to assist you in preparing your request.

## NICS E-CHECK IMPLEMENTATION POSTPONED

The National Instant Criminal Background Check System (NICS) Program Office has announced that the NICS E-Check system that was projected to be implemented in the spring of 2001 has been delayed for development of security and operational enhancements. The NICS E-Check will allow Federal firearms licensees electronic access to initiate a NICS background check via the Internet during normal NICS operation hours of 8 a.m. to 1 a.m., Eastern Time. In addition, the NICS E-Check will allow the user to check the status of previous transactions 24 hours a day. The toll-free NICS Call Center will continue to be available to initiate background checks. The revised implementation date for NICS E-Check is the last quarter of 2001.

## FEDERAL BUREAU OF INVESTIGATION (FBI) NATIONAL INSTANT CRIMINAL BACKGROUND CHECK SYSTEM (NICS)
### November 2000

## NICS USER CONFERENCE

The FBI held the NICS User Conference at the Criminal Justice Information Services Division (CJIS) in Clarksburg West Virginia on July 20, 2000. In attendance were individuals representing corporate executives from various retailers who sell firearms, Federal firearms licensees (FFLs) from across the country, representatives of national firearm organizations, state bureau personnel, Bureau of Alcohol, Tobacco and Firearms (ATF), Department of Justice (DOJ) and FBI personnel attended the conference.

FFLs who were invited were selected by the criteria of their volume of sales from the past six months. The top 60% of high volume

dealers, the top 30% of medium volume dealers and the top 10% of low volume dealers were selected.

The conference provided a forum to discuss NICS-related operational issues. In addition, it provided an opportunity to gain feedback from NICS users to help offer improved customer service. The conference was concluded with a tour of the NICS Operation Center.

### NICS SYSTEM AVAILABILITY

*CALL CENTER*

| Month | Downtime Minutes | Availability |
|---|---|---|
| June-2000 | 829 | 97.29% |
| July-2000 | 531 | 98.32% |
| August-2000 | 751 | 97.62% |
| September-2000 | 354 | 98.84% |
| October-2000 | 248 | 99.22% |
| November-2000 | 109 | 99.64% |

*POINT OF CONTACT STATES*

| Month | Downtime Minutes | Availability |
|---|---|---|
| June-2000 | 575 | 98.12% |
| July-2000 | 582 | 98.16% |
| August-2000 | 812 | 97.43% |
| September-2000 | 299 | 99.35% |
| October-2000 | 207 | 99.35% |
| November-2000 | 109 | 99.64% |

### NICS AVAILABILITY MONTHLY REPORT

| Month | Call Center | Point Of Contact States |
|---|---|---|
| Dec-98 | 97.24% | 97.74% |
| Jan-99 | 94.82% | 95.58% |
| Feb-99 | 97.48% | 96.71% |
| Mar-99 | 98.41% | 98.63% |
| Apr-99 | 98.89% | 98.94% |
| May-99 | 98.50% | 98.54% |
| June-99 | 99.54% | 99.62% |
| July-99 | 92.04% | 92.67% |
| Aug-99 | 95.20% | 95.56% |
| Sept-99 | 95.81% | 95.97% |
| Oct-99 | 97.71% | 97.94% |
| Nov-99 | 94.37% | 94.54% |
| Dec-99 | 95.32% | 95.47% |
| Jan-00 | 98.81% | 98.81% |
| Feb-00 | 96.82% | 96.63% |
| Mar-00 | 99.07% | 99.12% |
| Apr-00 | 98.35% | 98.41% |
| May-00 | 81.70% | 81.95% |
| Jun-00 | 97.29% | 98.12% |
| Jul-00 | 98.32% | 98.16% |
| Aug-00 | 97.62% | 97.43% |
| Sep-00 | 98.84% | 99.02% |
| Oct-00 | 99.22% | 99.35% |
| Nov-00 | 99.64% | 99.64% |
| **AVERAGE** | **96.71%** | **96.86%** |

### NICS CUSTOMER SERVICE

**TO REQUEST THE STATUS OF A DELAYED NICS BACKGROUND CHECK,** telephone toll-free 1-877-FBI-NICS and press 2  When you hear the second voice message, press 2.

If you received a delayed response, you may call the toll-free number to request the status of the background check. You must provide the Customer Service Representative (CSR) with your Federal Firearms Licensee number, code word and the NICS Transaction Number (NTN) of the background check about which you are calling. If the background check has been completed, the CSR will advise you whether the transfer may proceed or is denied. If the background check has not been completed, the CSR will estimate the length of time it will take to make

| April 2001 | FFL NEWSLETTER | ISSUE I |

a final determination.  *Please wait at least 2 hours before inquiring on the status of a background check*.  NICS transactions are processed in the order they are initiated.  By waiting the 2-hour period, the duplication of effort by the NICS employees is avoided.  Ninety-five percent of NICS transactions are resolved within two hours.  A specific answer in regard to the delay may require at least 3 business days.  (Please see definition of 3 business days below.)  Never call the same background check in twice.  This would result in 2 NTNs for one transaction.

The status of a NICS transaction will be changed to *canceled* when research of the transaction has not begun and the FFL calls and requests the transaction be canceled.  If the research has begun, the transaction will be completed, and the FFL will be informed of the final status and advised to make the appropriate comments on the Form 4473.

