# UNPUBLISHED CASES

# VOL. II of II


## *Dutton v. Pennsylvania*

United States District Court for the Eastern District of Pennsylvania

July 23, 2012, Decided; July 23, 2012, Filed

CIVIL ACTION No. 11-7285

### Reporter

2012 U.S. Dist. LEXIS 102653

KELLY DUTTON, Plaintiff, v. COMMONWEALTH OF, PENNSYLVANIA, et al., Defendants.

### Subsequent History: Affirmed by *Dutton v. Pennsylvania, 2012 U.S. App. LEXIS 23061 (3d Cir. Pa., Nov. 8, 2012)*

*Related proceeding at Dutton v. Office of Ag, 2013 Pa. Commw. Unpub. LEXIS 167 (2013)*

### Core Terms

firearm, misdemeanor, motion to dismiss, imprisonment, license, first-degree

### Counsel: [*1] KELLY DUTTON, Plaintiff, Pro se, PHILADELPHIA, PA.

For COMMONWEALTH OF PA, OFFICE OF ATTORNEY GENERAL, STATE POLICE, Defendants: BARRY N. KRAMER, PA OFFICE OF ATTY GENERAL, PHILADELPHIA, PA.

### Judges: Berle M. Schiller, J.

### Opinion by: Berle M. Schiller

## Opinion

### MEMORANDUM

### Schiller, J.

*Pro se* Plaintiff Kelly Dutton brings this action pursuant to *42 U.S.C. § 1983* against the Pennsylvania State Police ("PSP"), the Commonwealth of Pennsylvania, and the Pennsylvania Office of Attorney General, alleging that he was unlawfully prohibited from purchasing a firearm in February 2011. Currently before the Court is Defendants' motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*. [1] For the reasons set forth below, the motion will be granted.

### I. BACKGROUND

Dutton's claim arises from the denial of a handgun purchase in December 2010. (Compl. ¶ III-C.) Under Pennsylvania law, individuals must be screened by the Pennsylvania Instant [*2] Check System ("PICS"), an electronic background check system, before purchasing a firearm in the Commonwealth. (*Id.*) Dutton's background

---

[1] Defendants also seek to dismiss the action under *Federal Rule of Civil Procedure 12(b)(1)* based on Eleventh Amendment immunity. Because this Court will grant Defendants' motion to dismiss for failure to state a claim, it need not analyze whether the Eleventh Amendment bars federal jurisdiction.

check revealed two convictions from 1995, one for carrying a firearm on a public street and one for carrying a firearm without a license. (*Id.*; Defs.' Mot. to Dismiss Ex. A [MC-51-CR-1211101-1994 Docket].) [2] Both convictions are first-degree misdemeanors punishable by "a term of imprisonment, the maximum of which is not more than five years." *18 Pa. Cons. Stat. § 106(b)(6)*. In light of these convictions, Dutton was not permitted to purchase a firearm. (*Id.*)

Dutton challenged the PICS denial to the PSP's Firearms Division. (*Id.*) By letter dated February 11, 2011, the PSP stated that the denial was based upon Dutton's disqualifying convictions from 1995, pursuant to *18 U.S.C. § 922(g)(1)*, [*3] which prohibits a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." (*Id.*; Compl. Ex. A [Denial Letter].)

Dutton initiated this action on November 20, 2011, contending that *18 U.S.C. § 922(g)* applies only to felonies and misdemeanors of domestic violence. Defendants subsequently filed a motion to dismiss presently before the Court.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., 237 F.3d 270, 272 (3d Cir. 2001)*. A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)*; *see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. To survive a motion to dismiss, a complaint must include "enough [*4] facts to state a claim to relief that is plausible on its face." *Id. at 570*. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678*. Simply reciting the elements will not suffice. *Id.* (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips, 515 F.3d at 231*.

---

[2] The Court takes judicial notice of the criminal docket of the Philadelphia County Court of Common Pleas, which reveals that Dutton was convicted on April 6, 1995, of carrying firearms on a public street or place and carrying firearms without a license. The docket is available at http://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=MC-51-CR-1211101-1994.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)*. Second, the court must [*5] make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id. at 211*. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged-but has failed to show-that the pleader is entitled to relief. *Id.*

## III. DISCUSSION

Dutton asks the Court to determine whether *18 U.S.C. § 922* applies to all state misdemeanors or just misdemeanors of domestic violence. (Compl. ¶ III-C.) Consequently, the Court will construe Dutton as alleging a violation of his statutory rights under *18 U.S.C. § 922(g)*. [3]

Defendants assert that this action must be dismissed because Plaintiff has misconstrued the basis for the denial of his firearms license. (Defs.' Mem. of Law in Supp. of Commw. Defs.' Mot. to Dismiss Compl. at 8.) Dutton contends that the PSP wrongfully based the denial of his firearms license on *18 U.S.C. § 922(g)(9)*, which prohibits a person "convicted of a misdemeanor crime of domestic violence" from possessing a firearm. Therefore, Dutton claims, his two convictions from 1995, both first-degree misdemeanors under Pennsylvania law but not crimes of domestic violence, should not preclude him from obtaining a firearms permit. [*7] (Compl. ¶ III-V.)

None of the allegations in the Complaint supports Dutton's contention that his denial was based on *18 U.S.C. § 922(g)(9)*. Moreover, the PSP informed Dutton that his firearms permit denial was based on *18 U.S.C. § 922(g)(1)* in a letter dated February 11, 2011, which was attached to the Complaint. (Compl. Ex. A [Denial Letter].) Therefore, the Court must determine whether Dutton's previous convictions preclude him from obtaining a firearms permit under *18 U.S.C. § 922(g)(1)*, which prohibits a person convicted of a crime punishable by imprisonment exceeding one year from possessing a firearm.

When interpreting a statute, "our inquiry . . . begins with its plain language." *Birdman*

---

[3] While the Court will construe a *pro se* plaintiff's complaint liberally, Dutton does not allege a challenge to *18 U.S.C. § 922* under the Second Amendment. Nevertheless, had Plaintiff asserted a constitutional challenge, the Court would have found the claim lacked merit. The Third Circuit has analyzed the provision at issue in this case-*18 U.S.C. § 922(g)(1)*-and held it to be facially constitutional. *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011) (citing *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)), and *McDonald v. City of Chi.*, U.S. , 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010)).

[*6] Furthermore, the Third Circuit has also found that *Section 922(g)(1)* is constitutional as applied to individuals who have presented no facts distinguishing their "circumstances from those of other felons who are categorically unprotected by the Second Amendment." *Id.*; *see also United States v. Marzzarella*, 614 F.3d 85, 92 (3d Cir. 2010) (noting that "although the Second Amendment protects the individual right to possess firearms for defense of hearth and home, *Heller* suggests . . . a felony conviction disqualifies an individual from asserting that interest").

*v. Office of the Governor, 677 F.3d 167, 178, 56 V.I. 973 (2012)* (quoting *Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992))*. Plain language ″means the ordinary usage of a term.″ *Lawrence v. City of Phila., 527 F.3d 299, 317 (3d Cir. 2008)* (internal quotation marks omitted); *see also Okeke v. Gonzales, 407 F.3d 585, 593 (3d Cir. 2005)* (″Perhaps the most fundamental principle of statutory construction is that words in a statute must be given their ordinary meaning whenever possible.″). ″The plain meaning [**8] of the text should be conclusive, except in the rare instance when the court determines that the plain meaning is ambiguous.″ *Morgan v. Gay, 466 F.3d 276, 278 (3d Cir. 2006)*. The relevant statute, *18 U.S.C. § 922*, provides:

> It shall be unlawful for any person . . . (1) *who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year* . . . to ship or transport in interstate of foreign commerce, or possess in or affecting commerce, any firearm of ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

*18 U.S.C. § 922(g)(1)* (emphasis added). Pursuant to *18 U.S.C. § 921(a)(20)*, ″[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include . . . any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years of less.″ In Pennsylvania, a crime classified as a first-degree misdemeanor carries a maximum penalty of five years of incarceration. *18 Pa. Cons. Stat. § 106(b)(6)*; *see also Commw. v. Baldwin*, 604 Pa. 34, 37 (2009) (affirming a sentence of three-and-a-half to seven years imprisonment for [**9] carrying a firearm without a license, and two to four years incarceration and one year of probation for carrying a firearm on the public streets of Philadelphia). Accordingly, a Pennsylvania first-degree misdemeanor conviction does not satisfy the *Section 921(a)(20)* exception to *Section 922(g)(1)* and is grounds for denial of a firearms permit. Dutton's convictions for carrying a firearm on a public street and for carrying a firearm without a license are both considered first-degree misdemeanors under Pennsylvania law. Therefore, Dutton's convictions preclude him from qualifying for a firearms permit.

## IV. CONCLUSION

For the reasons stated above, Dutton was lawfully denied a firearms license pursuant to *18 U.S.C. § 922(g)(1)*. Because Dutton has failed to state a claim against Defendants, the Court will grant the motion to dismiss. Having determined that any constitutional challenge of *18 U.S.C. § 922(g)(1)* would lack merit, the Court concludes that any amendment by Plaintiff would be futile and will dismiss the claim with prejudice. An Order consistent with this Memorandum will be docketed separately.

