## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO SUAREZ, | : | Case No. 1:14cv968 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Hon. William W. Caldwell |
| | : | |
| ERIC H. HOLDER, JR., | : | |
| Attorney General of the United | : | |
| States; and B. TODD JONES, | : | |
| Director of the Bureau of | : | |
| Alcohol, Tobacco, Firearms and | : | |
| Explosives, | : | |
| | : | |
| Defendants. | : | Electronically Filed |

## DEFENDANTS' COMBINED REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

ARGUMENT .....................................................................................................2

I.      18 U.S.C. § 922(g)(1) Prohibits Plaintiff from Possessing Firearms..............2

        A.      Under the Third Circuit's <u>Essig</u> Decision, Because Plaintiff
                 Was Convicted of a Crime Punishable by Up to Three Years'
                 Imprisonment, the Statutory Exclusion in 18 U.S.C.
                 § 921(a)(20) Does Not Apply Here......................................................2

        B.      18 U.S.C. § 921(a)(20) Is Not Ambiguous, and Plaintiff's
                 Citations to Various Canons of Construction Are Unavailing..............6

II.     As Applied to Plaintiff, 18 U.S.C. § 922(g)(1) Does Not Violate
        the Second Amendment....................................................................................13

        A.      Section 922(g)(1) Does Not Burden Conduct Within the
                 Scope of the Second Amendment's Protection...................................15

                1.      Because Plaintiff Is a Felon Under the Applicable
                           Federal Standard, Plaintiff's Claims Do Not
                           Implicate the Second Amendment ...........................................15

                2.      In Any Event, Plaintiff Has Not Presented Facts That
                           Distinguish His Circumstances From Those of Persons
                         Historically Barred From Second Amendment
                         Protections, or Shown That His Circumstances Place
                         Him Outside the Intended Scope of 18 U.S.C. § 922(g)(1)......18

                       a.      Plaintiff's Claim Is Indistinguishable From One
                                     Recently Rejected by the Third Circuit in <u>Dutton</u>
                                     <u>v. Commonwealth</u> ........................................................19

                       b.      Plaintiff Has Not Pointed to Any Specific Facts
                                     That Would Demonstrate That Section 922(g)(1)
                                   Should Not Apply to Him .............................................23

B.    In the Alternative, As Applied to Plaintiff, Section 922(g)(1)
Relates Substantially to the Important Governmental Interest
In Protecting Public Safety and Combating Violent Crime ................34


CONCLUSION ....................................................................................................43

# TABLE OF AUTHORITIES

## CASES

Atlantic Cleaners & Dyers v. United States,
  286 U.S. 427 (1932) ........................................................................ 9, 10

Barber v. Thomas,
  560 U.S. 474 (2010) ..............................................................................10

Barrett v. United States,
  423 U.S. 212 (1976) ....................................................................... 39, 40

Burgess v. United States,
  553 U.S. 124 (2008) ..............................................................................16

Chardin v. Police Comm'r of Boston,
  989 N.E.2d 392 (Mass. 2013)......................................................... 20, 29

Cherokee Nation v. Georgia,
  30 U.S. 1 (1831) .....................................................................................9

City of Newark v. U.S. Dep't of Labor,
  2 F.3d 31 (3d Cir. 1993) .......................................................................20

Consumer Electronics Ass'n v. FCC,
  347 F.3d 291 (D.C. Cir. 2003)...............................................................40

Cyberworld Enter. Tech., Inc. v. Napolitano,
  602 F.3d 189 (3d Cir. 2010) ..................................................................11

Dean v. United States,
  556 U.S. 568 (2009) ..............................................................................12

Dickerson v. New Banner Inst., Inc.,
  460 U.S. 103 (1983) ....................................................................... passim

District of Columbia v. Heller,
  554 U.S. 570 (2008) ....................................................................... passim

iii

Drake v. Filko,
724 F.3d 426 (3d Cir. 2013) ........................................................ passim

Environmental Defense v. Duke Energy Corp.,
549 U.S. 561 (2007) ...........................................................10

Dutton v. Commonwealth,
503 F. App'x 125 (3d Cir. 2012) ................................. passim

Dutton v. Commonwealth,
No. 11-7285, 2012 WL 3020651 (E.D. Pa. July 23, 2012)......................... passim

Evans v. Chichester School Dist.,
533 F. Supp. 2d 523 (E.D. Pa. 2008)....................................20

Gen. Dynamics Land Sys. v. Cline,
540 U.S. 581 (2004) ...........................................................10

Gowder v. City of Chicago,
923 F. Supp. 2d 1110 (N.D. Ill. 2012).......................... 29, 38

Higgs v. Att'y Gen of the United States,
655 F.3d 333 (3d Cir. 2011) .............................................21

Huddleston v. United States,
415 U.S. 814 (1974) .........................................................41

In re Grossman's Inc.,
607 F.3d 114 (3d Cir. 2010) ...............................................4

Kachalsky v. Cnty. of Westchester,
701 F.3d 81 (2d Cir. 2012) ...............................................26

Lewis v. United States,
445 U.S. 55 (1980) ...........................................................35

Linden v. Sap Am., Inc.,
No. 03-3125, 2004 WL 1047719 (E.D. Pa. May 6, 2004) ...................21

Logan v. United States,
552 U.S. 23 (2007) ...........................................................11

Martini v. Fed. Nat'l Mortgage Ass'n,
  178 F.3d 1336 (D.C. Cir. 1999)............................................................10

Northwest Austin Mun. Util. Dist. No. One v. Holder,
  557 U.S. 193 (2009) ............................................................................13

Ortiz v. Apker,
  726 F. Supp. 2d 515 (M.D. Pa 2010) ....................................................4

People v. Taylor,
  3 N.E.3d 288 (Ill. App. 2013)..............................................................29

Reno v. Flores,
  507 U.S. 292 (1993) ............................................................................13

Robinson v. Shell Oil Co.,
  519 U.S. 337 (1997) ............................................................................10

Scarborough v. United States,
  431 U.S. 563 (1977) ...................................................................... 35, 36

Schrader v. Holder,
  704 F.3d 980 (D.C. Cir. 2013).................................................... passim

Turner Broad. Sys., Inc. v. FCC,
  512 U.S. 622 (1994) ............................................................................26

Turner Broad. Sys., Inc. v. FCC,
  520 U.S. 180 (1997) ............................................................................34

United States v. Barton,
  633 F.3d 168 (3d Cir. 2011) ....................................................... passim

United States v. Bass,
  404 U.S. 336 (1971) ............................................................................35

United States v. Batchelder,
  442 U.S. 114 (1979) ............................................................................35

United States v. Brown,
  740 F.3d 145 (3d Cir. 2014) ................................................................12

United States v. Carter,
    669 F.3d 411 (4th Cir. 2012) .................................................... 31-32, 42

United States v. Chester,
    628 F.3d 673 (4th Cir. 2010) ........................................................ 18, 30

United States v. Chovan,
    735 F.3d 1127 (9th Cir. 2013) ..................................................... passim

United States v. Coleman,
    158 F.3d 199 (4th Cir. 1998) ................................................................6

United States v. Diaz,
    592 F.3d 467 (3d Cir. 2010) ..............................................................12

United States v. Emerson,
    270 F.3d 203 (5th Cir. 2001) .............................................................27

United States v. Essig,
    10 F.3d 968 (3d Cir. 1993) ......................................................... passim

United States v. Everist,
    368 F.3d 517 (5th Cir. 2004) .............................................................27

United States v. Kluger,
    722 F.3d 549 (3d Cir. 2013) ..............................................................20

United States v. Kouevi,
    698 F.3d 126 (3d Cir. 2012) ..............................................................12

United States v. Laurent,
    861 F. Supp. 2d 71 (E.D.N.Y. 2011) ...............................................25

United States v. Leuschen,
    395 F.3d 155 (3d Cir. 2005) ..............................................................33

United States v. Lunsford,
    No. 10-182, 2011 WL 145195 (S.D. W. Va. Jan. 18, 2011) ...............41

United States v. Marzzarella,
    614 F.3d 85 (3d Cir. 2010) ......................................................... passim

United States v. Miller,
    604 F. Supp. 2d 1162 (W.D. Tenn. 2009) .................................................... 37, 41

United States v. Mitlo,
    714 F.2d 294 (3d Cir. 1983) ..................................................................4

United States v. Pruess,
    703 F.3d 242 (4th Cir. 2012) .............................................................26

United States v. Robles-Rodriguez,
    281 F.3d 900 (9th Cir. 2002) .............................................................16

United States v. Schultz,
    No. 08-75, 2009 WL 35225 (N.D. Ind. Jan. 5, 2009) .........................................37

United States v. Skoien,
    614 F.3d 638 (7th Cir. 2010) ................................................... 18, 37, 42

United States v. Vongxay,
    594 F.3d 1111 (9th Cir. 2010) ...........................................................27

United States v. Yancey,
    621 F.3d 681(7th Cir. 2010) ..............................................................5

Vujosevic v. Rafferty,
    844 F.2d 1023 (3d Cir. 1988) ..............................................................4

## FEDERAL STATUTES

18 U.S.C. § 921(a)(20)................................................................. passim
18 U.S.C. § 921(a)(20)(B) ............................................................. passim
18 U.S.C. § 922(g)(1).................................................................. passim
18 U.S.C. § 922(g)(9)......................................................... 17, 18, 22, 43

