IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO SUAREZ, | ) | Case. No. 14-CV-00968-WWC |
| | ) | |
| Plaintiff, | ) | (The Hon. William W. Caldwell) |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now Plaintiff, Julio Suarez, by and through undersigned counsel, and

submits his Memorandum of Points and Authorities in Reply to Defendants'

Opposition to his Motion for Summary Judgment.

Dated:  January 16, 2015             Respectfully submitted,

By: /s/ Douglas Gould_____          By: /s/Alan Gura_____
     Douglas Gould (PA Bar No. 78357)      Alan Gura
     Law Offices of Douglas T. Gould, P.C.   Gura & Possessky, PLLC
     925 Glenbrook Avenue              105 Oronoco Street, Suite 305
     Bryn Mawr, PA 19010              Alexandria, VA 22314
     610.520.6181/Fax 610.520.6182      703.835.9085/Fax703.997.7665
     dgould@gouldlawpa.com           alan@gurapossessky.com

                                    Attorneys for Plaintiff

## TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    *Essig* Does Not Preclude Suarez's Statutory Argument,
        and Suarez Never Argued That It Does. . . . . . . . . . . . . . . . . . . . . . . 4

    II.    The Government Does Not Understand Suarez's
        Statutory Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.    Suarez Is Entitled to Challenge Section 922(g)(1)'s Application
        Against Him as a Second Amendment Violation.. . . . . . . . . . . . . . 8

    IV.    *Barton* Did Not Apply *Marzzarella*. . . . . . . . . . . . . . . . . . . . . . . . 11

    V.    Suarez Is Entitled to As-Applied Relief.. . . . . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

Cases

*Binderup* v. *Holder*, No. 13-6750,
    2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept. 25, 2014)........ 12, 15, 16

*Britt v. State*,
    363 N.C. 546, 681 S.E.2d 320 (N.C. 2009) ......................... 13

*Coca-Cola Bottling Co.* v. *Coca-Cola Co.*,
    988 F.2d 386 (3d Cir. 1993). ...................................... 5

*Curtis* v. *Loether*,
    415 U.S. 189 (1974) ............................................ 9

*Dickerson* v. *New Banner Inst., Inc.*,
    460 U.S. 103 (1983). ........................................... 8

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). ....................................... 5, 9, 18

*Dutton* v. *Pennsylvania*,
    503 Fed. Appx. 125 (3d Cir. 2012) (per curiam). ................... 14

*Gowder* v. *City of Chicago*,
    923 F. Supp. 1110 (N.D. Ill. 2012). ............................. 16

*Tyler* v. *Hillsdale Cnt'y Sheriff's Dep't*, No. 13-1876,
    2014 U.S. App. LEXIS 23929 (6th Cir. Dec. 18, 2014) ............... 9

*United States* v. *Barton*,
    633 F.3d 168 (3d Cir. 2011). ............................... passim

*United States* v. *Chovan*,
    735 F.3d 1127 (9th Cir. 2013) .................................. 9

*United States* v. *Essig*,
    10 F.3d 968 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States* v. *Leuschen*,
    395 F.3d 155 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States* v. *Marzzarella*,
    614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States* v. *Pruess*,
    703 F.3d 242 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *Rehlander*,
    666 F.3d 45 (1st Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Statutes, Rules, and Ordinances

18 U.S.C. § 921(a)(20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 10, 17

18 U.S.C. § 921(a)(20)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7, 10

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


Other Authorities

H.R. Rep. No. 90-1956 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

One key to resolving this litigation lies in the Government's response to

Suarez's undisputed facts 10 through 16. The Government offers no evidence to

refute the facts, consequently now "deemed to be admitted," L.R. 56.1, that:

- Suarez has been married for 20 years, and is in the process of
  successfully raising three children;

- Suarez is an Elder in his local Presbyterian Church;

- Suarez holds a "Secret" security clearance in connection with
  employment for a government contractor;

- Suarez is an honorably discharged Army veteran, awarded the Army
  Commendation Medal as well as the Army Achievement Medal
  during his service;

- Suarez graduated cum laude from Towson University, B.S. in
  Economics, Minor in Political Science; and that

- Suarez is a Certified Licensing Professional.

