UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JULIO SUAREZ,                          :
       Plaintiff                  :
                               :
       vs.                        :   CIVIL NO. 1:14-CV-968
                               :
ERIC HOLDER, JR., et al.               :
       Defendants                 :

*M E M O R A N D U M*

*I.*        *Introduction*

      We are considering a motion to dismiss and cross-motions for summary judgment. This matter relates to a two count complaint in which Plaintiff asserts that Defendants have barred him from acquiring firearms in contravention of federal law and in violation of the United States Constitution. (Doc. 1). On October 20, 2014, Defendants filed a motion to dismiss and a motion for summary judgment. (Doc. 12). In response, on November 13, 2014, Plaintiff filed his own motion seeking summary judgment. (Doc. 17). For the reasons discussed below, we will grant Defendants' motion to dismiss with respect to Count One, and we will grant Plaintiff's motion for summary judgment with respect to Count Two.

*II.*       *Background*

      On June 26, 1990, Julio Suarez was convicted in Montgomery County, Maryland of carrying a handgun without a license. (Doc. 1 at 2); see MD. CODE ANN., art. 27, § 36B(b).[1] The offense was a misdemeanor and subject to a term of imprisonment for

---

   1. MD. CODE ANN., art. 27, § 36B(b) is now codified without substantive change at MD. CODE ANN., CRIM. LAW § 4-203.

not less than thirty days nor more than three years.  (Doc. 1 at 2).  Suarez was ultimately

sentenced to 180 days imprisonment and a $500 fine, both suspended, and he was

sentenced to one year probation.  (Id.).  Suarez's conviction, according to Defendants,

places him within the scope of the Gun Control Act of 1968, see 18 U.S.C.  § 921(g)(1),

which bars individuals convicted of certain offenses from possessing a firearm.  (Id. at 5).

Therefore, Defendants' have prevented Suarez from possessing a firearm.

On May 20, 2014, Suarez  (hereinafter Plaintiff) filed a complaint in which

he announced that he intended to acquire firearms for self-protection and the protection

of his family.  (Doc. 1 at 1, 5).  He first asserts that his conviction is statutorily excluded

from the scope of the Gun Control Act; however, Defendants have misinterpreted the Act

so as to include it.  (Id. at 6).  Therefore, in Count One of his complaint, Plaintiff argues

that Defendants have wrongly enforced the Gun Control Act against him.  (Id.).

Accordingly, he asks us to issue a judgment declaring that he does not fall within the

ambit of the Gun Control Act and to enjoin Defendants from continuing to enforce it

against him.  (Id.).  In Count Two of his complaint, Plaintiff claims that even if he does fall

within the bounds of the Gun Control Act, as applied to him, the Act violates the Second

Amendment.  (Id. at 7).  Plaintiff again prays for injunctive and declaratory relief.  (Id.).

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), asserting that Plaintiff has failed to state a facially plausible claim.

(Doc. 12).  At the same time, Defendants filed an alternative motion for summary

judgment, arguing that there is no issue of material fact and that they are entitled to

judgment as a matter of law.  (Id.).  Plaintiff, in turn, filed a cross-motion for summary

judgment, claiming that the record evidence establishes that he is entitled to judgment as

a matter of law.  (Doc. 17).  The issues have been extensively briefed by the parties, and

the motions are ripe for our disposition.

III.        *Discussion*

         *A. Motion to Dismiss*

              *1.  Standard of Review*

         Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a

claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need

only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and

detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is

plausible on its face."  Id. at 570.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at

556).  "[L]abels and conclusions" are not enough, and a court is "not bound to accept as

true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

3

2.  *Count One - Interpretation of The Gun Control Act of 1968*

Codified at 18 U.S.C. § 922(g)(1), The Gun Control Act dictates that it is unlawful for a person to possess a firearm if that person has been convicted "of a crime punishable by imprisonment for a term exceeding one year . . . ."  18 U.S.C. § 922(g)(1). As defined by 18 U.S.C. § 921(a)(20)(B), however, "a crime punishable by imprisonment for a term exceeding one year" does not include State misdemeanors that are "punishable by a term of imprisonment of two years or less."  18 U.S.C. § 921(a)(20)(B). The parties dispute the meaning of the word "punishable" as used in the exclusionary language of § 921(a)(20)(B).  Plaintiff asserts that "punishable" means capable of being punished.  And since the court was capable of imposing a sentence of two years or less on his misdemeanor conviction, he falls within the exclusion, and Defendants are wrongly enforcing the Act against him.  Citing opinions from the Third Circuit and other courts of appeal, Defendants argue that because the maximum punishment that Plaintiff could have received on his firearm conviction was three years of imprisonment, Plaintiff's conviction was "punishable" by over two years.  Therefore, he is not excluded by § 921(a)(20)(B) and falls within the plain language of § 922(g)(1)'s firearm prohibition. Accordingly, Defendants argue Plaintiff fails to state a claim in Count One.  We agree.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."[2]  <u>Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt.</u>

---

2.  Neither party argues that Congress intended to give the word "punishable" a non-ordinary meaning.  Accordingly, we need only determine the ordinary meaning of "punishable."