The Customer Service Center is available to serve NICS related needs, such as:

- Answer NICS background check questions;
- Respond to technical questions;
- Address problems or complaints;
- Provide information on the appeals process;
- Change an FFL code word;
- Request an inquiry status;
- Process enrollment for new FFLs
- Change information, such as contact number or fax number changes and hours of operation for existing FFLs; *(please remember any change to FFL information must first be reported to the ATF National Licensing Center).*
- Take requests for and forward additional NICS forms and brochures.  FFLs must contact the ATF Distribution Center for ATF forms.

## DEFINITION OF THREE BUSINESS DAYS

**THREE BUSINESS DAYS** The maximum amount of time a NICS Examiner has to make a decision whether the request for a firearm should proceed or be denied.  Business day means a 24-hour day (beginning at 12:01a.m.) on which State offices are open in the State in which the proposed firearm transaction is to take place.

| NICS Contacted On | NICS Answer Before |
|---|---|
| SUNDAY | THURSDAY |
| MONDAY | FRIDAY |
| TUESDAY | SATURDAY |
| WEDNESDAY | TUESDAY |
| THURSDAY | WEDNESDAY |
| FRIDAY | THURSDAY |
| SATURDAY | THURSDAY |

**NOTE:**  If there is a Federal or State holiday during the time period, the answer may be delayed 1 additional day.

When you are notified by a NICS examiner that the case is still in the process of being reviewed and a "proceed" or a "denial" response cannot be given for the sale, and you are *NOT* contacted by NICS again by the close of business on the third day, the Brady Act does not prohibit the FFL from transferring the firearm *the next day* or at any time within 30 days. NICS will continue to review the matter for 2 additional weeks.  The FFL must wait until the 3 business days have ended before transferring the firearm.  In other words, when a NICS examiner calls you and states, "Although today is the 3rd business day since you requested this check, we are still in the process of reviewing this matter and cannot give you either a 'proceed' or a 'denial' response for this sale. If you do not hear from us again by the close of business today, the Brady Act does not prohibit you from transferring the firearm tomorrow or at any time within 30 days. However, NICS will be continuing our review of this matter for 2 more weeks.  We will contact you within that time if we discover definitive information regarding this transaction.  This transaction is not a proceed, but will merely default due to lack of information." NOTE: An FFL does not have to transfer the firearm after 3 days, but has the option to do so under the law if they have no prohibiting information.

## TYPE 3 LICENSES

A Type 3 license holder *does not* register with NICS. Transfers of curio or relic firearms made by licensed collectors are not subject to the requirements of the Brady Act. Furthermore, the Brady Act does not apply to the transfer of a curio or relic firearm to a licensed collector. However, a licensed collector who requires a firearm other than a curio or relic firearm from a licensee would be treated like any other non-licensee, and the transfer would be subject to the requirements of the Brady Act.

## INTERNET CHECKS

The NICS is scheduled to offer FFLs the opportunity to conduct NICS checks via Internet beginning spring 2001. The NICS Program Office recently mailed 53,000 surveys to FFLs requesting that the FFLs complete the survey if they are interested in utilizing electronic access.

The NICS Program Office wishes to stress that the implementation of electronic access will not phase out the use of the telephonic means already in place. The development of electronic access only enhances the capabilities of FFLs to contact NICS to conduct a NICS check.

## "YES" ANSWERS ON ATF FORM 4473

FFLs should ensure the purchaser has answered all questions on Form 4473. If a prospective purchaser answered "yes" to any of the questions on the ATF Form 4473 (other than questions 9 a. and 9 l. of the 10/98 edition), you should not contact the NICS because the subject is prohibited from purchasing. Of course, if the FFL discovers after reviewing the form, that transfer of the firearm would be illegal, he or she should not contact NICS; the subject is prohibited from purchasing.

## FBI NICS NOTES

- NICS must receive a written request for the reason(s) for denial from a denied purchaser.

- Any appeal inquiry must contain complete name, correct mailing address and correct NTN of an appellant.

- NICS Appeal Services Unit (ASU) will respond under law in 5 days; however, the 5 day period is calculated beginning at 12 a.m. the day after the appellant's letter is received and consists of 5 business days (not counting weekends and holidays) thereafter. Once the request is initially answered by ASU, responding to additional correspondence received regarding an ongoing appeal does not fall within the 5-day response time. Subsequent correspondence often requires indepth research and analysis to resolve.

- Overturn letters sent to appellants stating that they are eligible to purchase apply only to the *one* transaction to which the letter refers. This letter must be kept on file with the ATF form 4473. If more than 30 days have elapsed since the initial background check, the FFL must recheck the NICS before allowing the transfer. The FFL must contact the Customer Service Unit (1-877-444-6427) to complete the additional NICS check.

- FFLs, please do not provide the names of FBI employees to denied persons.

| April 2001 | FFL NEWSLETTER | ISSUE I |
|---|---|---|

**NICS INFORMATION LINE (CUSTOMER SERVICE)**

**877-444-NICS**

**TELECOMMUNICATION DEVICE FOR THE DEAF (TDD)**
**877-NICS-TTY**

**FACSIMILE**
**304-625-0534  or  1-888-550-6427**

**WEB SITE:**
http://www.fbi.gov/programs/nics/index.htm