## ORDER

**AND NOW**, this **23rd** day of **July, 2012**, upon consideration of Defendants' Motion to Dismiss [**\*10**] Complaint, Plaintiffs response thereto, and for the reasons stated in the Court's Memorandum dated July 23, 2012, it is hereby **ORDERED** that:

1. Defendants' motion (Document No. 4) is **GRANTED.**

2. Plaintiffs Motion to Have Defendants' Motion to Dismiss Complaint Denied (Document No. 5) is **DENIED.**

3. The claims against all Defendants are **DISMISSED with prejudice.**

4. The Clerk of Court is directed to close this case.

**BY THE COURT:**

/s/ Berle M. Schiller

**Berle M. Schiller, J.**

# *Dutton v. Pennsylvania*

United States Court of Appeals for the Third Circuit

October 18, 2012, Submitted for Possible Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6; November 8, 2012, Opinion Filed

No. 12-3304

## Reporter

503 Fed. Appx. 125; 2012 U.S. App. LEXIS 23061; 2012 WL 5447725

KELLY DUTTON, Appellant v. COMMONWEALTH OF PENNSYLVANIA; OFFICE OF ATTORNEY GENERAL; STATE POLICE

**Notice:** NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.

PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** [**1] On Appeal from the United States District Court for the Eastern District of Pennsylvania. (D.C. Civil No. 2:11-cv-07285). District Judge: Honorable Berle M. Schiller.

*Dutton v. Pennsylvania, 2012 U.S. Dist. LEXIS 102653 (E.D. Pa., July 23, 2012)*

## Core Terms

firearm, convictions, misdemeanor, prohibits

## Case Summary

### Procedural Posture

Appellant, who was prohibited from purchasing a firearm because his background check revealed two convictions, appealed from an order of the United States District Court for the Eastern District of Pennsylvania, which granted appellees' motion to dismiss his civil rights complaint with prejudice.

### Overview

While both of appellant's previous convictions were classified as first degree misdemeanors in Pennsylvania, first degree misdemeanors carried a maximum penalty of five years' incarceration. Accordingly, a conviction for a first degree misdemeanor in Pennsylvania did not satisfy the exception created in *18 U.S.C.S. § 921(a)(20)*, and appellant's previous convictions classified him as a felon under *18 U.S.C.S. § 922(g)(1)*. *18 U.S.C.S. § 922(g)(1)* was facially constitutional, and constitutional as applied to an individual, like appellant, who had presented no facts distinguishing his circumstances from those of other felons who were categorically unprotected by the *Second Amendment*.

Further, the district court did not err in declining to allow appellant an opportunity to amend because the court did not see how any amendment to appellant's complaint would have saved his claim.

## Outcome

The order of the district court was affirmed.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1* Appellate courts exercise plenary review over a district court's dismissal order.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN2* To survive dismissal pursuant to *Fed. R. Civ. P. 12(b)(6)*, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. An appellate court affirms a district court's dismissal for failure to state a claim only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint. Appellate courts may summarily affirm if the appeal does

not present a substantial question, and may do so on any basis supported by the record.

Civil Rights Law > ... > Section 1983 Actions > Elements > General Overview

*HN3* To establish a claim under *42 U.S.C.S. § 1983*, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

*HN5* Courts must hold pro se complaints to a less stringent standards than formal pleadings drafted by lawyers.

Constitutional Law > Bill of Rights > Fundamental Rights > Right to Bear Arms

*HN6* The *Second Amendment* confers an individual right to keep and bear arms for self-defense. However, the this determination does not cast "doubt on longstanding prohibitions on the possession of firearms by felons.

Constitutional Law > Bill of Rights > Fundamental Rights > Right to Bear Arms

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN7* *18 U.S.C.S. § 922(g)(1)* is facially constitutional. Furthermore, *18 U.S.C.S. § 922(g)(1)* is constitutional as applied to an individual who has presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the *Second Amendment*.

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN4* *18 U.S.C.S. § 922(g)(9)* prohibits individuals "convicted of a misdemeanor crime of domestic violence" from possessing a firearm.

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN8* *18 U.S.C.S. § 922(g)(1)* prohibits individuals who have been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm. However, this term specifically does not include any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less. *18 U.S.C.S. § 921(a)(20)(B)*.

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN9* Convictions for carrying a firearm without a license, *18 Pa. Cons. Stat § 6106(a)(2)*, are classified as first degree misdemeanors in Pennsylvania, and first degree misdemeanors carry a maximum penalty of five years' incarceration, *18 Pa. Cons. Stat. § 106(b)(6)*. Accordingly, a conviction for a first degree misdemeanor in Pennsylvania does not satisfy the exception created in *18 U.S.C.S. § 921(a)(20)*.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN10* Courts should not dismiss pro se complaints without granting leave to amend unless amendment would be inequitable or futile.

**Counsel:** KELLY DUTTON, Plaintiff - Appellant, Pro se, Philadelphia, PA.

For COMMONWEALTH OF PENNSYLVANIA, ATTORNEY GENERAL PENNSYLVANIA, STATE POLICE, Defendants - Appellees: Barry N. Kramer, Esq., Claudia M. Tesoro, Esq., Office of Attorney General of Pennsylvania, Philadelphia, PA.

**Judges:** Before: AMBRO, SMITH and CHAGARES, Circuit Judges.

## Opinion

[*126] PER CURIAM

Kelly Dutton, proceeding pro se, appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting Appellees' motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* and dismissing his civil rights complaint pursuant to *42 U.S.C. § 1983* with prejudice. Because this appeal does not present a substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

Because we primarily write for the parties, we need only recite the facts necessary for our discussion. In submissions to the District Court, Kelly alleges that he was prohibited from purchasing a firearm because his background check revealed two [**2] convictions from 1995, one for

carrying a firearm on a public street and one for carrying a firearm without a license. Dutton challenged the Pennsylvania Instant Check System ("PICS") denial to the Pennsylvania State Police's ("PSP") Firearms Division. On February 11, 2011, the PSP Firearms Division advised Dutton that his denial was based upon *18 U.S.C. § 922(g)(1)*, which prohibits individuals convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm.

Dutton initiated this action against the Commonwealth of Pennsylvania, the Office of the Attorney General, and the PSP in November 2011. In his complaint, Dutton alleges that *18 U.S.C. § 922(g)* applies only to felonies and misdemeanor crimes of domestic violence. On April 17, 2012, Appellees filed a motion to dismiss for lack of jurisdiction and for failure to state a claim, and Dutton filed a motion to have Appellees' motion denied on April 26, 2012. On July 23, 2012, the District Court entered an order granting Appellees' motion, denying Dutton's motion, and dismissing Dutton's complaint with prejudice. In an accompanying Memorandum, the District Court determined that Dutton was lawfully [**3] denied a firearms license and therefore failed to state a claim against Appellees. Dutton then timely filed this appeal.

We have jurisdiction pursuant to *28 U.S.C. § 1291* and **HN1** exercise plenary review over the District Court's dismissal order. See *Allah v. Seiverling, 229 F.3d 220, 223*

*(3d Cir. 2000)*. **HN2** To survive dismissal pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. This Court affirms a district court's dismissal for failure to state a claim "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint." *McGovern v. City of Philadelphia, 554 F.3d 114, 115 (3d Cir. 2009)*. We may summarily affirm if the appeal does not present a substantial question, and may do so on any basis supported by the record. *Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011)* (per curiam).

**HN3** To establish [**4] a claim under *§ 1983*, a plaintiff "must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)*. Here, Dutton appears to allege a violation [*127] pursuant to *18 U.S.C. §*

_922(g)_.[1] As an initial matter, the District Court properly determined that nothing in Dutton's complaints supports his contention that the denial of his firearms license was based upon **HN4** _18 U.S.C. § 922(g)(9)_, which prohibits individuals "convicted of a misdemeanor crime of domestic violence" from possessing a firearm. His convictions do not stem from crimes of domestic violence, and the PSP's Firearms Division specifically informed him that the denial was based upon _18 U.S.C. § 922(g)(1)_.

**HN8** Section _§ 922(g)(1)_ prohibits [**6] individuals who have been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. However, this term specifically does not include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." _18 U.S.C. § 921(a)(20)(B)_. While

both of Dutton's previous **HN9** convictions are classified as first degree misdemeanors in Pennsylvania, _see 18 Pa. Cons. Stat § 6106(a)(2)_ (carrying a firearm without a license); _Commonwealth v. Foster, 609 Pa. 502, 17 A.3d 332, 342 n.16 (Pa. 2011)_ (noting that a conviction under _18 Pa. Cons. Stat. § 6108_ is a first degree misdemeanor), first degree misdemeanors carry a maximum penalty of five years' incarceration, _18 Pa. Cons. Stat. § 106(b)(6)_. Accordingly, a conviction for a first degree misdemeanor in Pennsylvania does not satisfy the exception created in _18 U.S.C. § 921(a)(20)_, and the District Court properly granted Appellees' motion to dismiss Dutton's complaint for failure to state a claim.[2]

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

---

[1]  We must construe Dutton's complaint liberally, see Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (noting that **HN5** courts must hold pro se complaints to "less stringent standards than formal pleadings drafted by lawyers"). However, Dutton does not seem to allege either that Appellees violated his Second Amendment rights or that _18 U.S.C. § 922(g)(1)_ violates the Second Amendment. [**5] Nevertheless, such a challenge would necessarily fail. Four years ago, the Supreme Court determined that **HN6** the Second Amendment confers an individual right to keep and bear arms for self-defense. District of Columbia v. Heller, 554 U.S. 570, 595, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). However, the Court explicitly noted that this determination did not cast "doubt on longstanding prohibitions on the possession of firearms by felons." Id. at 626; see also McDonald v. City of Chicago, 130 S. Ct. 3020, 3047, 177 L. Ed. 2d 894 (2010) ("We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons.'"). As discussed below, Dutton's previous convictions classify him as a felon under _18 U.S.C. § 922(g)(1)_, and this Court has previously determined that **HN7** _18 U.S.C. § 922(g)(1)_ is facially constitutional. United States v. Barton, 633 F.3d 168, 175 (3d Cir. 2011). Furthermore, the Barton court determined that _§ 922(g)(1)_ is constitutional as applied to an individual, like Dutton, who has "presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment." Id.