## STATE STATUTES

Md. Ann. Code art. 27 § 36B(b)(i) (1990)............................................2, 7
18 Pa. C.S.A. § 6105(b) .................................................................32
18 Pa. C.S.A. § 6105(d) .................................................................32
42 Pa. C.S.A. § 4502(a)(3)...............................................................33

## OTHER AUTHORITIES

Appellant Brief, United States v. Barton,
2010 WL 2504123 (Apr. 28, 2010) ............................................................ 27, 28

Black's Law Dictionary (9th ed. 2009) ................................................................16

Brief of United States, United States v. Barton,
2010 WL 2962436 (Jul. 2, 2010) ............................................................... 27, 28

H.R. Rep. No. 90-1956 (1968) ................................................................................8

Internal Operating Procedures, U.S. Court of Appeals for the Third
Circuit (2002), Rule 9.1 .......................................................................................4

Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351,
§ 1201, 82 Stat. 236 ...................................................................................... 25, 35

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of
Legal Texts (2012) ...............................................................................................9

S. Rep. No. 88-1340 (1964) .............................................................................. 25, 35

S. Rep. No. 89-1866 (1966) .............................................................................. 25, 35

S. Rep. No. 90-1097 (1968) ..................................................................................35

S. Rep. No. 90-1051 (1968) ..................................................................................39

Sutherland Statutes and Statutory Construction (7th ed. 2013).......................... 9, 11

107 Cong. Rec. 19,036 (daily ed. Sept. 19, 1961) ...................................................16

**INTRODUCTION**

The Gun Control Act of 1968 prohibits individuals convicted of crimes punishable by imprisonment for a term of more than one year from possessing firearms. 18 U.S.C. § 922(g)(1). In 1990, when Plaintiff was arrested for driving while intoxicated, police officers discovered that Plaintiff was carrying a concealed, loaded .357 Magnum handgun that he had no license to possess. The State of Maryland convicted Plaintiff of unlawfully carrying an unlicensed handgun, a crime with a statutory penalty of up to three years' imprisonment. Despite his conviction, Plaintiff contends that he is entitled to possess a firearm notwithstanding Section 922(g)(1), arguing that the statute does not encompass his conviction or, alternatively, that Section 922(g)(1) violates the Second Amendment as applied to him. But as Defendants' opening brief explained, Section 922(g)(1) applies to any individual convicted of a State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment exceeding two years. Plaintiff's argument to the contrary is foreclosed by decisions of the Third Circuit and every other Court of Appeals to consider the issue. Additionally, Plaintiff's constitutional challenge to Section 922(g)(1) lacks merit. Plaintiff rests his argument primarily on a strained reading of United States v. Barton, 633 F.3d 168 (3d Cir. 2011), in which the Third Circuit rejected a facial and as-applied Second Amendment challenge to Section 922(g)(1). But Barton stands for the

unremarkable proposition that a person who is subject to Section 922(g)(1), and thus presumptively falls outside the scope of the Second Amendment's protection, bears the burden of establishing that he or she is nonetheless entitled to protection under the Second Amendment. As illustrated by the Third Circuit's decision in Dutton v. Commonwealth, 503 F. App'x 125 (3d Cir. 2012) (per curiam), Plaintiff cannot do so here. In any event, even if Plaintiff were entitled to some protection under the Second Amendment, that would only require that this Court proceed to means-end scrutiny of Section 922(g)(1), under the second step of the two-part test set forth in United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010). And as explained in Defendants' opening brief, Section 922(g)(1) easily satisfies such scrutiny here, because it relates substantially to the government's important interest in protecting public safety. The Court should therefore dismiss Plaintiff's complaint or enter summary judgment for Defendants.

## ARGUMENT

### I.     18 U.S.C. § 922(g)(1) Prohibits Plaintiff From Possessing Firearms.

#### A.     Under the Third Circuit's Essig Decision, Because Plaintiff Was Convicted of a Crime Punishable by Up to Three Years' Imprisonment, the Statutory Exclusion in 18 U.S.C. § 921(a)(20) Does Not Apply Here.

Plaintiff was convicted of unlawfully carrying an unlicensed handgun, a misdemeanor punishable by up to three years' imprisonment. See Md. Ann. Code art. 27, § 36B(b)(i) (1990). Thus, he was "convicted . . . of, a crime punishable by

2

imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Excluded

from this definition are "State offense[s] classified by the laws of the State as a

misdemeanor and punishable by a term of imprisonment of two years or less." Id.

§ 921(a)(20)(B). As explained in Defendants' opening brief, because Plaintiff's

offense was punishable by a term of up to three years' imprisonment, that offense

does not fall within the scope of this statutory exclusion. See United States v.

Essig, 10 F.3d 968, 971 (3d Cir. 1993) (misdemeanant did not fall within terms of

Section 921(a)(20)(B)'s exclusion "because his state conviction is punishable by

imprisonment for up to five years"), superseded on other grounds; Br. Supp. Def.

Mot. to Dismiss or for Summ. J. [ECF No. 13] ("Def. Mot.") at 5-6.

Plaintiff contends that the statute is ambiguous and urges the Court to use

various tools of interpretation to adopt a reading favorable to him. See Mem.

Supp. Pl. Mot. for Summ. J. and Opp. to Def. Mot. [ECF No. 18] ("Pl. Opp.") at 8-

20.[1] But this issue is directly controlled by Essig. There, the Third Circuit held

that Section 922(g)(1) prohibited firearms possession by a misdemeanant,

notwithstanding Section 921(a)(20), because his offense was punishable by

---

[1] Initially, Plaintiff argues, citing relevant case law, that the Court owes no
deference to an executive agency's interpretation of a criminal statute. Pl. Opp. at
8. However, Defendants have not presented any such deference argument.
Instead, Defendants have explained that the Third Circuit – and every court to have
considered the issue – has held that a misdemeanor offense capable of being
punished by more than two years' imprisonment does not fall within the scope of
Section 921(a)(20)'s exclusion. See Def. Mot. at 6 (citing cases).

imprisonment of up to five years.  10 F.3d at 972-73.  Plaintiff concedes that <u>Essig</u>

forecloses his statutory argument, but urges the Court to depart from this precedent

in light of <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008).  Pl. Opp. at 18-20.

The Court should decline to do so.

  "It is, of course, patent that a district court does not have the discretion to

disregard controlling precedent simply because it disagrees with the reasoning

behind such precedent."  <u>Vujosevic v. Rafferty</u>, 844 F.2d 1023, 1030 n.4 (3d Cir.

1988).  Even the Court of Appeals is bound by precedential opinions of earlier

panels absent an <u>en banc</u> decision.  <u>In re Grossman's Inc.</u>, 607 F.3d 114, 116-17

(3d Cir. 2010) (en banc).  Third Circuit decisions are binding on this Court unless

the decision has been expressly overruled by the Supreme Court or the Third

Circuit sitting <u>en banc</u>.  <u>See</u> <u>United States v. Mitlo</u>, 714 F.2d 294, 298 (3d Cir.

1983) (holding that a Third Circuit decision not overruled by the Supreme Court

remains binding on courts in the Third Circuit); <u>accord</u> <u>Ortiz v. Apker</u>, 726 F.

Supp. 2d 515, 521 (M.D. Pa 2010); Internal Operating Procedures, U.S. Court of

Appeals for the Third Circuit (2002), Rule 9.1 (stating that precedential decisions

of the Third Circuit are binding on subsequent panels unless overruled <u>en banc</u>).

  And <u>Heller</u>, which held that "the District [of Columbia]'s ban on handgun

possession in the home violates the Second Amendment, as does its prohibition

against rendering any lawful firearm in the home operable for the purpose of

immediate self-defense," 554 U.S. at 635, did not overrule Essig's holding that a

misdemeanor conviction punishable by more than two years' imprisonment

disqualifies an individual from firearms possession under Section 922(g)(1).

Contrary to Plaintiff's suggestion, Pl. Opp. at 19, Essig did not base its holding,

explicitly or implicitly, on a "collective rights" reading of the Second Amendment,

and Heller thus did not overrule Essig. Rather, Essig decided a pure question of

statutory interpretation, aided by the Supreme Court's decision in Dickerson v.

New Banner Institute, 460 U.S. 103 (1983), which remains good law after Heller

for the point for which it was cited in Essig. See, e.g., Schrader v. Holder, 704

F.3d 980, 990 (D.C. Cir. 2013) (relying on Dickerson), cert. denied, 134 S. Ct. 512

(2013); United States v. Yancey, 621 F.3d 681, 683 (7th Cir. 2010) (per curiam)

(same). Moreover, as detailed in Defendants' opening brief, near-uniform case law

has upheld the constitutionality of Section 922(g)(1), even after Heller, and even as

applied to non-violent offenders. See Def. Mot. at 30-32. There is thus no "sound

reason" for believing, as Plaintiff contends, that the Essig panel would "change its

collective mind" in light of Heller. Pl. Opp. at 19.[2] Applying Essig here, because

---

[2] Moreover, Plaintiff is not correct that Essig only considered arguments not
advanced here. Pl. Opp. at 13. While Plaintiff here may have articulated his
argument slightly differently, the essence of that argument is the same as that
advanced by the defendant in Essig, namely, that his crime is insufficiently serious
to warrant Section's 922(g)(1) prohibition. Compare Essig, 10 F.3d at 972
(contending that Essig did not fall within the prohibition in Section 922(g) because
he was "only a technical violator within the terms of §[] 921(a)(20)," not the type

Plaintiff was convicted of an offense was punishable by imprisonment of up to five years, he does not fall within Section 921(a)(20)'s statutory exclusion.