Sep. Statement of Undisputed Material Facts, Dkt. 19. And most critically, the

Government fails to refute the fact that

> In the 1990s, Suarez was much younger and less responsible than he is
> today. But while Suarez acknowledges that he made mistakes, he has never
> been an alcoholic, nor did he abuse alcohol on a regular basis at any time in
> his life, nor does he abuse alcohol today. Alcohol simply does not interfere
> with Suarez's life in any way, and it has not adversely impacted his life
> since the 1998 DUI conviction.

*Id.* Rather, in response to each of these critical facts, the Government merely offers

that the facts are not "material to the outcome of this suit." See Dkt. 27.

Of course, the facts do matter. In this personalized, as-applied challenge to

18 U.S.C. § 922(g)(1), Suarez "must present facts about himself and his

background that distinguish his circumstances from those of persons historically

barred from Second Amendment protections." *United States* v. *Barton*, 633 F.3d

168, 174 (3d Cir. 2011). The touchstone is whether Suarez "is no more dangerous

than a typical law-abiding citizen," whether this so-called "felon" "whose crime of

conviction is decades-old poses no continuing threat to society." *Id.*

That Suarez is a gainfully employed and stable family man, a decorated

veteran, a holder of a security clearance, and a highly educated professional and

pillar in his church, should count for something. But having failed to challenge the

evidence, which it declares to be irrelevant, the Government goes so far as to deny

the evidence even exists on the docket, claiming that "Plaintiff has failed to

present facts to distinguish his circumstances from those of persons historically

barred from Second Amendment protection, and has not shown that his circumstances place him beyond the intended scope of Section 922(g)(1) . . . ." Def. Br., Dkt. 28, at 18-19.

Of course, Suarez has presented plenty of facts to distinguish himself from others subject to Section 922(g)(1). His evidence will not disappear simply because the Government denies that he presented it. See Exhibits A, B, C, D (Dkt. 18-1 through 18-4); Sep. Statement, Dkt. 19; Suarez Decl., Dkt. 20. The Government's denial of the evidence's existence, and dismissal of these now-established facts' relevance, perfectly complements its unwillingness to acknowledge that as-applied challenges to Section 922(g)(1) are, in fact, available in this circuit. Its opposition to Suarez's summary judgment motion continues attacking an argument Suarez does not assert, relating to Section 922(g)(1)'s facial constitutionality.

The constitutional claim, of course, can be avoided were this Court to acknowledge that a crime "punishable by" a fine and term of probation is a crime "punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B). The Government's attacks on this common sense, if novel proposition, are simply misguided.

ARGUMENT

I.   *ESSIG* DOES NOT PRECLUDE SUAREZ'S STATUTORY ARGUMENT, AND SUAREZ NEVER ARGUED THAT IT DOES.

The Government's assertion that "Plaintiff concedes that *Essig*[1] forecloses his statutory argument, but urges the Court to depart from this precedent," Def. Br., Dkt. 28, at 4 (citations omitted), is false. See, *e.g.*, Pl. Br., Dkt. 18, at 12 ("Suarez does not believe these decisions are controlling"); *id.* at 13 ("*Essig* considered (and rejected) only arguments not advanced here"); *id.* at 14 ("the relevant Third Circuit precedent does not speak with one voice"); *id.* at 16 ("At first glance, it would appear that this Court is bound by *Essig*'s utilization of the specific term approach") (proceeding to explain Court is not bound); *id.* ("Suarez urges the Court to follow [*United States* v.] *Leuschen* [395 F.3d 155 (3d Cir. 2005)]").

In the alternative, Suarez argued that "even if *Essig* controlled the [statutory] question . . . prior to the Supreme Court's recent revival of the Second Amendment," it is now obsolete. *Id.* at 18.