Dist., 541 U.S. 246, 252 (2004).  The word Congress used in § 921(a)(20)(B) –

punishable – generally means "[d]eserving of or capable or liable to punishment; capable

of being punished by law or right."  BLACK'S LAW DICTIONARY 1234 (6th ed. 1991); see

also WEBSTER'S NEW INTERNATIONAL DICTIONARY 1842 (3d ed. 1961); accord Schrader v.

Holder, 704 F.3d 980, 986 (D.C. Cir. 2013).  But our analysis does not end with the bare

meaning of the word in question.  We must also look to the placement of the language in

the statutory scheme.  Bailey v. United States, 516 U.S. 137, 145 (1995) (superseded on

other grounds).  "Ultimately, context determines meaning, and we do not force . . .

definitions into contexts where they plainly do not fit and produce nonsense."  Johnson v.

United States, 559 U.S. 133, 139-40 (2010) (internal citations and quotation marks

omitted).

      Here, the word punishable is placed within a criminal statute, and together

with a specified term of imprisonment, is used to identify which convictions disable

individuals from possessing firearms and which convictions do not.  18 U.S.C.

§§ 921(a)(20)(B); 922(g)(1).  There are myriad cases that have observed that in the

context of criminal statutes, the words "punishable by," together with a single specified

term of imprisonment and no further modifiers, identifies the maximum punishment a

court is capable of imposing.[3]  We find the numerosity and consistency of these opinions

---

3.  See, e.g., United States v. Logan, 552 U.S. 23 (2007) (stating that an offender would have
been convicted of a crime punishable by a term exceeding one year if the offense carried a
potential prison term of over two years); United States v. Leuschen, 395 F.3d 155 (3d Cir. 2005)
(noting that the only qualification imposed by § 922(g)(1) is that the predicate conviction carry a
potential sentence of greater than one year of imprisonment); United States v. Essig, 10 F.3d 968
(3d Cir. 1993) (holding that the defendant's statement that he had never been convicted of a crime

an authoritative indication of the ordinary meaning of "punishable" in the context of

§ 921(a)(20(B).[4]  Accordingly, we find that the word punishable, as used in

§ 921(a)(20)(B), means the maximum punishment a court is capable of imposing.[5]  See

Schrader, 704 F.3d at 986.

Plaintiff's arguments to the contrary do not persuade us.  According to

Plaintiff, because a court is "capable" of imposing a minimum punishment, various

canons of statutory construction require that we interpret "punishable" to refer to the

minimum punishment the court was capable of imposing, not the maximum. (Doc. 18 at

17-18).  Therefore, since Plaintiff's firearm offense had a minimum sentence of only thirty

_____

punishable by a term exceeding one year was plainly false because his conviction had a maximum sentence of five years); United States v. Schoolcraft, 879 F.2d 64 (3d Cir. 1989) (finding that the defendant did not fall within § 921(a)(20)(B)'s exclusion because his prior convictions had a maximum sentences of seven years and twenty years); Dutton v. Pennsylvania, 503 F. App'x 125 (3d Cir. 2012) (finding that defendant did not qualify for the exception in § 921(a)(20)(B) because he was convicted of first degree misdemeanors with a maximum penalty of five years); Schrader v. Holder, 704 F.3d 980 (D.C. Cir. 2013) (finding that punishable refers to the maximum term of punishment capable of being imposed); United States v. Coleman, 158 F.3d 199 (4th Cir. 1998) (finding that common law assault is an offense punishable by over two years because there was no maximum limitation other than constitutional limits); Binderup v. Holder, No. 13-CV-06750, 2014 WL 4764424 at *6-8 (E.D. Pa. Sept. 25, 2014) (holding that punishable refers to maximum possible punishment).

4.  Although the parties spill much ink debating whether these cases are of binding precedential value, we need not reach that question.  First, the fact that some of the opinions do not analyze the meaning of "punishable" does not dissuade us.  On the contrary, the fact that some courts reached that meaning without discussion gives an even stronger indication of the ordinary meaning of "punishable."  Further, we need not decide the precedential value because our ruling is consistent with the holdings of these opinions.  Finally, we note that by not reaching this question, we render moot Plaintiff's argument that District of Columbia v. Heller calls into question the precedential value of any opinion that predates it.

5.  We decline Defendants' invitation to examine the legislative history of the statute.  The Supreme Court has repeatedly held that the authoritative statement is the statutory text.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005).  Therefore, we find no need to examine the legislative history – material not subject to the requirements of Article I.

days imprisonment and was actually sentenced to only 180 days, the conviction was "capable" of being punished by two years or less, and Plaintiff falls within the statutory exclusion of § 921(a)(20)(B).  (Id.).