[2]  The District Court did not provide Dutton leave to amend his complaint because "any amendment . . . would be futile." (Dutton v. Pennsylvania, E.D. Pa. Civ. No. 2:11-cv-07285, 2012 U.S. Dist. LEXIS 102653 [**7] Docket #7 at 6.); see Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) (noting that **HN10** courts should not dismiss pro se complaints without granting leave to amend unless "amendment would be inequitable or futile"). We conclude that the District Court did not err in declining to allow Dutton an opportunity to amend because we do not see how any amendment to Dutton's complaint would save his claim.

## *Omega Overseas, Ltd. v. Griffith*

United States District Court for the Southern District of New York

August 7, 2014, Decided; August 8, 2014, Filed

No. 13-cv-4202 (RJS)

**Reporter**

2014 U.S. Dist. LEXIS 109781; 2014 WL 3907082

OMEGA OVERSEAS PARTNERS, LTD., et al., derivatively on behalf of Tetragon Financial Group Limited, Plaintiffs, VERSUS READE GRIFFITH, et al., Defendants.

## Core Terms

contracts, void, investment adviser, securities, statutes, provisions, cases, illegally, regulation, thereunder, private right of action, words, interpreting, non-federal, purposes, terms, defrauds, parties, broader interpretation, motion to dismiss, federal claim, involves, bargain, invalid, rescind, courts, shares, holds

**Counsel:** [*1] For Plaintiffs: A. Rick Atwood, Jr., Brian E. Cochran, Darren J. Robbins, David T. Wissbroecker, Mark Samuel Reich, Randall J. Baron, and Samuel Howard Rudman of Robbins Geller Rudman & Dowd LLP, San Diego, California and Melville, New York.

For Reade Griffith, Patrick Dear, Tetragon Financial Management LP, Tetragon Financial Management GP LLC, Polygon Credit Holdings Ltd., and Polygon Credit Holdings II Ltd., Defendants: Herbert M. Wachtell and Bradley Reid Wilson of Wachtell, Lipton, Rosen & Katz, New York, New York.

For Byron Knief, Greville V.B. Ward, Rupert Dorey, and David Jeffreys, Defendants: Joseph Michael McLaughlin and Noah Maxim Leibowitz of Simpson Thacher & Bartlett LLP, New York, New York.

For Jeff Herlyn, Michael Rosenberg, and David Wishnow, Defendants: Israel David of Fried, Frank, Harris, Shriver & Jacobson, New York, New York.

For Tetragon Financial Group Limited, Nominal Defendant: Karin A. DeMasi of Cravath, Swaine & Moore LLP, New York, New York.

**Judges:** RICHARD J. SULLIVAN, United States District Judge.

**Opinion by:** RICHARD J. SULLIVAN

## Opinion

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Omega Overseas Partners, Ltd. ("Omega") and Jeffrey D. Hall ("Hall,"

and together with [*2] Omega, "Plaintiffs") bring this derivative suit on behalf of Tetragon Financial Group Limited ("TFG"), alleging causes of action for rescission of an investment adviser contract under the Investment Advisers Act of 1940 (the "IAA" or the "Act"), Pub. L. No. 76-768, tit. II, 54 Stat. 847 (codified as amended at *15 U.S.C. §§ 80b-1 to -21*) and for breaches of fiduciary duty and unjust enrichment under the common law against Defendants Reade Griffith, Patrick Dear, Byron Knief, Greville V.B. Ward, Rupert Dorey, David Jeffreys, Jeff Herlyn, Michael Rosenberg, David Wishnow, Tetragon Financial Management LP ("TFG Investment Manager"), Tetragon Financial Management GP LLC, Polygon Credit Holdings Ltd., Polygon Credit Holdings II Ltd., Polygon Management LP ("Polygon"), Polygon Global Partners LP, and Polygon Global Partners LLP.

Now before the Court is Defendants' motion to dismiss. For the reasons set forth below, the motion is granted because Plaintiffs have failed to state a federal claim and because the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining non-federal claims.

I. Background

A. Facts[1]

TFG is a Guernsey-based closed-end investment company[2] (Con. Compl. ¶¶ 3, 17), and TFG Investment Manager is its investment adviser (*id.* ¶ 28). Omega and Hall are shareholders of TFG. (*Id.* ¶ 2.) In 2012, TFG Investment Manager caused TFG to purchase Polygon — a Cayman Islands-based investment adviser owned by TFG's and TFG Investment Manager's principals (*id.* ¶¶ 18, 19, 32) — in exchange for allegedly undervalued TFG shares. (*Id.* ¶¶ 5-6.) Immediately after that purchase, TFG announced a share repurchase, which drove up the price of TFG shares. (*Id.* ¶ 8.) According to Plaintiffs, the purchase of Polygon and the subsequent share repurchase wrongfully diverted tens of millions of dollars from TFG and its public shareholders to the owners of Polygon. (*Id.*)

B. Procedural Background

Omega filed its complaint on June 18, 2013. (Doc. No. 1.) Hall filed his own complaint in a separately docketed case on August 16, 2013. (*Hall v. Griffith, et al.*, 13-cv-5791 (RJS), Doc. No. 1.) On September 4, 2013, the Court consolidated the two cases under this docket number. (Doc. No. 22.) Plaintiffs filed their Consolidated Complaint on September 11, 2013. (Con. Compl.)

---

[1]  Unless otherwise indicated, the following facts are taken from [*3] the Consolidated Complaint (Doc. No. 26 ("Con. Compl.")). For the purpose of resolving the motion, Plaintiffs' allegations are assumed to be true and all reasonable inferences are drawn in Plaintiffs' favor. *See Cleveland v. Caplaw Ents., 448 F.3d 518, 521 (2d Cir. 2006).*

[2]  "A closed-end investment company, unlike a traditional open-end mutual fund, has fixed capitalization and may sell only the number of shares of its own stock as originally [*4] authorized. It does not redeem its securities at the option of the shareholder. Shares of a closed-end fund are traded on a secondary market; that is, its stock, like that of any publicly owned corporation, is usually listed on a national exchange." *Green v. Nuveen Advisory Corp., 295 F.3d 738, 740 n.1 (7th Cir. 2002).*

After some preliminary motion practice on discovery, Defendants filed their motion to dismiss and their supporting papers on January 13, 2014. (Doc. Nos. 60-69.) Plaintiffs responded on March 14, 2013 (Doc. Nos. 82-86), and Defendants replied on April 11, 2014 (Doc. Nos. 90-95).

On May 8, 2014, the Court ordered the parties to submit supplemental briefing addressing whether the Consolidated Complaint stated a claim under § 215(b) of the IAA, an issue no party had addressed in [*5] its briefing. (Doc. No. 97.) The parties submitted their supplemental briefs on May 16, 2014. (Doc. Nos. 98, 99 ("Pl. Supp. Mem.").) The Court held oral argument on the motion on May 23, 2014. (Doc. No. 102.)

II. LEGAL STANDARD

To survive a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)*; *see also Fed. R. Civ. P. 8(a)(2)* ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. In reviewing a *Rule 12(b)(6)* motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable [*6] inferences in favor of the plaintiff. *ATSI Commc'ns, 493 F.3d at 98*. However, that tenet "is inapplicable to legal conclusions." *Iqbal, 556 U.S. at 678*. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555*. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id. at 570*.

III. DISCUSSION

The Court addresses the sufficiency of Plaintiffs' federal claim first. After dismissing that claim, the Court turns to the remaining claims and dismisses them as well.

A. The Investment Advisers Act

Plaintiffs' single federal claim is brought under the IAA. (Con. Compl. ¶¶ 115-121.) Plaintiffs do not, however, bring a claim under the Act's general antifraud provision, § 206. *See 15 U.S.C. § 80b-6*. Indeed, they could not. The Supreme Court held in *Transamerica Mortgage Advisors, Inc.* (TAMA) v. Lewis that there is no private right of action available under § 206. *444 U.S. 11, 19-25, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979)*. Instead, Plaintiffs bring a claim under § 215(b) of the Act, which provides

"a limited private remedy . . . to void an investment advisers [**7**] contract." *Id. at 24*. Specifically, § 215(b) provides that:

> [e]very contract made in violation of any provision of [the IAA] and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of [the IAA], or any rule, regulation, or order thereunder, shall be void . . . .

*15 U.S.C. § 80b-15(b)*.[3]

In their § 215(b) claim, Plaintiffs seek to void the 2007 investment adviser contract between TFG and TFG Investment Manager and rescind all payments made under the contract. (Con. Compl. ¶¶ 28, 120-121.) They allege that the contract is void because TFG Investment Manager, five years after entering into the contract, violated § 206 by defrauding TFG through designing and implementing the Polygon transaction and the subsequent share repurchase. (Con. Compl. at ¶ 119.) That subsequent fraud, they argue, caused "the performance of [the contract] [to] involve[] the violation of [the IAA]," *15 U.S.C. § 80b-15(b)*, thus triggering § 215. In other words, Plaintiffs proceed on the theory that § 215(b) voids an investment adviser contract anytime an investment adviser defrauds a client in violation of the IAA. More bluntly, Plaintiffs effectively claim that § 215 is a backdoor to the private right of action that [**9**] the Supreme Court refused to find under § 206.

As explained below, the Court holds that the provision is significantly narrower than Plaintiffs contend. Put simply, § 215(b) is merely a codification of the common-law principle that illegal contracts are invalid. As such, § 215(b) voids a contract only where the contract would be invalid under that principle — that is, where the contract was made illegally or requires illegal

---

[3] The full text of § 215 reads:

**§ 80b-15. Validity of contracts**

**(a) Waiver of compliance as void**

Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter or with any rule, regulation, or order thereunder shall be void.