**B.    18 U.S.C. § 921(a)(20) Is Not Ambiguous, and Plaintiff's Citations to Various Canons of Construction Are Unavailing.**

In any event, though Plaintiff contends that Section 921(a)(20) is ambiguous, the most logical reading of the statute produces no such ambiguity. The D.C. Circuit has explained that "the commonsense meaning of the term 'punishable'" refers to "any punishment capable of being imposed." Schrader, 704 F.3d at 986 (citing Webster's Third New Int'l Dictionary 1843 (1993)). Relying on this "commonsense" understanding, the D.C. Circuit, like every other court to consider the issue, has held that an offense "capable of being punished by more than two years' imprisonment" is "ineligible for section 921(a)(20)(B)'s misdemeanor exception." Id. That court explained that Congress intended that "certain State misdemeanors – those punishable by more than two years' imprisonment – fall within the scope of section 922(g)(1)." Id. at 987; accord United States v. Coleman, 158 F.3d 199, 203-04 (4th Cir. 1998) (en banc) ("[T]he statutory language of § 921(a)(20)(B) unambiguously indicates that the critical

---

of "dangerous offender[]" that "Congress intended to sanction") with Pl. Opp. at 11 (arguing that "'felon' treatment applies" only if a misdemeanor *cannot* be punished by two years or less, e.g., because it is extremely serious and warrants a higher mandatory minimum sentence") (emphasis in original). In any event, nothing requires a court decision to consider and reject every potential argument for that decision to be binding.

inquiry in determining whether a state offense fits within the misdemeanor exception is whether the offense is 'punishable' by a term of imprisonment greater than two years – not whether the offense 'was punished' by such a term of imprisonment.") (citations omitted).

While expressly disagreeing with the holdings and analysis of the D.C. Circuit and Fourth Circuit, Pl. Opp. at 16-17, Plaintiff seizes on this "capable of being punished" language to advocate a strained reading that would place him within the scope of Section 921(a)(20)(B)'s exception. Thus, Plaintiff contends that his "offense comes within the meaning of the exclusion, because it was 'capable of being punished' by a sentence of two years or less, as demonstrated by [the] actual sentence." Id. at 10 (internal punctuation omitted). But this argument proves too much. While Plaintiff's offense may have been technically "capable of being punished" by less than two years, it was also "capable of being punished" by more than two years because the penal statute at issue authorized imprisonment for a term of three years. See Md. Ann. Code art. 27, § 36B(b)(i) (1990). Until a court actually imposes sentence, a crime is always "capable of being punished by" any term within the statutory maximum. Under Plaintiff's interpretation, a conviction punishable by 25 years would not fall within the scope of 18 U.S.C. § 922(g)(1) because a judge could impose a sentence of less than one year, thus rendering the conviction "capable of being punished" by a term not exceeding one

year.  Such an interpretation would also exclude any conviction for a State

misdemeanor with no mandatory minimum penalty.  In addition to turning the

common-sense reading of the statutory language on its head, Plaintiff's reading

conflicts with Supreme Court and Third Circuit holdings that the actual prison term

imposed is "irrelevant" for purposes of Section 922(g)(1)'s prohibition – what

matters is the potential sentence.  See Dickerson, 460 U.S. at 113; Essig, 10 F.3d at

973 ("The Supreme Court [in Dickerson] has clearly established that it is the

potential sentence that controls and not the one actually imposed[.]").

The legislative history of the statute also confirms this "commonsense

meaning."  As the House of Representatives Conference Report explained:

> A difference between the House bill and the Senate amendment . . . is
> that the crime referred to in the House bill is one punishable by
> imprisonment for more than 1 year and the crime referred to in the
> Senate amendment is a crime of violence punishable as a felony . . . .
> The conference substitute adopts the crime referred to in the House
> bill (one *punishable* by imprisonment *for more than 1 year*) but
> excludes from that crime any State offense not involving a firearm or
> explosive, classified by the laws of the State as a misdemeanor, and
> *punishable* by a term of imprisonment *of not more than 2 years*.

H.R. Rep. No. 90-1956, at 28-29 (1968) (emphasis added).  This provision makes

clear that Congress intended the firearms prohibition to include convictions for

crimes capable of being punished for more than one year, and to exclude only

misdemeanor crimes that are *not* capable of being punished by more than two years.[3]

Furthermore, Plaintiff is mistaken that the term "punishable" must be construed identically in Sections 922(g)(1) and 921(a)(20)(B), regardless of context. See Pl. Opp. at 14-15. As courts and commentators alike have observed, the presumption that a word that appears in different places in a document was intended to have the very same meaning at each appearance "assumes a perfection of drafting that, as an empirical matter, is not often achieved. Though one might wish it were otherwise, drafters more than rarely use the same word to denote different concepts . . . ." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012); see also 2A Sutherland Statutes and Statutory Construction ("Sutherland") § 46:5 (7th ed. 2013); Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 19 (1831) (Marshall, C.J.). "It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance." Atlantic

---

[3] Moreover, contrary to Plaintiff's contentions, Defendants are neither asking the Court to "rewrite" Section 921(a)(20)(B), nor to "take sides in a policy debate and override the statute's plain meaning." Pl. Opp. at 11, 12. Rather, as explained above, it is Plaintiff who is asking the Court to adopt a strained interpretation of the statute at odds with its common-sense meaning and legislative history, and with every Court of Appeals that has construed the statute.

Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932).  After all, "most

words have different shades of meaning and consequently may be variously

construed, not only when they occur in different statutes, but when used more than

once in the same statute or even in the same section."  Envtl. Def. v. Duke Energy

Corp., 549 U.S. 561, 574 (2007) (quoting Atlantic Cleaners, 286 U.S. at 433).

"The tendency to assume that a word which appears in two or more legal rules, and

so in connection with more than one purpose, has and should have precisely the

same scope in all of them, runs all through legal discussions.  It has all the tenacity

of original sin and must constantly be guarded against."  Gen. Dynamics Land Sys.

v. Cline, 540 U.S. 581, 596 n.8 (2004) (citation omitted); see also Martini v. Fed.

Nat'l Mortgage Ass'n, 178 F.3d 1336, 1343 (D.C. Cir. 1999) ("On numerous

occasions, both the Supreme Court and [the D.C. Circuit] have determined, after

examining statutory structure, context, and legislative history, that identical words

within a single act have different meanings.") (citing examples).  Thus, for

example, the Supreme Court has held that the statutory phrase "term of

imprisonment" means different things when used in different parts of the same

federal criminal statute, Barber v. Thomas, 560 U.S. 474, 484-89 (2010), that the

word "age" has different meanings when used in different parts of the Age

Discrimination in Employment Act, Gen. Dynamics, 540 U.S. at 595-97, and that

"employee" has different meanings in different parts of Title VII, Robinson v.

Shell Oil Co., 519 U.S. 337, 343-44 (1997).  See also Cyberworld Enter. Tech.,

Inc. v. Napolitano, 602 F.3d 189, 204 (3d Cir. 2010) (holding that the word "shall"

had different meanings when used in different subprovisions of the Immigration

and Nationality Act; "Our interpretation of the word 'shall' in [8 U.S.C.]

§ 1182(n)(2)(B) thus does not govern our interpretation of the same word as it is

used in [8 U.S.C.] § 1182(n)(2)(C)(i).").

Considering the different contexts in which the term "punishable" is used in

the Act, it is far more plausible that Congress intended to be consistent by making

the maximum potential sentence applicable to a particular crime the operative

factor in determining both the applicability of the prohibition in Section 922(g)(1)

and the qualification for the exclusion in Section 921(a)(20)(B).[4]  And as noted

above, relevant legislative history only underscores this conclusion.  Plaintiff's

contrary interpretive suggestion should therefore be rejected.

---

[4] It is worth noting in this regard that in the Firearms Owners Protection Act, 100 Stat. 449 (1986), Congress amended Section 921(a)(20)(B) just a few years after the Supreme Court decided Dickerson, which found only the maximum potential applicable sentence to be relevant.  See Logan v. United States, 552 U.S. 23, 27-28 (2007) (noting 1986 amendment).  If, as Plaintiff suggests, Congress had intended to include State misdemeanors within Section 922(g)(1)'s prohibition "only if a mandatory minimum provision requires a sentence exceeding two years," Pl. Opp. at 10, notwithstanding the Supreme Court's emphasis on potential sentences, it is puzzling that Congress did not make this point more explicit in the statute.  See 1A Sutherland § 22:29 ("When a legislature undertakes to amend a statute which has been the subject of judicial construction, courts presume the legislature was fully cognizant of such construction.") (collecting cases).