This is a far cry from a nonsense argument that concedes the case is controlled by adverse circuit precedent, "but urges the Court to depart from this

---

[1]Referencing *United States* v. *Essig*, 10 F.3d 968 (3d Cir. 1993).

4

precedent . . . ." Def. Br., Dkt. 28, at 4. Consequently, the Government's straw-man response to Suarez's statutory claim, drumming home the point that the Court is bound by circuit precedent, is entirely beside the point. It is also incomplete. It bears recalling that "intervening Supreme Court precedent" unravels the precedential effect of circuit-level decisions. *Coca-Cola Bottling Co.* v. *Coca-Cola Co.*, 988 F.2d 386, 411 n.25 (3d Cir. 1993); Pl. Br., Dkt. 18, at 18-19.

And of course the constitutional avoidance issue is not whether *Essig* relied on the "collective rights" reading of the Second Amendment rejected in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), Def. Br., Dkt. 28, at 5, but whether *Essig* would have read Section 921(a)(20) as it did, without any discussion of the constitutional consequences, had it been aware of *Heller*. See *United States* v. *Rehlander*, 666 F.3d 45 (1st Cir. 2012).

Nor does it matter that "near-uniform case law has upheld the constitutionality of Section 922(g)(1), even after *Heller*, and even as applied to non-violent offenders." Def. Br., Dkt. 28, at 5. Suarez never argues that Section 922(g)(1) is facially unconstitutional, and it is unclear what such an argument would have to do with Suarez's statutory claim. Most courts that have upheld Section 922(g)(1)'s constitutionality—including the Third Circuit in *Barton*—have also indicated that the provision has unconstitutional applications. See Pl.

5

Br., Dkt. 18, at 21. One would imagine courts carefully construing Section 922(g)(1) so as to minimize this phenomenon.

## II. THE GOVERNMENT DOES NOT UNDERSTAND SUAREZ'S STATUTORY ARGUMENT.

Curiously, the Government asserts that

> Under Plaintiff's interpretation, a conviction punishable by 25 years would not fall within the scope of 18 U.S.C. § 922(g)(1) because a judge could impose a sentence of less than one year, thus rendering the conviction "capable of being punished" by a term not exceeding one year.

Def. Br., Dkt. 28, at 7-8.

Not true, if the Government is referring to a felony conviction. The sentence actually handed down would be irrelevant, because a felony conviction punishable by 25 years, while capable of being punished by 0 years, is *also* capable of being punished by a term exceeding one year, triggering Section 922(g)(1). As Suarez makes clear, logic and precedent hold that a conviction is "capable of being punished" in various ways. Under *Leuschen*, that at least one possible outcome exceeds one year suffices to trigger Section 922(g)(1), regardless of what actually happens at sentencing, and this is undoubtedly correct.

The exception of Section 921(a)(20)(B) at issue here only comes into play with state misdemeanors. Then, the conviction is excluded if it is punishable by less than two years, meaning, there is no mandatory minimum in effect above that

level. Federal and state felonies, and state misdemeanors with mandatory

minimum sentences above two years, are not implicated by the exception, and

these would continue to trigger Section 922(g)(1)'s disability. But in no case is the

actual sentence relevant, except, as here, to underscore a realized and thus possible

outcome.

Undaunted, the Government cites H.R. Rep. No. 90-1956, at 28-29 (1968),

for the proposition that Congress specifically intended "to exclude only

misdemeanor crimes that are *not* capable of being punished by more than two

years." Def. Br., Dkt. 28, at 8-9 (footnote omitted). This is a non-sequitur. Nothing

in the quoted language suggests that counter-textual result.

Nor is there any basis for the Government's assumption that "it is far more

plausible that Congress intended to be consistent by making the maximum

potential sentence applicable to a particular crime the operative factor in

determining both the applicability of the prohibition in Section 922(g)(1) and the

qualification for the exclusion in Section 921(a)(20)(B)." *Id.* at 11. Why? This is

simply the Government's policy preference. Not one molecule of evidence

supports this convoluted guess as to what Congress must have thought.