At the outset, we find that Plaintiff's interpretation does not comport with the common and ordinary usage of the English language.  The following examples demonstrate the point.  If a crime had a mandatory minimum prison term of three years and a maximum term of ten years, because the minimum penalty the court would be capable of imposing is three years, Plaintiff would have us say the crime was "punishable by three years imprisonment."  Likewise, if the maximum possible prison term were ten years, but no minimum term was specified, because a court would be capable of imposing a minimum term of zero years, Plaintiff would have us describe the penalty as "punishable by no term of imprisonment."  Although correct in some hyper-technical sense, this is simply not how our society normally speaks or writes.  See Lopez v. Gonzales, 549 U.S. 47, 56 (2006) (rejecting an interpretation because it is not how we normally speak or write).  In the first example, where both the upper and lower boundaries are specified, in order to identify all potential punishments, we would say the crime was punishable by three to ten years imprisonment.  Where only one term of imprisonment is specified, as in the second example, in order to include all possible terms of imprisonment, we ordinarily identify only the upper boundary of the punishment. All lower possible terms of imprisonment are included by implication.  Therefore, we would say that the crime was "punishable by ten years imprisonment."  Thus, to accept

7

Plaintiff's contrary interpretation would be to use a definition that defies common usage and force a definition were it does not fit.  Johnson, 559 U.S. 139-40.

In addition, we find that the canons of statutory construction on which Plaintiff relies cannot bear the weight of his argument.  First, Plaintiff argues that because the word "punishable" is ambiguous, and it is used in a criminal statute, the rule of lenity requires that we adopt his interpretation.  Further, he argues that because his interpretation avoids the difficult constitutional question of whether § 922(g)(1), as applied to him, violates the Second Amendment, the constitutional avoidance doctrine dictates that we adopt his interpretation.  We disagree.  The rule of lenity does not apply just "because a statute requires consideration and interpretation to confirm its meaning.  It applies only if there is such grievous ambiguity . . . the Court can make no more than a guess as to what Congress meant."  United States v. Kouevi, 698 F.3d 126,138 (3d Cir. 2012).  Similarly, the constitutional avoidance doctrine only applies when a statute is susceptible of two fairly possible constructions.  Harris v. United States, 536 U.S. 545, 555 (2002).  As revealed in our discussion above, we do not find "punishable" to be an ambiguous term, much less so ambiguous that we can only aimlessly guess at its meaning, and so we do not find it susceptible to two fairly possible constructions.  Accord Binderup v. Holder, No. 13-CV-06750, 2014 WL 4764424 at *11 (E.D. Pa. Sept. 25, 2014).

Therefore, we find that a State misdemeanor conviction only falls within the exclusion of § 921(a)(20)(B) if the maximum penalty the court was capable of imposing

was two years or less.  Because the court was capable of sentencing Plaintiff to a

maximum term of three years imprisonment, he does not fall within the exclusion.  Thus,

there is no question whether § 922(g)(1) prohibits Plaintiff from possessing a firearm.  It

does.  Accordingly, we find that Plaintiff has failed to state a claim in Count One, and

finding that amendment of the complaint would be futile, we will dismiss Count One with

prejudice.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### 3.  Count Two – As Applied Constitutional Challenge

#### i.  Applicable Standard

In Count Two, Plaintiff asserts that, as applied to him, § 922(g)(1)'s firearm

prohibition violates the Second Amendment.  In order to determine whether Plaintiff has

pleaded enough facts to state a plausible claim, we must first determine what rule

applies.  Defendants assert that the applicable rule is set out in United States v.

Marzzarella, 614 F.3d 85 (3d. Cir. 2010).  In Marzzarella, the Third Circuit held that a two

prong test is used to analyze Second Amendment challenges.  Marzzarella, 614 F.3d at

89.  Pursuant to the two prong test, we first ask if "the challenged law imposes a burden

on conduct falling within the scope of the Second Amendment's guarantee.  If it does

not, our inquiry is complete.  If it does, we evaluate the law under some form of means-

end scrutiny."  Id.  Plaintiff, however, argues that the applicable rule is set out in United

States v. Barton, 633 F.3d 168 (3d Cir. 2011).  In Barton, the Third Circuit held that in

order "[t]o raise a successful as-applied [Second Amendment] challenge, [the challenger]

must present facts about himself and his background that distinguish his circumstances

from those of persons historically barred from Second Amendment protections." <u>Barton</u>, 633 F.3d at 174.

The parties assert numerous arguments in support of their respective positions.  Defendants argue that <u>Marzzarella</u> provides the applicable framework for all Second Amendment challenges, and if <u>Barton</u> has any role,[6] it is to address the first element of <u>Marzzarella</u> – whether the law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.  (Doc. 28 at 14).  According to Defendants, if the first prong is satisfied using the <u>Barton</u> test, <u>Marzzarella</u> dictates that the court still must complete the second prong and evaluate the law under some form of means-end scrutiny.   (Doc. 28 at 15, 34).  Plaintiff, however, argues that <u>Marzzarella</u> only applies to facial challenges and the <u>Barton</u> test encompasses the entirety of the standard for as-applied Second Amendment challenges.  (Doc. 18 at 22).  According to Plaintiff, there can be no means-end scrutiny.  (Doc. 31 at 18).  If the challenger demonstrates that he is distinguishable from persons historically barred from Second Amendment protections, then he is harmless, and there is no level of scrutiny under which the law's application could be justified.  (<u>Id.</u>).  We find that both Plaintiff and Defendants are partially correct.