**(b) Rights affected by invalidity**

Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance [*8] of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

performance. Therefore, because Plaintiffs have not alleged that the contract was made illegally or requires illegal performance, they have failed to state a claim under § 215(b).

1. Section 215(b) Codifies the Principle that Illegal Contracts Are Invalid

Unlike § 206, which prohibits investment advisers from, among other things, "employ[ing] any device, scheme, or artifice to defraud any client or prospective client," *15 U.S.C. § 80b-6(1)*, § 215(b) is not a general antifraud provision. Instead, both § 215's title and § 215(b)'s text demonstrate that § 215(b) was meant to codify the more modest principle that illegal contracts are invalid.

First, the title — "Validity of contracts" — indicates that § 215 targets problems in the formation of contracts and in the contents [*10] of contracts, and not the actions taken pursuant to contracts. *See Mary Jo C. v. New York State & Local Ret. Sys., 707 F.3d 144, 169 (2d Cir. 2013)* ("The title of a statute and the headings of its sections are tools available for the resolution of a doubt about the meaning of a statute." (alterations and internal quotation marks omitted)); *cf. Restatement of Contracts § 4 cmt. a* (1932) (providing examples affecting contract validity, including contract illegality and insufficient consideration); *Restatement of Conflict of Laws § 332* (1934) (listing issues affecting a contract's validity, none of which relate to subsequent conduct).

Second, § 215(b)'s text strongly echoes the description of illegal contracts found in the *Restatement of Contracts*, which was published only a few years before the IAA's enactment. For example, like the *Restatement*, § 215(b) addresses contracts made in violation of the law and contracts whose performance involves a violation of the law. *Compare 15 U.S.C. § 80b-15(b)* (voiding contracts "made in violation of any provision of [the IAA]" and contracts whose "performance . . . involves the violation of [the IAA]"), *with Restatement of Contracts § 512* ("A bargain [*11] is illegal . . . if either its formation or its performance is criminal, tortious, or otherwise opposed to public policy."). Similarly, § 215(b) - like the principle described in the *Restatement* — does not void a contract entirely, but voids only the rights of a party who is blameworthy. *Compare 15 U.S.C. § 80b-15(b)(1)-(2)* (voiding a contract only as to the rights of those who (1) "in violation of [the IAA], shall have made or engaged in the performance of any such contract," or (2) have acquired rights under the contract "with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of [the IAA]"), *with Restatement of Contracts § 604* (stating that a party to an illegal bargain who is "not in pari delicto . . . can repudiate the bargain, and if he has rendered any performance thereunder, recover it or its value").

Because § 215(b) codifies a pre-existing common-law principle, it should be read consistently with that principle. *See Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 152 (2d Cir. 2005)* ("Congress is

understood to legislate against the pre-existing backdrop of the common law."), *aff'd*, _547 U.S. 677, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006)_. Thus, [*12] under § 215(b), as under the common law, "if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner." 12 *Am. Jur.* § 153 (1938); *accord Cochran v. Burdick*, 70 F.2d 754, 756 (D.C. Cir. 1934). Or, in the words of then-state-court-Justice Holmes, "If the contract was legal, it would not be made illegal by misconduct on the part of [a party] in carrying it out." *Barry v. Capen*, 151 Mass. 99, 23 N.E. 735, 735 (Mass. 1890). Consequently, a contract does not become void under § 215(b) merely because an investment adviser defrauded her or his client — rather, a contract is void only if it was made illegally or requires illegal performance.

Indeed, a long line of cases have similarly interpreted § 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), _15 U.S.C. § 78cc(b)_, which tracks § 215(b) nearly word for word.[4] *See, e.g.,* _Frati v. Saltzstein, No. 10-cv-3255 (PAC), 2011 U.S. Dist. LEXIS 25567, 2011 WL 1002417, at *6 (S.D.N.Y. Mar. 14, 2011)_ (holding that a contract cannot be rescinded if the contract could legally be performed); _Slomiak v. Bear Stearns & Co., 597 F._

_Supp. 676, 682 (S.D.N.Y. 1984)_ (holding that § 29(b) voids contracts that "in their inception [*13] or as performed are, or become, *inherently* violative of the Act or regulations thereunder"); _Drasner v. Thomson McKinnon Sec., Inc., 433 F. Supp. 485, 501-02 (S.D.N.Y. 1977)_ (holding that only "contracts which by their terms violate the" statute are void). According to Judge Weinfeld, for instance, § 29(b) addresses "unlawful contracts" and "not unlawful transactions made pursuant to lawful contracts." _Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y.)_, *aff'd*, _672 F.2d 901 (2d Cir. 1981)_. Therefore, § 29(b) was inapplicable in a case where "[t]here [was] no suggestion that the basic customer agreement plaintiff signed [was] not lawful." *Id*. Similarly, Judge Friendly noted that § 29(b) "was a legislative direction to apply common-law principles of illegal bargain, enacted at a time when it seemed much more likely than it might now that courts would fail to do this without explicit legislative instruction." _Pearlstein v. Scudder & German, 429 F.2d 1136, 1149 (2d Cir. 1970)_ (Friendly, J., dissenting, on an issue the majority opinion did not reach). As such, a contract would not be void under § 29(b) where "the contract was not in violation of any provision of the statute or any rule or [*14] regulation; its performance would not have involved any

---

4    The relevant text of § 29(b) states:

Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . .

violation if [the plaintiff] had done as he was obligated; and the court [was not] asked to enforce anything that constitutes a violation." *Id*. In addition, the Third and Fourth Circuits have reached the same conclusion. *See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 206 (3d Cir. 2006)* (holding that a contract can be voided under § 29(b) only where the "agreement cannot be performed without violating the securities laws"); *Occidental Life Ins. Co. of N. Carolina v. Pat Ryan & Associates, Inc., 496 F.2d 1255, 1266 (4th Cir. 1974)* ("Section 29(b) merely makes explicit that which is implicit, i.e., the recognition of the doctrine of illegal bargains in the application of the securities laws.").[5] Given the identical language in § 215(b) and § 29(b) and the close relationship between the IAA and the Exchange Act — both in terms of their dates of passage and their purposes, *see SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186-87, 84 S. Ct. 275, 11 L. Ed. 2d 237 (1963)* (describing the IAA and the Exchange Act as part of a series of statutes sharing a "common," "fundamental purpose") — that case law is highly persuasive here. *See Smith v. City of Jackson, Miss., 544 U.S. 228, 233, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005)* [*15] (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

Accordingly, the Court finds that § 215(b) — like § 29(b) — voids only contracts that are made illegally or require illegal performance.

2. Plaintiffs' Arguments to the Contrary

Plaintiffs make four arguments against this narrower interpretation. First, they argue that § 29(b) and § 215(b) have different purposes and therefore should be interpreted differently notwithstanding their identical language. Second, they argue that the Supreme Court's opinion in *TAMA* supports their broader interpretation of § 215(b). Third, they argue that precedent in this district supports a broader interpretation of § 215(b). And fourth, they argue that a broader interpretation of § 215(b) is necessary to effectively implement the IAA. The Court ultimately finds none of those arguments persuasive.

a. § 29(b) and § 215(b) Should Not Be Interpreted [*17] Differently

Plaintiffs argue that § 215 and § 29 should be interpreted differently in light of the different purposes behind the IAA and the Exchange Act. (Pl. Supp. Mem. at 1-2.)

---

[5] To be sure, the Fifth Circuit has rejected a requirement that the contract be illegal "by (its own) terms." *Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co., 678 F.2d 552, 560 (5th Cir. 1982)*. Nevertheless, the broker-dealer contract at issue in that case could not have been legally performed because the broker-dealer had never registered with the SEC. *Id. at 556*. The Fifth Circuit's opinion therefore is hardly inconsistent with the precedent just discussed [*16] and stands only for the reasonable proposition that the circumstances surrounding a contract's performance can make the performance required illegal even if the contract's terms are themselves innocuous. *See GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 201 (3d Cir. 2001)* (interpreting Regional Properties as consistent with Southern District of New York precedent).

That argument, however, misunderstands the relationship between the IAA and the Exchange Act and between § 215(b) and § 29(b).

Plaintiffs are correct that identical words or phrases used in different statutes, or even in the same statute, can have different meanings when the provisions have different purposes and contexts. *See United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 213, 121 S. Ct. 1433, 149 L. Ed. 2d 401 (2001)* ("[T]he presumption [that identical words have the same meaning] is not rigid, and the meaning of the same words well may vary to meet the purposes of the law." (alterations and internal quotation marks omitted)). But the Supreme Court has interpreted similarly worded provisions in two statutes differently only where differing statutory contexts undermined any fair comparison between the statutes. *See Fogerty v. Fantasy, Inc., 510 U.S. 517, 522-25, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)* (rejecting a comparison between a fee-shifting provision in the Copyright Act and a fee-shifting provision in the Civil Rights Act). Where two statutes operate [*18] in the same area of the law, on the other hand, the general rule remains that similar language should be interpreted similarly. *See Smith, 544 U.S. at 233-34* (plurality opinion) (holding that nearly identical language in two anti-discrimination statutes should be interpreted identically); *Wasser v. N.Y. State Office of Vocational & Educ. Servs. for Individuals with Disabilities, 602 F.3d 476, 479 (2d Cir. 2010)* (holding that nearly identical language in two statutes designed to "assist individuals with disabilities" should be interpreted identically).