Finally, even though the Third Circuit has found that a person similarly situated to Plaintiff fell within Section 922(g)(1)'s proscription, and though courts that have interpreted Section 921(a)(20) have not found its language ambiguous, Plaintiff nonetheless invites this Court to use various canons of statutory construction to adopt his preferred reading over that adopted by these courts. None of Plaintiffs' tools of interpretation are availing, however. Initially, Plaintiff invokes the rule of lenity. Pl. Opp. at 8-9. However, the Third Circuit has made clear that the "rule of lenity is reserved for statutes with grievous ambiguity." United States v. Diaz, 592 F.3d 467, 474-75 (3d Cir. 2010). The "simple existence of some statutory ambiguity . . . is not sufficient to warrant application of the rule of lenity, for most statutes are ambiguous to some degree." United States v. Kouevi, 698 F.3d 126, 138 (3d Cir. 2012) (quoting Dean v. United States, 556 U.S. 568, 577 (2009)) (internal quotation marks omitted), superseded on other grounds. "Rather, the rule only applies in those cases in which a reasonable doubt persists about a statute's intended scope after consulting everything from which aid can be derived." United States v. Brown, 740 F.3d 145, 151 (3d Cir. 2014) (internal citation omitted). Because the rule represents an "interpretive method of last resort," id., it does not apply here, where the Third Circuit has already interpreted this statutory text in a controlling decision.

Nor is Plaintiff aided by the "constitutional avoidance" doctrine. Pl. Opp. at 17-18. As explained below, see infra part II, this case does not involve "serious constitutional questions." Northwest Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 204 (2009). See Schrader, 704 F.3d at 988 (applying Section 922(g)(1) to common-law misdemeanants "creates no constitutional problem that we need to avoid"). "The 'constitutional doubts' argument has been the last refuge of many an interpretive lost cause. Statutes should be interpreted to avoid *serious* constitutional doubts, not to eliminate all possible contentions that the statute *might* be unconstitutional." Reno v. Flores, 507 U.S. 292, 314 n.9 (1993) (internal citation omitted) (emphasis in original).

In sum, because Plaintiff was convicted of a crime punishable by up to three years' imprisonment, he falls squarely within Section 922(g)(1)'s prohibition.

## II. As Applied to Plaintiff, Section 922(g)(1) Does Not Violate the Second Amendment.

In Marzzarella, the Third Circuit explained: "As we read Heller, it suggests a two-pronged approach to Second Amendment challenges." Marzzarella, 614 F.3d at 89. "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. (citation omitted). "If it does not, our inquiry is complete." Id. "If it does, we evaluate the law under some form of means-end scrutiny" and "[i]f the law passes muster under that standard, it is constitutional," but "[i]f it fails, it is invalid." Id. Though

Plaintiff contends that <u>Marzzarella</u> only applies "in some facial challenges," Pl.

Opp. at 22, nothing in the decision so limits its holding. Rather, the Third Circuit

held that this "two-pronged approach" would apply "to Second Amendment

challenges," without drawing any distinction between facial and as-applied

challenges. 614 F.3d at 89. This case involves a Second Amendment challenge,

and the framework established by <u>Marzzarella</u> thus controls here.[5]

Nor is Plaintiff correct in his belief that in its subsequent decision in <u>Barton</u>,

the Third Circuit established a different framework specifically for analyzing

constitutional challenges to 18 U.S.C. § 922(g)(1). <u>See</u> Pl. Opp. at 22-25. Rather,

<u>Barton</u> simply addresses the first step of <u>Marzzarella</u>'s two-pronged approach, by

providing a test for determining when an individual who is presumptively not

entitled to Second Amendment protection may nonetheless raise an as-applied

Second Amendment challenge to Section 922(g)(1). Because the defendant in

<u>Barton</u> failed to satisfy this test, there was no occasion for the Third Circuit to

proceed to the second step of <u>Marzzarella</u>'s two-pronged approach. <u>See</u> <u>Barton</u>,

633 F.3d at 174 ("Because Barton has failed to demonstrate that his circumstances

place him outside the intended scope of § 922(g)(1), we find no error in the District

Court's dismissal of his as-applied challenge."). Thus, even if a plaintiff satisfies

---

[5] In responding to a question at oral argument in another case, counsel for
Defendants erred in his assumption that <u>Marzzarella</u> and <u>Barton</u> represented
conflicting decisions. <u>See</u> Pl. Opp., Ex. H, at 3-4 [ECF No. 18-8].

Barton and therefore can assert an as-applied Second Amendment challenge, the

Court must still proceed to Marzzarella's second prong, and determine whether

Section 922(g)(1) satisfies the appropriate level of means-end scrutiny as applied

to the category of individuals at issue.

### A. Section 922(g)(1) Does Not Burden Conduct Within the Scope of the Second Amendment's Protection.

#### 1. Because Plaintiff Is a Felon Under the Applicable Federal Standard, Plaintiff's Claims Do Not Implicate the Second Amendment.

As Defendants' opening brief explained, the Supreme Court's holding in

Heller was narrow, addressing only the "core" right of "*law-abiding, responsible*

citizens to use arms in defense of hearth and home."  554 U.S. at 635 (emphasis

added).  And Section 922(g)(1) affects only "individuals who cannot be said to be

exercising . . . 'the right of law-abiding, responsible citizens to use arms in defense

of hearth and home.'"  Schrader, 704 F.3d at 989.  Moreover, the Supreme Court

cautioned that "nothing in [its] opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons . . . ."  Heller,

554 U.S. at 626-27; see also id. at 627 n.26 (describing such "regulatory measures"

as "presumptively lawful").   As the Third Circuit has explained, these

presumptively lawful regulatory measures concern conduct that is "outside the

ambit of the amendment."  Marzzarella, 614 F.3d at 91 (citing Heller); see also id.

at 91-92 (explaining that "felons and the mentally ill are disqualified from

exercising their Second Amendment rights").  Section 922(g)(1) thus does not even

implicate a right protected by the Second Amendment, and Plaintiff's challenge

fails on that basis.

In response, Plaintiff argues that this language from <u>Heller</u> should not apply

to him because he should not be considered a felon.  Pl. Opp. at 24-25.  But while

it is true that Maryland classified Plaintiff's offense as a misdemeanor offense, "the

term 'felony' is commonly defined to mean a crime punishable by imprisonment

for more than one year."  <u>Burgess v. United States</u>, 553 U.S. 124, 130 (2008); <u>see

also</u> Black's Law Dictionary 694 (9th ed. 2009) (defining "felony" as "[a] serious

crime usu[ally] punishable by imprisonment for more than one year or by death");

<u>United States v. Robles-Rodriguez</u>, 281 F.3d 900, 904 (9th Cir. 2002) ("Congress

has a longstanding practice of equating the term 'felony' with offenses punishable

by more than one year's imprisonment.") (citing cases).  Thus, when Congress

amended the Federal Firearms Act in 1961 to prohibit any person convicted of a

crime punishable by a term of imprisonment exceeding one year, the sponsor of the

House bill explained that "[i]mprisonment for this period of time is the Federal

standard of what constitutes a felony."  107 Cong. Rec. 19,036 (daily ed. Sept. 19,

1961) (statement of Rep. Wilbur Mills).  This prohibition is presently codified at

18 U.S.C. § 922(g)(1).  Thus, under the longstanding federal definition of "felony,"

Plaintiff is a felon.  <u>See Dutton v. Commonwealth</u>, No. 11-7285, 2012 WL

3020651, at *1 (E.D. Pa. July 23, 2012) (though both of plaintiff's previous convictions "are classified as first degree misdemeanors" under state law, those convictions "classify him as a felon under 18 U.S.C. § 922(g)(1)"), aff'd, 503 F. App'x 125 (3d Cir. 2012) (per curiam).

In arguing to the contrary, Plaintiff relies on <u>Barton</u>, but that reliance is misplaced. <u>See</u> Pl. Opp. at 26. If anything, <u>Barton</u> actually shows that because Plaintiff falls within the scope of Section 922(g)(1)'s prohibition, he is categorically excluded from the Second Amendment's protection. The <u>Barton</u> footnote cited by Plaintiff was addressing the defendant's proposition that "courts may not rely exclusively on <u>Heller</u>'s list of 'presumptively lawful' regulations to justify categorical exclusions to the Second Amendment," a proposition for which the defendant had cited two cases. <u>Barton</u>, 633 F.3d at 172 n.2. The Third Circuit explained that the defendant's "reliance on these cases [was] misplaced" because the statute they had construed – 18 U.S.C. § 922(g)(9), prohibiting gun possession by domestic-violence misdemeanants – "was not included in <u>Heller</u>'s list of permissible regulations," and these cases thus "look[ed] beyond [that] language in <u>Heller</u> to find that domestic violence offenders were not protected by the Second Amendment." <u>Id.</u> By contrast, the Third Circuit stated, "[h]ere, no such inquiry is necessary, because § 922(g)(1) is one of <u>Heller</u>'s enumerated exceptions." <u>Id.</u> Here, because Plaintiff falls within the scope of the prohibition of Section

922(g)(1), "one of <u>Heller</u>'s enumerated exceptions," this Court may "rely exclusively" on <u>Heller</u> "to justify categorical exclusions to the Second Amendment." <u>Id.</u>[6]

      **2.**     **In Any Event, Plaintiff Has Not Presented Facts That Distinguish His Circumstances From Those of Persons Historically Barred from Second Amendment Protections, or Shown That His Circumstances Place Him Outside the Intended Scope of 18 U.S.C. § 922(g)(1).**

Because Plaintiff has failed to present facts to distinguish his circumstances from those of persons historically barred from Second Amendment protection, and has not shown that his circumstances place him beyond the intended scope of