Respectfully, the most plausible explanation is that Congress intended to be

consistent by having the same words mean the same thing in the same statute.

7

That, after all, is the presumption. Pl. Br., Dkt. 18, at 14-15. This presumption is

one the Government agrees may be rebutted, but it has not demonstrated how or

why the contexts of Section 921(a)(20) and 922(g)(1) are so different (they are

not) as to yield such radically disparate meanings of the term "punishable by."

    And contrary to the Government's suggestion, Def. Br., Dkt. 28, at 11 n.4,

Congress was not required to clarify Section 921(a)(20)(B) in response to

*Dickerson* v. *New Banner Inst., Inc.*, 460 U.S. 103 (1983), because that exemption

was "of no relevance" in that case. 460 U.S. at 105 n.1.

III.   SUAREZ IS ENTITLED TO CHALLENGE SECTION 922(G)(1)'S APPLICATION
       AGAINST HIM AS A SECOND AMENDMENT VIOLATION.

    The Government concedes that Suarez was convicted only of a

misdemeanor. See Dkt. 27 (response to Plaintiff's Undisputed Facts 3 and 4).

Oddly, however, it argues that Suarez is actually a "felon" because the

misdemeanor of which he was convicted was punishable by over a year in jail,

fitting a generalized definition of "felony." This, according to the Government,

bootstraps Suarez into "felony" treatment for purposes of the Second Amendment

analysis, by which the Government means, Suarez is presumptively excluded

from having any Second Amendment rights at all. See Def. Br., Dkt. 28, at 17-18.

Under this theory, any crime—a parking meter violation, fishing without a license, jaywalking, removing a mattress tag, etc.—might trigger a presumptively lawful lifetime firearms disability, the Second Amendment notwithstanding, so long as Congress, or Black's Law Dictionary, classifies it as a "felony." But the Second Amendment "has 'boundaries [that] are defined by the Constitution. They are not defined by Congress.'" *Tyler* v. *Hillsdale Cnt'y Sheriff's Dep't*, No. 13-1876, 2014 U.S. App. LEXIS 23929, at *83 (6th Cir. Dec. 18, 2014) (quoting *United States* v. *Chovan*, 735 F.3d 1127, 1148 (9th Cir. 2013) (Bea, J., concurring)). "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634-35.

Accordingly, when the Supreme Court offered that felon dispossession laws might be presumptively constitutional, it spoke of an "historical analysis" of the Second Amendment's "scope," and the manner in which the right was understood "[f]rom Blackstone through the 19th-century cases." *Id.* at 626. A "felony" as used in this context is limited to the crimes historically understood as felonies, or at least, in the alternative, to their effective equivalents. *Cf. Curtis* v. *Loether*, 415 U.S. 189, 193-94 (1974) (Seventh Amendment right to jury trial "as it existed in

9

1791" extends to statutory claims "enforceable in an action for damages in the ordinary courts of law."). Carrying a gun without a license fits neither description. In any event, because there was a *right* to keep and bear arms, legislatures lacked the plenary authority to classify people as prohibited—and neither does Congress enjoy such power today.

Moreover, if the Government wants to get technical, Section 922(g) does not use the terms "felon" or "felony." Allowing nonetheless that this provision might have been what the Supreme Court had in mind in referencing felon dispossession laws in *Heller*, this particular prohibition provides that "[w]hat constitutes a conviction of such a crime [punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). And "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less" is excluded from this definition. 18 U.S.C. § 921(a)(20)(B). Thus, even were Maryland's misdemeanor prohibition on unlicensed handgun carriage not "punishable by a term of imprisonment of two years or less" (though plainly, it was and is), the statute on its face excludes numerous misdemeanors from the reach of this so-called "felon" ban—even if they might be described as "felonies" under a different definition.