<u>Marzzarella</u> and <u>Barton</u> are derived from the Supreme Court's holding in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008).  In <u>Heller</u>, the Court held that the

---

6.  As we read Defendants' brief in support, they initially suggest that either <u>Marzzarella</u> applies or <u>Barton</u> applies, not both.  They argue the answer is <u>Marzzarella</u>.  In their reply brief, however, Defendants pivot and argue that <u>Barton</u> just elucidates the first prong of <u>Marzzarella</u>.

Second Amendment, at a minimum, confers the "right of law-abiding citizens to use arms in defense of hearth and home." Id. at 635. Recognizing the right not to be unlimited, however, the Court held that "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on commercial sale of arms[ ]" are presumptively valid.[7] Id. at 626-27.

Based on its reading of Heller, the Third Circuit decided Marzzarella. Marzzarella involved a Second Amendment challenge to § 922(k), which prohibits the possession of firearms with obliterated serial numbers. Marzzarella, 614 F.3d at 88. The Third Circuit held that, pursuant to Heller, a two prong test is used for reviewing Second Amendment challenges. Id. at 89. First, it must be determined whether the law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. Id. If so, the law must be analyzed under some form of means-end scrutiny. Id. The Third Circuit then examined the Court's discussion of presumptively valid firearm possession prohibitions. Id. at 91-93. It held that these prohibitions are presumptively lawful because they fall outside the scope of the Second Amendment. Id. at 91. That is, possession of firearms by felons is not conduct falling within the scope of the Second Amendment's guarantee of law-abiding citizens to bear arms in defense of hearth and home. Therefore, because challenges to these prohibitions would fail the first prong of the Second Amendment test, the Supreme Court held them to be presumptively valid.

---

7. The Court also noted that its list of presumptively valid prohibitions is not exhaustive. Heller, 554 U.S. at 627 n.26.

Accord id.  Finding that § 922(k) was not in the list of presumptively valid prohibitions, the Third Circuit went on to analyze the statute under both prongs.

Less than a year later, the Third Circuit issued its opinion in Barton.  Barton involved both facial and as-applied challenges to the firearm possession disability in § 922(g)(1).  Barton, 633 F.3d at 169.  In analyzing the facial challenge, the Barton court also analyzed the Supreme Court's discussion of presumptively valid prohibitions and, like the Marzzarella, found that the prohibitions are presumptively valid because possession of firearms by felons is not conduct protected by the Second Amendment. Id. at 170-71.  The Barton court also found that the Supreme Court's discussion of presumptively valid prohibitions was binding.  Id.   And since Heller requires a presumption that "felon disposition statute[s] regulate conduct which is unprotected by the Second Amendment," the Third Circuit rejected the facial challenge of § 922(g)(1). Id. at 172.

With respect to the as-applied challenge to § 922(g)(1), the Third Circuit held that because the prohibitions discussed in Heller are only "presumptively" valid, the presumption could be rebutted with an as-applied challenge.  Id. at 173.  According to the Third Circuit, to raise a successful as-applied challenge to a presumptively valid prohibition, the challenger "must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment challenges."  Id. at 174.  Meaning that in the context of an as-applied challenge to § 922(g)(1), the challenger "must demonstrate that his circumstances place

outside the intended scope of § 922(g)(1)."

We find Marzzarella and Barton to be harmonious, and reading them together, we find that Barton does address the first element of the Marzzarella.[8] Marzzarella stands for the proposition that there is a two prong test for Second Amendment challenges, and that the prohibitions discussed in Heller are presumptively valid because a challenge of them would fail the first prong. Barton tells us that a challenger may rebut the presumptive validity through the use of an as applied challenge. If the challenger can demonstrate that his circumstances are different from those historically barred from Second Amendment protections, he establishes that his possession of a firearms is conduct within the Second Amendment's protections and satisfies the first prong. Said differently in the context of § 922(g)(1), if a challenger can show that his circumstances place him outside the intended scope of § 922(g)(1), he establishes, as we read Barton, that he is the "law-abiding citizen" identified in Heller. And if he is a law-abiding citizen, the possession of a firearm for protection of hearth and home is not just conduct protected by the Second Amendment, it is the core of the Second Amendment's guarantee. Heller, 554 U.S. at 635. Therefore, the first prong of Marzzarella would be satisfied.

That leaves us with the question of what to do with the second prong of Marzzarella. Because we find that Marzzarella sets the framework for Second

---

8. With respect to Plaintiff's argument that Marzzarella only applies to facial challenges, we are not persuaded. Marzzarella itself was an as-applied challenge. See Marzzarella, 614 F.3d at 88 (stating that Marzzarella moved to dismiss indictment on the grounds that § 922(k), as applied to him, violated the Second Amendment).