Here, both the Exchange Act and the IAA are among the "series of [securities] Acts designed to eliminate certain abuses in the securities industry, abuses which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's." *Capital Gains, 375 U.S. at 186*. Both share a "common," "fundamental purpose" of requiring disclosure in the securities industry. *Id. at 186-87*. The statutes were passed within six years of each other, and Congress drew on the country's experience with the other securities laws when drafting the IAA. *See id. at 197-99* (holding that Congress adapted the language of the IAA to fit precedent [*19] interpreting the Securities Act of 1933). Indeed, the Supreme Court has referred to § 215(b) and § 29(b) as "counterparts" of each other, *Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 387, 90 S. Ct. 616, 24 L. Ed. 2d 593 & n.10 (1970)*, and has cited case law analyzing one provision when interpreting the other, *see TAMA, 444 U.S. at 18-19* (stating that § 29 of the Exchange Act and § 215 of the IAA are "comparable provision[s]"); *Mills, 396 U.S. at 387*. And the Second Circuit has applied § 29(b)'s statute of limitations to § 215(b) because "it reflects the accepted balancing of the same interests." *Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1039 (2d Cir. 1992)*. Neither the Supreme Court nor any court in the Second Circuit has ever implied that the two provisions have different purposes or meanings.

Legislative history also supports interpreting § 215(b) and § 29(b) identically. That history shows that § 215(b) was copied whole-cloth from § 29(b) and was viewed merely as securities law boilerplate. Of the six securities acts passed between 1933 and 1940, four included the same language found in § 29 and § 215.[6] In each case, the provision had the same title, "Validity of contracts." Likely because such provisions [*20] were so common, § 215 received little comment in the IAA's legislative history. Indeed, the legislative reports on the IAA and the Investment Company Act of 1940 (the "ICA") — the IAA's companion statute — refer to this language simply as "the usual provision[] regarding the validity of contracts." S. Rep. No. 76-1775, at 20, 23 (1940) (report of the S. Comm. on Banking and Currency); *accord* H.R. Rep. No. 76-2639, at 27, 30 (1940) (report of the H. Comm. on Interstate and Foreign Commerce). Nothing indicates that Congress intended § 215(b) to be any different from its counterparts. *See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979)* (holding that where (1) a provision is copied from one statute to another, and (2) the two statutes "share a common purpose," the two provisions should have the same meaning).

Finally, it bears repeating that § 215(b) and § 29(b) are not merely similarly worded and do not merely share a few terms or phrases. The relevant portions of the provisions are nearly word-for-word identical. Because a court's statutory interpretation "inquiry begins with the statutory text, and ends there as well if the text is unambiguous," *BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004)*, any space between the interpretations of these two identical, unambiguous provisions is simply untenable, *see Komanoff v. Mabon, Nugent & Co., 884 F. Supp. 848, 857 (S.D.N.Y. 1995)* [*22] ("It is clear from this statutory language that, under Section 29(b), 'only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts.'" (quoting Judge Weinfeld in *Zerman, 510 F. Supp. at 135*)).

Plaintiffs cite only one case that has even suggested that § 215(b) should be interpreted differently from § 29(b). *See In re Mut. Funds Inv. Litig., 384 F. Supp. 2d 873 (D. Md. 2005)*. That opinion, which the authoring court itself recognized was advisory only, *id. at 874-875*, stated that interpreting § 215 identically to its counterpart in the *ICA, § 47*, "may be too superficial an approach," *id. at 882*. Nevertheless, in light of the other grounds

---

[6]   *See* IAA, Pub. L. No. 76-768, tit. II, § 215, 54 Stat. 847, 856-57 (codified as amended at 15 U.S.C. § 80b-15); Investment Company Act of 1940, Pub. L. No. 76-768, tit. I, § 47, 54 Stat. 789, 845-46 (codified as amended at 15 U.S.C. § 80a-46); Public Holding Company Act of 1935, Pub. L. No. 74-333, tit. I, § 26, 49 Stat. 803, 835-36 (repealed 2005); Securities Exchange Act of [*21] 1934, Pub. L. No. 73-291, tit. I, § 29, 48 Stat. 881, 903-04 (codified as amended at 15 U.S.C. § 78cc). Several of these provisions have subsequently been amended and their texts are no longer as close to § 215 as they originally were. The two securities statutes that do not include the language found in § 215(b) nevertheless include a provision incorporating the language of § 215(a). *See* Trust Indenture Act of 1939, Pub. L. No. 76-253, tit. III, § 327, 53 Stat. 1149, 1177 (codified at 15 U.S.C. § 77aaaa); Securities Act of 1933, Pub. L. No. 73-22, tit. I, § 14, 48 Stat. 74, 84 (codified at 15 U.S.C. § 77n).

for dismissal in that case, the court declined to resolve the issue. *Id*. As such, even Plaintiffs' best case offers them little support.

Given the Exchange Act's and the IAA's common history, purpose, and legal domain; the precedent interpreting the two provisions together; the fact that § 215 was copied from § 29 and other provisions in related statutes; and the textual identity between the provisions, the Court sees no reason to interpret the two provisions differently.

b. *TAMA* Does Not Support a Broader Reading [*23] of § 215

In *TAMA*, the Supreme Court recognized that private parties can sue to void a contract under § 215(b). *TAMA, 444 U.S. at 17-19*. Plaintiffs claim that the Supreme Court in *TAMA* must have shared Plaintiffs' understanding of § 215(b)'s meaning because the respondent in *TAMA* sought rescission of his investment adviser agreement based on allegations that the petitioner had violated § 206 by engaging in "misconduct in the course of performance . . . related to: (i) 'grossly excessive compensation'; (ii) the purchase of securities of 'inferior quality'; and (iii) the misappropriation of investment opportunities." (Pl. Supp. Mem. at 6 (quoting *TAMA, 444 U.S. at 13-14*).) Unfortunately, Plaintiffs' characterization of *TAMA*'s facts is inaccurate.

According to the Supreme Court, the respondent in *TAMA* "alleged that the advisory contract between TAMA and the Trust was unlawful because TAMA and Transamerica were not registered under the Act and because the contract had provided for grossly excessive compensation." *TAMA, 444 U.S. at 13*. In other words, the respondent in *TAMA* alleged that the contract should be voided because the contract itself included illegally excessive compensation terms [*24] and illegally required an unregistered entity to act as an investment adviser.[7] Those allegations are perfect examples of what the Court holds § 215(b) requires.

Hence, *TAMA* offers Plaintiffs no support. In fact, to the extent *TAMA* sheds any light on the circumstances under which a contract may be voided, it favors the narrower interpretation. *TAMA* described § 215(b) as voiding "contracts whose formation or performance *would violate* the Act." *TAMA, 444 U.S. at 16-17* (emphases added). The strongest reading of that statement is that the Supreme Court in *TAMA* understood § 215(b) to apply to contracts that are made illegally or require illegal performance.

c. Precedent in this District Does Not Support Plaintiffs' Reading

Several cases in this district have addressed claims brought [*25] under § 215(b), and Plaintiffs assert that many of them support

---

[7]   In the underlying Complaint in *TAMA*, the only claims relating to § 215(b) alleged that the contract was "unlawful pursuant to . . . . § 215(b) of the Advisers Act because neither Transamerica nor Mortgage Advisors has ever been registered as an investment adviser under the Advisers Act." (Complaint, Joint Appendix, *TAMA*, 444 U.S. 11, 100 S. Ct. 242, 62 L. Ed. 2d 146 (No. 77-1645), 1979 U.S. S. Ct. Briefs LEXIS 1082, at *12, *21-22 (citation omitted).)

their interpretation that § 215(b) voids an investment adviser contract whenever an investment adviser defrauds her or his client. The Court, however, determines that all but one of those cases does not address the issue at all, and that the one case that does is unpersuasive.

Plaintiffs cite the following cases as supportive of their broader interpretation: *GPIF-I Equity Co., Ltd. v. HDG Mansur Investment Services, Inc., No. 13-cv-547 (CM), 2014 U.S. Dist. LEXIS 55193, 2014 WL 1612004 (S.D.N.Y. Apr. 21, 2014)*; *In re Beacon Associates Litigation, 745 F. Supp. 2d 386 (S.D.N.Y. 2010)*; *In re Evergreen Mutual Funds Fee Litigation, 423 F. Supp. 2d 249 (S.D.N.Y. 2006)*; *Clark v. Nevis Capital Management, LLC, No. 04-cv-2702 (RWS), 2005 U.S. Dist. LEXIS 3158, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005)*; *Norman v. Salomon Smith Barney, Inc., 350 F. Supp. 2d 382 (S.D.N.Y. 2004)*; and *Wellington International Commerce Corp. v. Retelny, 727 F. Supp. 843 (S.D.N.Y. 1989)*. (Pl. Supp. Mem. at 4-6.) In reality, however, with the exception of *In re Evergreen*, none of those cases addresses this issue at all. Although several of those cases allowed § 215(b) claims to proceed, those cases did not discuss **[*26]** or explicitly rule on whether § 215(b) voids an investment adviser contract because of subsequent misconduct by the investment adviser. That is unsurprising, as courts normally address only the arguments parties make, and the parties in those cases (except in *In re Evergreen*) did not raise the issue in their briefing.[8] Therefore, those decisions would have relevance here only if one assumes that those courts went out of their way to consider the issue and then silently decided it. The Court is unwilling to make that leap. Consequently, those cases cannot be read as persuasive authority on the meaning of § 215(b).[9]

As for *In re Evergreen*, the district court there did address **[*27]** the issue and did endorse Plaintiffs' interpretation of § 215(b). Nevertheless, the court in that case provided no analysis other than to say that "[c]ourts in this Circuit have routinely permitted Section 215 claims to proceed irrespective of whether the contracts themselves violated the IAA." *In re Evergreen, 423 F. Supp. 2d at 262* (citing *Clark, 2005 U.S. Dist. LEXIS 3158, 2005 WL 488641*, and *Norman, 350 F. Supp. 2d 382*). As just discussed, the Court does not believe that the decisions allowing claims to proceed offer any guidance on how those courts would have addressed this issue. In any event, *In re Evergreen*'s statement was dicta, as the court dismissed the § 215(b) claim on other grounds. *Id. at 263, 265*. In light of all the arguments discussed above and the minimal analysis on this issue in *In re Evergreen*, the Court does not find that dicta compelling. As

---

[8]   The Court has reviewed the briefing in all of the cases except for *Wellington International Commerce Corp. v. Retelny*. Because of that case's age, those filings are no longer available from the Clerk of the Court.