---

[6] Plaintiff's reliance on <u>United States v. Chovan</u>, 735 F.3d 1127 (9th Cir. 2013), and <u>United States v. Chester</u>, 628 F.3d 673 (4th Cir. 2010), <u>see</u> Pl. Opp. at 6, is similarly misplaced because those cases also involved Section 922(g)(9), a statute "not included in <u>Heller</u>'s list of permissible regulations." <u>Barton</u>, 633 F.3d at 172 n.2. By contrast, this case involves Section 922(g)(1), which "is one of <u>Heller</u>'s enumerated exceptions." <u>Id.</u> Nor does the truncated sentence Plaintiff quotes from <u>Drake v. Filko</u>, 724 F.3d 426 (3d Cir. 2013), avail him here. The full sentence reads: "As the Seventh Circuit itself had earlier stated in [<u>United States v. Skoien</u>, 614 F.3d 638 (7th Cir. 2010) (en banc)], <u>Heller</u>'s language 'warns readers not to treat <u>Heller</u> as containing broader holdings than the Court set out to establish: that the Second Amendment created individual rights, one of which is keeping operable handguns *at home* for self-defense.'" <u>Drake</u>, 724 F.3d at 431 (quoting <u>Skoien</u>, 614 F.3d at 640) (emphasis in <u>Drake</u>). And as relevant here, <u>Skoien</u> noted shortly after this quoted sentence: "That *some* categorical limits [on the possession of weapons by some persons] are proper is part of the [Amendment's] original meaning, leaving to the people's elected representatives the filling in of details." 614 F.3d at 640 (emphasis in original); <u>see</u> <u>also</u> <u>Marzzarella</u>, 614 F.3d at 93 (noting that "it is not clear that pre-ratification is the only avenue to a categorical exception" to Second Amendment protection).

Section 922(g)(1), he may not assert an as-applied Second Amendment challenge here.  See Def. Mot. at 19-33.

> **a.  Plaintiff's Claim Is Indistinguishable from One Recently Rejected by the Third Circuit in Dutton v. Commonwealth.**

Defendants' opening brief demonstrated that this case cannot be meaningfully distinguished from a recent Third Circuit decision applying Barton, and upholding a district court decision that a Second Amendment challenge to Section 922(g)(1) would fail as applied to an offender convicted of carrying a firearm without a license and carrying a firearm on a public street.  Def. Mot. at 19-22.  The plaintiff in Dutton had been convicted in 1995 of carrying a firearm without a license and carrying a firearm on a public street, both of which offenses were punished as misdemeanors under State law.  Dutton, 2012 WL 3020651, at *1.  The district court denied the plaintiff leave to amend his complaint as futile, concluding that a constitutional challenge to Section 922(g)(1) would fail because, like the defendant in Barton, Dutton had "presented no facts distinguishing [his] circumstances from those of other felons who are categorically unprotected by the Second Amendment."  Id. at *2 n.3 (citation and internal punctuation omitted).  The Third Circuit affirmed, finding that any constitutional challenge to Section 922(g)(1) as applied to the plaintiff would fail because Barton had "determined that § 922(g)(1) is constitutional as applied to an individual, like Dutton, who has

presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment." Dutton, 503 F. App'x at 127 n.1 (citation and internal punctuation omitted). Because Dutton cannot be meaningfully distinguished from this case, Plaintiff's constitutional challenge must similarly fail. See also Chardin v. Police Comm'r of Boston, 989 N.E.2d 392, 398-403 (Mass. 2013) (upholding state prohibition on carrying of firearms by felons as applied to individual convicted as a juvenile for possession of a firearm and ammunition without a license), cert. denied, 134 S. Ct. 525 (2013).

Though Plaintiff attempts to distinguish Dutton, his attempts do not succeed. See Pl. Opp. at 14 n.2, 30. First, though it is correct that Dutton is an unpublished opinion and thus does not have precedential authority, Pl. Opp. at 14 n.2, it is nonetheless a Third Circuit opinion and, as such, carries considerable persuasive authority. See United States v. Kluger, 722 F.3d 549, 560 n.18 (3d Cir. 2013) ("We reiterate that unpublished opinions are not binding on this Court, but we find the opinions we cite to be persuasive in our analysis in this case."); Evans v. Chichester School Dist., 533 F. Supp. 2d 523, 535 n.15 (E.D. Pa. 2008) ("Although I recognize that unpublished opinions lack precedential value, I cite to them in this memorandum as persuasive authority when I find their reasoning convincing and their facts analogous to the situation before me) (citing City of Newark v. U.S. Dep't of Labor, 2 F.3d 31, 33 n.3 (3d Cir. 1993) ("Although we recognize that this

unpublished opinion lacks precedential authority, we nonetheless consider

persuasive its evaluation of a factual scenario virtually identical to the one before

us in this case.")); Linden v. Sap Am., Inc., No. 03-3125, 2004 WL 1047719, at *4

n.5 (E.D. Pa. May 6, 2004) ("Although unpublished opinions lack precedential

value, citation to unpublished opinions is not prohibited under the Third Circuit

Local Appellate Rules, and therefore, such opinions may serve as persuasive

authority in this Circuit.") (citations omitted).

Second, the fact that Dutton was brought by a pro se plaintiff, Pl. Opp. at 14

n.2 & 30, does not diminish its persuasive value. "The obligation to liberally

construe a pro se litigant's pleadings is well-established." Higgs v. Att'y Gen of

the United States, 655 F.3d 333, 339 (3d Cir. 2011). This obligation is "driven by

the understanding that implicit in the right of self-representation is an obligation on

the part of the court to protect pro se litigants from inadvertent forfeiture of

important rights because of their lack of legal training." Id. (citation and internal

punctuation omitted). And in Dutton, both the district court and the Third Circuit

were mindful of this obligation, noting specifically that they were required to

construe the plaintiff's complaint "liberally." Dutton, 2012 WL 3020651, at *2

n.3; 503 F. App'x at 127 n.1. Thus, though the plaintiff had not asserted a

constitutional challenge to 18 U.S.C. § 922, both the district court and the Third

Circuit reached out to address the issue, and specifically held that if the plaintiff

had asserted a Second Amendment challenge, that challenge would fail under Barton. Dutton, 2012 WL 3020651, at *2 n.3; 503 F. App'x at 127 n.1. And this conclusion constituted a holding by both courts because it was necessary to their determinations that amendment of the complaint would be futile. Dutton, 2012 WL 3020651, at *3; 503 F. App'x at 127 n.2.

Third, and finally, it is irrelevant that the plaintiff in Dutton had challenged his conviction under 18 U.S.C. § 922(g)(9), rather than Section 922(g)(1). Pl. Opp. at 30. Because the plaintiff was proceeding without representation, both the district court and the Third Circuit construed the plaintiff's complaint liberally, and expressly stated that they were analyzing the case under Section 922(g)(1). See Dutton, 2012 WL 3020651, at *2 n.3 (clarifying that 18 U.S.C. § 922(g)(1) is "the provision at issue in this case"); id. at *3 (quoting Section 922(g)(1) and analyzing plaintiff's claims under that section); Dutton, 503 F. App'x at 127 n.1 (explaining that though "Dutton does not seem to allege either that Appellees violated his Second Amendment rights or that 18 U.S.C. § 922(g)(1) violates the Second Amendment[,] [n]evertheless, such a challenge would necessarily fail"). After all, it is precisely because these courts were analyzing the plaintiff's claims under Section 922(g)(1) that they applied Barton. See Dutton, 2012 WL 3020651, at *2 n.3; 503 F. App'x at 127 n.1 (same).

In sum, Plaintiff has failed to distinguish meaningfully the Third Circuit's decision in <u>Dutton</u> from the facts presented here. That case represents persuasive authority indicating how the Third Circuit would apply <u>Barton</u> to the present case. Dutton's convictions "classifi[ed] him as a felon under 18 U.S.C. § 922(g)(1)," and his factual circumstances did not distinguish him from "other felons who are categorically unprotected by the Second Amendment." <u>Dutton</u>, 503 F. App'x at 127 n.1 (citation and internal punctuation omitted). For the same reasons, here, Plaintiff's as-applied challenge to Section 922(g)(1) must fail.

> **b.** **Plaintiff Has Not Pointed to Any Specific Facts That Would Demonstrate That Section 922(g)(1) Should Not Apply to Him.**

The Third Circuit in <u>Barton</u> left open the possibility that a person might be able to raise an as-applied challenge to Section 922(g)(1) by "present[ing] facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." 633 F.3d at 174. However, <u>Barton</u> did not provide any definitive criteria for making such a determination. The Third Circuit did state that the defendant in that case did "not argue that his predicate offenses make him no more likely than the typical citizen to commit a crime of violence, nor could he have done so persuasively in light of the facts of his case." <u>Id.</u>

Barton cited two factors that prevented the defendant from making such a showing: (1) that he had been convicted of "offenses relating to drug trafficking and receiving stolen weapons," and that "[c]ourts have held in a number of contexts" that such offenses "are closely related to violent crime, and (2) the defendant had recently sold a firearm with an obliterated serial number to a police informant. And though the defendant in Barton had recently admitted to selling a firearm with an obliterated serial number, 633 F.3d at 174, the Third Circuit did not state that such a finding was *necessary* to a showing that an individual's "predicate offenses make him no more likely than the typical citizen to commit a crime of violence." Id.

Similarly, here, Plaintiff cannot show that his predicate offense makes him no more likely than the typical citizen to commit a crime of violence. As the recidivism studies submitted by Defendants demonstrate, persons convicted of non-violent weapons offenses – even persons who were not incarcerated – present a higher risk of committing crimes, including crimes of violence. See Def. Mot. at 14-16 & Ex. 6, at 2084, 2086 tbl. 5; Ex. 8, at 27 tbl. 26, 28 tbl. 27. Thus, under Barton, Plaintiff may not assert an as-applied constitutional challenge to Section 922(g)(1).