But of course, this is all merely semantics. *Barton* plainly provides that even a "felon" may obtain as-applied Second Amendment relief from the operation of Section 922(g)(1). *See Barton*, 633 F.3d at 174. Even were Suarez a "felon"—and he is not—it would not materially change the nature of his conviction, its age, or his personal circumstances warranting relief today.

Indeed, the Government appears to shy away from claiming that any "felon," however defined, is thereby forever excluded from having any Second Amendment rights. It argues, instead, that favorable personal circumstances place the plaintiff on a two-step path toward possible redemption. Suarez explains below why *Barton*, and logic, preclude this approach.

As for the relevance of the felon/misdemeanant distinction here, Suarez does not argue that Section 922(g)(1) is inapplicable as against misdemeanors. His misdemeanant status simply means that the traditional justifications for disarming him are absent, and the Government, not Suarez, should thus bear the burden of persuasion. In any event, as the Government does not contest Suarez's presentation of his personal circumstances, this dispute, too, appears irrelevant.

IV.    *Barton* Did Not Apply *Marzzarella*.

*Barton* established the Third Circuit's path for evaluating as-applied Second Amendment challenges to Section 922(g)(1) *after* the decision in *United States* v.

11

*Marzzarella*, 614 F.3d 85 (3d Cir. 2010). *Barton* referenced, but did not apply,

*Marrzarella*, because however useful *Marrzarella*'s two-step approach might

prove in other cases, it does not relate as well to as-applied challenges. In

*Binderup* v. *Holder*, No. 13-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept.

25, 2014), the Eastern District, and the Government, both understood that the

cases set out different analytical frameworks. That Court asked the Government

which case would control the analysis, and the Government conceded that

*Barton* would likely control. Pl. Br., Dkt. 18, at 24-25; Dkt. 18-8 (Exh. H).

Now, after all-but ignoring *Binderup* in its moving papers here, the

Government has changed its mind, offering that

> *Barton* simply addresses the first step of *Marzzarella*'s two-pronged
> approach, by providing a test for determining when an individual who is
> presumptively not entitled to Second Amendment protection may
> nonetheless raise an as-applied Second Amendment challenge to Section
> 922(g)(1).

Def. Br., Dkt. 28, at 14. As for the Government's previous litigation position,

"counsel erred." *Id.* at 14 n.5.[2]

The Government was right the first time. If *Barton* meant to reflect the

Government's new theory, a theory sufficiently strained that it eluded Judge

Gardner and the Government's attorneys in *Binderup*, one would imagine the

---

[2]Notably, the word "Binderup" is missing from the Government's brief.

Third Circuit would have stated it plainly. But not only does *Barton* fail to suggest that its test merely screens individuals for a second-step analysis. *Barton*'s text *precludes* that interpretation.

To what purpose "must" an individual covered by Section 922(g)(1) "present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections?" *Barton*, 633 F.3d at 174. Not merely to advance to step two, but "[t]o raise *a successful* as-applied challenge . . . ." *Id.* (emphasis added). And there is no doubt as to what the Third Circuit meant by a "successful" challenge. A "successful" challenge is one that proves that an individual "is no more dangerous than a typical law-abiding citizen" or "poses no continuing threat to society." *Id.*

And if an individual fits these descriptions, how could the Government possibly carry its burden justifying disarmament under step two? In other words, how does disarming a *harmless* person, and thus eviscerating his Second Amendment rights, advance the Government's interests?

Indeed, *Barton* continued, supplying an example of a "successful" as-applied challenge: "The North Carolina Supreme Court did just that in *Britt v. State*, 363 N.C. 546, 681 S.E.2d 320 (N.C. 2009) . . . ." *Id. Britt* did not conduct or even acknowledge a two-step analysis, and it left nothing unresolved. Britt won.

13

He could not be disarmed. Had Barton made Britt's showing, he would have been "successful" as well absent a two-step analysis.