Amendment challenges, and <u>Barton</u> only speaks to the first prong of <u>Marzzarella</u> when asserting as-applied challenges to presumptively valid prohibitions, we agree with Defendants that, in theory, we should conduct some sort of means-end scrutiny.[9] However, in the context of an as-applied challenge to § 922(g)(1), if a challenger satisfies <u>Barton</u> by demonstrating that he is outside the scope of § 922(g)(1), and thereby shows he is a law-abiding citizen who falls within the core of the Second Amendment's protection, any means-end scrutiny would be fatal in fact.[10] <u>See</u> <u>Heller</u>, 554 U.S. at 628 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home . . . firearm[s] . . . to keep and use for protection of one's home and family would fail constitutional muster."). As a practical matter, therefore, an analysis of the second prong of <u>Marzzarella</u> is futile. Accordingly, we find that in the context of an as-applied Second Amendment challenge to § 922(g)(1), the analysis begins and ends with <u>Barton</u>. <u>Accord</u> <u>Dutton v.</u>

---

9. Citing <u>Marzzarella</u>, Defendants urge us to use intermediate scrutiny. We find that, in this context, strict scrutiny would be the appropriate standard. The <u>Marzzarella</u> court applied intermediate scrutiny because § 922(k) does not severely limit possession of firearms, only those with obliterated serial numbers. <u>Marzzarella</u>, 614 F.3d at 96. But where there is a straight prohibition of firearms possession, as in § 922(g)(1), and not just a regulation of possession, as in § 922(k), a fundamental right is implicated. <u>See</u> <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 778 (2010) (stating the right to bear arms is among fundamental rights). As observed by <u>Marzzarella</u>, were there is a straight prohibition of a fundamental right, strict scrutiny is applied. <u>Marzzarella</u>, 614 F.3d at 96.

10. In our view, this is why the <u>Barton</u> court stated that in order to raise a "successful" as-applied challenge, the challenger need only show his circumstances are distinguishable. If he does make such a showing, he falls back into the core protections of the Second Amendment, and any means-end scrutiny would fail. <u>Marzzarella</u> analyzed the second prong because, as noted above, the statute was not a prohibition of possession, but a regulation of possession. Therefore, since the conduct was not within the core of the Second Amendment's protections, a means-end analysis was not necessarily fatal.

Pennsylvania, 503 F. App'x 125, 127 n.1 (3d Cir. 2012) (analyzing as-applied Second Amendment challenges to § 922(g)(1) under Barton).

*ii. Whether Plaintiff States a Facially Plausible Claim*

According to the Third Circuit, the traditional justification of § 922(g)(1) was the disarmament of individuals likely to commit violent offenses.  Barton, 633 F.3d at 173.  Therefore, to state a facially plausible Second Amendment claim challenging the application of § 922(g)(1), a challenger must present facts about himself and his background that demonstrate that his circumstances place him outside of this intended scope.  Id.  "For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen.  Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society."  Id. (citing Britt v. North Carolina, 681 S.E.2d 320 (2009)).  Here, Plaintiff pleads that his offense was a misdemeanor and did not involve violence.  He also states that his conviction is nearly twenty-five years old.  Moreover, he claims that he is no more dangerous than a typical law-abiding citizen and poses no continuing threat because: (1) he has been married for twenty years and is successfully raising three children; (2) he is an elder in his church; (3) he has had no history of violence; (4) a firearm disability imposed under Pennsylvania law was removed by a Pennsylvania Court of Common Pleas; and (5) he maintains "Secret" security clearance in connection with his employment for a government contractor.

Despite these facts, Defendants argue that Plaintiff has not pleaded sufficient facts that place him outside the intended scope of § 922(g)(1).  To support their argument, Defendants point to <u>Dutton v. Pennsylvania</u>, 503 F. App'x 125 (3d Cir. 2012).[11]  In <u>Dutton</u>, a pro se plaintiff filed a complaint pursuant to 42 U.S.C. § 1983, asserting that § 922(g)(1) only applied to felonies and misdemeanors of domestic violence.  <u>Dutton v. Pennsylvania</u>, No. 11-7285, 2012 WL 3020651 at *1 (E.D. Pa. July 23, 2012).  The district court dismissed the complaint with prejudice after finding that the statutory claim lacked merit and the plaintiff could not plead sufficient facts to assert a constitutional claim.  <u>Id.</u>  Upon appeal, the Third Circuit affirmed.  <u>Dutton</u>, 503 F. App'x at 127.  Like the district court, the Third Circuit noted any as-applied Second Amendment challenge would fail because the plaintiff did not present facts distinguishing himself from other felons.  <u>Id.</u> at 127 n.1.  It also concluded that the district court did not err in declining the opportunity to amend because "amendment would [not] save his claim."  According to Defendants, the case *sub judice* cannot be distinguished from <u>Dutton</u>.  <u>Id.</u> at 127 n.2.  Just like Plaintiff in this case, the challenger in <u>Dutton</u> was convicted of misdemeanor firearm offenses over a decade prior.  And because the Third Circuit found that no amendment of the complaint would save the challenger's claim, Defendants assert that there are no set of facts which Plaintiff could plead in order to establish that his circumstances place him outside the intended scope of § 922(g)(1).  We disagree.

---

11.  We read Defendants' brief to argue that Plaintiff fails to state a claim because <u>Dutton</u> precludes individuals convicted of carrying a firearm without a license from asserting a facially plausible as-applied Second Amendment challenge to § 922(g)(1).  Therefore, we address <u>Dutton</u> under the motion to dismiss, as oppose to the cross-motions for summary judgment.