[9]   *Norman*, to the extent it has any bearing on the issue at all, supports the narrower interpretation of § 215(b). *Norman* explicitly analogized voidness under § 215(b) to voidness for illegality and interpreted the provision in light of "well-established principles of contract law." *350 F. Supp. 2d at 389*.

such, the Court finds no persuasive authority for Plaintiffs' interpretation.

d. A Broader Interpretation of § 215(b) Is Not Necessary To Effectively Implement the IAA

According to Plaintiffs, a holding that parties cannot sue under § 215(b) to remedy fraudulent performance by investment advisers "would gut the statute and thoroughly frustrate its [reason [*28] for existence]." (Pl. Supp. Mem. at 8-9.) That claim is unpersuasive for two reasons.

First, Plaintiffs' claim is untrue. The IAA was intended "to impose enforceable fiduciary obligations [on investment advisers]." *TAMA, 444 U.S. at 17*. That purpose does not require that a private right of action exist for Plaintiffs' claims. As the Supreme Court stated in *TAMA*, "[W]hether Congress intended additionally that [the IAA] would be enforced through private litigation is a different question." *Id. at 18*. In fact, the IAA provides for both civil enforcement by the Securities and Exchange Commission (the "SEC") and criminal enforcement by the Department of Justice. *Id. at 20*. Hence, the statute's purpose can be achieved without any private suits, let alone suits to rescind contracts based on subsequent illegal performance.[10]

Second, Plaintiffs' claim is irrelevant. The availability of a private right of action is entirely a question of statutory construction. *See Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)* ("[Unless the statute itself creates a private right of action], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). For the reasons discussed above, text and precedent demonstrate that § 215(b) does not void contracts [*30] unless they are made illegally or require illegal performance. *See TAMA, 444 U.S. at 23* ("The dispositive question remains whether [the statutory text and legislative history show that] Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end."). Thus, to the extent that allowing a client to rescind a contract based on subsequent illegal performance would better serve the IAA's purpose than the statute as written, that argument is properly addressed to Congress, not the Court.

---

[10]  It bears noting that, in most cases where an investment adviser defrauds a client, the client will have a claim under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. *See* 7 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 21.4 (2014) (noting that the availability of private suits under Rule 10b-5 makes up for the lack of a private right [*29] of action under the IAA). Such claims are not available, however, in cases like this one, which involve extraterritorial transactions in foreign securities. *See Morrison v. National Australia Bank Ltd., 561 U.S. 247, 273, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)* (limiting liability under § 10(b) to fraud "in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States"); *see also U.S. SEC v. Amerindo Inv. Advisors, Inc.*, No. 05-cv-5231 (RJS), 2013 U.S. Dist. LEXIS 49805, 2013 WL 1385013, at *9 n.10 (S.D.N.Y. Mar. 11, 2013) (holding that *Morrison* does not apply to the IAA), *modified on other grounds*, 05-cv-5231 (RJS), 2014 U.S. Dist. LEXIS 15696, 2014 WL 405339 (S.D.N.Y. Feb. 3, 2014).

Indeed, a purpose-based argument similar to Plaintiffs' was made by the dissenting Justices in *TAMA*:

> Implication of a private right of action for damages unquestionably would be not only consistent with the legislative goal of preventing fraudulent practices by investment advisers, but also essential to its achievement. While the Act empowers the SEC to take action to seek equitable relief to prevent offending investment advisers from engaging in future violations, in the absence of a private right of action for damages, victimized clients have little hope of obtaining redress for their injuries.

*TAMA, 444 U.S. at 34* (White, J., dissenting) (footnote omitted). [*31] Just as that argument was rejected in *TAMA*, it must be rejected here.

* * *

In sum, the Court holds that the § 215(b) voids only contracts that are made illegally or that require illegal performance. Plaintiffs have not alleged that the investment adviser contract between TFG and TFG Investment Manager suffers either of those flaws. As a result, Plaintiffs have failed to state a claim under § 215(b) and their claim must be dismissed.

B. Remaining Claims

Plaintiffs' remaining claims are non-federal claims brought under the Court's supplemental jurisdiction pursuant to *28 U.S.C. § 1367*. "In general, where the federal claims are dismissed before trial, the [non-federal] claims [brought pursuant to *§ 1367*] should be dismissed as well." *Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998)*. Dismissal is especially appropriate where, as here, the non-federal claims turn on "unsettled" issues of non-federal law. *See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003)*; (*see also* Decl. of Andrew Douglas Laws in Opp'n to the Mot. to Dismiss, dated Mar. 12, 2014, Doc. No. 84, ¶¶ 8-9 (noting the lack of Guernsey authority on the issue of who has standing to bring a derivative action).) [*32] The Court therefore dismisses Plaintiffs' non-federal claims.

IV. Conclusion

For the reasons stated above, Plaintiffs have failed to state a claim under the IAA. Accordingly, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss Plaintiffs' federal claim is GRANTED. IT IS FURTHER ORDERED THAT all of Plaintiffs' non-federal claims are dismissed for lack of jurisdiction. The Clerk of the Court is respectfully directed to terminate all motions and close this case.

SO ORDERED.

RICHARD J. SULLIVAN

United States District Judge

Dated: August 7, 2014

New York, New York

✚ Positive

### *United States v. Corle*

United States Court of Appeals for the Third Circuit

March 27, 2007, Submitted Under Third Circuit LAR 34.1(a) ; April 11, 2007, Opinion Filed

No. 05-5363

## Reporter

222 Fed. Appx. 121; 2007 U.S. App. LEXIS 8422

UNITED STATES OF AMERICA v. TERRY LEE CORLE, Appellant

**Notice:** [**1] NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.

PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA. D.C. Crim. No. 04-cr-00030J. District Judge: The Honorable Kim R. Gibson.

## Core Terms

grade, indictment, predicate conviction, theft, third degree, felony, imprisonment, punishable, stolen

## Case Summary

### Procedural Posture

Defendant appealed a judgment of the United States District Court for the Western District of Pennsylvania convicting him of being a felon in possession of firearms, a violation of *18 U.S.C.S. § 922(g)(1)*. Defendant argued that the district court incorrectly ruled that his 1981 conviction for theft by receiving stolen property, a violation of § 3925 of the Pennsylvania Crimes Code, was a predicate conviction under *18 U.S.C.S. § 922(g)(1)*.

### Overview

Defendant argued that, pursuant to § 3903 of the Code, his 1981 conviction had to be considered a misdemeanor of the third degree, which, being punishable by imprisonment of not more than one year under *18 Pa. Cons. Stat. § 106(b)*, could not serve as a predicate conviction under 18 U.S.C.S. S. *§ 922(g)(1)*, because the indictment did not list the grade of the offense or facts sufficient to calculate the grade. The court disagreed. Defendant's 1981 plea agreement stated that he was pleading guilty to a felony of the third degree. Being punishable by up to seven years in prison, that conviction satisfied *18 U.S.C.S. § 921(a)(20)*. Defendant's claim that the court should look only to the

indictment was misplaced. First, the court could not review the validity of the 1981 conviction. Second, the grading of theft offenses and the facts necessary to support that grading were not elements of the crime that had to be included in the indictment. Thus, in determining the grading of defendant's conviction, the court did not need to consider his indictment. His plea agreement, and the criminal complaint and bill of particulars, establish that he was convicted of a felony of the third degree.

## Outcome

The court affirmed the district court's judgment.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN1* Among the elements the government must prove beyond a reasonable doubt to secure a conviction under *18 U.S.C.S. § 922(g)(1)* is that the defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, a term which excludes misdemeanors under state law that are punishable by a term of imprisonment of two years or less, *18 U.S.C.S. § 921(a)(20)*. In order to determine if a conviction under state law meets this definition, a court must follow the law of the jurisdiction in which the proceedings were held, *§ 921(a)(20)*, but it may not inquire into the validity of or collaterally review that conviction.

Criminal Law & Procedure > ... > Theft & Related Offenses > Larceny & Theft > Penalties

*HN2* Pursuant to § 3903 of the Pennsylvania Crimes Code, when the property involved is an automobile the theft is deemed a felony of the third degree.

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN3* *18 U.S.C.S. § 922(g)(1)* is triggered by the fact of a predicate conviction that carries a potential sentence of greater than one year of imprisonment regardless of whether that conviction is "valid" or "susceptible to a collateral attack." An individual who has a predicate conviction must challenge that conviction before possessing a firearm as he cannot collaterally attack his predicate conviction in defense of his prosecution under *§ 922(g)(1)*. The court of appeals is, thus, precluded from reviewing the validity of a predicate state conviction, and its review is limited to determining whether under state law, that conviction satisfies the definition of "crime punishable by imprisonment for a term exceeding one year." *18 U.S.C.S. § 921(a)(20)*.

Criminal Law & Procedure > ... > Theft & Related Offenses > Larceny & Theft > Penalties

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN4* Under Pennsylvania law, a conviction for theft by receiving stolen property, in violation of § 3925 of the Pennsylvania Crimes Code, satisfies the definition of crime punishable by imprisonment for a term exceeding one year. *18 U.S.C.S. § 921(a)(20)*.