Plaintiff's arguments to the contrary are meritless. See Pl. Opp. at 25, 26-34. Initially, while it is true that "[f]or nearly a quarter century, § 922(g)(1) had a

narrower basis for a disability, limited to those convicted of a crime of violence,"
Barton, 633 F.3d at 173 (citation and internal punctuation omitted), by 1961,
Congress appears to have determined that a narrower prohibition would not serve
its interest in public safety. Cf. United States v. Laurent, 861 F. Supp. 2d 71, 105
(E.D.N.Y. 2011) (noting that "[i]nitially, Congress only limited receipt of firearms
by violent indictees" in the Federal Firearms Act of 1938, but that "[a]fter three
decades of experience, it saw the need to expand the prohibition to all indictees").
And in enacting Section 922(g)(1), Congress specifically found that the misuse of
firearms by persons convicted of serious crimes – whether labeled misdemeanors
or felonies by the State in which the crime occurred – is a significant problem and
that restricting the firearms possession of persons who have already been convicted
of such offenses would help reduce the risk of gun violence. Omnibus Crime
Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 1201, 82 Stat. 236; S.
Rep. No. 89-1866, at 1, 53 (1966); S. Rep. No. 88-1340, at 4 (1964). Furthermore,
as the Third Circuit has held, "when reviewing the constitutionality of statutes,
courts accord substantial deference to the legislature's predictive judgments."
Drake, 724 F.3d at 436-37 (citation and internal punctuation omitted).[7] This

_____

[7] Plaintiff devotes considerable space in his brief to expressing his disagreement
with the Third Circuit's holding in Drake, which rejected a Second Amendment
challenge to a State law regulating the issuance of permits to carry handguns in
public. Pl. Opp. at 27-28. However, Plaintiff's disagreement notwithstanding, as a
Third Circuit decision, Drake is binding precedent.

includes predictive judgments about the risk of firearms misuse by individuals, such as Plaintiff, who have been convicted of serious offenses.  See Kachalsky v. Cnty. of Westchester, 701 F.3d 81, 97 (2d Cir. 2012) ("In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks.") (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 665 (1994)), cert. denied, 133 S. Ct. 1806 (2013).

Consequently, the mere fact that Plaintiff was not convicted of an inherently violent crime, see Pl. Opp. at 26-29, does not distinguish him from the class of persons to whom Section 922(g)(1) has been constitutionally applied.  See United States v. Pruess, 703 F.3d 242, 247 (4th Cir. 2012) ("[O]ur sister circuits have consistently upheld applications of § 922(g)(1) even to *non-violent* felons.") (citing cases) (emphasis in original); United States v. Everist, 368 F.3d 517, 519 (5th Cir. 2004) (rejecting facial Second Amendment challenge to Section 922(g)(1); "Irrespective of whether his offense was violent in nature, a felon has shown manifest disregard for the rights of others.  He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten

the security of his fellow citizens.");[8] United States v. Vongxay, 594 F.3d 1111,

1116-18 (9th Cir. 2010) (reaffirming pre-Heller precedent "declin[ing] to make a

distinction between violent and non-violent felons and [holding] that [Section]

922(g)(1), which prohibits all felons from possessing firearms, was

constitutional").

Nor does Barton suggest otherwise.  In that case, neither of the defendant's

predicate offenses – possession with intent to deliver a controlled substance and

receiving stolen property – were inherently violent in nature.  See Br. of United

States, United States v. Barton, No. 09-2211 (3d Cir.), 2010 WL 2962436, at *6

(July 2, 2010); App. Br., 2010 WL 2504123, at *6 (Apr. 28, 2010).  But the Third

Circuit still rejected the defendant's as-applied challenge to Section 922(g)(1),

holding that he had "failed to demonstrate that his circumstances place him outside

the intended scope of § 922(g)(1)."  Barton, 633 F.3d at 174.

Thus, it is irrelevant that Plaintiff claims that his predicate offense "does not

incite violence."  Pl. Opp. at 29.  The same could be said of the predicate offenses

committed by the defendant in Barton, but that did not render his constitutional

claim meritorious.  Nor did the Barton defendant's crimes "involve force, or the

---

[8] Though decided before Heller, Everist applied the Fifth Circuit's earlier decision
in United States v. Emerson, 270 F.3d 203 (5th Cir. 2001), which held that the
Second Amendment "protects the rights of individuals, including those not then
actually a member of any militia or engaged in active military service or training,
to privately possess and bear their own firearms . . ."  Id. at 260.

threat of force, or coercion of any kind." Id. Nevertheless, the Third Circuit still rejected his as-applied challenge to Section 922(g)(1).

It is similarly non-dispositive that Plaintiff committed his offenses in 1990 and 1998. The defendant in Barton had been convicted in 1995 of possession with intent to deliver a controlled substance, and in 1993 of receiving stolen property. Br. of United States, United States v. Barton, 2010 WL 2962436, at *6; App. Br., 2010 WL 2504123, at *6. But despite the fact that the defendant's offenses had been committed more than a decade earlier, the Third Circuit still rejected the defendant's as-applied challenge to Section 922(g)(1). Barton, 633 F.3d at 174. It held that the defendant had "failed to demonstrate that his circumstances place him outside the intended scope of § 922(g)(1)." Id. Similarly, the plaintiff in Dutton had been convicted in 1995 for carrying a firearm without a license and carrying on a public street. 2012 WL 3020651, at *1. Nevertheless, the Third Circuit stated: "[T]he Barton court determined that § 922(g)(1) is constitutional as applied to an individual, like Dutton, who has 'presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment.'" Dutton, 503 F. App'x at 127 n.1 (quoting Barton, 633 F.3d at 175). Thus, the mere fact that several years have elapsed since Plaintiff's two convictions no more distinguishes him than it did the defendant in Barton or the plaintiff in Dutton.

Additionally, in making his as-applied argument here, Plaintiff relies heavily on Gowder v. City of Chicago, 923 F. Supp. 2d 1110 (N.D. Ill. 2012).  See Pl. Opp. at 1, 24, 29, 35 (citing and quoting Gowder).  As a district court decision from another Circuit, however, Gowder is not binding on this Court, and is only useful to the extent that it has the power to persuade.  It is thus instructive to note that this decision has not been followed by any other court; indeed, the only case to have even cited Gowder did so in passing, while upholding a State statute against a Second Amendment challenge.  See People v. Taylor, 3 N.E.3d 288, 297 (Ill. App. 2013) (upholding Illinois statute prohibiting aggravated unlawful use of a weapon against facial constitutional challenge); see also Chardin, 989 N.E.2d at 398-403 (rejecting Second Amendment challenge to state prohibition on carrying of firearms by felons, as applied to individual convicted as a juvenile for possession of a firearm and ammunition without a license).

Furthermore, as Defendants' opening brief explained, when Plaintiff was arrested in 1990, he was carrying a loaded .357 Magnum handgun without a license – and two loaded "speed-loaders" – while intoxicated to the point that he was arrested for driving under the influence.  Def. Mot. at 27-28.  Nor was this Plaintiff's sole criminal conviction.  Rather, Plaintiff was also convicted in 1998 of driving while intoxicated.  Compl. ¶ 9.  And though Plaintiff attempts to downplay the significance of his 1998 conviction, as well as the fact that he was arrested in

1990 for driving while intoxicated, Pl. Opp. at 30-32, that attempt fails. "Although

section 922(g)(1)'s burden is certainly severe, it falls on individuals who cannot be

said to be exercising the core of the Second Amendment right identified in Heller,

i.e., 'the right of law-abiding, responsible citizens to use arms in defense of hearth

and home.'" Schrader, 704 F.3d at 989 (quoting Heller, 554 U.S. at 635).

By definition, a person with two criminal convictions cannot be characterized as

"law-abiding." Nor does driving while intoxicated, even after having been

previously arrested for this same offense, constitute "responsible" behavior.[9]

---

[9] Plaintiff alleges that in the quoted passage from Heller, the Supreme Court was
only "contrast[ing] 'law-abiding, responsible citizens' with 'felons and the
mentally ill.'" Pl. Opp. at 24 (emphasis and citations omitted). But the only
support Plaintiff cites for construing Heller in this manner is a single-judge
concurrence from the Ninth Circuit. See Chovan, 735 F.3d at 1142-52 (9th Cir.
2013) (Bea, J., concurring). Notably, the Chovan majority opinion (and at least
two other Courts of Appeals) did not accept this interpretation. See id. at 1134-35
("'Although [Chovan] asserts his right to possess a firearm in his home for the
purpose of self-defense, we believe his claim is not within the core right identified
in Heller – the right of a *law-abiding*, *responsible* citizen to possess and carry a
weapon for self-defense – by virtue of [Chovan]'s criminal history as a domestic
violence misdemeanant.'") (quoting Chester, 628 F.3d at 682-83) (emphasis in
Chester); Schrader, 704 F.3d at 989.
     Moreover, this interpretation does not withstand scrutiny. To begin with,
Heller used these phrases in different sections analyzing distinct issues. Contrast
554 U.S. at 626-27 ("[N]othing in our opinion should be taken to cast doubt on
longstanding prohibitions on the possession of firearms by felons and the mentally
ill, or laws forbidding the carrying of firearms in sensitive places such as schools
and government buildings, or laws imposing conditions and qualifications on the
commercial sale of arms.") with id. at 635 ("And whatever else it leaves to future
evaluation, [the Amendment] surely elevates above all other interests the right of
law-abiding, responsible citizens to use arms in defense of hearth and home.").
Heller thus used the phrase "felons and the mentally ill" in a non-exhaustive list of

Moreover, contrary to Plaintiff's argument, Pl. Opp. at 31-32, 18 U.S.C. § 922(g)(3), which prohibits firearms possession by unlawful users of controlled substances, is not pertinent here. Plaintiff is disqualified from the exercise of Second Amendment rights because he has been convicted of a crime punishable by imprisonment for over one year. See Heller, 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."). Furthermore, Plaintiff's complaint specifically invited the Court to examine his "personal circumstances," Compl. ¶ 28, and asserted that he had "no history" of any "conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen" or "is unlikely to act in a manner dangerous to public safety." Id. ¶ 27. And if the Court deems such representations relevant, then it is important to note that when Plaintiff was arrested in 1990, he was driving while intoxicated, and also that Plaintiff was convicted in 1998 of driving while intoxicated. See United States v.