*Barton* is straightforward: The right to arms is not offended by the disarmament of dangerous people. Congress may enact laws of general application to achieve that result. But because the right to arms does not allow the disarmament of harmless people, Section 922(g)(1) cannot constitutionally be applied to individuals who, though falling within the purview of the general statutory prohibition, demonstrate that they are in fact not dangerous. That is all. There is no second step that can justify the disarmament of citizens after it is established that their possession of arms would not threaten society.

## V.   SUAREZ IS ENTITLED TO AS-APPLIED RELIEF.

The Government apparently believes that because it denies that Suarez has submitted any evidence, it is free to argue that his claim is no different than that of a pro se individual who failed to submit any evidence. It thus labors hard to establish the relevance of *Dutton* v. *Pennsylvania*, 503 Fed. Appx. 125 (3d Cir. 2012) (per curiam), but there is nothing in that argument that warrants response. Just because *one* individual convicted of misdemeanor unlicensed carrying did not factually develop a *Barton* claim, does not mean that *all* people convicted of misdemeanor unlicensed carrying are unable to establish a *Barton* claim.

14

*Dutton* is meaningless, a non-precedential opinion where the pro se plaintiff did not even understand his disability and presented no evidence. The argument is borderline frivolous—and not least because the Government ignores its rejection by Judge Gardner in *Binderup*, 2014 U.S. Dist. LEXIS 135110 at *53-*54. But like Suarez's evidence, *Binderup* happened, and the Government should have addressed it.

Unwilling to acknowledge the evidence, let alone refute it, the Government's alleged "as applied" argument quickly shifts back to defending against the facial challenge that Suarez never makes. Congress wanted a broad, general prohibition, applying to misdemeanors and denying guns to people convicted of "serious crimes." Def. Br., Dkt. 28, at 25. Sometimes, non-violent crimes properly trigger the disability as well, *id.* at 25-28, though the Government fails to acknowledge that such convictions are typically connected to violent and dangerous behavior. See, *e.g.*, *Barton*, 633 F.3d at 174 ("offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime"); *United States* v. *Pruess*, 703 F.3d 242 (4th Cir. 2012) (numerous convictions involving stolen military weapons, ammunition and explosives).

What does any of this have to do with Suarez's particular facts? There is, of course, a recent, published federal opinion, holding that the Second Amendment

15

does not permit disarmament for unlicensed carrying of a handgun. *Gowder* v. *City of Chicago*, 923 F. Supp. 1110 (N.D. Ill. 2012). Without apparent irony, the Government claims that *Gowder* "is only useful to the extent that it has the power to persuade." Def. Br., Dkt. 28, at 29. Indeed. The considered judgment of the Northern District of Illinois, striking down a gun ordinance of our nation's third-largest city, may not address a topic triggering a lengthy Shepard's trail.[3] But like *Binderup*, *Gowder* is plainly relevant *here.* Were there something faulty in *Gowder*'s logic, the Government should have addressed it.

Of course, every as-applied case is different. Considering Barton's crimes and personal circumstances, he did not warrant as-applied relief in 2011 for convictions earned in 1993 and 1995. Dutton obtained no relief in 2012 for a 1995 conviction, though of course, he submitted zero evidence relating to an as-applied claim. But what about Binderup? Binderup's conviction dates to 1998—eight years after Suarez's disabling conviction—and Binderup *won* his case in 2014. But then, the Government does not wish to discuss *Binderup.*

---

[3]That *Gowder* has not been followed much since it was decided in 2012 does not aid the Government. Disarmament for misdemeanor possession of an unlicensed gun is very rare in our country, as is municipal gun registration (Chicago scrapped its registration system in 2013).