16

First, <u>Dutton</u> did not actually contain an as-applied challenge to § 922(g)(1). Indeed, even after liberally construing the complaint, both the district court and the Third Circuit found that only a statutory claim existed.  <u>See, e.g.</u>, <u>id.</u> at 127 n.1.  Therefore, when the Third Circuit found that amendment was futile, it did so because there was no amendment that would save the plaintiff's <u>statutory</u> challenge to § 922(g)(1).  <u>See</u> <u>Binderup</u>, 2014 WL 4754424 at *19.  The court did not find amendment futile because there was no set of facts that the challenger could plead in order to assert an as-applied Second Amendment claim.  <u>Id.</u>  If it did, <u>Dutton</u> would effectively abrogate <u>Barton</u>.  <u>Id.</u> at *20.

Therefore, viewing the complaint in the light most favorable to Plaintiff, we find that Plaintiff has pleaded sufficient facts to state a facially plausible as-applied Second Amendment claim.  Accordingly, we will deny Defendant's motion to dismiss with respect to Count Two and will instead address Count Two on the cross-motions for summary judgment.

### B. Motion for Summary Judgment

#### 1. Standard of Review

We will examine the motion for summary judgment under the well-established standard.  <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008) ("Summary judgment is only appropriate if there are no genuine issues of material fact.").  We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable juror could find

for the non-movant." Id. "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).

2. *Constitutionality of § 921(g)(1) As Applied to Plaintiff*

The record evidence establishes the following concerning Plaintiff's background and circumstances.[12]  On February 9,1990, law enforcement in Montgomery County, Maryland observed Plaintiff's vehicle fail to stop for a red traffic signal.  (Doc. 14 at 1; Doc. 21 at 1).  Upon stopping the vehicle, law enforcement found Plaintiff driving the car and smelled an odor of alcohol on his breath.  (Doc. 14 at 2; Doc. 21 at 1).  After failing field sobriety tests, Plaintiff was placed under arrest.  (Id.).  During a post-arrest search, law enforcement found a .357 Magnum handgun concealed under Plaintiff's sports coat.  (Doc. 14 at 2; Doc. 21 at 2).[13]  He was also found in possession of two loaded "speed-loaders."  (Id.).  For this incident, Plaintiff was convicted of carrying a handgun without a license, a misdemeanor under Maryland law.  (Doc. 14 at 3; Doc. 21 at 2).  He was sentenced to a term of 180 days imprisonment and a $500 dollar fine,

---

12.  Plaintiff and Defendants assert that the facts contained in the other party's statement of facts are largely irrelevant.  However, in most circumstances we find nothing in Plaintiff's or Defendants' response pointing to record evidence to indicate a dispute.  Accordingly, unless otherwise noted, we find the facts in each party's statement of facts to be undisputed.  See Local Rule 56.1.

13.  The parties dispute whether Plaintiff notified law enforcement of his possession of the firearm or whether law enforcement recovered it without warning from Plaintiff.  We do not find this fact material to the issue under consideration.

both suspended, and a year of probation, which he successfully completed.  (Doc. 14 at 3; Doc. 19 at 2).  Under both Pennsylvania[14] and federal law, Plaintiff's conviction barred him from possessing a firearm.  In addition to his firearm conviction, Plaintiff was convicted of a misdemeanor in 1998 for driving while under the influence of alcohol.

Since his 1990 conviction, Plaintiff has been married for twenty years.  (Doc. 19 at 2).  He is a father of three children.  He is a member of a local church and enjoys a position of leadership there.  (Id.).  Since 1992, Plaintiff has maintained continuous employment within the technology field.  (Doc. 18-1 at 1).  For the last six years, he has been employed as a Project Manager for a technology management company.  (Id.).  In his position, Plaintiff provides technology services primarily to Department of Defense clients.  (Id.).  And in order to provide those services, he holds a government security clearance of "Secret."  (Id.).  Finally, in August of 2009, Plaintiff applied to the Pennsylvania Court of Common Pleas of Adams County to remove the firearm disability imposed under Pennsylvania law.  The court granted the application and held that Pennsylvania law no longer prohibits Plaintiff from possessing a firearm.  See Commonwealth v. Suarez, CP-01-MD-615-2209 (Aug. 31, 2009).  Plaintiff asserts that he is entitled to judgment as a matter of law because these circumstances place him outside the intended scope of § 922(g)(1).  We agree.

---

14.  Pursuant to 18 PA. CONS. STAT. § 6105, a person convicted of certain weapon offenses may not possess a firearm in the Commonwealth of Pennsylvania, unless the person applies for and is granted relief by the court of common pleas in the county in which she resides.  18 PA. CONS. STAT. § 6105(a), (c).

The traditional justification for § 922(g)(1) was the disarmament of individual's likely to commit violent acts. Barton, 633 F.3d 173. Under Barton, a felon with a minor, non-violent conviction can demonstrate a lack of violent propensity, and therefore outside the intended scope of § 922(g)(1), by showing that he is no more dangerous than a typical law-abiding citizen. Id. at 174. Alternatively, a felon can demonstrate that he is outside the intended scope of § 922(g)(1) by showing that his conviction is decades-old and that he poses no continuing threat to society. Id. First, we find that Plaintiff satisfies the threshold elements for both of these alternative tests. That is, Plaintiff's predicate conviction was minor and non-violent, and the conviction is now decades-old. The conviction was minor because he ultimately received only one year of probation.[15] It was for a non-violent offense because it did not involve the use of force, threat of force, coercion, or threats to public safety. And his 1990 conviction is now two and a half decades old.