Criminal Law & Procedure > ... > Theft & Related Offenses > Larceny & Theft > Penalties

Criminal Law & Procedure > ... > Possession of Weapons > Unregistered Firearm > Elements

*HN5* A conviction for theft by receiving property under § 3925(a) of the Crimes Code of Pennsylvania, being punishable by up to seven years in prison, satisfies the definition provided for in *18 U.S.C.S. § 921(a)(20)*. *18 Pa. Cons. Stat. § 106(b)*.

Criminal Law & Procedure > ... > Theft & Related Offenses > Larceny & Theft > Elements

Criminal Law & Procedure > ... > Theft & Related Offenses > Larceny & Theft > Penalties

Criminal Law & Procedure > ... > Accusatory Instruments > Indictments > General Overview

Criminal Law & Procedure > ... > Accusatory Instruments > Informations > General Overview

*HN6* The grading of theft offenses and the facts necessary to support that grading pursuant to § 3903 of the Pennsylvania Crime Code are not elements of the crime which must be included in the indictment or information, but, rather, are used for purposes of sentencing only.

**Counsel:** For UNITED STATES OF AMERICA, Appellee: Robert L. Eberhardt, Laura S. Irwin, Office of United States Attorney, Pittsburgh, PA.

For TERRY LEE CORLE, Appellant: Frank Arcuri, Washington, PA.

**Judges:** Before: RENDELL, BARRY, and CHAGARES, Circuit Judges.

**Opinion by:** BARRY

## Opinion

[*122] BARRY, *Circuit Judge*

Appellant, Terry Lee Corle, argues that the District Court incorrectly ruled that his 1981 conviction for theft by receiving stolen property, in violation of section 3925 of the Pennsylvania Crimes Code, is a predicate conviction under *18 U.S.C. § 922(g)(1)*. For the following reasons, we will affirm the judgment of the District Court.

### I.

On October 5, 2004, a federal grand jury returned a one-count indictment charging Corle with [**2] being a felon in possession of firearms in violation of *18 U.S.C. § 922(g)(1)*. According to the indictment, the felony underlying the charge was a 1981 Pennsylvania conviction for theft by receiving stolen property.

On January 28, 1981, Corle was indicted in the Court of Common Pleas of Bedford

County for violating section 3925(a) of the Pennsylvania Crimes Code. That indictment charged that Corle ″intentionally receive[d], retain[ed], or dispose[d] of movable property of another knowing that it had been stolen, or believing it had probably been stolen, and did so without the intent to restore the property to the owner.″ (App. at 13.) A criminal complaint filed that day explained that the property at issue was a 1980 Dodge Omni and listed the offense as a felony of the third degree. The Commonwealth, at the request of Corle, filed a bill of particulars which contained additional information regarding the stolen vehicle.

Subsequently, Corle and the Commonwealth entered into a plea agreement. Pursuant to that agreement, Corle agreed to plead guilty to ″Theft by receiving property, Section 3925(a) of the Crimes Code of Pennsylvania; a felony of the third [**3] degree,″ and the Commonwealth agreed to recommend a non-incarceratory sentence. (App. at 62.) Corle pleaded guilty and, on June 1, 1981, was sentenced to a term of six months probation and a $ 25 fine.

Believing that this conviction was not a predicate conviction for purposes of _18 U.S.C. § 922(g)(1)_, Corle filed a motion to dismiss the 2004 federal indictment. By Memorandum Opinion and Order dated July 29, 2005, the District Court denied the motion. On September 9, 2005, Corle entered a conditional plea of guilty pursuant [*123] to _Rule 11(a)(2) of the Federal Rules of Criminal Procedure_, the terms of which allowed him to appeal the conclusion of the District Court that his 1981 conviction was a predicate conviction under _§ 922(g)(1)_.

We have jurisdiction pursuant to _28 U.S.C. § 1291_. Our review is plenary. _See United States v. Leuschen, 395 F.3d 155, 157 (3d Cir. 2005)_.

## II.

_HN1_ Among the elements the government must prove beyond a reasonable doubt to secure a conviction under _§ 922(g)(1)_ is that the defendant ″had previously been convicted of a crime punishable by imprisonment [**4] for a term exceeding one year,″ _United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000)_, a term which excludes misdemeanors under state law that are ″punishable by a term of imprisonment of two years or less,″ _18 U.S.C. § 921(a)(20)_. In order to determine if a conviction under state law meets this definition, a court must follow ″the law of the jurisdiction in which the proceedings were held,″ _§ 921(a)(20)_, but it may not inquire into the validity of or collaterally review that conviction. _See Leuschen, 395 F.3d at 157-58_.

Corle argues that, pursuant to _section 3903_ of the Crimes Code, his 1981 conviction must be considered a misdemeanor of the third degree, which, being punishable by imprisonment of not more than one year, _see 18 Pa. Cons. Stat. § 106(b)_, cannot serve as a predicate conviction under _§ 922(g)(1)_. According to Corle, because the indictment did not list the grade of the

offense or facts sufficient to calculate the grade, the fact that the criminal complaint, bill of particulars, and plea agreement all included the grade of the offense, or facts sufficient to definitively determine [**5] its grade, [1] is "of no consequence or import" because he could not "plead guilty to an offense to which he ha[d] not been charged by indictment irrespective of what information [he] may [have] possess[ed] or have been appraised of during a plea colloquy." Appellant's Br. at 18. We disagree.

Corle's argument is, for the most part, foreclosed by our decision in *Leuschen*, in which we applied the Supreme Court's ruling in *Lewis v. United States, 445 U.S. 55, 100 S. Ct. 915, 63 L. Ed. 2d 198 (1980)*, and held that *HN3 § 922(g)(1)* is triggered by the fact of a "predicate conviction [that] carr[ies] a potential sentence of greater than one year of imprisonment" regardless of whether that conviction is "valid" or "susceptible [**6] to a collateral attack." *Leuschen, 395 F.3d at 158*. We explained that, pursuant to the statute, an individual who has a predicate conviction must challenge that conviction before possessing a firearm, as he "cannot collaterally attack his predicate conviction in defense of his prosecution under *§ 922(g)(1)*." *Id. at 159*. We are thus precluded from reviewing, twenty-six years

after the fact, the validity of Corle's 1981 conviction and our review is limited to determining whether, *HN4* under Pennsylvania law, that conviction satisfies the definition of "crime punishable by imprisonment for a term exceeding one year." *18 U.S.C. § 921(a)(20)*. We hold that it does.

Pursuant to his plea agreement with the Commonwealth, Corle agreed to plead guilty to *HN5* "Theft by receiving property, Section 3925(a) of the Crimes Code of Pennsylvania; a felony of the third degree." (App. at 62.) Being punishable by up to seven years in prison, that conviction satisfies the definition provided for in *§ 921(a)(20)*. [*124] *See 18 Pa. Cons. Stat. § 106(b)*.

Corle's argument that we should look only to the indictment, which contains no grade [**7] or facts sufficient to compute the grade, is misplaced. First, to the extent that such an examination is aimed at undermining his conviction, it is, as discussed above, foreclosed by *Leuschen*. [2] Second, given the process of grading theft offenses provided for by the Crimes Code, it is contrary to Pennsylvania law. As the Pennsylvania Superior Court has explained on numerous occasions, *HN6* the grading of theft offenses and the facts necessary to support that grading pursuant to section

---

[1]   *HN2* Pursuant to section 3903 of the Crimes Code, when the property involved is an automobile the theft is deemed a felony of the third degree. Although the bill of particulars did not list the grade of the offense, it did indicate that the property at issue was a 1980 Dodge Omni.

[2]   We therefore need not discuss Corle's reliance on *Commonwealth v. Nixon, 328 Pa. Super. 250, 476 A.2d 1313 (Pa. Super. Ct. 1984)*, *Commonwealth v. McNeill, 293 Pa. Super. 319, 439 A.2d 131 (Pa. Super. Ct. 1981)*, and *Commonwealth v. Longo, 269 Pa. Super. 502, 410 A.2d 368 (Pa. Super. Ct. 1979)*. We note, however, that aside from involving different provisions of the Crimes Code, these cases explore the validity of the convictions at issue.

3903 are not elements of the crime which must be included in the indictment or information, but, rather, are used for purposes of sentencing only. *See Commonwealth v. Shamberger, 2001 PA Super 351, 788 A.2d 408, 418-20 (Pa. Super Ct. 2001)* (en banc); *Commonwealth v. Sparks, 342 Pa. Super. 202, 492 A.2d 720, 725 (Pa. Super. Ct. 1985)*; *Commonwealth v. McKennion, 235 Pa. Super. 160, 340 A.2d 889, 891-92 (Pa. Super. Ct. 1975)*; *see also Commonwealth v. Robichow, 338 Pa. Super. 348, 487 A.2d 1000, 1002-05 (Pa. Super. Ct. 1985)*. As such, in determining the grading of Corle's conviction, we need not consider his indictment. His plea [**8] agreement, as well as the criminal complaint and bill of particulars, clearly establish that he was convicted of a felony of the third degree.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

✚ Positive
As of: November 13, 2014 9:59 AM EST

## *United States v. Oppedisano*

United States District Court for the Eastern District of New York

November 30, 2010, Decided; November 30, 2010, Filed

09-CR-0305 (JS)

**Reporter**

2010 U.S. Dist. LEXIS 127094; 2010 WL 4961663

UNITED STATES OF AMERICA, Plaintiff, -against- ROCCO OPPEDISANO, Defendant.