---

"presumptively lawful regulatory measures," id. at 626, 627 n.26, beyond the scope of the Second Amendment's protection, and employed the phrase "law-abiding, responsible citizens" in discussing the nature of the core right. Most importantly, Heller did not draw any express or implicit connection between these two phrases. And drawing such a connection would be at odds with Heller's express statement that the specifically-identified "presumptively lawful regulatory measures," including prohibitions on firearms possession by felons and mentally-ill persons, were only "examples" rather than an exhaustive list. Id. Plaintiff's suggested interpretation of Heller thus does not withstand close scrutiny.

Carter, 669 F.3d 411, 415 (4th Cir. 2012) ("The weight of the right to keep and bear arms depends not only on the purpose for which it is exercised but also on relevant characteristics of the person invoking the right. Placed in the wrong hands, firearms present a grave threat to public safety, and for this reason, the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous."), cert. denied, 135 S. Ct. 273 (2014).

Additionally, Plaintiff misplaces his emphasis on the fact that he petitioned for the removal of his disqualification under Pennsylvania law, Pl. Opp. at 32, and that the petition was granted. The statute under which Plaintiff filed his petition, Pennsylvania Consolidated Statutes Annotated § 6105(d), provides that if a person has been convicted of certain enumerated offenses in subsection (b), and that ten years have elapsed, the designated court of common pleas has no discretion except to grant such a petition. See 18 Pa. C.S.A. § 6105(d) (providing that "[t]he court shall grant such relief" if ten years has elapsed since the petitioner's most recent conviction of a crime listed in subsection (b)). And the list of enumerated offenses in subsection (b) includes, inter alia, murder, voluntary manslaughter, aggravated assault, kidnapping, rape, arson, and robbery. Id. § 6105(b). Thus, the fact that Plaintiff has obtained a petition from a court that had no discretion as to whether to grant such a petition demonstrates very little.

Moreover, for purposes of 18 U.S.C. § 922(g)(1), the issuance of such a petition has no significance. As relevant here, Section 922(g)(1)'s prohibition does not apply with respect to a conviction "for which a person . . . has had civil rights restored." 18 U.S.C. § 921(a)(20). As to whether "a person . . . has had civil rights restored," however, the Third Circuit has defined "civil rights" as the right to vote, the right to seek and hold public office, and the right to sit on a jury. Essig, 10 F.3d at 975. Consequently, "[t]he absence of firearms restrictions . . . becomes relevant only if the convict's core civil rights have been restored . . . . If the defendant 'has not had civil rights restored,' it simply does not matter what the state law provides concerning possession of firearms." United States v. Leuschen, 395 F.3d 155, 160 (3d Cir. 2005) (citations omitted). Under Pennsylvania law, a citizen may not serve on a jury if he or she "has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor." 42 Pa. C.S.A. § 4502(a)(3). Thus, because Plaintiff remains ineligible for jury service by virtue of his conviction, his civil rights have not been restored. See Essig, 10 F.3d at 975-76.

In sum, Plaintiff's conviction for a crime punishable by up to three years' imprisonment demonstrates that he is neither law-abiding nor responsible. Plaintiff has neither distinguished his circumstances from those of persons historically barred from Second Amendment protection, nor demonstrated that his

circumstances place him outside the intended scope of 18 U.S.C. § 922(g)(1).

Consequently, under Barton, Plaintiff may not raise an as-applied Second

Amendment challenge to Section 922(g)(1).

    **B.**    **In the Alternative, As Applied to Plaintiff, Section 922(g)(1) Relates Substantially to the Important Governmental Interest in Protecting Public Safety and Combating Violent Crime.**

Alternatively, as explained in Defendants' opening brief, if the Court

proceeds to the second step of Marzzarella to apply means-end scrutiny, it should

still uphold Section 922(g)(1) as applied to Plaintiff because the statute relates

substantially to the important governmental interest in protecting public safety and

combating violent crime.  Def. Mot. at 9-18.[10]  Under that standard, Plaintiff's

constitutional challenge fails because there is at least a "reasonable fit" between

applying Section 922(g)(1) to a person convicted of a weapons offense such as

Plaintiff's and the government's interest in protecting public safety and preventing

violent crime.  Drake, 724 F.3d at 436.  "When reviewing the constitutionality of

statutes, courts 'accord substantial deference to the [legislature's] predictive

judgments.'"  Id. at 436-37 (quoting Turner Broad. Sys., Inc. v. FCC, 520 U.S.

---

[10] Plaintiff fails to support his assertion that if means-end scrutiny is appropriate here, strict scrutiny, rather than intermediate scrutiny, should provide the standard. Pl. Opp. at 22.  Plaintiff cites no decision that has analyzed Section 922(g)(1) under strict scrutiny, and courts that have used an independent means-end analysis in examining this statute have applied no more than intermediate scrutiny.  See Schrader, 704 F.3d at 989.  Thus, if the Court decides to utilize means-end scrutiny here, it should apply no more than intermediate scrutiny.

180, 195 (1997).  As shown in Defendants' opening brief, those predictive

judgments demonstrate the reasonableness of Section 922(g)(1)'s application here.

<u>See</u> Def. Opp. at 11-18.

Though Plaintiff has argued otherwise, his arguments lack merit.  <u>See</u> Pl.

Opp. at 25-26, 28, 34-36.  Initially, Plaintiff is simply incorrect that the Supreme

Court has characterized the legislative history of the Gun Control Act as "fairly

sparse."  Pl. Opp. at 25.  Rather, what the Supreme Court stated was that the

legislative history for one title of that Act – Title VII – was only "added by way of

a floor amendment to the Act and thus was not a subject of discussion in the

legislative reports."  <u>Lewis v. United States</u>, 445 U.S. 55, 62 (1980); <u>accord</u> <u>United

States v. Batchelder</u>, 442 U.S. 114, 120 (1979); <u>Scarborough v. United States</u>, 431

U.S. 563, 569-70 (1977); <u>United States v. Bass</u>, 404 U.S. 336, 344 & n.11 (1971).

However, Section 922(g)(1) was enacted as part of Title IV, not Title VII.  <u>See</u> 82

Stat. 225-35 (Title IV), <u>id.</u> at 230-31 (prohibiting "any person . . . who has been

convicted in any court of a crime punishable by imprisonment for a term exceeding

one year" from possessing firearms).[11]  And unlike Title VII, Title IV was the

product of extensive legislative history.  <u>See</u>, <u>e.g.</u>, S. Rep. No. 90-1097; S. Rep.

No. 89-1866; S. Rep. No. 88-1340.  Moreover, the Supreme Court has noted that,

---

[11] "Four months after enacting the Omnibus Act, the same Congress amended and re-enacted Titles IV and VII as part of the Gun Control Act of 1968."  <u>Batchelder</u>, 442 U.S. at 121 n.6 (citing 82 Stat. 1213).

by contrast to Title VII, Title IV represents "a carefully constructed package of gun control legislation," <u>Scarborough</u>, 431 U.S. at 570. Plaintiff thus misplaces his reliance on the legislative history of Title VII, Pl. Opp. at 25-26.

Additionally, to demonstrate that Congress's predictive judgments underlying Section 922(g)(1) justify the statute's application to Plaintiff, Defendants' opening brief cited the conclusions of several empirical studies. Def. Mot. at 13-17. Though Plaintiff tries to discount the findings of those studies, Pl. Opp. at 28, 34-36, his efforts are not persuasive.