The Government's attacks on the fact that Pennsylvania has restored Suarez's firearm rights are misplaced. Pennsylvania, the sovereign that is most directly responsible for safeguarding Suarez's community and which—unlike Congress—enjoys the police power, does not believe that his possession of arms poses any threat. That should count for something. Second, but of no less importance, Pennsylvania's restoration of Suarez's firearm rights means that this Court is empowered to grant him full relief.[4]

The Government then veers back, like an iron to a magnet, to attacking an imagined facial constitutional challenge that Suarez has not asserted. It bears repeating: adding the words "as applied" to a facial argument does not thereby convert the argument to one that has anything to do, specifically, with Suarez. Never does the Government discuss what it is about Suarez that would make him likely to recidivate, especially considering that Pennsylvania does not require a license to carry handguns generally and that Suarez would be eligible for a concealed carry permit would he desire one.

Instead, delving back into criminological generalizations, the Government even offers that "It is . . . sufficient to show that studies have linked the generic

---

[4]The Government's foray into the subject of rights restoration under Section 921(a)(20) is irrelevant, as Suarez makes no such claim.

17

category of crime of which Plaintiff was convicted – weapons offenses – with a propensity to commit future crimes." Def. Br., Dkt. 28, at 38. Respectfully, no, it is not sufficient. Not in an as-applied, individualized *Barton* claim where the entire focus is on the *individual* and his unique personal circumstances. Likewise, the fact that Section 922(g)(1) has a "broadly prophylactic purpose" is *not* a reason why it might be applied to Suarez. Def. Br., Dkt. 28, at 39. Quite the opposite. The prohibition's broad scope is precisely why *as-applied, individualized Barton* challenges, based on an individual's specific facts, are available.

Notwithstanding that a fundamental right is at stake, the Government relies on appeals to "substantial deference" to legislative "predictive judgments." *Id.* at 40 (citation omitted); but see *Heller*, 554 U.S. at 628 n.27. Very well: Congress made a predictive judgment about all people convicted of a crime punishable by over one year's imprisonment. That would resolve a facial challenge to the statute. What predictive judgment did Congress make regarding Julio Suarez?

Of course, the Government would like to discuss just about anything other than Mr. Suarez and his personal circumstances, as required by *Barton*. In a facial challenge, it would be true that "[i]ntermediate scrutiny does not require the government to show that each individual encompassed within a statutory proscription poses a particular danger." Def. Br., Dkt. 28, at 42. In a *Barton*

18

challenge, the Government *is* required to show that the individual asserting the

challenge poses a particular danger, at least once the claimant has "present[ed]

facts about himself and his background that distinguish his circumstances from

those of persons historically barred from Second Amendment protections."

*Barton*, 633 F.3d at 174. Suarez has done that. But the parties are speaking past

each other. The Government seems not to acknowledge what an as-applied claim

entails.

CONCLUSION

The Government does not accurately represent Suarez's statutory argument.

And it unfortunately misstates the record, and the concept of as-applied

challenges. Section 922(g)(1) does not apply to Suarez. Nor is there a

constitutionally valid reason to apply that provision as against Suarez, who is,

respectfully, entitled to summary judgment.

Dated: January 16, 2015                     Respectfully submitted,

By: /s/ Alan Gura                               By: /s/ Douglas Gould
    Alan Gura*                                      Douglas Gould (PA Bar No. 78357)
    Gura & Possessky, PLLC                              Law Offices of Douglas T.
                                                        Gould, P.C.
    105 Oronoco Street, Suite 305               925 Glenbrook Avenue
    Alexandria, VA 22314                        Bryn Mawr, PA 19010
    703.835.9085/Fax 703.997.7665              610.520.6181/Fax 610.520.6182
    alan@gurapossessky.com                          dgould@gouldlawpa.com
    *Admitted pro hac vice                     Attorneys for Plaintiff

19

CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the limitations of Local Rule 7.8(b)(2), as the body of the brief (excluding the tables of contents and authorities) contains 4,078 words as counted by the WordPerfect X4 program on which it was prepared.


/s/ Alan Gura_____
Alan Gura

Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2015, I caused the foregoing to be served via electronic case filing, as follows:


DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov


/s/ Alan Gura
Alan Gura