Second, we find that Plaintiff's background and circumstances in the years following his conviction establish that he is no more dangerous than a typical law-abiding citizen and poses no continuing threat to society. In Barton, the Third Circuit pointed to Britt v. North Carolina to exemplify a felon who is no longer dangerous and poses no continuing threat. Barton, 633 F.3d 174 (citing Britt v. North Carolina, 684 S.E.2d 320 (N.C. 2009). In Britt, the felon had been convicted of possession with intent to deliver

---

15. By the use of the word "minor," we do not mean to imply that the offense of carrying a firearm without a license is inconsequential. We use "minor" only to suggest that the penalty Plaintiff actually received was minimal.

controlled substances.  Britt, 684 S.E.2d at 321.  His conviction did not involve violence or threat of violence.  Id. at 322-23.  He completed a short prison sentence and probationary period without incident.  Id.  In the thirty years following his conviction, there was no evidence that he was dangerous or misused firearms.  Id.  There was no evidence that he used violence toward other citizens, and he had not been convicted of any other crimes.  Id.

Like the felon in Britt, Plaintiff's conviction did not involve violence.  He served his probationary period without incident.  There is no evidence that in the twenty-five years since his conviction Plaintiff was dangerous or misused firearms.  There is no evidence that he used violence toward other citizens.  Although he does have one intervening conviction for driving under the influence of alcohol, that conviction is not a disqualifying conviction under § 922(g)(1) and is itself nearly two decades old.  Indeed, despite Plaintiff's subsequent conviction, in 2009, a Pennsylvania Court of Common Pleas determined that Plaintiff's circumstances justified removal of a firearm disability imposed under State law.[16]  And finally, Plaintiff maintains "Secret" security clearance with the government in order to provide services to Department of Defense clients.  We

---

16.  Defendants assert that this fact should be accorded no weight because the Court of Common Pleas was required to remove the disability.  Pursuant to § 6105, the court must remove the disability if (1) the Secretary of the Treasury of the United States has relieved the applicant of any disability imposed under federal law, and (2) ten years has elapsed since conviction.  18 PA. CONS. STAT. § 6105(d)(3).  If, however, Congress has not appropriated sufficient funds to enable the Secretary of the Treasury to grant relief, the court may waive the first condition.  Id.  In 2009, when Plaintiff applied, Congress did not appropriate funds to the Secretary of the Treasury and ten years had passed since Plaintiff's conviction.  Thus, Defendants argue that the court was required to remove the disability.  However, Section 6105 states that the Court of Common Pleas may waive the first condition.  After a hearing, and based on Plaintiff's circumstances, the court exercised its discretion to waive that requirement.  As a result, we do find the fact noteworthy.

think it safe to assume that our government does not give such clearances to individuals that are dangerous or that pose a threat to society.  Accordingly, we find that Plaintiff has established that he is no more dangerous than a typical law-abiding citizen and poses no continuing threat to society.  Therefore, we find that Plaintiff falls outside the intended scope of § 922(g)(1) and is distinguishable from those historically barred from Second Amendment protections.

Defendants' arguments that Plaintiff's circumstances make him no different than those historically barred from Second Amendment protections do not persuade us otherwise.  First, they argue that Congress enacted § 922(g)(1) with a broad prophylactic purpose and intended to impose a possession prohibition on individuals convicted of both violent and non-violent crimes.  (Doc. 13 at 29-33; Doc. 28 at 26).  Therefore, according to Defendants, although Plaintiff's conviction did not involve violence, he is not outside the intended scope of the felon possession prohibition of § 922(g)(1).[17]  (Id.).  We find this argument better made before the Third Circuit in an attempt to overturn Barton.  Despite Congress's broad reach with § 922(g)(1), the Third Circuit's opinion in Barton allows a challenger to demonstrate that he is beyond that reach and therefore different from those historically barred.  Barton, 633 F.3d 173.  If the wide breadth of § 922(g)(1)

---

17.  Plaintiff seems to argue that he is different than those historically barred because § 922(g)(1) was traditionally intended to prohibit felons from possessing firearms.  Because he was convicted of a misdemeanor, he claims is outside the scope of § 922(g)(1).  We disagree.  Congress generally equates a felony to a crime punishable by imprisonment of more than one year.  Burgess v. United States, 553 U.S. 124, 130 (2008); BLACK'S LAW DICTIONARY 617 (6th ed. 1991).  Thus, if convicted of a crime punishable by over one year, the individual is a felon under § 922(g)(1).  See Dutton v. Pennsylvania, No. 11-7285, 2012 WL 3020651 (E.D. Pa. July 23, 2012).

meant that a challenger with a non-violent or decades-old conviction could never demonstrate that his circumstances place him beyond § 922(g)(1)'s intended scope, <u>Barton</u> would be hollow.  We decline to render it so.