**Subsequent History:** Post-conviction relief denied at *Oppedisano v. United States, 2013 U.S. Dist. LEXIS 113198 (E.D.N.Y., Aug. 12, 2013)*
*Related proceeding at In re Oppedisano, 2013 BIA LEXIS 23 (B.I.A., Oct. 25, 2013)*

## Core Terms

felon, as-applied, firearm, felony, intermediate, introduce, reckless, Omnibus, gun

**Counsel:** [*1] For United States: Sean Flynn, Esq. United States Attorney's Office, Eastern District of New York, Brooklyn, NY.

For Defendant: Benedict S. Gullo, Jr., Esq., Mineola, NY.

**Judges:** Joanna Seybert, U.S.D.J.

**Opinion by:** Joanna Seybert

## Opinion

MEMORANDUM & ORDER

SEYBERT, District Judge:

Defendant Rocco Oppedisano (the "Defendant") is charged with cocaine possession in violation of *Section 844 of Title 21 of the United States Code* and with possessing ammunition as a convicted felon in violation of *Section 922(g)(1) of Title 18 of the United States Code* ("*Section 922(g)(1)*"). Pending before the Court are the Government's motions in limine to exclude certain testimony and argument that the Government contends invites jury nullification by demonstrating that (1) the Defendant did not know his possession of ammunition as a convicted felon was a crime; (2) the Defendant did not own or possess a firearm; (3) the Defendant is a "nonviolent" felon whose underlying conviction was a "regulatory" offense; and (4) the Defendant did not "own" or purchase the ammunition. In addition, the Government moves in its Reply brief (5) to preclude the Defendant from offering hearsay statements the Defendant made to a postal inspector after his [*2] arrest.

On November 30, 2010, the Court granted in part and denied in part the Government's motions for the reasons stated on the record. Below, the Court addresses in greater depth the reasons it rejects Defendant's argument that he should be

permitted to introduce otherwise irrelevant evidence to argue that the felon-in-possession law is unconstitutional as applied to him in light of the Supreme Court's decision in *Heller v. District of Columbia, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)*.

BACKGROUND

Defendant argues that, after Heller, he should be able to introduce evidence and argument that *Section 922(g)(1)* is unconstitutional as applied to him, a non-violent felon with no history of misusing weapons, whose ammunition was found in his home and without an accompanying firearm. (Def. Opp. at 5.) Defendant's underlying felonies are a 1993 conviction for attempted first degree reckless endangerment, (Def. Omnibus Br. Ex. E at 6), and a 1994 conviction for recidivist driving-while-intoxicated. [1] (Id. at 8.) The Court previously rejected the idea that Heller renders *Section 922(g)(1)* unconstitutional when Defendant moved to dismiss the indictment. (See December 21, 2009 Hrg. [*3] Tr. at 3.) Notwithstanding the Court's earlier ruling, the Defendant argues now that he must be permitted to develop evidence to preserve his as-applied constitutional challenge for appeal. (Def. Opp. at 5.)

DISCUSSION

*Section 922(g)(1)* is neither unconstitutional on its face nor as applied to Defendant and his challenge to the law is preserved without the need to introduce irrelevant and confusing evidence at trial.

I. Heller Did Not Render *Section 922(g)(1)* Unconstitutional

Heller did not render *Section 922(g)(1)* unconstitutional on its face. In well-known dicta, the Supreme Court explained that certain regulatory measures are "presumptively lawful," *Heller, 128 S. Ct. at 2817 n. 26*, and that its decision did not affect felon-in-possession statutes: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . . ." *id. at 2816-17*. This assurance was recently repeated in *McDonald v. City of Chicago. U.S. , 130 S. Ct. 3020, 3047, 177 L. Ed. 2d 894 (2010)* [*4] (plurality opinion). Since Heller, the Second Circuit held that *Section 922(g)(1)* is not unconstitutional, see *United States v. Stuckey, 317 F. App'x 48, 50 (2d Cir. 2009)*, a decision that is in accord with those by Circuits around the nation. See *United States v. Khami, 362 F. App'x 501, 507 (6th Cir. 2010)*; *United States v. Anderson, 559 F.3d 348, 351 (5th Cir. 2009)*; *United States v. Battle, 347 F. App'x 478, 479-80 (11th Cir. 2009)*; *United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009)*; *United States v. Smith, 329 F. App'x 109, 110 (9th Cir. 2009)*; *United States v. Brunson, 292 F. App'x 259, 261 (4th Cir. 2008)*; *United States v. Irish, 285 F. App'x 326, 327 (8th Cir. 2008)*.

---

[1] Citations to the Defendant's "Omnibus Br." refer to the Defendant's omnibus pre-trial motion, which included a motion to dismiss the indictment as unconstitutional after Heller.

II. *Section 922(g)(1)* Is Constitutional As Applied To Defendant

The Court rejects Defendant's challenge to *Section 922(g)(1)* as it applies to him, and Defendant will not be permitted to introduce argument or otherwise irrelevant evidence to advance this strategy at trial. Even if the *Second Amendment* limits Congress' power to restrict a felon's right to possess weapons--and *Heller* suggests that it does not--*Section 922(g)(1)* is not unconstitutional as applied to a felon convicted of attempted reckless [*5] endangerment and recidivist driving-while-intoxicated.

As a threshold issue, the Court, as it did in addressing Defendant's omnibus motion, uses intermediate scrutiny to analyze *Section 922(g)(1)*. The Court recognizes that courts disagree whether intermediate or strict scrutiny applies in Heller's and McDonald's wake, and it joins with those courts holding that strict scrutiny is incompatible with Heller's dicta concerning presumptively constitutional gun prohibitions. See *Heller v. District of Columbia [Heller II], 698 F. Supp. 2d 179, 187-88 (D.D.C. 2010)* (noting that the majority of courts apply intermediate scrutiny to gun dispossession laws). [2]

Viewed under intermediate scrutiny, a statute must be substantially related to the advancement of an important government interest. See *Ramos v. Town of Vernon, 353 F.3d 171, 180 (2d Cir. 2003)*. There can be little doubt that an important government interest is at stake. *Section 922(g)(1)* was enacted [*6] to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *United States v. Small, 544 U.S. 385, 393, 125 S. Ct. 1752, 1757, 161 L. Ed. 2d 651 (2005)* (quotations omitted); *Burrell v. United States, 384 F.3d 22, 27 (2d Cir. 2004)* (*Section 922(g)(1)* "was one of several measures enacted by Congress to prohibit [ ] categories of presumptively dangerous persons from possessing firearms") (quotations omitted).

Taking as true the facts Defendant cites in support of his argument, *Section 922(g)(1)* is, as applied to him, substantially related to the important goal of promoting public safety. Defendant was proven to have put others at risk through reckless conduct and poor judgment. In 1993, he pled guilty to attempted first degree reckless endangerment, an E felony. (Def. Omnibus Br. Ex. E at 6.) In New York, first degree reckless endangerment occurs "when, under circumstances evincing a depraved indifference to human life, [a defendant] recklessly engages in conduct which creates a grave risk of death to another person." *N.Y. PENAL L. § 120.25*. In 1994, Defendant pled guilty to driving-while-intoxicated. *N.Y. VEH & TRAFFIC L. § 1192*. [*7] This conviction is also an E felony because it was Defendant's second driving-while-intoxicated conviction within ten years. See *N.Y. VEH. & TRAFFIC L. §*

---

[2]  Neither Heller nor McDonald specifies whether intermediate or strict scrutiny applies to gun dispossession laws, and it is possible that an entirely new test will develop. Until then, this Court is bound to apply existing analytical frameworks.

*1193*. In short, Defendant's proven disregard for public safety fairly puts him among those who "have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Small, 544 U.S. at 393, 125 S. Ct. at 1757*.

This decision is in line with other courts that have addressed as-applied challenges to *Section 922(g)(1)*. See *United States v. Ligon, No. 04-CR-0185, 2010 U.S. Dist. LEXIS 116272, 2010 WL 4237970, at *5, (D. Nev. Oct. 20, 2010)* (finding no case holding that *Section 922(g)(1)* was unconstitutional as applied). Further, it is no defense that Defendant's felonies are nonviolent or remote in time. In Ligon, the court rejected an as-applied challenge by a nonviolent felon. *2010 U.S. Dist. LEXIS 116272, 2010 WL 4237970, at *6*. Similarly, felony convictions from sixteen and seventeen years ago do not make the statute unconstitutional as applied. See *United States v. Jones, 673 F. Supp. 2d 1347, 1352 (N.D. Ga. 2009)* (rejecting an as-applied challenge to *Section 922(g)(1)* by a defendant with no history of unlawful gun use and whose underlying felony was more [*8] than fourteen years prior).

III. Defendant's Argument Is Preserved For Appeal

Defendant contends that he must be able to develop evidence to support his Heller argument at trial in order to preserve this defense for appeal. (Deft.'s Sur-Reply at 4.) This argument is meritless. Defendant's claim under Heller is preserved for appeal by virtue of this Court's denying his motion to dismiss the indictment on constitutional grounds. (See December 21, 2009 Hrg. Tr. at 3.) Defendant's reliance on *United States v. Foxworth, 334 F. App'x 363 (2d Cir. 2009)* is misplaced. Contrary to Defendant's suggestion, this case does not hold that as-applied challenges must be adjudicated based on facts established at trial. Rather, it simply rejects an as-applied challenge after trial. *Id. at 365*. Here, the Court takes as true Defendant's facts and rejects his as-applied challenge before trial, so as not to lengthen the proceeding or confuse the jury with irrelevant evidence and argument.

CONCLUSION

Based on the foregoing and for the reasons stated on the record, Defendant is precluded from arguing or introducing otherwise irrelevant evidence tending to show that *Section 922(g)* is unconstitutional as applied [*9] to him.

SO ORDERED.

/s/ Joanna Seybert

Joanna Seybert, U.S.D.J.

Dated: November 30, 2010

Central Islip, New York