Initially, Defendants presented a study concluding that, based on a study of handgun purchases denied as a result of a prior conviction or arrest for a crime punishable by imprisonment or death, "denial of handgun purchase is associated with a reduction in risk for later criminal activity of approximately 20% to 30%." Def. Mot., Ex. 5, at 3. Though, as Plaintiff notes, the study stated that the "modest benefit" shown "may reflect the fact that members of both study groups had extensive prior criminal records and therefore were at high risk for later criminal activity," the study also noted that "[t]he size of this effect is comparable to that seen in other crime prevention measures." <u>Id.</u>

Defendants also introduced seven empirical studies showing that individuals convicted of non-violent firearms-related crimes, as a class, are also much more likely than the general population to commit future crimes. <u>See</u> Def. Mot. at 14-

17.  Plaintiff's attempt to downplay the significance of these studies, Pl. Opp. at 32, 34, lacks persuasive force.  Courts that rely on empirical studies (or simply findings by other courts) in conducting constitutional means-ends analyses in response to Second Amendment claims have examined whether those studies or findings link persons convicted of a generic category of crime (such as "domestic violence crimes") to a likelihood of re-offending.  See Skoien, 614 F.3d at 644 (examining recidivism rates for "people convicted of domestic violence"); Barton, 633 F.3d at 174 (examining findings by courts that "offenses relating to drug trafficking and receiving stolen weapons" were linked to violent crime); Chovan, 735 F.3d at 1140-41 (examining studies of "domestic violence recidivism"); United States v. Miller, 604 F. Supp. 2d 1162, 1171-73 (W.D. Tenn. 2009) (relying on nexus between felons in general and violent crime in concluding that Section 922(g)(1) satisfied intermediate scrutiny with respect to offender convicted of possession and manufacture of controlled substances); United States v. Schultz, No. 08-75, 2009 WL 35225, at *5 (N.D. Ind. Jan. 5, 2009) (upholding Section 922(g)(1) as applied to offender convicted of failure to pay child support based on finding that "[p]ersons who have committed felonies are more likely to commit crimes than those who have not").  It is thus sufficient to show that studies have linked the generic category of crime of which Plaintiff was convicted – weapons offenses – with a propensity to commit future crimes.

Additionally, though Plaintiffs raise objections to each of these seven empirical studies, Pl. Opp. at 34-36, those objections lack merit. First, Defendants introduced a study of authorized purchasers of handguns with prior misdemeanor convictions, which showed that handgun purchasers with a prior non-violent conviction involving a firearm were 4.4 times more likely to be charged with a violent offense than a person with no criminal history, and 5.2 times more likely to be charged with violent offenses classified by the Federal Bureau of Investigation as Violent Crime Index offenses. Def. Mot., Ex. 6, at 2084, 2086 tbl. 5. In response, Plaintiff speculates that because the study examined persons convicted of non-violent misdemeanors involving a firearm, the study might have included "[a] drug dealer trafficking in stolen guns, or carrying a gun in defense of a street corner." Pl. Opp. at 34-35. But Plaintiff offers nothing to support this speculation. Moreover, as noted above, see supra II.A.1.b, Plaintiff misplaces his reliance on Gowder, a district court decision from another Circuit, the holding in which has not been followed by any other Court.

Plaintiff also seeks to discount the empirical studies filed as Exhibits 9-12 of Defendants' opening brief on the grounds that they studied persons released from prison (unlike Plaintiff, who was not incarcerated). Pl. Opp. at 35. If Plaintiff were correct in his speculation that the results of these recidivism studies would be markedly different if only non-incarcerated persons had been studied, one would

expect that a study of persons who had received only probation for weapons offenses would not find similar recidivism rates. However, a 2005 Iowa study showed that over 53% of individuals who received only probation for weapons offenses were re-arrested, 15.6% for a violent crime. Def. Mot., Ex. 8, at 27 tbl. 26. Additionally, over 37% of probationers for weapons offenses were re-convicted, over 12% for a crime of violence. Id. at 28 tbl. 27. These findings indicate that even if a person convicted of a weapons offense was not incarcerated, he or she still presents an increased risk of committing additional crimes. As such, the findings of studies that studied incarcerated persons cannot be so easily discounted.

Furthermore, particularly in light of the broadly prophylactic purpose underlying Section 922(g)(1), that statute is appropriately applied to Plaintiff. As explained in Defendants' opening brief, Def. Mot. at 29-33, in enacting the Gun Control Act, Congress had a "broad prophylactic purpose." Dickerson, 460 U.S. at 118; see also Barrett v. United States, 423 U.S. 212, 220 (1976) (stating that the Act "reflects a . . . concern with keeping firearms out of the hands of categories of *potentially irresponsible* persons, including convicted felons. Its *broadly stated* principal purpose was 'to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, *criminal background*, or incompetency.'") (quoting S. Rep. No. 90-1501, at 22 (1968), reprinted in 1968

U.S.C.C.A.N. 2112, 2113) (emphasis added).  Congress effected this purpose, in part, by prohibiting several classes of persons from possessing firearms, including persons convicted of serious crimes – namely, crimes punishable by imprisonment for more than one year.  And "the Supreme Court has consistently instructed that statutes written in broad, sweeping language should be given broad, sweeping application."  Consumer Electronics Ass'n v. FCC, 347 F.3d 291, 298 (D.C. Cir. 2003).

In enacting the Gun Control Act, Congress "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous."  Barrett, 423 U.S. at 218.  In order to accomplish its goal of "curb[ing] crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, *criminal background*, or incompetency," Congress "obviously determined that firearms must be kept away from persons, such as those convicted of *serious crimes*, who might be expected to misuse them." Dickerson, 460 U.S. at 119 (emphasis added).  And the Third Circuit has made clear that such "predictive judgments" are entitled to "substantial deference." Drake, 724 F.3d at 436 (citation omitted).

During the House debates on the Act, one legislator stated:

> [N]one of us who support Federal firearms controls believe that any bill or any system of control can guarantee that society will be safe from firearms misuse.  But we are convinced that a strengthened system can significantly contribute to reducing the danger of crime in

> the United States. No one can dispute the need to prevent drug
> addicts, mental incompetents, persons with a history of mental
> disturbances, and *persons convicted of certain offenses*, from buying,
> owning, or possessing firearms. This bill seeks to maximize the
> possibility of keeping firearms out of the hands of such persons.

Huddleston, 415 U.S. at 828 (quoting 114 Cong. Rec. 21,784) (statement of Rep.

Emanuel Celler) (emphasis added). It is therefore appropriate for the Court to

apply broadly the prohibition contained in Section 922(g)(1). "[B]ecause the

government objective is exceptionally compelling in this area, Congress must have

wider latitude to combat the great social harm inflicted by gun violence. . . .

Although prohibiting gun possession by nearly all felons might not be the most

precisely focused means to achieve this end, intermediate scrutiny, by definition,

permits Congress to paint with a broader brush." Miller, 604 F. Supp. 2d at 1172.

Moreover, Heller does not require courts to adopt a narrow construction of this

statute. See United States v. Lunsford, No. 10-182, 2011 WL 145195, at *7 (S.D.

W. Va. Jan. 18, 2011) ("Notably, the Supreme Court in Heller did not make

reference to categories or sub-categories of felons when carving out the

'presumptively lawful regulatory measures.' It is generally accepted that offending

society by committing a crime leads legitimately to the loss of certain rights, such

as the right to vote or serve on a jury. Firearms prohibition is also such a forfeited

right. This loss of rights serves both as a form of punishment and as an incentive

to deter future crimes. Other than incarceration, there may be no more effective

deterrent to crime than the threat of the loss of firearms rights.") (internal citations omitted), aff'd, 470 F. App'x 184 (4th Cir. 2012).

Finally, Plaintiff is simply incorrect that the Court's inquiry under intermediate scrutiny can only relate to Plaintiff, and not to persons encompassed by a particular category of criminal offenses (such as non-violent weapons offenses). Pl. Opp. at 32, 36. Intermediate scrutiny does not require the government to show that each individual encompassed within a statutory proscription poses a particular danger. Rather, "some categorical disqualifications are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." Skoien, 614 F.3d at 641; cf. Carter, 669 F.3d at 420-21 (rejecting Second Amendment challenge to firearms prohibition by drug users "without requiring an individualized determination that a particular drug user poses a genuine threat to public safety"); see also Def. Mot. at 17-18 (citing relevant cases). And Plaintiff cannot prevail here without rebutting the empirical evidence presented by Defendants. See Chovan, 735 F.3d at 1142 (even "assum[ing] that Chovan has had no history of domestic violence since 1996, Chovan has not presented evidence to directly contradict the government's evidence that the rate of domestic violence recidivism is high. Nor has he directly proved that if a domestic abuser has not committed domestic violence for fifteen years, that abuser is highly

unlikely to do so again. In the absence of such evidence, we conclude that the application of [18 U.S.C.] § 922(g)(9) to Chovan is substantially related to the government's important interest of preventing domestic gun violence.").

In sum, particularly in light of the "substantial deference" afforded to "predictive judgments" made by Congress when reviewing the constitutionality of statutes, Drake, 724 F.3d at 436-37, applying Section 922(g)(1) to Plaintiff satisfies intermediate scrutiny.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' motion to dismiss or for summary judgment, the Court should dismiss this case and deny Plaintiff's motion for summary judgment.

Dated: December 29, 2014   Respectfully submitted,

Of Counsel       JOYCE R. BRANDA
             Acting Assistant Attorney General

PETER SMITH
United States Attorney

              /s/ Daniel Riess
             DIANE KELLEHER
JOANNE M. HOFFMAN     Assistant Branch Director
Special Assistant United States Attorney DANIEL RIESS
228 Walnut Street      Trial Attorney
Suite 220        U.S. Department of Justice
Ronald Reagan Federal Building   Civil Division, Rm. 6122
Harrisburg, Pennsylvania 17108   20 Massachusetts Avenue, NW
Telephone: (717) 221-4482    Washington, D.C. 20530
Fax: (717) 221-4493     Telephone: (202) 353-3098
Email: Joanne.Hoffman@usdoj.gov  Fax: (202) 616-8460
             Email: Daniel.Riess@usdoj.gov

*Attorneys for Defendants*