Next, Defendants argue that Plaintiff is no different than those historically barred because he is similar to the challenger in <u>Barton</u>.[18]  (Doc. 13 at 26; Doc. 28 at 27). In <u>Barton</u>, the Third Circuit held that the challenger failed to demonstrate that his circumstances place him outside of § 922(g)(1)'s intended scope.  According to Defendants, the court reached this ruling despite the challenger's predicate convictions being over a decade old and not inherently violent.  (<u>Id.</u>).  Defendant's argue that Plaintiff is no different.  We disagree.

The circumstances of each case matter greatly.  The challenger in <u>Barton</u> was prohibited from possessing firearms under § 922(g)(1) because he was convicted of receiving stolen property – which happened to be a stolen firearm.  <u>Id.</u>  His challenge arose after being indicted for violating § 922(g)(1) because he sold a revolver with an obliterated serial number to a confidential informant.  <u>Id.</u>  Because the rule for making an as-applied claim would not be established until the Third Circuit issued its opinion in his case, the challenger presented no facts showing that his circumstances placed him outside § 922(g)(1)'s scope.  <u>Id.</u> at 174.  Nor was he capable of doing so, since he had just been indicted for selling firearms with obliterated serial numbers.  <u>Id.</u>

---

18.  Defendants also argue that <u>Dutton</u> establishes that Plaintiff is no different than those historically barred from Second Amendment protections.  Because we have already examined <u>Dutton</u> and found it distinguishable from this case, <u>see</u> <u>supra</u> pp. 15-17, we need not re-examine it here.

Here, unlike the defendant in <u>Barton</u>, Plaintiff is not a criminal defendant currently under an indictment for selling firearms with obliterated serial numbers. Plaintiff's predicate conviction is not for an inherently violent crime. The challenger in <u>Barton</u> was convicted of inherently violent crimes. <u>See</u> <u>Barton</u>, 633 F.3d 173 (stating with approval that "[c]ourts have held offenses related to drug trafficking and receiving stolen weapons are closely related to violent crime). Further, Plaintiff's predicate offense is not just over a decade old, its over two decades old, and it did not involve a stolen firearm. And unlike the challenger in <u>Barton</u>, Plaintiff is capable of, and actually has, presented facts demonstrating that he outside the scope of § 922(g)(1). Accordingly, we find the disparity between Plaintiff and the challenger in <u>Barton</u> to be wide.

Finally, Defendants assert that Plaintiff is not outside the intended scope of § 922(g)(1) because he has not shown that he is no more dangerous than a typical law-abiding citizen and poses no continuing threat to society. First, they emphasize that at the time of Plaintiff's arrest, he was carrying a .357 Magnum handgun and two loaded speed-loaders while intoxicated to the point that he was placed under arrest for driving under the influence. (Doc. 13 at 27). They argue that possessing a firearm while intoxicated poses such a danger that many jurisdictions impose criminal sanctions for doing so.[19] (<u>Id.</u>). We agree with Defendants that the circumstances of Plaintiff's arrest

---

19. In addition, Defendants argue that <u>Heller</u> only protects the right of law-abiding citizens to bear arms. Therefore, they remind us that Plaintiff has also been convicted for driving under the influence, and a person who has been twice convicted cannot be characterized as "law-abiding." Again, <u>Barton</u> allows for a person convicted of a crime to demonstrate they are now law-abiding and fall within the Second Amendment's protection.

were dangerous.  But the inquiry is whether the challenger, today, not at the time of arrest, is more dangerous than a typical law-abiding citizen or poses a continuing threat. There are two ways in which a challenger may fail to show he is not dangerous.  One, the challenger's conviction is for acts so violent that even after twenty-five years of non-violent behavior he would continue to be dangerous and to pose a threat to society.  This is not that case.  Or Two, the facts and circumstances since the conviction show that the challenger remains dangerous.  As revealed in our discussion above, we find Plaintiff's background and circumstance establish that, today, he is not dangerous and does not pose a risk to society.

Second, Defendants argue that although Plaintiff's predicate conviction was not violent, empirical studies reveal that those like Plaintiff have a high rate of violent recidivism, and thus Plaintiff continues to be dangerous and pose a societal threat. (Doc. 13 at 13, 29).  While we agree that the generalized results of an empirical study are useful to refute a facial challenge and demonstrate that a statute survives some sort of means-end scrutiny, we do not find that generalized conclusions are particularly useful in as-applied challenges to demonstrate whether Plaintiff, himself, is dangerous or poses a continuing threat.  Accordingly, we find the studies of little moment and decline to rely on them to find that Plaintiff is dangerous.  Accord <u>Binderup v. Holder</u>, No. 13-CV-6750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014).

25

*IV.*        *Conclusion*

          Based on the discussion above, we find that Plaintiff does not fall within the exclusionary language of § 921(a)(20)(B) and that § 922(g)(1) does prohibit him from possessing a firearm.  Accordingly, we will grant Defendants' motion to dismiss with respect to Count One.  We further find that, pursuant to Third Circuit's opinion in <u>United States v. Barton</u>, Plaintiff has established that his background and circumstances place him outside of the intended scope § 922(g)(1), and therefore the application of § 922(g)(1) violates Plaintiff's Second Amendment protections.  Accordingly, we will grant Plaintiff's motion for summary judgment with respect to Count Two.

                         <u>/s/William W. Caldwell</u>
                         William W. Caldwell
                         United States District Judge